# EXHIBIT "C"

RIVKIN RADLER LLP
JOHN J. ROBERTELLI, ESQ.
COURT PLAZA SOUTH-WEST WING
21 MAIN STREET
HACKENSACK, NEW JERSEY 07601
(201) 287-2460
MCCONNELL SIDERIUS FLEISCHNER
HOUGHTALING & CRAIGMILE, LLC
TRACI L. VAN PELT, ESQ.
MICHAEL T. McCONNELL, ESQ.
ROBERT W. STEINMETZ, ESQ.
2401 15th STREET, SUITE 300
DENVER, CO 80202
(303) 458-9555
Attorneys for defendants Leeds, Morelli & Brown P.C., Lenard Leeds, Esq.
Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------------------

| | | |
|---|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI, PATRICIA LONG-CORREA, ANTONIO SAMUEL, VINCENT HALL, ANGELETTE WATERS, Individually, and on behalf of the Class, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 06-5547 (DMC) (MF) |
| -against- | ) ) | **Document Electronically Filed** |
| NEXTEL COMMUNICATIONS, INC., a Delaware Corporation; LEEDS, MORELLI & BROWN, P.C.; LENARD LEEDS, STEVEN A. MORELLI; JEFFREY K. BROWN; JAMES VAGNINI; FREDERIC DAVID OSTROVE; BRYAN MAZOLLA; SUSAN FITZGERALD; AND JOHN AND JANE DOES 1-10, (a fictitious designation for presently unknown Defendants), | ) ) ) ) ) ) ) ) ) | **NOTICE OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** |
| Defendants. | ) ) ) ) ) ) | |

---------------------------------------------------------------

PLEASE TAKE NOTICE, that on a date and time to be determined by the Court, the undersigned will move before this Court on behalf of defendants Leeds, Morelli & Brown P.C., Lenard Leeds, Esq. Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq., for an Order transferring venue of the within matter pursuant to 28 U.S.C. § 1404(a) from the United States District Court for the District of New Jersey to the United States District Court for the Southern District of New York.

PLEASE TAKE FURTHER NOTICE that in support of this motion, the undersigned will rely upon the accompanying brief and certification, and proposed form of Order.

RIVKIN RADLER LLP
Attorneys for Defendants Leeds, Morelli & Brown
P.C., Lenard Leeds, Esq., Steven A. Morelli, Esq.,
and Jeffrey K. Brown, Esq.

Dated: December 29, 2006          By _____
                                  JOHN J. ROBERTELLI, ESQ. (jr0821)
                                  21 Main Street
                                  Court Plaza South-West Wing
                                  Hackensack, New Jersey 07601-7021
                                  (201) 287-2460 (ph)
                                  (201) 489-0495 (fx)

RIVKIN RADLER LLP
JOHN J. ROBERTELLI, ESQ.
COURT PLAZA SOUTH-WEST WING
21 MAIN STREET
HACKENSACK, NEW JERSEY 07601
(201) 287-2460
MCCONNELL SIDERIUS FLEISCHNER
HOUGHTALING & CRAIGMILE, LLC
TRACI L. VAN PELT, ESQ.
MICHAEL T. McCONNELL, ESQ.
ROBERT W. STEINMETZ, ESQ.
2401 15th STREET, SUITE 300
DENVER, CO  80202
(303) 458-9555
Attorneys for defendants Leeds, Morelli & Brown P.C., Lenard Leeds, Esq.
Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq.

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

--------------------------------------------------------------------

| | |
|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI, PATRICIA LONG-CORREA, ANTONIO SAMUEL, VINCENT HALL, ANGELETTE WATERS, Individually, and on behalf of the Class,<br><br>                       Plaintiffs,<br><br>       -against-<br><br>NEXTEL COMMUNICATIONS, INC., a Delaware Corporation; LEEDS, MORELLI & BROWN, P.C.; LENARD LEEDS, STEVEN A. MORELLI; JEFFREY K. BROWN; JAMES VAGNINI; FREDERIC DAVID OSTROVE; BRYAN MAZOLLA; SUSAN FITZGERALD; AND JOHN AND JANE DOES 1-10, (a fictitious designation for presently unknown Defendants),<br><br>                       Defendants. | Civil Action No. 06-5547 (DMC) (MF)<br><br>**Document Electronically Filed**<br><br>**CERTIFICATION OF JOHN J. ROBERTELLI, ESQ. IN SUPPORT OF NOTICE OF MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** |

--------------------------------------------------------------------

JOHN ROBERTELLI, ESQ., of full age, hereby certifies as follows:

1.     I am an Attorney-at-Law of the State of New Jersey, a partner in the law firm of Rivkin Radler, LLP and represent the Defendants Leeds, Morelli & Brown P.C., Lenard Leeds, Esq., Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq. in the above-captioned matter.  As such, I am responsible for the handling of the within matter, and I am fully familiar with the facts and circumstances set forth.

2.     I make this Certification in support of Defendants' Notice of Motion to transfer venue of the within matter pursuant to 28 U.S.C. § 1404(a) from the United States District Court for the District of New Jersey to the United States District Court for the Southern District of New York.

3.     A true and accurate copy of the Declaration of Jeffrey Brown in Support of Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404 (a) is attached hereto as Exhibit "1".

4.     A true and accurate copy of the Dispute Resolution and Settlement Agreement is attached hereto as Exhibit "2".

5.     A true and accurate copy of the Individual Agreement of Michael Johnson is attached hereto as Exhibit "3".

6.     A true and accurate copy of the Pledge of Good Faith is attached hereto as Exhibit "4".

7.     I respectfully request that the Court consider said Exhibits, in conjunction with the Brief filed on behalf of Defendants Leeds, Morelli & Brown P.C., Lenard Leeds, Esq., Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq. in support of said Defendants' motion to transfer venue.

8.    I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

RIVKIN RADLER LLP
Attorneys for Defendants Leeds, Morelli & Brown
P.C., Lenard Leeds, Esq., Steven A. Morelli, Esq.,
and Jeffrey K. Brown, Esq.

Dated:  December 29, 2006                    By:

JOHN J. ROBERTELLI, ESQ. (jr0821)
21 Main Street
Court Plaza South-West Wing
Hackensack, New Jersey  07601-7021
(201) 287-2460 (ph)
(201) 489-0495 (fx)

RIVKIN RADLER LLP
JOHN J. ROBERTELLI, ESQ.
COURT PLAZA SOUTH-WEST WING
21 MAIN STREET
HACKENSACK, NEW JERSEY 07601
(201) 287-2460
MCCONNELL SIDERIUS FLEISCHNER
HOUGHTALING & CRAIGMILE, LLC
TRACI L. VAN PELT, ESQ.
MICHAEL T. McCONNELL, ESQ.
ROBERT W. STEINMETZ, ESQ.
2401 15th STREET, SUITE 300
DENVER, CO  80202
(303) 458-9555
Attorneys for defendants Leeds, Morelli & Brown P.C., Lenard Leeds, Esq.
Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-------------------------------------------------------------

|  |  |
|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI, PATRICIA LONG-CORREA, ANTONIO SAMUEL, VINCENT HALL, ANGELETTE WATERS, Individually, and on behalf of the Class, ) ) ) ) ) ) |  |
| Plaintiffs, ) ) | Civil Action No. 06-5547 (DMC) (MF) |
| -against- ) ) | **Document Electronically Filed** |
| NEXTEL COMMUNICATIONS, INC., a Delaware Corporation; LEEDS, MORELLI & BROWN, P.C.; LENARD LEEDS, STEVEN A. MORELLI; JEFFREY K. BROWN; JAMES VAGNINI; FREDERIC DAVID OSTROVE; BRYAN MAZOLLA; SUSAN FITZGERALD; AND JOHN AND JANE DOES 1-10, (a fictitious designation for presently unknown Defendants), ) ) ) ) ) ) ) ) ) ) |  |
| Defendants. ) ) |  |

-------------------------------------------------------------

**BRIEF IN SUPPORT OF LEEDS, MORELLI & BROWN, P.C., LENARD LEEDS, STEVEN MORELLI AND JEFFREY BROWN'S MOTION TO TRANSFER VENUE**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................iii

INTRODUCTION...........................................................................2

PROCEDURAL HISTORY...............................................................3

STATEMENT OF FACTS................................................................4

    A).    Overview of Plaintiffs' Claims......................................4

    B).    The Nextel Matter......................................................5

            1).    The DRSA...................................................7

            2).    The Dispute Resolution Process..............................8

    C).    The Colorado Class Action and Settlement.........................11

    D).    Plaintiffs' Claims....................................................12

LEGAL ARGUMENT...................................................................12

    A).    Standard for Transferring an Action Pursuant to 28 U.S.C.
            §1404(a)................................................................12

    B).    Plaintiffs Could Have Brought This Action in the Southern
            District of New York..................................................14

    C).    The Private Interest Factors Favor Transfer to the Southern
            District of New York..................................................18

            1).    Plaintiffs' Choice of Forum has no Connection to the
                     Central Facts of the Lawsuit and Therefore Should be
                     Afforded Less Deference.....................................18

            2).    Defendants' Preference is the Southern District of
                     New York, and the Parties Physical and Financial
                     Condition Permit This Matter to be Transferred to
                     the Southern District..........................................20

            3).    Plaintiffs' Claims Arise, if at all, in the Southern District
                     of New York, and Transferring the Case to the Southern
                     District of New York and Provides More Convenient
                     Access to Sources of Proof and Witnesses...........................21

D).    The Public Interest Factors Favor Transfer to the Southern
District of New York...............................................22

    1).    The Local Interests Factor and the Jury Duty Issue
Favor Transfer to the Southern District of New York...22

    2).    The Relative Court Congestion Factor and Other
Administrative Difficulties Favor Transferring This
Case to the Southern District of New York...............23

    3).    New Jersey Substantive Law Does Not Apply to
This Dispute.................................................25

CONCLUSION.......................................................26

2002062 v1

## TABLE OF AUTHORITIES

American Tel. & Tel. Co. v. MCI Communications Corp., 736 F. Supp. 1294
(D.N.J. 1990)…………………………………………………………………….19

Bedrosian v. Mintz, 518 F.2d 396 (C.A.N.Y. 1975)……………………………….22

Folcher v. Appalachian Insulation Supply Co., 2006 WL 2864943 (D.N.J. 2006)…13

Jumara v. State Farm Ins. Co., 55 F. 3d 873 (3rd Cir. 1995)…………………….....13

Goldfarb v. Virginia State Bar, 421 U.S. 773 S. Ct. 2004, 44 L.Ed.2d 572 (1975)…22

Home for the Aged v. Young, 936 F. Supp. 223 (D.N.J. 1996)……………………24

Hustler Magazine, Inc. v. United States Dist. Court for the Dist. Of Wyoming,
790 F.2d 69 (10th Cir. 1986)…………………………………………………….13

Lawrence v. Xerox Corp., 56 F. Supp. 2d 442 (D.N.J. 1999)…………………….13

LG Elecs., Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574 (D.N.J. 2001)…..14

Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518
(D.N.J. 2000)……………………………………………………………………..13

Loeb v. Bank of America, 254 F. Supp. 2d 581 (E.D. Pa. 2003)………………….15

Martens, et al. v. Smith Barney, Inc., et al., No. 96 Civ. 3379 (CBM)
(S.D.N.Y. July 24, 1998)………………………………………………….......6

Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324 (D.N.J. 1995)……….25

Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, 245 F. Supp. 2d 1248
(N.D. Ga. 2002)…………………………………………………………………..16

People ex rel. Karlin v. Culkin, 248 N.Y. 465, 162 N.E. 487 (1928)……………….22

Person v. Association of Bar of City of New York, 554 F.2d 534 (C.A.N.Y. 1977).22

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)..13

Rappoport v. Steven Spielberg, Inc., 16 F. Supp. 2d 481 (D.N.J. 1998)…………...19

Ricoh v. Honeywell, Inc., 817 F. Supp. 2d 473 (D.N.J. 1993)…………………….14

Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rogers, P.C.,
927 F. Supp. 731 (S.D.N.Y. 1996)...................................................17

Siegel v.  Homestore, Inc., 255 F. Supp. 451 (E.D. Pa. 2003)........................15

Sperry v. Florida, 373 U.S. 379 (1963)................................................23

Stewart Org. v. Ricoh Corp., 487 U.S. 22 (1988).....................................13

Tischio v. Bontex, Inc., 16 F. Supp. 2d 511 (D.N.J. 1998)...............................19

Van Dusen v. Barrack, 376 U.S. 612, 614 (1964)......................................12


Job Haines...............................................................................24

Simon's New York Code of Professional Responsibility, Annotated....................7

## INTRODUCTION

Defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven Morelli, and Jeffrey Brown (collectively referred to as "LM&B"), jointly move to transfer venue pursuant to 28 U.S.C. § 1404(a) from the United States District Court for the District of New Jersey to the United States District Court for the Southern District of New York.

This is a putative class action. Leeds, Morelli & Brown, P.C. is a New York law firm. Messrs. Leeds, Morelli, and Brown are all New York lawyers who reside in New York. (Amended Complaint ¶¶ 9-16.) Plaintiffs seek certification of a sub-class of 48 out of a group of 587 nationwide clients of LM&B.[1] This case arises from the negotiation and implementation of an alternative dispute resolution ("ADR") process to resolve discrimination and employment claims of 587 employees of Defendant Nextel Communications, Inc. ("Nextel"). LM&B represented the 587 employees in the negotiation and implementation of the ADR process. In 2002, a class action was filed on behalf of the 587 LM&B clients in Colorado. Prior to class certification, the Colorado class action was settled. The members of the putative sub-class claim to have timely requested exclusion from the Colorado class action settlement.

The events giving rise to Plaintiffs' claims occurred within the State of New York, including the negotiation of the allegedly unethical ADR agreement which is the foundation of all of Plaintiffs' claims. (Am. Compl. ¶¶ 44-65.) The vast majority of

---

[1] Plaintiffs contend that 48 individuals timely requested exclusion from the Colorado Class Action. However, pursuant to the Court order approving the Class Action settlement and final judgment, there were only 41 timely requests for exclusion. Two of those 41 opt outs have already filed suit in the District Court for the City and County of Denver, Colorado, Civil Action No. 2003CV893, captioned *McNeil, et al. v. Leeds,*

in detail prior to its execution. The Firm's voluminous files related to the representation of the six named Plaintiffs, as well as 581 other individuals, were maintained at the Firm's offices in New York. The six named Plaintiffs reside in New Jersey. But they are only 1% of the group of 587 clients. The 587 clients were spread across 23 states, with the majority of clients in Colorado and Georgia.

A careful reading of the Amended Complaint reveals no meaningful connection between this lawsuit and New Jersey, other than it is the state of residence of the six named Plaintiffs. Given the core connection of this case to New York, this action should be transferred from the United States District Court for the District of New Jersey ("District of New Jersey") to the United States District Court for the Southern District of New York ("the Southern District of New York"). Permitting such a transfer would be in the interests of justice and in the interests of the parties and witnesses involved.

## PROCEDURAL HISTORY

This putative class action was originally filed in Superior Court, Passiac County, State of New Jersey, Docket No. 4121-06. LM&B and Defendant Nextel Communications, Inc. ("Nextel") timely filed Notices of Removal pursuant to 28 U.S.C. § 1441. This Court has subject matter jurisdiction based upon both 28 U.S.C. 1332(a) and (d)(2)(A).

On December 22, 2006, Nextel filed a Motion to Dismiss. LM&B have also filed a motion to dismiss, and simultaneously move this Court to transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

---

*Morelli & Brown, et al.* Apparently, Plaintiffs seek to include the two Plaintiffs in the *McNeil* case as members of the purported sub-class.

## STATEMENT OF FACTS

### A).    Overview of Plaintiffs' Claims

This matter has been filed as a putative class action. (Am. Compl. ¶ 7)  The class is made up of 587 former clients of LM&B.  (*Id.*)  However, against Defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven Morelli, Jeffrey Brown, James Vagnini, Frederic Ostrove, Bryan Mazzola, and Susan Fitzgerald, (collectively referred to as "the Attorney Defendants") Plaintiffs seek certification of a *sub-class* to pursue various tort and contract claims against their former attorneys.  (*Id.*)  Plaintiffs seek certification of only a sub-class against the Attorney Defendants because the claims of 546 of the 587 clients were resolved pursuant to a settlement of a class action filed in Arapahoe County, State of Colorado against Defendants Leeds, Morelli & Brown, P.C., Leeds, and Brown, captioned *Foster, et al. v. Leeds, Morelli & Brown, P.C., et al.*, Civil Action No. 2002CV1484 ("the Colorado Class Action").  (*Id.*)

The essence of Plaintiffs' claims against their former lawyers is that – pursuant to an agreement conceived of and negotiated in New York by New York attorneys – Defendant Nextel Communications, Inc. ("Nextel") bribed the attorneys to compromise Plaintiffs' claims against Nextel on terms favorable to Nextel ("the Nextel Matter"). (Am. Compl. ¶¶ 79, 83-93, 97-104, 109.)  The foundation of many of the claims asserted against the Attorney Defendants is that there were "secret" payments made by Nextel to LM&B and that the entire structure of the alternative dispute resolution process entered into in New York is unethical.  (*Id.*)  While Defendants vigorously deny these allegations, Plaintiffs' Amended Complaint makes clear this case should be transferred to the Southern District of New York, the locus of the alleged "bribe" and unethical agreement.

4

A brief description of the underlying Nextel Matter follows.

### B).    The Nextel Matter.

LM&B has extensive experience in setting up and managing complex ADR processes in employment related matters. (Brown Decl. ¶ 3.) ADR processes are significantly beneficial to employees as they are speedy, confidential, and provide for specific participation from employers from whom most of the employees are still working. (Brown Decl. ¶ 3.) LM&B and its lawyers are experienced in negotiating and developing ADR processes that enable groups of clients to have their employment claims assessed individually, and mediated or arbitrated individually, with their employer. (Brown Decl. ¶ 3.) Alternative dispute resolution processes are widely used in employment cases and are accepted by the courts. [2] (Brown Decl. ¶ 4.) LM&B never agreed, nor did they ever intend, to file a class action against Nextel.

The Nextel matter first came to LM&B's attention by referral from a former client. (Brown Decl. ¶ 5.) LM&B was first contacted in New York regarding the Nextel matter. (Brown Decl. ¶ 5.) Every one of LM&B's attorneys is licensed to practice law in the State of New York and all are citizens and residents of the State of New York. (Am. Compl. ¶¶ 9-16.) None of the Attorney Defendants reside in New Jersey.

---

[2] The ADR process in this case was based upon a model created by a Chicago law firm in a sexual discrimination matter involving Smith Barney. *Martens, et al. v. Smith Barney, Inc., et al.,* No 96 Civ. 3779 (CBM) (S.D.N.Y. July 24, 1998). In the Smith Barney case, the Chicago law firm of Stowell & Friedman brought a class action on behalf of female employees. The class action was settled, with court approval. The settlement provided for a new dispute resolution process where each individual claimant's discrimination case would be individually mediated or arbitrated. The settlement agreement, approved by the court, awarded Stowell & Friedman an approximate $10 million fee, paid for by Smith Barney, for simply setting up the alternative dispute resolution process. The court approved settlement also provided that Stowell & Friedman would have a 1/3 contingency fee arrangement with any claimant represented through the dispute resolution process, in addition to the $10 million paid for expenses and fees.

From New York, LM&B began an investigation of Nextel's employment practices in an effort to determine if there was a systemic problem with discrimination. (Brown Decl. ¶ 5.)  LM&B ultimately concluded there was, and agreed to represent a number of claimants from New York, with a few from New Jersey. (Brown Decl. ¶ 5.) In 1999, LM&B were contacted by two Colorado Nextel employees.  These two employees asked that LM&B represent Colorado employees who claimed they were being discriminated against by Nextel. (Brown Decl. ¶ 6.)  As word of LM&B's representation spread, by 2000, the number of Nextel claimants rose to 587 individuals from 23 states. (Brown Decl. ¶ 8.)  Only 16% of those clients were residents of New Jersey; the majority of LM&B's clients were residents of Colorado and Georgia. (Brown Decl. ¶ 8.)

In January of 2000, LM&B contacted Nextel. (Brown Decl. ¶ 7.)  Nextel retained New York attorneys, and LM&B began negotiating with Nextel's lawyers on behalf of its 587 clients. (Brown Decl. ¶¶ 7-8.)  Some of these clients had previously executed contingency fee agreements; at least 151 of the 587 claimants did not. (Brown Decl. ¶ 8.) Throughout the summer of 2000, from New York, LM&B and Nextel engaged in hard-fought and often acrimonious negotiations for resolution of the 587 claims. (Brown Decl. ¶ 10.)  The parties eventually agreed upon a three-stage alternative dispute resolution process by which each claimant's claims would be resolved.  This process is memorialized in a contract entitled "Dispute Resolution and Settlement Agreement: ("the DRSA"). (Brown Decl. ¶ 1)  A copy of the DRSA is attached hereto as Exhibit 2.[3]

---

[3] Because the DRSA identifies all 587 clients by name, a redacted copy of the DRSA has been provided.

### 1).    The DRSA.

The DRSA outlined a very specific process by which each claimant's individual claim was to be resolved. The DRSA specifically states "The claims of each claimant will be resolved individually unless otherwise agreed by the parties." (Ex. 2, § 7(c).) Over 220 claimants had filed claims with the Equal Employment Opportunity Commission. (Ex. 2, Schedule 2.) The EEOC was advised of the DRSA and had to approve the dismissal of each of those claims in order for the DRSA to go in to effect. (Brown Decl. ¶ 9.)

The DRSA also provided that Nextel would pay $5.5 million to LM&B for the claimants' attorneys' fees. No claimant was required to pay LM&B any portion of their recovery from Nextel. (Brown Decl. ¶ 12.) The DRSA also provided that at the conclusion of all the claims Nextel would retain LM&B as consultants to provide advice to Nextel on employment matters. (Brown Decl. ¶ 13; Ex. 2 § 12.) LM&B agreed to act as consultants for Nextel at the conclusion of the resolution of all 587 claims, and under the DRSA, LM&B was to receive approximately $2 million for these services over a two-year period. (Brown Decl. ¶ 13; Ex. 2 § 12.)

It is the fee provision and the consultancy provision described above that Plaintiffs now contend amounted to a "bribe" by Nextel.

*Prior* to the execution of the DRSA, both LM&B and Nextel retained lawyers with special expertise in legal ethics to evaluate the DRSA, the fee provisions, and the

7

consultancy. (Brown Decl. ¶ 14.) LM&B had the DRSA reviewed by New York legal ethics expert Professor Roy Simon, author of SIMON'S NEW YORK CODE OF PROFESSIONAL RESPONSIBILITY, ANNOTATED. (Brown Decl. ¶ 14.) Professor Simon specifically reviewed the ethics of the fee provision and consulting provision and opined that the DRSA was ethical, provided the terms of the DRSA were disclosed to the 587 clients and each client consented. (Brown Decl. ¶ 14.) Nextel had the DRSA, and its fee and consulting provisions, reviewed by Professor Geoffrey Hazard. (Brown Decl. ¶ 15.) Both of these independent experts reviewed the DRSA before it was executed by either LM&B or Nextel. The DRSA was executed on September 28, 2000. (Ex. 2, p. 29.)

LM&B has maintained voluminous files related to the negotiation of the DRSA and the handling of all 587 client's claims. (Brown Decl. ¶ 19.) The attorneys for both sides involved in the negotiation of the DRSA as well as Professor Simon are all residents of the state of New York. (Brown Decl. ¶ 22.) None of the negotiations occurred in New Jersey. (Brown Decl. ¶ 23.)

## 2.    The Dispute Resolution Process.

All 587 of LM&B's clients, including the six named Plaintiffs in this case were identified on Schedule 1 of the DRSA. (Ex. 2) Of the 587 claimants, nine refused to participate in the DRSA or the DRP; five agreed to enter into the DRSA but then almost immediately "no-showed" or refused to participate in the process. (Brown Decl. ¶ 20.) Of the 573 remaining claimants, 62 agreed to accept a payment of $500 in exchange for the execution of a release without any further action on their part. (Brown Decl. ¶ 20.) The remaining 511 claimants' claims were resolved through the three-stage Dispute Resolution Process ("the DRP").

The DRP required that each individual claimant, including each of the six named Plaintiffs, execute an "Individual Agreement." (A copy of Plaintiff Johnson's Individual Agreement is attached as Exhibit 3; all 587 clients executed agreements identical to Exhibit 3.) The Individual Agreements provide, in pertinent part:

> I have reviewed the **Dispute Resolution and Settlement Agreement**; had the opportunity to discuss that Agreement with LM&B or any other counsel of my choosing; and agree to comply fully with the terms of that Agreement. While I may consult other counsel of my choosing with respect to the Dispute Resolution and Settlement Agreement, I agree that LM&B shall be my legal representative throughout the Dispute Resolution Process. I hereby authorize LM&B to execute on my behalf the Dispute Resolution and Settlement Agreement attached hereto and to make the Representations contained therein on my behalf. . .
>
> **I acknowledge and understand that, under paragraph 11 of the Dispute Resolution and Settlement Agreement, Nextel has agreed to pay an amount of money to LM&B to cover the attorneys' fees and expenses, other than expert fees, that Claimants might otherwise pay to LM&B and for which Claimants might otherwise reimburse LM&B** for its representation of all Claimants through the Dispute Resolution Process, and for LM&B's services rendered in representing all claimants through the expedited Dispute Resolution Process. LM&B will not collect or seek to collect from any Claimant any attorneys' fees (contingent or otherwise) or expenses, other than expert fees, to which it might otherwise be entitled pursuant to an agreement between LM&B and Claimants or otherwise. **I hereby knowingly and voluntarily consent to this payment arrangement.**
>
> I acknowledge and understand that, **under Paragraph 12 of the Dispute Resolution and Settlement Agreement, after the processing and resolution of my claims and all other Claimants' claims against the Companies, LM&B will be hired by Nextel to serve as a consultant to the Companies** for a two-year period, to provide such assistance and legal advice to the Companies as they may request regarding their anti-discrimination and diversity policies and programs ("the Consultancy"). **I further acknowledge and understand that such Consultancy presents a conflict of interest for LM&B, and hereby knowingly and voluntarily waive any objection to such conflict.**

(Exhibit 3.)

In addition to the Individual Agreement, each claimant, including Plaintiffs, had to execute a "Pledge of Good Faith." (A copy of the Pledge of Good Faith is attached as Exhibit 4.) The Pledge states, in pertinent part:

> Furthermore, I recognize that the terms of the Agreement with Nextel, as well as, what takes place during the Dispute Resolution Process, must be kept confidential. I know that my promise to keep the Agreement and the Dispute Resolution Process confidential is an important part of why Nextel is entering into this Agreement. For these reasons, **I understand that it is in the interest of the entire group to limit the number of copies of the Agreement which are in circulation. Therefore, I agree to selecting two (2) representatives in my area to maintain a copy of the Agreement. Upon request to either of the area representatives, claimants will be allowed to review the Agreement.**

(Ex. 4, emphasis added.)

Each claimant – including the six named Plaintiffs – expressly acknowledged: (1) Nextel would be paying LM&B's attorneys' fees; (2) LM&B would act as consultants to Nextel at the conclusion of the DRP; and (3) a copy of the DRSA would be held by a custodian for review by a claimant at any time. (Ex. 3 and 4.)

The DRP involved three stages: Phase I – Interview and Direct Negotiation; Phase II – mediation; and Phase III – binding arbitration. (Ex. 2, § 7(h).) Each client's claim could resolve at any one of these three phases. If the case proceeded to arbitration, the arbitrator applied the federal, state and local law of the state of each claimant's residence in deciding the merits of the claims.

In the Interview and Direct Negotiation Phase, each claimant (with an attorney from LM&B) sat down with an attorney from Nextel and discussed the claims. These negotiations occurred in all 23 states. (Brown Decl. ¶ 21.) Each interview had to be conducted within 6 weeks of LM&B's provision of a written demand to resolve that specific claimant's claim. (Ex. 7 § 7(h)(i)(a).) The interview was limited to two hours,

but many interviews lasted significantly longer.  (Brown Decl. ¶ 21.)  A significant amount of the nationwide claimant's claims were resolved at this stage of the DRP. (Brown Decl. ¶ 21.)

Those claimants who elected not to resolve their disputes during Phase I proceeded to Phase II, non-binding mediation.  (Ex. 2 § 7(h)(ii); Brown Decl. ¶ 21.) Each claimant was able to have their claims individually mediated before a neutral mediator.  (Ex. 7 § 7(h)(ii)(c).)  The mediator would then make a recommendation of value for settlement purposes.  As the mediations were non-binding, any claimant could reject any settlement recommendation.  The vast majority of claims resolved at Phase II mediations.  (Brown Decl. ¶ 21.)

Several claims proceeded to Phase III arbitrations.  (Brown Decl. ¶ 21.)  Every claimant who elected to proceed to arbitration lost.  (Brown Decl. ¶ 21.)

The final claim was processed through the DRP in approximately April 2002.

### C).    The Colorado Class Action and Settlement.

In 2002, two of the Attorney Defendants' former clients instituted the Colorado Class Action against Defendant Leeds, Morelli & Brown, P.C., and Defendants Leeds and Brown in the State of Colorado, Arapahoe County District Court, captioned *Foster, et al. v. Leeds, Morelli & Brown, P.C., et al.*, Case No. 02CV1484 (Div. 3).  The Colorado Class Action case was settled, and all but 41 of the 587 clients released all of their claims against the Attorney Defendants.[4]  In the case at bar, Plaintiffs are six New

---

[4] The Colorado Class Action case file was ordered sealed by the Court.  Defendants will move for the submission of a supplemental exhibit, a copy of the Final Order and Judgment entered in the Colorado Class Action case, under pursuant to L. Civ. R. 5.3(c)(6).

Jersey residents who claim to have timely requested exclusion from the Colorado Class Action.

The claims of 546 of LM&B's clients were fully and finally resolved by the Class Action settlement. As part of the Court's Final Order and Judgment, these "opt outs" were permanently enjoined from challenging or seeking review of the Colorado Class Action Court's Final Order and Judgment in any other forum other than the Colorado Class Action.

### D). Plaintiffs' Claims

Plaintiffs claims all relate to the negotiation and execution of the DRSA. (Am. Compl. ¶¶ 44-72, 87-102.) All of those acts occurred in New York. In short, all of the claims in this lawsuit are premised on conduct that occurred in New York. There is no allegation that the DRSA was negotiated or executed in New Jersey. The specific claims of breach of fiduciary duty, commercial bribery, fraud, negligence/legal malpractice, breach of contract, consumer fraud, conversion and racketeering, all relate to the DRSA and the payment of fees to LM&B. None of the acts forming the basis of Plaintiffs' claims, save for very few sporadic allegations, occurred in New Jersey.

## LEGAL ARGUMENT

### A.    Standard for Transferring an Action Pursuant to 28 U.S.C. § 1404(a).

District Courts have broad discretion to transfer a case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of such a transfer is "to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . .'" *Van Dusen v. Barrack*, 376

U.S. 612, 614 (1964); *Folcher v. Appalachian Insulation Supply Co.*, 2006 WL 2864943 (D.N.J 2006) (granting defendant's motion to transfer from New Jersey to Pennsylvania); *Liggett Group Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 525-526 (D.N.J. 2000).

Section 1404(a) allows for the "easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981). District Courts must "adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). It is error for a District Court to deny a motion to transfer venue under Section 1404(a) "summarily without 'giv[ing] air to those facts which the petitioners assert entitle them to a transfer.'" *Hustler Magazine, Inc. v. United States Dist. Court for the Dist. of Wyoming*, 790 F.2d 69, 71 (10th Cir. 1986)).

In general, the Court's analysis on a motion to transfer addresses three factors: (1) convenience of parties; (2) convenience of witnesses; and (3) interests of justice. *Liggett*, 102 F. Supp. 2d at 525-526. However, the analysis is not limited to these factors but is rather "flexible" and turns on the "unique facts of the case." *Id.* at 527.

When considering a motion to transfer venue, federal courts weigh several private and public factors. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 449 (D.N.J. 1999)(citation omitted)(holding that decision to transfer must incorporate "all relevant factors"). The private factors include: (1) the amount of deference accorded to plaintiffs' choice of forum; (2) the defendants' preference; (3) the physical and financial condition of the parties; (4) whether the claim arose elsewhere; and (5) the relative ease of access to sources of proof, including witnesses and records. *Jumara v. State Farm Ins. Co.*, 55

13

F.3d 873, 879 (3rd Cir. 1995) (transferring case from one district to another within the same state). The public factors include: (1) the appropriateness of having the jurisdiction whose law will govern adjudicate the dispute to avoid difficult problems with conflict of laws; (2) public policy considerations in the forum state; (3) the court's interest in resolving local controversies locally; (4) the enforceability of a judgment; (5) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (6) relative court congestion; and (7) the existence of a related action pending before another federal court. *Id.* at 879-80; *LG Elecs. Inc. v. First Int'l Computer, Inc.,* 138 F. Supp. 2d 574, 586-87 (D.N.J. 2001); *Ricoh v. Honeywell, Inc.*, 817 F. Supp. 2d 473, 480-481 (D.N.J. 1993).

In this case, the balance of factors tips decidedly in favor of transferring the Plaintiffs' Amended Complaint from the District of New Jersey to the Southern District of New York.

**B.    Plaintiffs Could Have Brought This Action In The Southern District Of New York.**

Pursuant to 28 U.S.C. § 1404(a), a case cannot be transferred to a different district, unless that case could have originally been brought in the transferee district. This preliminary hurdle is unequivocally met in this case. This case could have been brought in the Southern District of New York.

This case was removed to federal court pursuant to 28 U.S.C. § 1441 based upon the fact that there is complete diversity of citizenship among the parties, the amount in controversy exceeds the sum or value of $75,000, and subject matter jurisdiction exists pursuant to the Class Action Fairness Act. 28 U.S.C. § 1332(d). The six named Plaintiffs claim to be citizens of New Jersey; Nextel is a citizen of Virginia; the LMB

14

attorneys are all citizens of New York. Indisputably, complete diversity exists in both New Jersey and in New York. In a case where federal jurisdiction is based on diversity, such as this one, venue is proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

The Southern District of New York is proper venue under both sections 1391(a)(1) and (a)(2). First, all defendants, including Nextel, reside in New York. (*See*, 28 U.S.C. 1391(c)(for purposes of venue a corporate is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced)). Second, a substantial part of the events or omissions giving rise to the claim occurred in the State of New York. In analyzing the locus of the events or omissions giving rise to the claim, court's focus on the conduct of *defendants* not the conduct of plaintiffs. *Siegel v. Homestore, Inc.*, 255 F. Supp. 451, 455 (E. D. Pa. 2003).

The case of *Loeb v. Bank of America*, 254 F. Supp. 2d 581, 586 (E. D. Pa. 2003) is instructive. In *Loeb*, the plaintiff sued his attorney for breach of fiduciary duty, fraud, negligent misrepresentation and a variety of other torts and based federal jurisdiction on diversity. The plaintiff client was a resident of the state of Pennsylvania; the defendant lawyer was a resident of the state of Maryland. On the attorneys' motion, the Court transferred venue to Maryland under 28 U.S.C. § 1406. It was undisputed that the relationship between the attorneys and the plaintiff had spanned thirty years. In resisting the venue change, the plaintiff relied upon numerous telephone calls and letters to/from

15

the state of Pennsylvania related to the attorneys' representation of the plaintiff and the formation of the trust at issue. The Court found such contacts were not substantial enough to establish venue in Pennsylvania, stating:

> [E]vents or omissions that might only have some tangential connection with a dispute in litigation are not enough. The test for determining venue, therefore, is not the defendant's "contacts" with a particular district, but rather the location of those events or omissions giving rise to the claim. . . . To establish venue, Plaintiff relies upon correspondence and telephone calls. These are woefully insufficient to establish venue in this district. While the statute recognizes that a "substantial" part of the events or omissions forming the basis of a cause of action may occur in more than one district, incidental events, such as the correspondence and calls Loeb relies on, that have only some tangential connection with the dispute in litigation are not enough.

*Id.* at 586-587 (internal citations omitted).

Likewise, in another legal malpractice/fee dispute case, *Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa*, 245 F. Supp. 2d 1248, 1260 (N.D. Ga. 2002), the District Court found that venue was proper in the district in which the attorneys resided. In *Paul, Hastings*, the Atlanta office of the national law firm was retained by the City of Tulsa, Oklahoma, to represent the City in a discrimination lawsuit filed against the City in Oklahoma. The City failed to pay the attorneys' fees and the lawyers filed suit in the Northern District of Georgia. The City challenged venue, and the Court found that venue was proper because the lawyers had done most of the legal work in Georgia, even though the fee agreement was negotiated and executed in Oklahoma and the underlying litigation was in Oklahoma. The Court found that the vast majority of the work for the litigation occurred in Georgia, the client directed the firm to hire Georgia contract attorneys and paralegals to save money, payments and contract amendments were sent to Georgia, and a complete set of litigation files was maintained in Georgia. The Court found that "a

substantial part of the events giving rise to this breach of contract claim occurred in the Northern District of Georgia," even though the attorneys had frequently-traveled to Oklahoma, were retained for Oklahoma litigation, and had negotiated the fee agreement in Oklahoma. *Id.* at 1260.

Likewise, in *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rogers, P.C.*, 927 F. Supp. 731, 736 (S.D.N.Y. 1996), a legal malpractice/breach of contract case founded on diversity, the court ordered all claims against the lawyers transferred to another district. The *Saferstein* Court noted that venue is to protect the defendant from having to defend an action filed in a court that is either remote from the defendant's residence or remote from the place where the acts underlying the controversy occurred. *Id.*

In *Saferstein*, like this case, the client sued the lawyers for breach of contract as well as a number of tort claims. The *Saferstein* Court found that the place where the attorney's fee agreement was executed may be a proper venue for a breach of contract claim. Nonetheless, the *Saferstein* Court transferred venue to the defendant's residence, stating:

> When interpreting 28 U.S.C. § 1391(a)(2) in the context of a breach of contract claim, "courts consider a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." According to the amended complaint, the contract in the instant case was negotiated and finalized in New York during [the attorney's] visit to plaintiff's . . . home on May 2, 1992, although the written form confirming the oral contract was not delivered until July 20, 1992. Defendants, while they dispute that the contract was executed in New York, concede that some discussions regarding [the attorney's] representation of plaintiffs in the Underlying Action took place at the [New York] meeting, or, at the very least, that [the attorney] went to [New York] to meet with plaintiffs with respect to [the attorney's] representation in the Underlying Action. Although it is not alleged that any breach occurred in New York, or that any part of the contract was to

17

be performed in New York, the creation of the contract between the parties during [the attorney's] visit to [New York] constitutes a substantial part of the events giving rise to the breach of contract claim.    For the foregoing reasons, venue is proper in the Southern District of New York as to plaintiffs' claim for breach of contract.

**Venue is _improper_ as to all other claims (extortion, malpractice, misrepresentation, fraud/conspiracy, unethical conduct, and breach of fiduciary duty).    According to the amended complaint, the factual bases supporting these claims occurred outside New York.    Plaintiffs allege no conduct forming the basis of any of these claims that took place in New York.**    Any extortion, malpractice, misrepresentation, fraud/conspiracy, unethical conduct, or breach of fiduciary duty which defendants may have committed against plaintiffs would have been committed in Pennsylvania or Delaware, where defendants reside and where they prepared for and litigated the Underlying Action, and venue would be appropriate in a district in one of those states pursuant to 28 U.S.C. § 1391(a)(1) or (2).    **However, since no substantial part of the events or omissions giving rise to plaintiffs' claims (except the first claim for breach of contract) occurred in New York, venue in this court is improper as to all claims except the claim for breach of contract.**

_Id._ at 736 (emphasis added).

The _Saferstein_ Court went on to transfer **all** claims, including the breach of contract claim, to the district court in Pennsylvania, where all of the defendant attorneys resided. _Id._

In sum, in assessing venue in the present matter, the Southern District of New York is indisputably a proper venue for the resolution of Plaintiffs' claims.

C.    **The Private Interest Factors Favor Transfer To The Southern District Of New York.**

1.    **Plaintiffs' Choice of Forum Has No Connection to the Central Facts of the Lawsuit and Therefore Should be Afforded Less Deference.**

Plaintiffs did not file this case in federal court, but instead, attempted to pursue their claims in state court in New Jersey.  Thus, the United States District Court for the

District of New Jersey was not Plaintiffs' chosen forum. Plaintiffs are only 6 of 587 clients hailing from 23 different states. Plaintiffs' decision to file their Amended Complaint in New Jersey state court was a "preference." Their choice to file in New Jersey "is simply a preference; it is not a right." *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 500 (D.N.J. 1998). While a plaintiff's preference of forums certainly is a factor to consider, the plaintiff's preference should be given less weight when the forum selected is not the location where the central facts of the lawsuit took place. *Ricoh*, 817 F. Supp. at 481; *see also, Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998)(deference to plaintiff's choice of forum is curbed where forum has little operative connection to the lawsuit); *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990)("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference."); *Saferstein, supra,* 927 F. Supp. at 736.

While the Court must consider that Plaintiffs chose to file this case in New Jersey, albeit New Jersey state court, their preference for New Jersey should <u>not</u> be given substantial deference. The crux of the Amended Complaint is Plaintiffs' allegations that the DRSA was improper and amounted to a bribe by Nextel. (Am. Compl. ¶¶ 79, 83-93, 97-104, 109.) As alleged in the Amended Complaint, the only connection which this lawsuit has to New Jersey is that Plaintiffs – six of 587 clients – reside in New Jersey, and that LM&B handled their six claims in New Jersey. The center of gravity is the DRSA and the negotiation of the agreements in New York. It is clear from a careful reading of the Amended Complaint that the operative facts that form the predicate for all of Plaintiffs' claims bear no relation to New Jersey but instead relate to alleged

misconduct which occurred wholly in New York. Accordingly, Plaintiffs' choice of forum is entitled to less deference in this case because of the lack of connection between the alleged wrongful conduct and the State of New Jersey. *Loeb v. Bank of America*, 254 F. Supp. 2d at 586; *Paul, Hastings*, 245 F. Supp. 2d at 1260; *Saferstein*, 927 F. Supp. at 736.

> **2.    Defendants' Preference is the Southern District of New York, and the Parties' Physical and Financial Condition Permit This Matter to be Transferred to the Southern District.**

While Plaintiffs may perceive a tactical advantage to litigating this matter in New Jersey, that advantage would come at the cost of convenience not only of defendants but also of other witnesses. All of the defendants reside in New York. All of the negotiations related to the DRSA – and the lawyers for Nextel who participated in those negotiations – are in New York. (Brown Decl. ¶¶ 21, 23.) The ethics expert LM&B retained to review and vet the DRSA resides in New York. (Brown Decl. ¶ 22.) The 587 client files were maintained in New York.[5] All of the expenses LM&B incurred in litigating the Nextel matter were paid in New York. The Southern District of New York, while not distant from the District of New Jersey, is nonetheless closer to the vast majority of witnesses who will be called to testify in this matter. (Brown Decl. ¶ 22.)

Furthermore, the parties' physical and financial condition does not prevent this matter from being transferred to the Southern District of New York. This case has been filed as a putative class action on behalf of 587 claimants. The expense of litigating this case as a class action – where the six plaintiffs represent only 1% of the overall number of class members – is no different for Plaintiffs in New Jersey versus the Southern

---

[5] LM&B's 587 client files and general Nextel matter files are currently housed in Colorado due to the Colorado Class Action.

District of New York. Over half of the 587 clients hale from Colorado and Georgia. (Brown Decl. ¶ 8.) Nearly 80% of the clients who timely requested exclusion from the Colorado Class Action reside in Colorado. Even with respect to the sub-class for which Plaintiffs seek certification against the Attorney Defendants, the vast majority of witnesses reside outside of New Jersey. Clearly, the expense of litigating this putative class action is no greater if it is venued in New York versus New Jersey. Accordingly, the physical and financial condition of the parties does not prevent this matter from being resolved in New York, instead of New Jersey.

3. **Plaintiffs' Claims Arise, if at all, in the Southern District of New York, and Transferring the Case to the Southern District of New York Provides More Convenient Access to Sources of Proof and Witnesses.**

Plaintiffs' claims against all defendants, including the Attorney Defendants, arose, if at all, in New York. The DRSA was negotiated in New York by attorneys for Nextel and LM&B. The alleged "bribe" and secret agreements/payments occurred in New York. The central issue in the Amended Complaint is whether the DRSA is an ethical, appropriate manner in which to resolve the 587 clients' claims, and whether the payment by Nextel of LM&B's attorneys' fees and the consultancy arrangement were ethical and appropriate. The most efficient way to resolve the dispute over the DRSA is to handle this matter in the Southern District of New York. In addition to sources of proof being in New York, the vast majority of relevant witnesses who were involved in the negotiation of the DRSA and the handling of all of the individual claims through the DRP are in New York. (Brown Decl. ¶ 22.)

21

**D.     The Public Interest Factors Favor Transfer To The Southern District Of New York.**

Evaluation of the public interest factors involves "consideration of the locus of the alleged culpable conduct and the conduct and the connection of the conduct to plaintiff's chosen forum." *Tischio v. Bondex, Inc.*, 16 F. Supp. 2d 511, 526 (D.N.J. 1998). In this case the "locus of the alleged culpable conduct" is the DRSA, its negotiation by New York lawyers for both sides, and the various agreements entered into, all of which took place in New York. This matter should be transferred to the Southern District of New York.

**1.     The Local Interests Factor and the Jury Duty Issue Favor Transfer to the Southern District of New York.**

Indisputably New York has a strong public interest in this matter. "States have a compelling interest in regulating the conduct of professionals who practice within their borders. The interest in regulating lawyers is especially great because lawyers are essential for the functioning of the administration of justice. *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975)). In New York the legislature has expressly provided that the judiciary has the power to regulate attorneys. *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 472-77, 162 N.E. 487 (1928); Judiciary Law s 90(2)." *Person v. Association of Bar of City of New York*, 554 F.2d 534, 539 (C.A.N.Y 1977). There is no doubt that a state has substantial interest in regulating the practice of law within its borders. *Bedrosian v. Mintz*, 518 F.2d 396, 400 (C.A.N.Y. 1975). Plaintiffs have asserted serious allegations of breaches of fiduciary duty and improper conduct against each of the New York lawyers. New York has a compelling interest in the practice of its lawyers. *Bedrosian*, 518 F.2d at 400 (citing *Sperry v.*

*Florida*, 373 U.S. 379 (1963)).  As part of its power to protect the public, New York has the authority to establish standards for licensing and regulating the practice of attorneys. *Id.*  Plaintiffs explicitly acknowledge New York's interest in the conduct of the Attorney Defendants, citing to New York's Code of Professional Responsibility in their Amended Complaint.  (Am. Compl. ¶ 104.)  Clearly, New York has a strong public interest in adjudicating this matter.  The DRSA was negotiated on Nextel's behalf by its New York lawyers.  (Brown Decl. ¶ 10.)  The DRSA was reviewed and vetted by a New York ethics' expert.  (Brown Decl. ¶ 14.)  The alleged "bribe" took place in New York.  The alleged breaches of fiduciary duty, i.e., the Attorney Defendants agreement to act in Nextel's interests rather than their clients' interests, all occurred in New York.  Without a doubt, New York has a compelling interest in adjudicating this matter as the alleged wrongs took place in the State of New York and involved New York lawyers.

In addition, as this Court has observed, "[t]he burden of jury duty ought not to be imposed upon the people of a community which have no relation to the litigation." *Tischio*, 16 F. Supp. 2d at 526.  In this case, the residents of the Southern District of New York have a vested interest in this dispute regarding conduct of New York attorneys who practice in the State of New York.  The New Jersey community has little or no relation to, or interest in, regulating the actions of New York attorneys, which all took place in New York.

2. **The Relative Court Congestion Factor and Other Administrative Difficulties Favor Transferring This Case to the Southern District of New York.**

One of the factors which can be considered when deciding whether to transfer a case is relative court congestion of the two respective courts.  For example, in *Job Haines*

*Home for the Aged v. Young*, 936 F. Supp. 223, 233 (D.N.J. 1996), the court granted defendant's motion for transfer based in part on the fact that the matter could be more quickly resolved in the transferee district. Specifically, the court found when comparing the Central California's 19 month average to the District of New Jersey's then 24 month average from filing to trial, the court determined it was more efficient to have the matter resolved in California. *Id.*

It is in the interests of all the parties to have this matter resolved as soon as possible. Instead of a five (5) month difference in court congestion as in *Job Haines*, the difference between the Southern District of New York and the District of New Jersey is greater. The median time interval from filing to trial in the Southern District of New York is 22 months for the period ending September 30, 2005. (Table C-10, United States Courts – Median Time Intervals For Filing To Trial Of Civil Cases In Which Trials Were Completed, By District, During the 12-Month Period Ending September 30, 2005, available at http://www.uscourts.gov/judbus2005/appendices/c10.pdf.) The median time interval from filing to trial in that same period in the New Jersey District is 36.7 months. (*Id.*) When coupled with the other factors suggesting transfer, the significant difference in court congestion weighs in favor of transferring this matter to the Southern District of New York in order to ensure more speedy and efficient resolution of these allegations.

In addition, if Plaintiffs were to obtain a judgment against LM&B in the Southern District of New York, it would be easier for Plaintiffs to enforce their judgment than if the matter was pending in New Jersey. Accordingly, Plaintiffs' ability to enforce any judgment against LM&B weighs in favor of transfer of this matter to the Southern District of New York.

24

### 3.    New Jersey Substantive Law Does Not Apply To This Dispute.

While all class actions are complex matters, LM&B submits that this case, in particular, presents complex choice of law issues. LM&B represented 587 clients from 23 states. Each state's substantive law should apply to each client's claims for breach of fiduciary duty, malpractice, consumer fraud, and the like. As just one example, over 27% of the total claimants resided in Colorado. Colorado does not recognize claims for "commercial bribery." Colorado has a two-year statute of limitations on legal malpractice claims. There is no reason why New Jersey substantive law will apply to any of the claims asserted by Plaintiffs.

In addition, matters complicating the choice of law analysis include : (1) statutory causes of action and statutes of limitation specific to each of the 23 states; (2) the attorney-client privilege applicable to 581 claimants from 23 different states; (3) the mediator's privilege, which exists in only some of the 23 states; (4) Nextel's attorney-client privilege; (5) the individualized handling of the underlying claims; (6) the different retainer agreement and the clients who did not execute any retainer agreements; and so forth.

In diversity actions, federal courts apply the conflict of law principles of the forum state in order to determine which substantive law applies. *Tischio*, 16 F. Supp., 2d at 526; *Nat'l Prop. Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 330 (D.N.J. 1995). New Jersey's principles dictate that in suits relating to contractual agreements (such as the DRSA), the law of the state with the most significant relations, connections and contacts with the parties and the action applies. *Tischio*, 16 F. Supp. 2d at 527; *Nat'l Prop.* 917 F. Supp. at 330. New Jersey clearly does not have the most significant

"relations, connections and contact" with the DRSA. New York has the most significant connection to the negotiation and execution of the DRSA. This is another reason for transferring the case to the Southern District of New York.

## IV.    CONCLUSION

This matter should be transferred from the District of New Jersey to the Southern District of New York. Such a transfer of the case would be for the convenience of the parties and the witnesses. In addition, such a transfer will be in the interests of justice as detailed through the evaluation of the public and private interest factors above.

For the foregoing reasons, Defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven Morelli, and Jeffrey Brown respectfully request that the Court grant their motion to transfer and enter an Order transferring this case from the United States District Court for the District of New Jersey to the United States District Court for the Southern District of New York.

Dated this 29th day of December, 2006.

RIVKIN RADLER LLP
Court Plaza
South-West Wing
21 Main Street
Hackensack, NJ 07601

*Attorneys for Defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven Morelli and Jeffrey Brown*

By:____/s/ John J. Robertelli____

# Exhibit 1

RIVKIN RADLER LLP
JOHN J. ROBERTELLI, ESQ.
COURT PLAZA SOUTH-WEST WING
21 MAIN STREET
HACKENSACK, NEW JERSEY 07601
(201) 287-2460

Attorneys for defendants Leeds, Morelli & Brown P.C., Lenard Leeds, Esq.
Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

--------------------------------------------------------------

| | |
|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI, PATRICIA LONG-CORREA, ANTONIO SAMUEL, VINCENT HALL, ANGELETTE WATERS, Individually, and on behalf of the Class, <br><br> Plaintiffs, <br><br> -against- <br><br> NEXTEL COMMUNICATIONS, INC., a Delaware Corporation; LEEDS, MORELLI & BROWN, P.C.; LENARD LEEDS, STEVEN A. MORELLI; JEFFREY K. BROWN; JAMES VAGNINI; FREDERIC DAVID OSTROVE; BRYAN MAZOLLA; SUSAN FITZGERALD; AND JOHN AND JANE DOES 1-10, (a fictitious designation for presently unknown Defendants), <br><br> Defendants. | Civil Action No. 06-5547 (DMC) (MF) <br><br> DECLARATION OF JEFFREY BROWN IN SUPPORT OF MOTION TO TRANSI VENUE PURSUANT TO 28 U.S.C. § 14( <br><br> **Document Electronically Filed** |

--------------------------------------------------------------

I, Jeffrey Brown, declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746,

that the following is true and correct:

1.    I am an attorney licensed to practice law in the State of New York and a
shareholder in Leeds, Morelli & Brown, P.C. ("LM&B") and have been since its

formation in 2000. I am a named defendant in the within action. My statements herein are based on personal knowledge. LM&B specializes in employment and civil rights law.

2.  I am personally familiar with the underlying Nextel Matter. I was personally involved in the negotiation of the Dispute Resolution and Settlement Agreement ("the DRSA") and the handling of numerous claims through the three-stage Dispute Resolution Process ("the DRP").

3.  LM&B is a New York law firm. The Firm's only offices are in New York. LM&B's practice emphasizes in civil rights claims and representing the victims of discrimination. LM&B does not routinely handle class actions. LM&B never intended to initiate a class action against Nextel. LM&B specializes in alternative dispute resolution, and has extensive experience in setting up and managing dispute resolution processes. It is my opinion that these processes are significantly beneficial to employees as they are speedy, confidential, and provide for specific participation from employers for whom most of the employees are still working.

4.  LM&B and its lawyers are experienced in negotiating and developing ADR processes that enable groups of clients to have their employment claims assessed individually, and mediated or arbitrated individually, with their employer. In my experience, and in my opinion, these alternative dispute resolution processes are widely used in employment cases and are accepted by the courts.

5.  The Nextel matter came to the Firm's attention by referral from a former client. The former client contacted the Firm's offices in New York. The former client had gone through an ADR process while being represented by LM&B that was similar to the one used with the Nextel clients. From our offices in New York, for approximately six months, LM&B investigated Nextel's employment practices in an effort to determine if there was a systemic problem with discrimination. The Firm's lawyers ultimately concluded there were widespread problems, and agreed to represent approximately 80 clients.

6.  At the Firm's 1999 holiday party in New York, two Colorado Nextel employees showed up, unannounced and uninvited. These two clients, Denise McNeil and Alencia Ashton-Moore, flew to New York at their own expense and asked that the Firm take on the representation of Colorado employees who were being discriminated against by Nextel. After discussion with these two women, and numerous meetings with them, we agreed, and the total number of clients rose to about 200 in early 2000. The majority of these clients were from Colorado.

7.  In January of 2000, we first made contact with Nextel and began negotiating with the company on behalf of these 200 clients. It is my opinion that because confidentiality for Nextel could prove to be a significant bargaining chip, it was reasonable and appropriate to consider an alternative dispute resolution process for our

clients. The process would also provide a quick resolution of the claims which was important to our clients, many of whom remained current Nextel employees.

8.    After our initial contact, we dealt only with Nextel's lawyers. Nextel was represented by some of New York's biggest employment law firms, Simpson Thacher & Bartlett and Jackson Lewis Schnitzler & Krupman. After some initial dialogue between the Firm's lawyers and New York counsel for Nextel, the negotiations stalled. In the summer of 2000, we filed several hundred complaints with the Equal Employment Opportunity Commission. These filings garnered press attention and the group of clients then rose to nearly 587. Some of these clients had previously executed contingent fee agreements. At least 151 of the 587 clients did not execute contingent fee agreements. Of the 587 clients, 27.4% were residents of Colorado, 23.3% were residents of Georgia. Of the 41 clients who timely requested exclusion from the Colorado Class Action, 79.5% are residents of Colorado, 5.13% are residents of Georgia, and 15.3% are residents of New Jersey. Put another way, over half of the Firm's clients were residents of Colorado and Georgia. Of the Firm's 587 clients, the six named plaintiffs represent just 1%.

9.    With respect to the EEOC filings, after meetings and discussions with members of the Firm and the EEOC, the EEOC set up a "task force" to investigate Nextel and the claims. We were able to arrange with the EEOC to file each complaint in the Commission's central office in Washington, D.C., rather than filing each claim in district offices throughout the states. When the DRSA was agreed to, the EEOC was advised of the agreement and the terms for an alternative dispute resolution process by which each client's matter would be presented and reviewed separately in three stages. From its New York offices, the Firm wrote a letter to the EEOC for each claim, confirming that the DRSA would be reviewed with and separately agreed to by each client. The EEOC agreed to the withdrawal of all but one of the 220 complaints filed with the commission. The one claim retained by the EEOC was for a client who elected to withdraw from the DRSA process.

10.    After the group of clients rose to nearly 600, we received a call from Nextel's lawyer, Greg Rasin, in New York. Mr. Rasin stated, in essence, that Nextel wanted to resume negotiations. Mr. Rasin was the lead attorney for Nextel. All of the negotiations for the DRSA and the dispute resolution process occurred in New York.

11.    The DRSA and the DRP were the product of acrimonious, often contentious, arms' length negotiations with the Firm's lawyers and Mr. Rasin. All of these discussions, drafts, revisions to drafts and so forth were sent back and forth between the Firm's offices in New York and Mr. Rasin's offices in New York. There was absolutely no collusion between Nextel and the Firm. The negotiations were difficult, time consuming, and complicated. Numerous drafts of the DRSA were exchanged and edited by the parties. Several times, both sides were close to walking away believing that an alternative dispute resolution process could simply not be agreed upon. Ultimately, the DRSA and DRP were finalized. As a concession to our clients, Nextel agreed to pay all of our clients' attorneys' fees and expenses in exchange for the agreement to enter into

the DRSA and conduct the DRP. After careful consideration and reflection, LM&B determined that it was in the best interests of our clients to agree to an ADR process.

12.    With respect to the payment of LM&B's attorneys' fees and expense by Nextel, all negotiations occurred in New York. Because employment cases have attorneys fee shifting components, Nextel agreed to pay LM&B's fees and expenses to process 587 claims through the DRP. The DRSA provides for the payment of $5.5 million in fees to LM&B, which was a negotiated figure reached before either Nextel or the Firm knew what would ultimately be paid out by Nextel through the DRP. During the negotiation of the fee, the overall settlement value of the 587 claims was not discussed.

13.    Nextel also approached the Firm about entering into a consulting arrangement so that the Firm could advise Nextel on its employment practices and other matters. The Firm agreed to act as consultants to Nextel after the DRP was concluded, provided that the consulting provision was found ethical and appropriate after expert review.

14.    Prior to executing the DRSA, the Firm retained Professor Roy Simon, from Hofstra University. Professor Simon is a national expert on ethics and author of New York's Annotated Code of Professional Responsibility. Upon information and belief, Professor Simon is a resident of the state of New York. Professor Simon was retained by LM&B to review and advise the Firm on the DRSA, with emphasis on the fee provision and consultancy provision. Professor Simon reviewed the DRSA and its provisions, and advised us that the fee and consulting provisions were ethical as long as they were disclosed to each client and each client consented to the provisions. Based upon Professor Simon's advice, we revised the DRSA. Also, based upon Professor Simon's advice, we discussed these specific provisions with each client and had each client expressly consent to the provisions. The disclosure and consents were documented in the Individual Agreements and Pledges of Good Faith executed by each and every client who desired to proceed with the DRP.

15.    Prior to executing the DRSA, Nextel retained Geoffrey Hazard, Esq. to review the DRSA's fee and consultancy provisions. Nextel would not provide me with a copy of his opinion letter, but in Mr. Rasin's office, I read Mr. Hazard's opinion letter to Nextel. Mr. Hazard's letter stated that the fee arrangement and the consulting arrangement were ethical and appropriate. Prior to their execution, the DRSA and accompanying documents were also revised based upon the advice of Mr. Hazard.

16.    From the beginning of the negotiations leading up to the DRSA, LM&B advised the various clients that an alternative dispute resolution process was being negotiated. We held regional meetings with clients and discussed the DRP and the proposed DRSA with each of them. A number of lawyers from the Firm personally attended all of these regional meetings. The Firm's timekeepers also kept detailed records of their travels to various states for meetings with clients at which the DRSA was presented, explained, and discussed. It is my belief that all clients, including the six

named plaintiffs in this case, were aware of the negotiations in New York for the DRSA and all clients were aware that Nextel agreed to pay the Firm's fees in order to cap Nextel's costs. All clients were also told that Nextel had agreed to pay all of the expenses associated with the mediations and/or arbitrations.

17.     Some clients had face-to-face meetings with LM&B. Some clients were selected to be regional custodians of the complete DRSA. Some clients were advised of the terms of the DRSA in group meetings, where they were able to review the document in person. A number of clients asked for, and received, their own copies of the complete DRSA, with other client information redacted.

18.     Each and every client, with the exception of the 14 clients who immediately changed their mind and refused to participate in the DRP, executed an Individual Agreement and a Pledge of Good Faith.

19.     The DRSA had truncated time frames for processing and handling 587 individual claims. As a result, the Firm hired an additional 30 employees, including 11 lawyers, to manage and handle these claims. The Firm expanded its New York office space from 3,110 square feet to 13,090 square feet in order to handle the Nextel matter. Representing these 587 clients through the DRP was a massive undertaking for the Firm. Good deals of the resources of the Firm were devoted to the Nextel Matter for a long period of time. The Firm turned away other business so that the Nextel Matter could be handled appropriately. In its New York office, the Firm maintained client files for each specific client as well as many files related to the DRSA and DRP in general.

20.     All 587 of LM&B's clients were identified on Schedule 1 of the DRSA. Of the 587 clients, nine refused to participate in the DRSA or the DRP; five agreed to enter into the DRSA but then almost immediately "no-showed" or refused to participate in the process. Of the 573 remaining clients, 62 agreed to accept a payment of $500 in exchange for the execution of a release without any further action on their part. This option was expressly available pursuant to the DRSA itself. The remaining 511 clients' claims were resolved through the various stages of the DRP.

21.     At each Phase I interview, each claimant sat down with an attorney from LM&B and an attorney for Nextel and discussed the claimant's claims. These interviews were limited to two hours, but with the consent of our clients, they often went longer. These interviews occurred in jurisdictions all over the country, with the vast majority taking place in Colorado and Georgia. If a claim did not resolve at the Phase I interview, the claim proceeded to Phase II non-binding mediation. Clients were free to accept or reject any settlement at Phase II mediations. The vast majority of claims settled as a result of Phase II mediations. These mediations occurred all over the country, with the vast majority taking place in Colorado and Georgia. Several claims proceeded to Phase III binding arbitration. Every claimant who elected to proceed to arbitration lost.

22.     The majority of fact and expert witnesses who will be called to testify in defense of this case are residents of the state of New York, including but not limited to,

all of the Attorney Defendants, the lawyers for Nextel who negotiated the DRSA with LM&B, and Professor Roy Simon, among others.

23.    At no time did I nor any other attorney at LM&B negotiate any of the terms of the DRSA in New Jersey. All negotiations occurred in New York.

DATED this _____ day of December, 2006.

Further Declarant sayeth not.

Jeffrey Brown, Esq.

STATE OF NEW YORK          )
                           ) ss.
COUNTY OF  NASSAU          )

Subscribed and sworn to before me by Jeffrey Brown, this 28th day of December, 2006.

Witness my hand and official seal.

My commission expires: 2/7/09  .

Notary Public

MATTHEW PORGES
NOTARY PUBLIC-STATE OF NEW YORK
No.02PO6122426
Qualified in Kings County
Commission Expires February 07, 2009

j