# EXHIBIT "D"

RIVKIN RADLER LLP
JOHN J. ROBERTELLI, ESQ.
COURT PLAZA SOUTH-WEST WING
21 MAIN STREET
HACKENSACK, NEW JERSEY 07601
(201) 287-2460

McCONNELL SIDERIUS FLEISCHNER
HOUGHTALING & CRAIGMILE, LLC
TRACI L. VAN PELT, ESQ.
MICHAEL T. McCONNELL, ESQ.
ROBERT W. STEINMETZ, ESQ.
4700 S. SYRACUSE STREET, SUITE 200
DENVER, COLORADO 80237
(303) 480-0400
Attorneys for defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Esq.
Steven A. Morelli, Esq., and Jeffrey K. Brown, Esq.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

-----------------------------------------------------------------

| | |
|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI, PATRICIA LONG-CORREA, ANTONIO SAMUEL, VINCENT HALL, ANGELETTE WATERS, Individually, and on behalf of the Class, | ) ) ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 06-5547 (DMC) (MF) ) |
| -against- | ) ) |
| NEXTEL COMMUNICATIONS, INC., a Delaware Corporation; LEEDS, MORELLI & BROWN, P.C.; LENARD LEEDS, STEVEN A. MORELLI; JEFFREY K. BROWN; JAMES VAGNINI; FREDERIC DAVID OSTROVE; BRYAN MAZOLLA; SUSAN FITZGERALD; AND JOHN AND JANE DOES 1-10, (a fictitious designation for presently unknown Defendants), | ) **Document Electronically Filed** ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

-----------------------------------------------------------------

## REPLY BRIEF IN SUPPORT OF LEEDS, MORELLI & BROWN, P.C., LENARD LEEDS, STEVEN MORELLI AND JEFFREY BROWN'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   UNDISPUTED FACTS ........................................................................ 4

III.  LEGAL ARGUMENT .......................................................................... 8

IV.   CONCLUSION ................................................................................... 10

i

## TABLE OF AUTHORITIES

### <u>Cases</u>

Bilotti v. Accurate Forming Corp., 39 N.J. 184 (1963).........................................................4

Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 284 (3rd Cir. 1991).......2

In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3rd Cir. 1999) .............2

Kearney v. National Grain Yeast Corp., 126 N.J.L. 307, 19 A.2d 19, 21 (Ct.Err. & App. 1941) ...................................................................................................................................9

Muti v. Schmidt, 96 Fed. App'x 69, 74 n.2 (3d Cir. 2004) .................................................9

Peter W. Kero, Inc. v. Terminal Construction Corp., 6 N.J. 361, 368 (1951)................4, 9

Puder v. Buechel, 183 N.J. 428, 443 (2005). .......................................................................9

Raroha v. Earle Fin. Corp., Inc., 47 N.J. 229, 234 (1966) ............................................. 4, 9

Van Houten Serv. Inc., v. Shell Oil Co, 417 F. Supp. 523, 527 (D. N. J. 1975) ...............9

Wirth v. Telcordia Tech. Inc., No. 03-1929, 2006 U.S. Dist. LEXIS 1150, at *27 & fn. 12 (D.N.J. Jan. 11, 2006) ........................................................................................................4

Wojcik v. Pollock, 97 N.J.Super. 319, 324, 235 A.2d 58 (L.Div.1967)............................9

### <u>Other Authorities</u>

FEDERAL PRACTICE & PROCEDURE § 1363, at 464-25 (2d ed. 1995) .................................9

### <u>Rules</u>

FED. R. CIV. P. 12(b)(6) .......................................................................................... 1, 2, 8

# I.    **INTRODUCTION**

Plaintiffs are 6 of 587 clients represented by Defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven Morelli, and Jeffrey Brown (collectively referred to as "LM&B"), in an alternative dispute resolution process to resolve employment claims against Nextel Communications, Inc. ("Nextel"). Plaintiffs voluntarily entered into an alternative dispute resolution process that arose out of an agreement negotiated at arms' length between LM&B and Nextel's attorneys. This agreement, the Dispute Resolution and Settlement Agreement ("DRSA"), is at the center of each and every one of Plaintiffs' claims.

Each of Plaintiffs' 10 causes of action is premised upon the core allegation that Plaintiffs settled their underlying claims against Nextel without having reviewed the DRSA and knowing of its existence. All of their claims are based upon the allegation that LM&B failed to disclose the fee and consultancy arrangements and that Plaintiffs never reviewed the DRSA before agreeing to the alternative dispute resolution process. That core premise is demonstrably false.

Based upon the falsity of Plaintiffs' core allegations, LM&B moved for dismissal pursuant to FED. R. CIV. P. 12(b)(6), on the grounds that each Plaintiff (as well as each of the other 587 clients) executed an Individual Agreement: (1) acknowledging he or she had read the DRSA; (2) acknowledging he or she had the opportunity to review its terms with an independent lawyer; (3) acknowledging he or she could consult with counsel of their choosing; (4) acknowledging he or she had read and was aware of specific provisions contained in paragraphs **2(b) and 8 of the DRSA**; (5) acknowledging he or

1

she had read and was aware of **paragraph 11 of the DRSA**, wherein Nextel agreed to pay LM&B's attorneys fees; (6) acknowledging he or she had read and was aware of **paragraph 12 of the DRSA**, wherein LM&B would consult with Nextel at the conclusion of the alternative dispute resolution process; and (7) acknowledging and expressly consenting to the fee and consultancy provisions. (*See*, Nextel Exhibits 2-7)

In response to the Motion to Dismiss, Plaintiffs have submitted a 40-page brief and hundreds of pages of exhibits, including declarations from the individual Plaintiffs. LM&B will not even attempt to respond to the pages of extraneous information and materials submitted by Plaintiffs. The purpose of a motion pursuant to Rule 12 is to test the formal sufficiency of the Complaint. Plaintiffs tacitly admit they cannot establish their claims without attaching voluminous extraneous material.[1]

LM&B's point is simple: the allegations in the Amended Complaint are directly contradicted by the written contracts each Plaintiff executed. Each Plaintiff acknowledged – in writing – that he or she reviewed the entire DRSA and knew its contents (including the fee and consultancy provisions). Such an acknowledgment eviscerates the Plaintiffs' claims and entitles LM&B to dismissal.

---

[1] On a motion to dismiss for failure to state a claim brought pursuant to FED. R. CIV. P. 12(b)(6), "a court can consider a 'document integral to or explicitly relied upon in the complaint.'" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3rd Cir. 1999). Therefore, the documents referenced by LMB Defendants in their Motion to Dismiss, and those attached to the Nextel Defendants' Motion to Dismiss, are properly considered by the Court pursuant to Rule 12. On the other hand, the declarations, pleadings from Colorado, newspaper articles, and New Jersey grievance orders (among other extraneous materials) attached to Plaintiffs' Response are beyond the scope of documents that can be considered part of the Amended Complaint. The declarations (and things such as the Colorado attorney's expert report) should be excluded and not considered by this Court pursuant to the Rule 12(b)(6) relief sought by Defendants. *See* FED. R. CIV. P. 12(b)(6); *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 284 (3rd Cir. 1991).

2

The first twenty pages of Plaintiffs' response contain immaterial "factual argument" and unsupported extraneous commentary. As best as can be deciphered, Plaintiffs' response essentially boils down to this: despite the express language of the Individual Agreements, what they meant when they signed the agreements is that they had reviewed some document *other* than the DRSA, a document entitled "Highlights of Settlement Agreement with Nextel" (referred to hereafter as "the Highlights"). In support of this contention, Plaintiffs submitted the Highlights as Exhibit F to the Declaration of their attorney, Kenneth S. Thyne (referred to hereafter as "KST, Ex. F").

Plaintiffs' argument should be rejected. Plaintiffs' position taken in the Response (and in their improperly submitted declarations) is **directly** contradicted by a comparison of the express language of the Individual Agreements and the express language of the Highlights. Indisputably, the Individual Agreement refers to a document different than the Highlights; it refers to the DRSA by name and refers to specific paragraphs that either do not exist in the Highlights or are at odds with the specific paragraphs of the Highlights. In other words, no person reading the Individual Agreement would believe the Highlights is the document to which the Individual Agreement refers; the two documents are irreconcilable in that regard. Thus, each Plaintiff acknowledged reading and assenting to the terms of the **DRSA** – a document which cannot reasonably have been mistaken for the Highlights. A detailed comparison of these various documents follows, irrefutably demonstrating that Plaintiffs read and consented to the fee and consultancy provisions of the DRSA. (See, Nextel Ex. 2-7, ¶1; Nextel Ex. 1)

Plaintiffs' claims are directly contradicted by the Individual Agreements. Under New Jersey law, LM&B is therefore entitled to dismissal. *Wirth v. Telcordia Tech. Inc.,*

No. 03-1929, 2006 U.S. Dist. LEXIS 1150, at *27 & fn. 12 (D.N.J. Jan. 11, 2006);

*Raroha v. Earle Fin. Corp., Inc.*, 47 N.J. 229, 234 (1966); *Bilotti v. Accurate Forming*

*Corp.*, 39 N.J. 184 (1963); *Peter W. Kero, Inc., v. Terminal Constr. Corp.*, 6 N.J. 361,

368 (1951).

## II.    UNDISPUTED FACTS

Plaintiffs each executed Individual Agreements.    (Nextel Ex. 2-7)    Those

agreements state:

1.    I have reviewed **the Dispute Resolution and Settlement Agreement**; had the opportunity to discuss that Agreement with LM&B or any other counsel of my choosing; and agree to comply full with the terms of that Agreement. . . . I may consult with other counsel of my choosing with respect to the Dispute Resolution and Settlement Agreement. . .

2.    I acknowledge and understand that, **under subparagraph 2b of the Dispute Resolution and Settlement Agreement**, I will not seek to participate as a class representative or a member of any purported class action that may be filed against the Companies or the Released Parties, as defined in **paragraph 8 of the Dispute Resolution and Settlement Agreement**. . .

3.    I acknowledge and understand that, **under paragraph 11 of the Dispute Resolution and Settlement Agreement**, Nextel has agreed to pay an amount of money to LM&B for the attorneys' fees and expenses, other than expert fees, that Claimants might otherwise pay to LM&B and for which Claimants might otherwise reimburse LM&B for its representation of all Claimants through the Dispute Resolution Process and for LM&B's services rendered in representing all Claimants through the expedited Dispute Resolution Process. . . .I hereby knowingly and voluntarily consent to this payment arrangement.

4.    I acknowledge and understand that, **under paragraph 12 of the Dispute Resolution and Settlement Agreement**, after the processing and resolution of my claims and all other Claimants' claims against the Companies, LM&B will be hired by Nextel to serve as a consultant to the Companies for a two-year period, to provide such assistance and legal advice to the Companies as they may request regarding their anti-discrimination and diversity policies and programs ("the Consultancy").    I further acknowledge and understand that such Consultancy presents a conflict of interest for LM&B, and hereby knowingly and voluntarily waive any objection to such conflict.

(Nextel Exs. 2-7, ¶¶ 1-4, emphasis added.)

In response to the Motion to Dismiss, Plaintiffs now contend that the "agreement" they acknowledged reading, reviewing, approving and entering was not the DRSA as expressly referred to the Individual Agreements, but rather, was the "Highlights." (*See,* e.g., Resp. at pp. 5, et seq.; KST, Ex. F)

As emphasized above, the Individual Agreements refer to specific paragraphs of the DRSA. For Plaintiffs to now contend they believed the Highlights was the "agreement" referred to in the Individual Agreement is directly contradicted by the express language of the Individual Agreement itself. The following comparisons – based on the documents Plaintiffs submitted in response to this Rule 12 Motion – entitle LM&B to dismissal:

**Comparison #1**:

- Paragraph 1 of the Individual Agreement expressly refers to "the Dispute Resolution and Settlement Agreement." (Nextel Ex. 2-7, ¶ 1)

- The Highlights is entitled "Highlights of Settlement Agreement with Nextel." (KST Ex. F)

**Comparison #2**:

- The Individual Agreements expressly refer to subparagraph 2b of the Dispute Resolution and Settlement Agreement and confirms that under that specific subparagraph, the Plaintiffs will not participate in any class actions against Nextel. (Nextel Ex. 2-7, ¶2)

- The Highlights does not contain a subparagraph 2b. (Paragraph 2 of the Highlights references the agreement that the Plaintiffs will not participate in any class actions against Nextel.) (KST Ex. F)

**Comparison #3**:

- The Individual Agreements expressly refer to paragraph 8 of the Dispute Resolution and Settlement Agreement and confirm that under that specific paragraph (paragraph 8), the terms "Companies and Released Parties" are

defined in the Dispute Resolution and Settlement Agreement. (Nextel Ex. 2-7, ¶ 2)

- Paragraph 8 of the Highlights states, "Nextel may within 2 weeks of receiving a Claimant Statement notify LM&B in writing that it considers such Claimant Statement to contain insufficient detail." (KST, Ex. F)

- Paragraph 8 of the DRSA describes and defines the terms "Companies," and "Parties Released," as they will be used in the General Releases to be executed by each claimant who settles his or her claim during the alternative dispute resolution process. (Nextel Ex. 1, ¶ 8)

**Comparison #4**:

- The Individual Agreements expressly refer to paragraph 11 of the Dispute Resolution and Settlement Agreement and confirm that under that specific paragraph (paragraph 11), Nextel has "agreed to pay LM&B an amount of money to LM&B for attorneys' fees and expenses, other than expert fees, that Claimants might otherwise pay to LM&B." (Nextel Ex. 2-7, ¶3)

- Paragraph 11 of the Highlights describes the effective dates of the DRSA. (KST, Ex. F)

- Paragraph 11 of the DRSA describes – in detail – that Nextel will pay LM&B $5.5 million "to cover attorneys fees and expenses, other than expert fees, that Claimants might otherwise pay to LM&B for its representation of them through the DRP process. . .". (Nextel Ex. 1, ¶ 11)

**Comparison #5**:

- The Individual Agreements expressly refer to paragraph 12 of the Dispute Resolution and Settlement Agreement and confirm that after the processing of all claims through the dispute resolution process, LM&B will be hired by Nextel for a two-year period to consult on employment matters. (Nextel Ex. 2-7, ¶4)

- Paragraph 12 of the Highlights relates to the initial discovery and disclosure obligations imposed on Nextel. (KST, Ex. F)

- Paragraph 12 of the DRSA refers to the Consultancy provision and expressly states that LM&B will be hired by Nextel at the conclusion of the process to provide advice on employment matters. (Nextel Ex. 1, ¶ 12)

(*Cf.*, Nextel Ex. 1, with Nextel Ex. 2-7, with KST Ex. F)

LM&B submit that there is no reading of the "Highlights" along with the Individual Agreements that supports Plaintiffs' contention that they did not read and review the actual DRSA before executing the Individual Agreements. It is simply not possible to reconcile the statements in the Individual Agreements – wherein Plaintiffs represented they read, understood and consented to the terms of the DRSA – with the statements made in the "Highlights." The representations in the Individual Agreements only coincide with the express provisions of the DRSA. Thus, the Individual Agreements indisputably establish that Plaintiffs read, reviewed, approved, and authorized the execution of the DRSA after being fully informed of all of its provisions, including the fee and consultancy terms. Plaintiffs' own submission in response to the Motion to Dismiss support LM&B's position.

Each of the six named Plaintiffs settled their claims against Nextel and each of them executed a general release. (Nextel Exhibits 8-13). The General Release(s) provides, in pertinent part:

> In consideration of the (a) Dispute Resolution and Settlement Agreement . . . and (b) the award made to [plaintiff] . . . [plaintiff] irrevocably and unconditionally releases and forever discharges [Nextel] from any and all claims, liabilities, losses, agreements, rights, causes of action and expenses of any nature whatsoever, by reason of any matter, action, omission, course or thing whatsoever, whether known or unknown, occurring up to the date of the execution of this General Release by [plaintiff] which he/she may now have or at any time hereafter have against [Nextel]. This includes, but is not limited to, any claims or rights he/she may have under any federal, state or local lows or regulations . . . [or] any claim or right he/she may have based upon contract, covenant, public policy or tort or otherwise."
>
> . . . [¶] . . .
>
> [Plaintiff] has not been forced or pressured in any manner whatsoever to sign this General Release and [Plaintiff] agrees to all of its terms voluntarily.    [Plaintiff] represents and acknowledges that  no

7

representation, statement, promise, inducement, threat or suggestion has been made by [Nextel] **or by any other individual** to influence [Plaintiff] to sign this Release except such statements as are expressly set forth herein.

(Nextel Exs. 8-13 at ¶¶ 1, 3, emphasis added.)

Based upon the undisputed facts set forth above, LM&B are entitled to dismissal of Plaintiffs' claims, with prejudice.

## III.    LEGAL ARGUMENT

The issue raised by LM&B's Motion to Dismiss (and Nextel's) is simple: if Plaintiffs read, reviewed, and consented to the DRSA, as they represented in the Individual Agreements they each signed, then all of their claims fail. There was no bribe. There was no "secret" payment. There was no improper or unethical conduct. Despite Plaintiffs' convoluted and voluminous response to LM&B's Motion to Dismiss, Plaintiffs have simply failed to state a claim upon which relief can be granted.

All of Plaintiffs' claims against LM&B are predicated on the allegation that LM&B failed to disclose, and kept secret from Plaintiffs, the attorneys' fee and consultancy provisions of the DRSA. Plaintiffs' claims must fail, as a matter of law, because each of them executed documents (the Individual Agreements and Pledges of Good Faith) which indisputably establish these allegations are false. Moreover, Plaintiffs cannot voluntarily enter into a settlement of their claims and then pursue a legal malpractice case against their attorneys. LM&B's motion should be granted.

This Court is well aware of the standards applicable to a motion under FED. R. CIV. P. 12(b)(6) and they will not be repeated here. This Court need not accept conclusory allegations set forth in the First Amended Complaint, particularly when those

8

allegations are contradicted by documents expressly relied upon by Plaintiffs. *Muti v. Schmidt*, 96 Fed. App'x 69, 74 n.2 (3d Cir. 2004), citing 5A Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1363, at 464-25 (2d ed. 1995). No amount of "artful pleading" can get around a lie.

Under long-standing principles of New Jersey law, Plaintiffs' claims fail – all of them – if they read the DRSA and knew its terms when they consented to LM&B's representation. As this Court stated in *Van Houten Serv. Inc., v. Shell Oil Co,* 417 F. Supp. 523, 527 (D. N. J. 1975), aff'd without op. 546 F.2d 421 (3d Cir. 1976):

> It is the general rule in this state that where a party affixes his signature to a written instrument, such as a release, a conclusive presumption arises that he or she read, understood and assented to its terms and will not be heard to complain that the effect of the act of signing was not comprehended. *Peter W. Kero, Inc. v. Terminal Construction Corp.*, 6 N.J. 361, 368 (1951); *Kearney v. National Grain Yeast Corp.*, 126 N.J.L. 307, 19 A.2d 19, 21 (Ct.Err. & App. 1941). There is an exception, however, where there is a showing of fraud, misrepresentation or over-reaching by the releasee, or a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release or on any other equitable ground. *Raroha v. Earle Finance Corp., Inc.*, 47 N.J. 229, 234 (1966); *Wojcik v. Pollock*, 97 N.J.Super. 319, 324, 235 A.2d 58 (L.Div.1967).

*Id.*

Here, the foundational premise of all of Plaintiffs' claims is demonstrably false. Under the authority cited in LM&B's Brief, and the authority incorporated by reference in Nextel's Brief, LM&B is entitled to dismissal.

Moreover, as posited in LM&B's Brief, a litigant may not "settle a case for less than it is [subsequently perceived to be] worth and then seek to recoup the difference in a malpractice action against the attorney." *Puder v. Buechel*, 183 N.J. 428, 443 (2005). This case is the perfect example of that principle in action: to hold otherwise, would open

the door to malpractice suits by every former client who later believes he or she should have obtained more, regardless of their voluntary and knowing settlement. *Id.*

## IV.    CONCLUSION

LM&B's Motion to Dismiss should be granted. Plaintiffs' own submissions in response establish that the factual basis for all of their claims is a lie. For the foregoing reasons, Defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven Morelli, and Jeffrey Brown respectfully request that the Court grant their Motion and dismiss all claims against them.

Dated this 16th day of February 2007.


RIVKIN RADLER LLP
Court Plaza South -West Wing
21 Main Street
Hackensack, NJ 07601


*Attorneys for Defendants*
*Leeds, Morelli & Brown, P.C.,*
*Lenard Leeds, Steven Morelli and*
*Jeffrey Brown*


By:    /s/
        John J. Robertelli


MCCONNELL SIDERIUS FLEISCHNER
HOUGHTALING & CRAIGMILE, LLC
Denver Corporate Center, Tower I
4700 S. Syracuse St., Ste. 200
Denver, CO 80237


*Attorneys for Defendants*
*Leeds, Morelli & Brown, P.C.,*
*Lenard Leeds, Steven Morelli and*
*Jeffrey Brown*


By:    /s/
        Traci L. Van Pelt

# EXHIBIT "E"

## PLEDGE OF GOOD FAITH

I, _Vincent A. Hall_ , understand that I am obligated to act in good faith during each phase of the Dispute Resolution Process and hereby agree to so cooperate. I clearly understand that the Dispute Resolution and Settlement Agreement contains strict deadlines and time requirements, and that I must make myself readily available in order to cooperate in good faith.

Furthermore, I recognize that the terms of the Agreement with Nextel, as well as, what takes place during the Dispute Resolution Process, must be kept confidential. I know that my promise to keep the Agreement and the Dispute Resolution Process confidential is an important part of why Nextel is entering into this Agreement. For these reasons, I understand that it is in the interest of the entire group to limit the number of copies of the Agreement which are in circulation. Therefore, I agree to selecting two (2) representatives in my area to maintain a copy of the Agreement. Upon request to either of the area representatives, claimants will be allowed to review the Agreement.

Finally, I promise to advise my attorneys at all times of my whereabouts, including, but not limited to, changes in my address or telephone number, any vacations, and work related trips.

Dated: _10/10/00_

Signed: _____

Print Name: _Vincent Hall_

## PLEDGE OF GOOD FAITH

I, _DONNA Dymkowski_____, understand that I am obligated to act in good faith during each phase of the Dispute Resolution Process and hereby agree to so cooperate. I clearly understand that the Dispute Resolution and Settlement Agreement contains strict deadlines and time requirements, and that I must make myself readily available in order to cooperate in good faith.

Furthermore, I recognize that the terms of the Agreement with Nextel, as well as, what takes place during the Dispute Resolution Process, must be kept confidential. I know that my promise to keep the Agreement and the Dispute Resolution Process confidential is an important part of why Nextel is entering into this Agreement. For these reasons, I understand that it is in the interest of the entire group to limit the number of copies of the Agreement which are in circulation. Therefore, I agree to selecting two (2) representatives in my area to maintain a copy of the Agreement. Upon request to either of the area representatives, claimants will be allowed to review the Agreement.

Finally, I promise to advise my attorneys at all times of my whereabouts, including, but not limited to, changes in my address or telephone number, any vacations, and work related trips.


Dated: _10/12/00_____

Signed: _[signature]_____

Print Name: _DONNA Dymkowski_

## PLEDGE OF GOOD FAITH

I, _Patricia Long_____, understand that I am obligated to act in good faith during each phase of the Dispute Resolution Process and hereby agree to so cooperate. I clearly understand that the Dispute Resolution and Settlement Agreement contains strict deadlines and time requirements, and that I must make myself readily available in order to cooperate in good faith.

Furthermore, I recognize that the terms of the Agreement with Nextel, as well as, what takes place during the Dispute Resolution Process, must be kept confidential. I know that my promise to keep the Agreement and the Dispute Resolution Process confidential is an important part of why Nextel is entering into this Agreement. For these reasons, I understand that it is in the interest of the entire group to limit the number of copies of the Agreement which are in circulation. Therefore, I agree to selecting two (2) representatives in my area to maintain a copy of the Agreement. Upon request to either of the area representatives, claimants will be allowed to review the Agreement.

Finally, I promise to advise my attorneys at all times of my whereabouts, including, but not limited to, changes in my address or telephone number, any vacations, and work related trips.

Dated: _10/10/2000_____

Signed: _Patricia Long_____

Print Name: _Patricia Long_____

## PLEDGE OF GOOD FAITH

I, _ANTONIO SAMUEL_ understand that I am obligated to act in good faith during each phase of the Dispute Resolution Process and hereby agree to so cooperate. I clearly understand that the Dispute Resolution and Settlement Agreement contains strict deadlines and time requirements, and that I must make myself readily available in order to cooperate in good faith.

Furthermore, I recognize that the terms of the Agreement with Nextel, as well as, what takes place during the Dispute Resolution Process, must be kept confidential. I know that my promise to keep the Agreement and the Dispute Resolution Process confidential is an important part of why Nextel is entering into this Agreement. For these reasons, I understand that it is in the interest of the entire group to limit the number of copies of the Agreement which are in circulation. Therefore, I agree to selecting two (2) representatives in my area to maintain a copy of the Agreement. Upon request to either of the area representatives, claimants will be allowed to review the Agreement.

Finally, I promise to advise my attorneys at all times of my whereabouts, including, but not limited to, changes in my address or telephone number, any vacations, and work related trips.

Dated: _10/10/00_

Signed: _Antonio A. Samuel_

Print Name: _ANTONIO SAMUEL_

## PLEDGE OF GOOD FAITH

I, _Michael S. Johnson_, understand that I am obligated to act in good faith during each phase of the Dispute Resolution Process and hereby agree to so cooperate. I clearly understand that the Dispute Resolution and Settlement Agreement contains strict deadlines and time requirements, and that I must make myself readily available in order to cooperate in good faith.

Furthermore, I recognize that the terms of the Agreement with Nextel, as well as, what takes place during the Dispute Resolution Process, must be kept confidential. I know that my promise to keep the Agreement and the Dispute Resolution Process confidential is an important part of why Nextel is entering into this Agreement. For these reasons, I understand that it is in the interest of the entire group to limit the number of copies of the Agreement which are in circulation. Therefore, I agree to selecting two (2) representatives in my area to maintain a copy of the Agreement. Upon request to either of the area representatives, claimants will be allowed to review the Agreement.

Finally, I promise to advise my attorneys at all times of my whereabouts, including, but not limited to, changes in my address or telephone number, any vacations, and work related trips.


Dated: _10/10/00_

Signed: _Michael S. Johnson_

Print Name: _Michael S. Johnson_

## PLEDGE OF GOOD FAITH

I, _Aagelette M. Waters_ understand that I am obligated to act in good faith during each phase of the Dispute Resolution Process and hereby agree to so cooperate. I clearly understand that the Dispute Resolution and Settlement Agreement contains strict deadlines and time requirements, and that I must make myself readily available in order to cooperate in good faith.

Furthermore, I recognize that the terms of the Agreement with Nextel, as well as, what takes place during the Dispute Resolution Process, must be kept confidential. I know that my promise to keep the Agreement and the Dispute Resolution Process confidential is an important part of why Nextel is entering into this Agreement. For these reasons, I understand that it is in the interest of the entire group to limit the number of copies of the Agreement which are in circulation. Therefore, I agree to selecting two (2) representatives in my area to maintain a copy of the Agreement. Upon request to either of the area representatives, claimants will be allowed to review the Agreement.

Finally, I promise to advise my attorneys at all times of my whereabouts, including, but not limited to, changes in my address or telephone number, any vacations, and work related trips.

Dated: _10/10/00_

Signed: _Angelette S. Wat_

Print Name: _Aagelette M. Waters_

# EXHIBIT "F"

## HIGHLIGHTS OF SETTLEMENT AGREEMENT WITH NEXTEL

### Involvement in Certain Other Proceedings

1.  Promptly upon the execution by counsel and Nextel of this Agreement, Claimants and Leeds, Morelli & Brown (hereinafter LM&B) will take all steps necessary so that all Lawsuits and Agency complaints will be withdrawn, other than any worker's compensation claims that have been filed prior to the date of the Agreement is executed.

2.  Claimant will not seek to participate as a class representative or member of any individual or purported class action that may be filed against Nextel or the Released parties, based on events up to and including the date that the Dispute Resolution and Settlement Agreement was executed and that claimant will opt-out of any such class.

### Confidentiality

3.  Claimants understand and agree that (i) the terms of this Agreement, (ii) any matters related to any claim alleged by any claimant, (iii) any statements made by any Party or non-party witness during the Dispute Resolution Process ("DRP") and (iv) the terms of any resolution reached between the Parties hereunder including pursuant to DRP are confidential, however you can disclose such information to a financial advisor/personal attorney or a mediator/arbitrator.

4.  This confidentiality provision does not preclude disclosure of Confidential information to : (a) a mediator or an arbitrator pursuant to DRP; or (b) a claimant's personal attorney of financial advisor, or expert retained by a claimant or by LM&B to represent one or more of the claimants in DRP, so long as the claimant instructs such person not to disclose any Confidential information to any other person and such person executes a Non-Disclosure Agreement in the form annexed hereto as Exhibit D.

5.  If a Claimant, any expert retained by a Claimant or a Claimant's personal attorney or financial advisor breaches this confidentiality provision after such Claimant received relief in this process, such Claimant will be required to return the full amount of monies paid and the value of any benefits received, but nevertheless will still be bound by all the terms of this Agreement.

### Approval of Withdrawals/Dismissals

6.  As promptly as possible and, in any event, no later than 2 weeks after the date this Agreement has been fully executed by the Parties through their respective counsel, LM&B will deliver to Nextel copies of withdrawal notices for all pending actions filed in court and administrative agencies (i.e, EEOC complaints).

## Individual Agreements and Discovery

7.  As promptly as possible and, in any event, no later that 10 weeks after the date that the relevant government and/or administrative bodies have issued written approval of withdrawal for all agency complaints and lawsuits, LM&B will provide Nextel with an Individual Agreement in the form of Exhibit A, executed by each Claimant and notarized, along with a separate written demand for each Claimant ("the claimant statement") in the form of Exhibit B setting forth in detail Claimant's claim of discrimination against Nextel.

8.  Nextel may within 2 weeks of receiving a Claimant Statement notify LM&B in writing that it considers such Claimant Statement to contain insufficient detail.

9.  As promptly as possible and, in any event, no later than 2 weeks after notification that a Claimant Statement is deficient, LM&B shall provide Nextel with an amended Claimant Statement for such Claimant.

10. Failure to timely provide Nextel with a Claimant Statement or amended Claimant Statement in substantial compliance shall serve as a sufficient basis to reduce or bar a Claimant's recovery except in the event of extraordinary circumstances beyond the control of Claimant and/or LM&B, but such Claimant nevertheless will remain bound by all of the terms of this Agreement.

11. The effective date of this Agreement is when all of the following occur:

    A.  This Agreement is executed by LM&B and counsel for Nextel;

    B.  All pending lawsuits and agency complaints are withdrawn; and

    C.  Nextel receives signed and notarized Individual Agreements (Exh. A) and Claimant Statements for each Claimant (Exh. B).

12. Over the course of a period of 15 weeks commencing with the Effective Date of this Agreement Nextel must provide each claimant with all of the following:

    A.  Claimant's personnel file

    B.  Any prior written complaint of Discrimination made by the Claimant against any person identified as having discriminated against Claimant in Claimant's Statement, of which Nextel has a record.

    C.  Relevant pay or benefits information for appropriate comparator(s) identified in such Claimant's Claimant Statement.

13. Claimant is entitled to review his/her personnel file, but not receive a copy. However, LM&B will arrange for a mutually convenient time for Claimant to personally review his/her file at a location that is convenient to Claimant.

14. As promptly as possible and, in any event no later than 2 weeks after the date that Nextel provides LM&B with the Discovery, LM&B will present in writing, for that Claimant, a demand for resolution of his/her claims, including any monetary and/or non- monetary relief sought.

## Dispute Resolution Process

15. Each claimant agrees to be bound by the result of DRP and not to pursue any other relief in any other forum for any claim that he/she has or may have against Nextel and its subsidiaries, and waives all rights to pursue any other such relief in any other forum.

16. The DRP will consist of three phases: (i) interview and direct negotiation, (ii) non-binding mediation of any unresolved claims, and (iii) binding arbitration of any unresolved claims.

17. Instead of participating in the DRP, any claimant may elect to receive $500 upon furnishing Nextel with a Claimant Statement and an executed and notarized General Release.

18. In consideration for having all of your out of pocket expenses (excluding expert fees) and attorneys fees paid for by Nextel and participating in a "fast track" DRP, each claimant waives entitlement to punitive damages and non-monetary relief in the Binding Arbitration Phase of DRP. However, if a binding arbitrator finds that you should be awarded non-monetary relief, you may receive an additional award of one year full salary on top of any monetary relief awarded.

19. Nextel agrees to bear the administrative fees incurred during non-binding mediation and/or arbitration.

20. If Nextel wishes to skip non-binding mediation with a claimant, and such claimant nevertheless elects to proceed with non-binding mediation and the parties are unable to resolve claimant's claims and the arbitrator awards such claimant less than the amount of Nextel's settlement offer, claimant will be obligated to pay Nextel (i) twice the administrative fees incurred during Non-binding mediation and (ii) the mediator's fees and expenses.

### Claimant's Good Faith

21.  Each claimant is obligated to cooperate in good faith during each phase of DRP including, but not limited to, (i) making oneself readily available to Leeds, Morelli & Brown, (ii) promptly responding to Leeds, Morelli & Brown's requests for information and (iii) adhering to the strict deadlines set forth in the Agreement.

22.  If a claimant fails to appear for his/her scheduled Interview and Direct Negotiation, Non-Binding Mediation or Binding Arbitration, and such claimant's failure to appear is not the result of extraordinary circumstances beyond the control of such claimant, such Claimant's failure to appear shall bar that Claimant's recovery.

23.  If the arbitrator determines that a claimant failed to cooperate in good faith during any phase of DRP, such determination may serve as a basis for the arbitrator to reduce any award or bar such Claimant's claims.

### Interview and Direct Negotiation

24.  Each such interview shall be conducted within 6 weeks of LM&B providing Nextel with a written demand for resolution of that Claimants' claims.

25.  If a Claimant is a current employee of Nextel and that claimant's interview is scheduled during his/her normal working hours, Nextel will permit Claimant to take time off for the period of the interview itself ( and travel to and from such interview if it is not conducted at the place of such Claimant's employment) without any reduction in pay.

26.  During the interview, the parties will negotiate directly in an attempt to resolve all claims presented by the claimant. Claimants will cooperate in their respective interviews and assuming such cooperation, each such interview will not exceed two hours, absent extraordinary circumstances. Hopefully, most of the cases should settle at this point.

### Non-binding Mediation

27.  Claimant's claims will proceed to non-binding mediation no sooner than 4 weeks and no later than 9 weeks after completion of the claimant's interview.

28.  At this stage, you will be prepared by LM&B and have the opportunity to discuss the merits of your case with a non-binding neutral third-party. After the non-binding neutral third-party hears the merits of your case and Nextel's defenses, the non-binding arbitrator will make a recommendation on how much money Nextel should pay you to settle your case.

## Binding Arbitration

29.    If the parties cannot reach a resolution after non-binding mediation, Claimant's claims will proceed to binding arbitration no sooner than 8 weeks and no later than 12 weeks after the conclusion of non-binding mediation of such Claimant's claims.

30.    All claims submitted to Binding Arbitration shall be decided by the arbitrator in accordance with the Federal, State and Local regulations applicable to each claim, including statute of limitations. Every claimant is guaranteed the right to have their claim go to binding arbitration, which is similar to a trial without a jury. At this stage witnesses will be called and testimony will be taken. Every Claimant will be well prepared in the event he/she decides to proceed to binding arbitration.

31.    As a prerequisite for receiving any award, agreed upon or arbitrated, a Claimant shall execute and have notarized a general release.

32.    Nextel is paying each Claimant's attorneys' fees, costs, and expenses ( other than expert witness fees) in consideration for each Claimant participating in the DRP and honoring all of the conditions. This number covers all of LM&B's legal fees, costs, and expenses for representing approximately Six Hundred (600) Nextel claimants throughout the United States.

## Consultancy Agreement

33.    After the processing and resolution of all of the claims in the DRP, LM&B will be hired by Nextel to serve as a consultant to its companies for a two (2) year period, to provide assistance and legal advice to the companies as they may request regarding their anti-discrimination and diversity policies and programs (the "consultancy"). Claimant further acknowledges and understands that such consultancy presents a conflict of interest for LM&B, and Claimant hereby knowingly and voluntarily waive any objection to such conflict.

34.    LM&B expects all Claimants to keep them updated with respect to any acts of discrimination that may occur when LM&B is a consultant to Nextel. LM&B hopes that through your participation and feedback we can inform Nextel immediately of any illegal acts of discrimination that take place.

## Neutral Letter of Reference

35.    All Claimants understand and agree that, if requested to provide a reference for any Claimant, Nextel will only confirm dates of employment, last position held and salary at the time of departure from such company or, if the Claimant is a current employee, his/her position and salary at the time the letter is provided.