**EXHIBIT "G"**

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI, PATRICIA LONG-CORREA, ANTONIO SAMUEL, VINCENT HALL, ANGELETTE WATERS, Individually, and on behalf of the Class,<br><br>        Plaintiffs,<br><br>        v.<br><br>NEXTEL COMMUNICATIONS, INC., a Delaware Corportation; LEEDS, MORELLI & BROWN, P.C.; LENARD LEEDS, STEVEN A. MORELLI; JEFFREY K. BROWN; JAMES VAGNINI; FREDERIC DAVID OSTROVE; BRYAN MAZOLLA; SUSAN FITZGERALD; AND JOHN AND JANE DOES 1-10, (a fictitious designation for presently unknown Defendants),<br><br>        Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 06-CV-5547  (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court on motion by Defendants Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven A. Morelli and Jeffrey K. Brown (collectively referred to as "LM&B") to transfer venue in this case from the United States District Court for the District of New Jersey ("District of New Jersey") to the United States District Court for the Southern District of New York ("S.D.N.Y.") and upon cross-motion to transfer venue by Defendants Bryan Mazzolla and Susan Fitzgerald.  Defendant Nextel Communications, Inc. ("Nextel") moves to dismiss Plaintiffs' First

Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6). Defendants Bryan Mazzola and Susan

Fitzgerald cross-move to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6).

Defendants LM&B move to dismiss Plaintiffs' First Amended Complaint pursuant to FED. R. CIV.

P. 12(b)(6).  Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was

heard. For the following reasons, Defendants' motion to transfer the case to the S.D.N.Y. is **granted**.

## I.    BACKGROUND

LM&B jointly move to transfer venue pursuant to 28 U.S.C. § 1404(a) from the District

of New Jersey to the S.D.N.Y.

This is a putative class action. Leeds, Morellli & Brown, P.C. is a New York law firm.

Messrs. Leeds, Morelli and Brown are New York lawyers who also reside in New York.

Plaintiffs seek certification of a sub-class of forty-eight out of a group of 587 nationwide LM&B

clients. This case arises from the negotiation and implementation of an alternative dispute

resolution ("ADR") process to resolve 587 Nextel employees' discrimination and employment

claims. LM&B represented the 587 employees in the negotiation and implementation of the ADR

process. In 2002, a class action was filed in Colorado on behalf of the 587 LM&B clients. The

Colorado class action was settled prior to the class certification. The putative sub-class members

claim that they timely requested exclusion from the Colorado class action settlement.

The essence of Plaintiffs' claims against their former lawyers is that, pursuant to an

agreement conceived and negotiated in New York by attorneys admitted to practice in New York,

Nextel bribed the attorneys to compromise Plaintiffs' claims against Nextel on terms favorable to

Nextel ("Nextel Matter"). The foundation of many of the claims asserted against the Attorney

Defendants is that there were secret payments made by Nextel to LM&B and that the entire

-2-

structure of the ADR process entered into in New York was unethical.

The events giving rise to Plaintiffs' claims occurred in New York, including the negotiation of the allegedly unethical ADR agreement, which is the foundation of Plaintiffs' claims. The firm's voluminous files relating to the representation of the six named Plaintiffs, as well as 581 other individuals, are maintained at the firm's New York office. The six named Plaintiffs reside in New Jersey, but they only represent one percent of the total 587 clients. The 587 clients were spread across twenty-three states, but were predominately located in Colorado and Georgia. The one meaningful connection between this lawsuit and New Jersey is the State of residence of the six named Plaintiffs.

This putative class action was originally filed in Superior Court, Passaic County, New Jersey, Docket No. 06-4121. LM&B and Nextel timely filed Notices of Removal pursuant to 28 U.S.C. § 1441. This Court has subject matter jurisdiction based on both 28 U.S.C. § 1332(a) and (d)(2)(A).

## II.    STANDARD OF REVIEW

A civil action where subject matter jurisdiction is founded only on diversity of citizenship may be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a). "A defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).   The Court has broad discretion in deciding whether transfer is warranted and must consider both the public and private interests of the parties. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973).  Although 28 U.S.C. § 1404 expressly includes three factors, the Court may also consider other factors. See SEC v. Page Airways, Inc., 464 F. Supp. 461 (D. D.C. 1978). The public factors to be considered include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora from court congestion; (4) the local interest in deciding controversies; (5) the public policies of the fora; and (6) in diversity cases, the familiarity of the trial judge with the applicable state law. See id. at 879-80. The private factors are: (1) plaintiff's original choice of forum; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records to the extent that the files cannot be produced in the alternative forum. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). Generally, a plaintiff's choice of forum is accorded great weight. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981).  However, deference to the plaintiff's selected forum may be overcome "if the private and public interest factors clearly point toward trial in an alternative forum." Id.

The presumption favoring a plaintiff's choice of forum is not dispositive of the motion. See Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 521 (D. N.J. 1998). Plaintiffs' choice of forum is given less weight when transferring venue would result in only negligible inconvenience to the

plaintiff. See Oudes v. Block, 516 F. Supp. 13, 14 (D. D.C. 1981). Additionally, a plaintiff's choice is afforded less deference when their choice of forum "has little connection with the operative facts of the lawsuit." Tischio, 16 F. Supp. 2d at 521; see also Am. Tel. & Tel. Co. v. MCI Commc'ns Corp., 736 F. Supp. 1294, 1306 (D. N.J. 1990).

28 U.S.C. § 1404 does more than codify the doctrine of forum non conveniens; § 1404 permits transfer upon a lesser showing of inconvenience than is required under common law doctrine and it allows the District Court to exercise broader discretion in transferring the case under the statute than would be permitted under forum non conveniens. See Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F. Supp. 247 (S.D.N.Y. 1974). 28 U.S.C. § 1404 is similar to the common law doctrine of forum non conveniens, but it authorizes transfers within the federal court system with a lesser burden, both substantially and procedurally, than a motion to dismiss. See Reyno v. Piper Aircraft Co., 630 F.2d 149 (3d Cir. 1980), rev'd on other grounds, 454 U.S. 235 (1981). 28 U.S.C. § 1404(a) is intended to enlarge common law power under the doctrine of forum non conveniens; this section allows courts to grant transfers upon a lesser showing of inconvenience than is required at common law. See De Lay & Daniels, Inc. v. Allen M. Campbell Co., General Contractors, Inc., 71 FRD 368 (D. S.C. 1976).

Questions concerning whether a transfer of venue should be granted under 28 U.S.C. § 1404(a) depend upon the particular circumstances of each case. See Sell v. Greyhound Corp., 228 F. Supp. 134 (E.D. Pa. 1964); Mills v. Colgate-Palmolive Co., 232 F. Supp. 577 (S.D.N.Y. 1964). Variables render every motion to transfer unique. See Secs. & Exch. Com. v. Golconda Mining Co., 246 F. Supp. 54 (S.D.N.Y. 1965). Although 28 U.S.C. § 1404(a) mentions only three factors to consider in determining whether to grant or deny a motion to transfer, the Court is not limited to those rather broad generalities, but may consider other factors which are subsumed by purpose of statute. See SEC v. Page Airways, Inc., 464 F. Supp. 461 (D. D.C. 1978).

## III.   ANALYSIS

Plaintiffs argue that their chosen venue is a paramount consideration in this Court's analysis and should, therefore, be upheld. Plaintiffs' position is that the case should still remain in New Jersey, their chosen venue. Plaintiffs argue that the burden rests with Defendants and venue should not be transferred liberally, unless the balance is strongly in favor of Defendants. Plaintiffs insist that even greater deference is offered to Plaintiffs when they are suing in their home state. Plaintiffs argue that Defendants need more than a conclusory statement of inconvenience that Defendants and witnesses reside in New York. Furthermore, Defendants already traveled to New Jersey to do business, so a slightly longer distance to the courthouse does not constitute "inconvenience." Also, many of the files are in Colorado, so it is irrelevant whether the case is heard in New York or New Jersey. Plaintiffs argue that this Court cannot order a transfer of venue if doing so would merely shift the burden of the parties. Plaintiffs' counsel is not admitted in New York. Furthermore, Plaintiffs contend that ninety-nine of the 587 members of the class action live in New Jersey. Accordingly, New Jersey has an interest in this action because Defendants traveled to New Jersey to solicit clients and Defendants represented several clients in New Jersey. According to Plaintiffs, choice of law rules also favor keeping the New Jersey venue. Because the lawsuit was originally filed in New Jersey, New Jersey choice of law rules will continue to apply. If transferred, New York courts would have to apply New Jersey choice of law rules.

Conversely, Defendants argue that venue should be transferred to the S.D.N.Y. The case was originally filed in state court, so Plaintiffs did not actually select this Court. Defendants dispute Plaintiffs' assertion that ninety-nine of the 587 class members live in New Jersey. Instead, Defendants allege that only six of the 587 class members, or about one percent of the original Plaintiffs live in New Jersey. Defendants also argue that venue is improper in New Jersey, requiring this Court to transfer venue to the S.D.N.Y. The claim arises out of an agreement negotiated in New York. Furthermore, the Dispute Resolution and Settlement

Agreement ("DRSA") is at the heart of this case and it was executed in New York. Defendants insist that a legal malpractice case against New York attorneys should be tried in New York and this Court has broad discretion to transfer the venue accordingly. The S.D.N.Y. is an adequate alternative forum.

### 1.    **Private Factors**

The first private factor to consider is Plaintiff's choice of forum. Defendants argue that Plaintiffs first filed this lawsuit in New Jersey state court and that the District of New Jersey is not Plaintiffs' true choice of forum. Also, Defendants submit that the operative facts of this lawsuit occurred in New York; thus, the connection to New Jersey is minimal. Plaintiffs argue that their choice of forum is a paramount consideration and, although the action was removed to federal court, New Jersey is still their desired location.

As set forth above, the Third Circuit has repeatedly held that a plaintiff's choice of forum is a "paramount concern" in deciding a motion to transfer venue. See Sandvik, Inc. v. Con'l Ins. Co., 724 F. Supp. 303, 307 (D. N.J. 1989). Accordingly, Plaintiffs' choice of forum is presumptively correct. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981). In this case, however, Plaintiffs' choice warrants less deference. First, the District of New Jersey was not Plaintiffs' initial choice of forum. Plaintiffs originally filed suit in New Jersey state court. Thus, because Plaintiffs did not "choose" to file their lawsuit with this Court, the District of New Jersey is not Plaintiffs' "chosen forum." Second, if this action is transferred to the S.D.N.Y., it will result in only slight inconvenience to Plaintiffs due to location. Third, the operative facts of this lawsuit have only a tangential connection to New Jersey. The essence of Plaintiffs' claim is that, while negotiating claims with Nextel, LM&B breached its duty to its clients in exchange for bribes and a consultation deal. These negotiations, which constitute the operative facts of the lawsuit occurred in New York. Lastly, this is putative class action and "where there are many potential plaintiffs scattered across the country, the choice of this plaintiff deserves less weight." Impervious Paint Indus., Ltd. v. Ashland Oil, Inc., 444 F. Supp. 465, 467 (E.D. Pa. 1978). Here,

Plaintiffs constitute only six of the 587 persons represented by LM&B. For these reasons, Plaintiffs' choice of forum deserves less deference.

This Court must also consider where the claim arose. In Haase v. Mallenkrodt, Inc., the claim arose in New Jersey, but the action was brought in New York. See 415 F. Supp. 889 (S.D.N.Y. 1976). The S.D.N.Y. granted the motion to transfer to New Jersey. Here, substantial events or omissions giving rise to the claim occurred in New York, so suit is proper in a New York forum.

The remaining private factors are not at issue in this case. The action is currently pending in the District of New Jersey in Newark. If the action was transferred to the S.D.N.Y., it would be placed in either Manhattan or White Plains. As the parties point-out in their briefs, the distance between Newark and White Plains and Manhattan is forty-two and ten miles, respectively. The convenience of the parties and witnesses and the access to proof will not be significantly impacted regardless of whether this matter is litigated in Newark, White Plains or Manhattan.

### 2.    **Public Factors**

Regarding the public factors, this Court must first consider the enforceability of a judgment entered in this case. Here, this factor favors transferring venue to the S.D.N.Y. because it would be easier for Plaintiffs to enforce their judgment in New York than it would in New Jersey. Second, the Court must consider the relative administrative difficulty in the two fora resulting from court congestion. Here, the relative administrative congestion between the two districts is inconsequential. While the median time interval between filing to disposition is greater in the S.D.N.Y., the median time interval from filing to trial is greater in the District of New Jersey. These differences are insufficient to favor one forum because different figures can

-8-

be used to make different arguments. Therefore, court congestion should be considered in *pari materia* with other factors in the analysis. Third, the Court must consider the local interest in deciding controversies. New York has a strong public interest in this matter. As part of its power to protect the public, New York has the authority to establish standards for licencing and regulating the practice of attorneys. States have an interest in regulating attorneys who practice within their borders. Here, this claim revolves around alleged attorney misconduct. Therefore, the S.D.N.Y.'s local interest in deciding local controversies at home favors transfer to the S.D.N.Y. Fourth, the Court must consider the public policies of the proposed forum. One such public policy is the burden on the jury. In this case, a New York jury would have a greater interest in the outcome than a New Jersey jury because New York has an interest in regulating attorneys admitted to practice in New York. Similarly, the burden of jury duty should not be imposed upon the people of a community that has no relation to the litigation. The people of the S.D.N.Y. have a vested interest in the conduct of the attorneys practicing in their community. Jurors in New Jersey have little or no interest in regulating the actions of such attorneys. Finally, the Court must consider the trial judge's familiarity with the controlling state law. The instant case is a diversity action that may involve complex choice of law issues. In diversity actions, federal courts apply the conflict of law principles of the forum state in order to determine which substantive law applies. New Jersey's principles dictate that in suits related to contractual agreements (*e.g.*, the DRSA), the law of the state with the most significant relations, connections and contacts with the parties and the action applies. New York has the most significant relations, connections and contact with the DRSA. Therefore, a New York court would be in a better position than a New Jersey court to address the issues presented in this case.

For these reasons, there is little doubt that the venue of this action is proper in the S.D.N.Y. and there is similarly no doubt that Defendants have met their burden to show that a transfer to that forum would serve the interests of justice, therefore, it is the finding of this Court that Defendants' motion to transfer is **granted**. In light of this Court's holding with respect to the motion to transfer venue, this Court lacks jurisdiction over Defendants' Mazzola and Fitzgerald cross-motion to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6), Defendants' Leeds, Morelli & Brown, P.C., Lenard Leeds, Steven A. Morelli and Jeffrey K. Brown motion to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 12(b)(6) and Nextel's motion to dismiss Plaintiffs' First Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6).

**IV.    CONCLUSION**

For the reasons stated, it is the finding of this Court that Defendants' motion to transfer is **granted**. An appropriate Order accompanies this Opinion.

S/ Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Date:        September 21, 2007
Orig.:       Clerk
cc:          Counsel of Record
             The Honorable Mark Falk, U.S.M.J.
             File

# EXHIBIT "H"

INSTRUCTION NO. 14

The Court has concluded as a matter of law, and now instructs you, that a client who received a fair and reasonable disclosure of any conflicts of interest presented by the Dispute Resolution and Settlement Agreement ("DRSA") could consent to the Defendant's representation if the client so decided.

# EXHIBIT "I"

| | |
|---|---|
| DISTRICT COURT <br><br> CITY AND COUNTY OF DENVER, COLORADO | |
| **Plaintiff(s):** <br><br> **DENISE McNEIL and ALENCIA ASHTON-MOORE** <br><br> v. <br><br> **Defendant(s):** <br><br> **LEEDS, MORELLI & BROWN, P.C., et al** | . COURT USE ONLY . <br><br> **Case Number: 03CV893** <br><br> **Courtroom 2** |

### COURT'S ORDER RE: FINAL JUDGMENT

This matter came before the Court for a Jury Trial October 29 – November 8, 2007.

The jury found in favor of the Defendant Leeds, Morelli & Brown, P.C. and against the Plaintiffs Denise McNeil and Alencia Ashton-Moore on all of Plaintiffs' claims. The jury found in favor of the Plaintiffs Denise McNeil and Alencia Ashton-Moore and against Defendant Leeds, Morelli & Brown, P.C. on the Defendant's counterclaims.

The effective date of the judgment shall be November 8, 2007. This is a final Order pursuant to C.R.C.P. Rule 54.

Dated this day 14th of November 2007  NPT November 8, 2007

BY THE COURT:

*Herbert L. Stern*

Herbert L. Stern, III
District Court Judge

cc:  Counsel of Record

| DISTRICT COURT, DENVER, COLORADO<br>1437 Bannock St .<br>Denver, CO 80202 | |
|---|---|
| Plaintiffs: DENISE McNEIL and ALENCIA ASHTON-MOORE | ▲ COURT USE ONLY ▲ |
| v. | Case Number: 03CV893 |
| Defendants: LEEDS, MORELLI & BROWN, P.C., et al. | Courtroom: 2 |

| VERDICT FORM (Denise McNeil's Professional Negligence and Breach of Fiduciary Duty Claim) |
|---|

We, the jury, herby find as follows:

**Question 1:**   Was the Defendant negligent in its handling of Plaintiff Denise McNeil's claim against Nextel?

YES_____          NO  X

If you answer NO to question 1 above, then proceed to question 5 and answer question 5 "YES" (you should also proceed to question 2). If you answer YES to question 1 above, you proceed to question 2 and also answer question A below .

**Question 2:**   Did the Defendant breach a fiduciary duty to Plaintiff Denise McNeil?

YES_____          NO  X

If you answer YES to question 2 above, then answer question A below. If you answer "NO" to question 2 above, then proceed to question 6, and answer question 6 "YES."

> *Question A.*   *Has Plaintiff Denise McNeil proved by a preponderance of the evidence that she suffered an adverse employment action while employed at Nextel?*
>
> *YES_____          NO_____*

*If you answer YES to the above, answer questions B and C below.
If not, proceed to question F and answer question F "NO."*

<u>Question B</u>.   *Identify below the adverse employment action(s):*

<u>Question C</u>.   *Has Plaintiff Denise McNeil proved by a preponderance of
the evidence that her race was a substantial or motivating
factor that prompted Nextel to take the above action(s)?*

YES_____          NO_____

*If you answer YES to question C above, answer questions D and E below.
If not, proceed to question F and answer question F "NO."*

<u>Question D</u>.   *Has Plaintiff Denise McNeil proved by a preponderance of
the evidence that she suffered economic damages as a
result of Nextel's adverse employment action?*

YES_____          NO_____

*Based on the above findings, we hereby award Plaintiff
Denise McNeil economic damages in the amount of
$_____ on her claim for race discrimination against
Nextel.*

<u>Question E</u>.   *Has Plaintiff Denise McNeil proved by a preponderance of
the evidence that she suffered non-economic damages as a
result of Nextel's adverse employment action?*

YES_____          NO_____

*Based on the above findings, we hereby award Plaintiff
Denise McNeil non-economic damages in the amount of
$_____ on her claim for race discrimination against
Nextel.*

*If you answered either question D or E above, then answer question F below "YES." If not, answer question F "NO."*

> *Question F:*  *We, the jury, find in favor of Plaintiff Denise McNeil and against Nextel on her claim for race discrimination.*

> *YES_____*          *NO_____*

_____          _____

_____          _____

_____          _____
                                 Foreperson

If you answered Question F "YES," then answer question 3 below.  If you answered Question F "NO," then go to questions 5 and 6 and answer "YES."

**Question 3:**    Was Plaintiff Denise McNeil negligent?

·YES_____          NO_____

If you answer YES to the question 3 above, answer question 4 below:

**Question 4:**    Was Plaintiff Denise McNeil's negligence a cause of her failure to recover the full value of her claim against Nextel?

YES_____          NO_____

Taking as 100% the combined negligence of Defendant and Plaintiff Denise McNeil, what percentage of the negligence was caused by each party:

Percentage charged to Defendant:                    _____%

Percentage charged to Plaintiff Denise McNeil:      _____%

Must Total:                                          100%

**Question 5**:

We, the jury, find in favor of Defendant and against Plaintiff Denise McNeil on her claim for professional negligence.

YES___✗___          NO_____

**Question 6**:

We, the jury, find in favor of Defendant and against Plaintiff Denise McNeil on her claim for breach of fiduciary duty.

YES___✗___          NO_____

ALAN PEINADO

/Foreperson

**EXHIBIT "J"**

DISTRICT COURT, CITY & COUNTY OF DENVER,
STATE OF COLORADO

Court Address: 1437 Bannock Street
                     Denver, CO 80202

**Plaintiffs:**
DENISE McNEIL and ALENCIA MOORE,

**Defendants:**
LEEDS MORELLI & BROWN, P.C.; LENARD
LEEDS; STEVEN MORELLI; JEFFREY K. BROWN,
JAMES VAGNINI, SUSAN FITZGERALD, RICK
OSTROVE, BRIAN MAZZOLA, NANCY NOWELL,
ERIN GLEASON, LISA CALVACCA, NEXTEL
COMMUNICATIONS, INC. a Delaware corporation,
and JOHN AND JANE DOES, 1-10

EFILED Document
CO Denver County District Court 2nd JD
Filing Date: Jan 30 2008 11:01AM MST
Fili▲ DECOURT USE ONLY ▲
Review Clerk: Kari S Elizalde

Case Number: 03CV893

Ctrm. 2

## COURT'S ORDER RE: LAWYER DEFENDANTS'
## BILL OF COSTS

    This matter is before the Court pursuant to Defendants Lenard Leeds, Steven
Morelli, Jeffrey K. Brown, and James Vagnini's Bill of Costs filed November 21, 2007.
The Court, having reviewed the pleadings, file, and applicable authorities, and noting that
no evidentiary hearing was requested by Plaintiffs, hereby Finds and Orders as follows:

### FACTUAL BACKGROUND

    The Court notes this was a complex legal malpractice case that was initiated in
February 2003. Trial occurred in November 2007 – nearly four years later. Three different
lawyers entered their appearance for Plaintiffs and for a time, Plaintiffs' proceeded *pro se*.
Plaintiffs' current counsel, William Richardson, was counsel of record for a period, his
representation was terminated, he withdrew by Order of Court, and has now re-entered his
appearance for post-trial proceedings. This case had an unusually complex procedural
history, most of which was caused by Plaintiffs. The Court finds this greatly contributed to
the expense incurred by all parties, including the Lawyer Defendants.

    Though not an exhaustive list, the Court finds the following factors important in its
assessment of Defendants' Motion and Bill of Costs:

    1). In 2006, Plaintiffs' claims were dismissed due to discovery abuses and their
current counsel's complete failure to timely endorse any expert witnesses to testify at trial.
At the time Plaintiffs' claims were dismissed – February 2006 -- these Defendants had

incurred nearly $60,000 in costs. Despite repeated requests by the defense and urging by the Court, Plaintiffs' refused to simplify their case. Plaintiffs' persistent efforts to pursue between 12 and 16 separate claims for relief against these Defendants are the root of the high but necessary costs incurred by these Defendants.

2). Since its inception, there have been over 1200 filings in this matter. Due to Plaintiffs' actions, the Defendants had to endorse expert witnesses twice. In addition, Mr. Richardson failed to respond to discovery, failed to notify his clients of their scheduled depositions, and failed to respond to various pleadings and motions filed by the defense. This conduct increased the costs to the defense.

3). In October, 2006, Plaintiffs' trial counsel noticed the depositions of: (1) two of Nextel's outside counsel in the underlying matter; (2) a Leeds, Morelli & Brown associate, Brian Mazzola; (3) the Leeds, Morelli & Brown office manager, Jack Buck; and (4) a Leeds, Morelli & Brown fact and expert witness, Professor Roy Simon. These deponents all live in New York. Single, full-day depositions were scheduled for the mornings of October 16, 17 and 18, and two (2) half-day depositions were scheduled for October 19. While the parties were in New York for these depositions, one of the depositions of Nextel's outside counsel was cancelled; the other Nextel outside counsel's deposition lasted one (1) hour and twenty-nine (29) minutes. Mr. Mazzola's deposition lasted one (1) hour and fifty-five (55) minutes. Mr. Buck's deposition lasted forty-two (42) minutes. Professor Simon's deposition lasted one (1) hour and eleven (11) minutes. In sum, Plaintiffs noticed five (5) depositions over a four (4) day period in New York which lasted a total of five (5) hours and seventeen (17) minutes. Defendants incurred significant travel expenses in preparing their clients for depositions, and in defending or attending the aforementioned depositions.

4). This Court sat through the entire trial and heard the testimony of the defense experts. Based on Plaintiffs' allegations, Defendants retained expert witnesses to opine in the following areas: (1) the applicable New York Rules of Professional Conduct, and New York Ethics; (2) the applicable Colorado Rules of Professional Conduct, and Colorado Ethics; and (3) employment law. The Defendants identified: (1) Professor Roy Simon (fact witness re: pre-execution negotiations and ethical analysis of the Dispute Resolution and Settlement Agreement ("DRSA") and analysis of the ethics of the DRSA under New York law); (2) Professor Bruce Green (independent, retained expert to review the ethics of the DRSA applying New York law); (3) Sheila Meer (Colorado employment law expert to opine on standard of care applicable to employment lawyers); and (4) Jean Dubofsky (independent, retained expert to review the ethics of the DRSA applying Colorado law). The scope of each expert witness' testimony was different and was not duplicative.

5). The Court has reviewed the hourly rates charged by all the defense witnesses in the case. The rates charged by Professors Simon and Green are reasonable and reflect the market value for witnesses of their experience, background, and credentials.




6).    The Court has reviewed the documentation and the affidavits submitted in support of the Defendants' Bill of Costs. Defendants submitted voluminous supporting documentation. The information provided was sufficient to enable the Court to review the costs in appropriate detail. These costs were reasonable and necessary.

7).    Plaintiffs filed six complaints, and asserted dozens of claims under New York and Colorado law. Plaintiffs sought disgorgement of all monies paid by Nextel to Defendants. Some of the legal issues were novel and complex. The case-within-a-case required extensive research on employment discrimination law, both federal and state. Approximately $10,000 in computerized legal research for a case of this magnitude, duration, and complexity is reasonable.

8).    There were approximately 47,000 pages of documents produced by the parties in this litigation, including 38,518 pages produced by Plaintiffs themselves.

## FINDINGS

Plaintiffs object to the necessity of several of the costs and object to the reasonableness of the costs. The Court is not persuaded. Based on the above, in addition to the materials submitted by the Defendants, and the arguments of the parties, in the exercise of its discretion, the Court finds the costs claimed by Defendants to be reasonable and necessary. Pursuant to C.R.S. § 13-16-105, the prevailing party is entitled to its reasonable costs. A jury returned a verdict in favor of Defendants on November 7, 2007, and therefore, Defendants seek an award of their costs incurred in defending themselves.

Whether to award expert witness fees and the amount, if any, to be awarded are matters within the sound discretion of the trial court. *American Water Development, Inc. v. City of Alamosa*, 874 P.2d 352 (Colo.1994) ("*AWDI*"). The Court, being familiar with the trial of this case, concludes that the Defendants' experts were critical to their case and awards the expert witness fees incurred by the Lawyer Defendants. *Trinity Universal Ins. Co. v. Streza*, 8 p3d 613, 619 (Colo. App. 2000).

The Court further finds that the Defense experts' in court, trial preparation, and travel time are all properly awarded cost items. *Burt v. Beautiful Savior Lutheran Church of Broomfield*, 809 P.2d 1064, 1070 (Colo. App. 1990); *Shultz v. Linden-Alimak, Inc.*, 734 P.2d 146, 150 (Colo.App.1986). Likewise, the Court awards all costs incurred in connection with depositions. *Terry v. Sullivan*, 58 P.3d 1098, 1103 (Colo. App. 2005). Travel expenses and lodging costs were also reasonable and necessary. *AWDI, supra*, 874 P.2d at 389-390.

The Court has reviewed the Defendants' Bill of Costs and finds the costs reasonable and necessary. Defendants are hereby awarded costs in the amount of **$301,112.05.**

**Judgment hereby enters in favor of Defendants Leeds, Morelli & Brown, PC,**

Lenard Leeds, Steven Morelli, Jeffrey Brown, and James Vagnini, jointly and severally, and against Plaintiffs Denise McNeil and Alencia Ashton-Moore in the amount of $301,112.05.

DATED this _____ day of _____, 2008.

By the Court:

Herbert L. Stern, III
District Court Judge

cc:    William Richardson, Attorney for Plaintiffs
       Counsel for Defendants