UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MICHAEL S. JOHNSON, DONNA DYMKOWSKI,
PATRICIA LONG-CORREA, ANTONIO SAMUEL,
VINCENT HALL, ANGELETTE WATERS,
Individually, and on behalf of the Class,

                  Plaintiffs,

              -against-

NEXTEL COMMUNICATIONS, INC., a Delaware
Corporation, LEEDS, MORELLI & BROWN, P.C.,
LENARD LEEDS, STEVEN A. MORELLI, JEFFREY
K. BROWN, JAMES VAGNINI, FREDERIC DAVID
OSTROVE, BRYAN MAZOLLA, SUSAN
FITZGERALD, and JOHN and JANE DOES 1-10, (a
fictitious designation for presently unknown
Defendants),

                  Defendants.

-----------------------------------------------------------------X

Civil Action No. 1:07- CV-8473
Date Filed: 2/29/08

ASSIGNED JUDGE:
        GEORGE B. DANIELS

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS BY LEEDS, MORELLI & BROWN, P.C., LENARD LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN

McCONNELL, SIDERIUS, FLEISCHNER,
HOUGHTALING & CRAIGMILE
Denver Corporate Center,Tower 1
4700 S. Syracuse, Suite 200
Denver, CO  80202
(303) 458-9555

RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, NY  11556
(516) 357-3000

Of Counsel:

Shari Claire Lewis, Esq. (Rivkin Radler LLP)
Michael McConnell, Esq. (McConnell, Siderius, Fleischner,
Houghtaling & Craigmile)
Dylan Braverman, Esq. (Rivkin Radler LLP)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………...…………………….ii

INTRODUCTION ............................................................................................................................... 1

SUMMARY OF UNDERLYING FACTS.......................................................................................... 2

PROCEDURAL HISTORY ................................................................................................................ 4

    POINT I DISMISSAL IS WARRANTED UNDER SECOND CIRCUIT LAW  APPLICABLE TO THIS MATTER................................................................................................................. 5

    POINT II PLAINTIFFS MAY NOT DISAVOW KNOWLEDGE AS TO THE CONTENTS OF DOCUMENTS THAT THEY SIGNED AS A BASIS FOR LIABILITY..................................... 6

    POINT III THE FIFTH, SIXTH, SEVENTH, EIGHTH AND TENTH COUNTS  SHOULD BE DISMISSED UNDER *BELL ATLANTIC*..................................................................... 9

        a.   No claim for malpractice may be stated under these circumstances. ................................. 9

        b.   The Conversion Claim Should Be Dismissed .................................................... 9

        c.   The Unjust Enrichment Claim Must Also Be Dismissed ................................. 10

        d.   The Breach of Contract and Accounting Counts Should Be Dismissed. ......................... 11

    POINT IV PLAINTIFFS' "NEW JERSEY-CENTRIC" CLAIMS SHOULD BE DISMISSED...... 12

        a.   Plaintiffs state no claim for relief in regard to the "unauthorized practice of law".......... 12

        b.   No claim may be stated against LM&B under the New Jersey Consumer Fraud Act ..... 13

    POINT V PLAINTIFFS' "FRAUD" RELATED COUNTS SHOULD BE DMISSED AS INADEQUATELY PLEADED AND UNSTATEABLE AS A MATTER OF LAW................. 13

        a.   Plaintiffs have not set forth a claim for common law fraud ............................................. 14

        b.   For similar reasons, plaintiffs cannot state a claim for breach of fiduciary duty. ............ 16

        c.   There is no civil cause of action for "commercial bribery."............................................. 17

        d.   Plaintiffs' Eleventh Count under New Jersey's RICO statute must be dismissed............ 18

CONCLUSION ................................................................................................................................. 20

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ........................................................15

*ATSI Communications, Inc. v. The Shaar Fund Ltd.*,
   492 F.3d 87 (2d Cir. 2007) ..................................................................................................6

*Ad Rendon Communications, Inc. v. Lumina Americas, Inc.*,
   2007 U.S. Dist. LEXIS 75625 (S.D.N.Y. Oct. 9, 2007) ....................................................10

*Balthazar v. Atlantic City Medical Ctr.*, 279 F. Supp. 2d 574 (D.N.J. 2003),
   aff'd, 137 Fed. Appx. 482 (3d Cir. 2005) ..........................................................................19

*Baron v. Complete Management, Inc.*, 2008 U.S. App. LEXIS 1318
   (2d Cir. Jan. 24, 2008) .......................................................................................................19

*Bell Atlantic Corp. v. Twombly*, ____ U.S. ____, 127 S. Ct. 1955 (2007) .........1, 6, 9,11,12,16

*Berger v. Cantor Fitzgerald Securities, Inc.*, 967 F. Supp. 91
   (S.D.N.Y. 1997) ...................................................................................................................7

*Butvin v. Doubleclick, Inc.*, 2001 U.S. District 2318
   (S.D.N.Y. Mar. 5, 2001) .....................................................................................................15

*Boccone v. Eichen Levinson P.C.*, 2006 U.S. Dist. LEXIS
   94475 (D.N.J. Dec. 26, 2006) ............................................................................................10

*Bridgestone/Firestone v. Recovery Credit Services*,
   98 F.3d 13 (2d Cir. 1996) ...................................................................................................14

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................................6

*Debono v. Washington Mutual Bank*, 2006 U.S. Dist. LEXIS 89283
   (S.D.N.Y. Dec. 8, 2006) .......................................................................................................8

*Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) ........................................................................14

*Dicarlo v. St. Mary's Hospital*, 2006 U.S. Dist. LEXIS 49000
   (D.N.J. July 19, 2006) .........................................................................................................13

*Dover Ltd. v. A.B. Watley, Inc.*, 423 F. Supp. 2d 303 (S.D.N.Y. 2006) ...................................14

*Estate of Gleiberman v. Hartford Life Ins. Co.*,
   94 Fed. Appx. 944, (3d Cir. 2004).....................................................................................16

*Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007) ..........................................................13

*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144 (2d Cir. 2004)...........................................8

*Halifax Fund, L.P. v. MRV Communications, Inc.*,
   53 Fed. Appx. 598 (2d Cir. 2003)......................................................................7

*Horowitz v. Marlton Oncology, P.C.*, 116 F. Supp. 2d 551 (D.N.J. 1999)..............................19

*I. Meyer v. Pincus & Associates, P.C. v. Oppenheimer & Co.*,
   936 F.2d 759 (2d Cir. 1991) ...................................................................6, 8

*Igbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ..................................................9

*Jackson v. Broadcast Music, Inc.*, 2007 U.S. App. LEXIS 23492
   (2d Cir. Oct. 5, 2007)...........................................................................15

*Kolbeck v. LIT Am.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), aff'd, 152 F. 3d 918 (2d
   Cir. 1998) ......................................................................................15

*Labajo v. Best Buy, LP*, 478 F. Supp. 2d 523 (S.D.N.Y. 2007)....................................6

*Lazard Freres & Co. v. Protective Life Insurance Co*,
   108 F.3d 1531 (2d Cir. 1997) ..................................................................15

*Lesavoy v. Gattvilo Wilson*, 170 Fed. Appx. 721 (2d Cir. 2006)..................................7

*MK Strategies, LLC v. Ann Taylor Stores Corp.*,
   2007 U.S. Dist. LEXIS 90136 (S.D.N.Y. Dec. 6, 2007) ..........................................10

*M.K. v. Hillsdale Board Of Education*,
   2006 U.S. Dist. LEXIS 55683 (D.N.J. June 28, 2006)...........................................17

*Mallis v. Bankers Trust Co.*, 615 F.2d 68 (2d Cir. 1980) ........................................15

*Matthews and Fields Lumber Co., Inc. v. New England Insurance Co.*,
   113 F. Supp. 2d 574 (W.D.N.Y. 2000)...........................................................7

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y 2002)................................8

*McLaughlin v. Anderson*, 962 F.2d 187 (2d Cir. 1992) ...........................................15

*NAS Electrics, Inc. v. Trastech Electrics PTE LTD.*,
   262 F. Supp. 2d 134 (S.D.N.Y. 2003) ..........................................................11

*N.J. Office Supply, Inc. v. Feldman*, 1992 U.S. Dist. LEXIS 14180
   (D.N.J. Sept. 1, 1992) ........................................................................20

*Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1, 42 (Bankr.
   E.D.N.Y. 2006) ................................................................................14

*Northwestern Mutual Life Insurance Co. v. Banc of America Securities LLC*,
   254 F. Supp. 2d 390 (S.D.N.Y. 2003) ........................................................5,13

*O'Toole v. Philips Electronics N. America Corp.*,
   2006 U.S. Dist. LEXIS 76987 (D.N.J. Oct. 23, 2006) ....................................................10

*Philip Morris, Inc. v. Grinnell Lithographic Co.*,
   67 F. Supp. 2d 126 (E.D.N.Y. 1999) ...............................................................................17

*Philip Morris, Inc. v. Heinrich*, 1996 U.S. Dist. LEXIS 9156
   (S.D.N.Y. June 28, 1996) .................................................................................................17

*Pollen v. Comer*, 2007 U.S. Dist. LEXIS 46906
   (D.N.J. June 28, 2007) .....................................................................................................10

*Quintel Corp., N. V. v. Citibank, N.A.*, 589 F. Supp. 1235
   (S.D.N.Y. 1984)................................................................................................................14

*Ramon v. Budget Rent-A-Car System, Inc.*,
   2007 U.S. Dist. LEXIS 11665 (D.N.J. Feb. 20, 2007) ....................................................11

*Re-Source America Inc. v. Corning Incorporated*,
   2007 U.S. Dist. LEXIS 87462 (W.D.N.Y Sept. 24, 2007)...............................................4,7

*Redhead v. Winston & Winston, P.C.*, 2
   002 U.S. Dist. LEXIS 17780 (S.D.N.Y. Sept. 20, 2002).....................................................6

*S&R Corp. v. Juffy Lube Int., Inc.*, 968 F.2d 371 (3d Cir. 1992).............................................11

*Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324
   (S.D.N.Y. 1993)................................................................................................................14

*Sathianathan v. Smith Barney, Inc.*, 2006 U.S. Dist. LEXIS 9828
   (S.D.N.Y. Feb. 24, 2006)..................................................................................................14

*Segal v. Gordon*, 467 F.2d 602 (2d Cir. 1972) .......................................................................14

*Serova v. Teplen*, 2006 U.S. Dist. LEXIS 5781 (S.D.N.Y. Feb. 16, 2006) ............................16

*Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir. 1971) ......................................14

*Shields v. CityTrust Bancorp,* 25 F.3d 1124 (2d Cir. 1994) ...............................................13,15

*Silverman v. CEO Clubs, Ltd. (In re Chief Exec. Officers Club)*,
   2006 Bankr. LEXIS 482 (Bankr. S.D.N.Y. Mar. 8, 2006) ................................................14

*State Bank of India v. Star Diamonds, Inc.*, 901 F. Supp. 177
   (S.D.N.Y. 1995)..................................................................................................................7

*Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP*,
   2007 U.S. Dist. LEXIS 56222 (S.D.N.Y. Aug. 2, 2007)....................................................6

*U.S.A. v. International Longshoremen's Assn.*,
    518 F. Supp. 2d 422 (E.D.N.Y. 2007) ..............................................................................19

*Wellness Publishing v. Barefoot*, 2008 U.S. Dist. LEXIS 1514
    (D.N.J. Jan. 9, 2008)........................................................................................................6

*Williamson, P.A. v. John D. Quinn Cons. Corp.*,
    537 F. Supp. 613 (S.D.N.Y. 1982) ................................................................................12

**STATE CASES**

*Appell v. Reiner*, 43 N.J. 313 (1964)........................................................................................12

*Colmar Ltd. v. Fremantle Media N. America, Inc.*,
    344 Ill. App. 3d 977 (Ill. App. Ct. 2003) ......................................................................12

*Friedman v. Fife*, 262 A.D.2d 167, 692 N.Y.S.2d 61
    (1st Dep't 1999) ................................................................................................................8

*Hershenbaum v. Angerman*, 1 A.D.3d 218, 767 N.Y.S.2d 226
    (1st Dep't 2003) ..............................................................................................................15

*Macedo v. Russo*, 178 N.J. 340 (2003) ....................................................................................13

*Maxim Sewerage Corp. v. Monmouth Ridings*,
    273 N.J. Super. 84 (Law Div. 1993)..............................................................................18

*Moser v. Milner Hotels, Inc.*,
    6 N.J. 278, 78 A.2d 393 (1951) .....................................................................................11

*Neveroski v. Blair*, 141 N.J. Super. 365 (App. Div. 1976) .....................................................13

*Pimpinello v. Swift & Co.*, 253 N.Y. 159 (N.Y. 1930)() ............................................................8

*Plevy v. Schaedel*, 44 N.J. Super. 450 (Law Div. 1957) ..........................................................17

*In re Resolution of State Com. of Investigation*, 108 N.J. 35 (1987) .......................................17

*Sandcham Realty Corp. v. Taub*,
    299 A.D.2d 220, 752 N.Y.S.2d 15 (1st Dep't 2002) ......................................................15

*Sardanis v. Sumitomo corp.*, 279 A.D.2d 225, 718 N.Y.S.2d 66
    (1st Dep't 2001) ..............................................................................................................17

*Shumaker v. Mather*, 133 N.Y. 590, 30 N.E. 755 (1892) ........................................................15

*State v. Casilla*, 362 N.J. Super. 554 (App. Div. 2003) ...........................................................18

*State v. Passante*, 225 N.J. Super. 439 (Law Div. 1987)..........................................................18

*Trustees of Local 478 Trucking & Allied Industrial Pension Fund v. Pirozzi,*
198 N.J. Super. 297 (Law Div. 1983), aff'd, 198 N.J. Super 318 (App. Div. 1984) .........17

*Vort v. Hollander*, 257 N.J. Super. 56, *cert. denied,*
130 N.J. 599 (1992) .............................................................................................................13

*Wint* v. *ABN Amro Mortg. Group, Inc.*, 19 A.D.3d 588,
800 N.Y.S.2d 411 (2d Dep't 2005) ....................................................................................17

## DOCKETED CASES

*Martens v. Smith Barney*, No. 96 Civ. 3779 (S.D.N.Y. July 24, 1998) ......................................7

*McNeil v. Leeds, Morelli & Brown, et. al*, District Court, Denver Colorado,
Case No: 03 CV 893 ..............................................................................................................5

## FEDERAL STATUTES

18 U.S.C. § 1341...........................................................................................................................19

18 U.S.C. §1343............................................................................................................................19

28 U.S.C. §1404(a) .......................................................................................................................7

Fed. R. Civ. P. 8(a) ...................................................................................................................1, 6

Fed. R. Civ. P. 9(b) ..................................................................................................1, 13, 14, 19

Fed. R. Civ. P. 12(b) ....................................................................................................................1

## STATE STATUTES

N.J.S.A. 2C:21-10........................................................................................................................17

N.J.S.A. 2C:41-1 *et. seq*.............................................................................................................18

NY DR 5-107 (A) .........................................................................................................................7

N.Y. Penal Law § 180.03.............................................................................................................17

## MISCELLANEOUS

*Mallen & Smith, Legal Malpractice, 2008 Ed.* § 15:1 et. seq..................................................16

*N.J. Committee Unauth. Prac., Op. Number 28*, 1994 WL 719208 (1994) ............................12

*N.Y. Eth. Op. 601*, 1989 WL 253480 (Oct. 2, 1989)..................................................................7

This Supplemental Memorandum of Law is respectfully submitted in further support of the motion to dismiss by defendants Leeds, Morelli & Brown, P. C., Lenard Leeds, Steven A. Morelli and Jeffrey K. Brown (collectively "LM&B") pursuant to Fed. R. Civ. P. 8(a), 9(b) and 12(b), on the grounds that the plaintiffs' claims depend solely on a catalogue of legal theories and accusations that are belied by the documents signed by plaintiffs. A copy of the First Amended Complaint ("Amended Complaint") is attached hereto as Exhibit "A".

## INTRODUCTION

The Supreme Court recently stated that an adequate pleading under Fed. R. Civ. P. 8(a) requires that facts be pled to demonstrate that recovery is not just possible, but plausible. A pleading that lists cognizable legal theories coupled with the "mere possibility" that facts may be discovered in the future consistent with the theory pled is inadequate, "lest a plaintiff, 'with a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Bell Atlantic Corp. v. Twombly*, ____ U.S. ____, 127 S. Ct. 1955, 1966 (2007). Accordingly, a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do...Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* 127 S. Ct. at 1964-1965.

At bar, the Amended Complaint is the paradigm pleading against which the Supreme Court warned in *Bell Atlantic*. Every claim for relief, no matter how denominated, depends on a single, erroneous accusation – that a secret agreement existed between LM&B and their adversaries, Nextel Communications, Inc., ("Nextel") in the creation and administration of a wholly voluntary alternative dispute process ("ADR") designed to address the individual employment discrimination claims of over 500 Nextel employees and the systemic discrimination that apparently existed at the time. No facts are offered in support of plaintiffs' accusation. Instead, plaintiffs depend on self-serving claims of ignorance as to agreement terms that are expressly set forth in the very agreements which they signed combined

with wholly conclusory accusations of nefarious purpose. Plaintiffs' attempt to conjure the specter of "secret conspiracy" cannot, in the light of day, withstand scrutiny.

## SUMMARY OF UNDERLYING FACTS

The underlying facts are more fully set forth in the Brief in Support of the Leeds Defendants' Motion to Dismiss (Exhibit "B" hereto) which incorporated the Statement of Facts contained in Brief in Support of Defendants' Motion to Transfer Venue (Exhibit "C" hereto), and the Reply Brief in Support of the Leeds Defendants' Motion to Dismiss" (Exhibit "D" hereto).[1]

In sum, plaintiffs' claims concern LM&B's legal representation during the plaintiffs' voluntary participation in a private ADR process that resulted in individual settlements of their employment discrimination claims against Nextel. In order to participate in the ADR process, each plaintiff agreed to be bound by the "Dispute Resolution and Settlement Agreement" ("DRSA") dated September 28, 2000. LM&B Exhibit "2." The DRSA set forth the terms between Nextel, LM&B and those claimants who elected to take advantage of the opportunity for expeditious resolution of their individual claims against Nextel through a three phase procedure designed to be "the exclusive fora to provide for the fair and efficient processing and resolution" of the participating claimants' discrimination claims. See, DRSA ¶ 7(a).

The DRSA expressly set forth the terms that plaintiffs now characterize as "secret." The DRSA stated that LM&B would not recover legal fees from the Nextel claimants' settlement, but fees would be paid on their behalf by Nextel, and the amount and timing of those payments. *See* DRSA ¶ 11 "Attorneys Fees and Expenses." The DRSA also stated that Nextel would retain LM&B to consult with the company concerning its anti-discrimination and diversity programs for a two-year period commencing after completion of all ADR processes on behalf of the Nextel claimants and the amount that LM&B would be paid therefore. *See,* DRSA "¶ 12. Consultancy Agreement Between LM&B and

---

[1] Those Briefs referred to exhibits annexed to the Motion by codefendant Nextel as "Nextel Exhibit __" and exhibits submitted by LM&B's venue motion as "LM&B Exhibit ___" which reference shall be continued herein.

2

Nextel". Other key terms were likewise fully expressed, such as the time period for completion of the ADR process, the categories of damages that claimants could recover, the three step process for resolution and available discovery in connection therewith.

Each claimant executed an Individual Agreement acknowledging that they had read and reviewed the DRSA with the counsel of their choice and wished to proceed with settlement there under, that legal fees were to be paid by Nextel on the claimants' behalf, and that they understood and waived any potential conflict of interest that could arise as a result of the Nextel Consultancy. *See,* Nextel Exhibits "2" – "7", ¶¶ 1, 3 and 4.

Each claimant also executed a "Pledge of Good Faith" ("Pledge") in which they acknowledged the essential confidentiality of the DRSA and the ADR process and that therefore, there would be two copies of the DRSA provided to representatives in their area, which they could review at any time. *See,* Plaintiffs' executed Pledges, collectively Exhibit "E" hereto.

Each claimant received a summary designed to assist his or her understanding of the ADR process under the DSRA. *See,* Exhibit "F" hereto. Amended Complaint ¶ 47. Incredibly, plaintiffs allege they believed that a document entitled "Highlights of Settlement Agreement with Nextel" ("Highlights") was the Agreement itself, despite the plain English meaning of the title and reference to specific DRSA paragraphs. The Highlights likewise discussed Nextel's payment of claimants' legal fees and the LM&B consultancy. Exhibit "F," ¶ 18, 32, 33 and 34. [2]

Despite the foregoing, plaintiffs' disingenuously disavow any knowledge of the contents of the documents and persist in the fiction that they were ignorant of the terms under which they settled and received payment from Nextel. Deliberate ignorance is not a plausible basis for recovery. There is only

---

[2] In their opposition to the motions to dismiss plaintiffs argued that three purported amendments to the DSRA were further support of their conspiracy theories. In fact, the opposite is true. The first amendment addressed withdrawal of pending administrative proceedings as required by the DRSA. The Second Amendment reflected the refusal of several claimants to participate in ADR and a resultant reduction in LM&B's legal fees. The last "amendment", proposed an aggregate fund for settlement of then unsettled claims. However, it never came into operation, because there was not a consensus of Nextel claimants at to its terms. Thus, the "amendments" demonstrate LM&B's inability to unilaterally impose participation in the DSRA under terms that were not acceptable to the claimants. Nevertheless, as plaintiffs were indisputably advised of the payment of legal fees and Nextel consultancy at the outset of their participation in the ADR process, no subsequent amendment is relevant.

one inescapable conclusion – plaintiffs' claim that Nextel "secretly" bribed LM&B by payment of claimants' legal fees and through the consultancy is not just implausible, but impossible.

### PROCEDURAL HISTORY

Plaintiffs purport to represent a putative sub-class of approximately forty Nextel claimants, located throughout the United States, who were represented by LM&B and who allegedly timely-opted out of settlement of class action litigation in Colorado. Amended Complaint ¶7.[3]  Plaintiffs filed an "Amended Complaint" prior to any dispositive motion practice. Subsequently, plaintiffs waived further opportunity to amend the complaint, despite receiving an opportunity to do so at this Court's January 9, 2008 conference. Evidently, the Amended Complaint is the plaintiffs' "best shot" at stating a claim for relief at LM&B. Their "best shot" widely misses the target.

The Amended Complaint purports to plead ten claims for relief against LM&B. The lynchpin of each is that secret payments were made to LM&B in the form of payment of the claimants' legal fees and the consultancy. Both LM&B and Nextel moved to dismiss the amended complaint. LM&B also moved transfer venue of the action to the Southern District of New York. All motions were fully briefed and submitted to the Court.

By Opinion dated September 21, 2007, Hon. Judge Dennis Cavanaugh granted LM&B's motion to transfer the case. Exhibit "G" hereto. In so doing, Judge Cavanaugh analyzed key facts and made legal determinations under the New Jersey law applicable to the named plaintiffs, which are binding as the law of the case.[4] *See e.g., Re-Source America Inc. v. Corning Incorporated,* 2007 U.S. Dist. LEXIS 87462 *8 (W.D.N.Y. Sept. 24, 2007. He held that "the operative facts of this lawsuit have only tangential connection to New Jersey" as the essence of the plaintiffs' claim, that LM&B breached its duties to its client, concerned negotiation in New York with Nextel, and that the claim arose in New

---

[3] The claims against the LM&B Defendants can clearly never be certified for class treatment under the criteria of Rule 23. However, the time and expense associated with litigating class certification is unnecessary because, after applying the *Bell Atlantic* standard, the Amended Complaint does not withstand Rule 12 scrutiny.

[4] Separate choice of law analyses will be required if any count survives to determine the applicable law under each state of residence for each member of the putative sub-class.

York. *See*, Exhibit "G" p. 7, 8.[5] Accordingly he concluded held that under New Jersey conflict of law analysis applicable to the named plaintiffs, New York law applied to the interpretation of the operative agreements and contractual claims made there under. Exhibit "G" p. 10. In light of the Court's conclusion that the matter be transferred, the dispositive motions remain unaddressed.

Plaintiffs' opposition to the motions to contained extensive discussion of the *preliminary* proceedings concerning the Colorado action entitled *McNeil v. Leeds, Morelli & Brown, et. al*, Case No: 03 CV 893. *See, e.g.,* Plaintiffs' Brief in Opposition to Defendants' Motion to Dismiss, p. 1, 18-21. *McNeil concerned <u>identical</u> claims by two individuals who opted out of the Colorado class settlement and would be putative class and subclass members in this action.*

While the motions to dismiss were *sub judice*, the *McNeil* case was tried and resulted in a jury verdict in favor of LM&B. After hearing all the evidence, including expert testimony, the Court concluded that, as a matter of law, LM&B's clients could consent to the terms in the DRSA and so charged the jury. Exhibit "H" hereto. The jury returned a verdict on LM&B's behalf and denied the McNeil plaintiffs' claims. Exhibit "I", hereto. Finally, the Court granted costs and fees to LM&B in excess of $300,000.00, specifically citing the *McNeil* plaintiffs' needless complication of the issues and refusal to discontinue frivolous claims, which resulted in unnecessary burden on the Court and LM&B. Exhibit "J", hereto. The same conclusion is warranted here.

**POINT I**

**DISMISSAL IS WARRANTED UNDER SECOND CIRCUIT LAW
APPLICABLE TO THIS MATTER.**

Although this matter was transferred from the District Court of New Jersey, a transferee court in the Second Circuit applies its own interpretation of federal laws. *Northwestern Mutual Life Ins. Co. v. Banc of America Securities LLC*, 254 F. Supp.2d 390, 396 (S.D.N.Y. 2003). While the amended complaint not need contain detailed facts, it must provide the grounds for plaintiffs' entitlement to

---

[5] Indeed, the tangential connection to New Jersey is even further attenuated in consideration of absent plaintiffs located throughout the United States.

recovery, beyond mere "labels and conclusions" and a "formulaic recitation of a cause of action's elements will not do." *Bell Atlantic v. Twombly ___ U.S.___,* 127 S.Ct. 1955, 1965 (2007). The factual allegations must be sufficient to raise the right to relief over the speculative level. *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison, LLP* 2007 U. S. Dist. LEXIS 56222 * 8 (S.D.N.Y. Aug. 2, 2007). The "plausibility" standard enunciated in *Bell Atlantic* applies Fed. R. Civ. P. 8(a) requirements in general, no matter the nature of the claim. *ATSI Communications, Inc. v. The Shaar Fund Ltd.*, 492 F.3d 87, 98 n. 2 (2d Cir. 2007).[6]

It is well established that conclusory allegations or legal conclusions masquerading as facts are insufficient to defeat a motion to dismiss. *Redhead v. Winston & Winston, P.C.*, 2002 U.S. Dist LEXIS 17780 *21 (S.D.N.Y. Sept. 20, 2002). This Court is entitled to consider the documents that are integral to the complaint – that is documents on whose terms or effects, the plaintiffs rely, even where the plaintiffs have failed to attach or incorporate those terms. *See, Chambers v. Time Warner, Inc.* 282 F.3d 147 (2d Cir. 2002); *I. Meyer v. Pincus & Associates, P.C. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir. 1991). Where, as here, the plaintiffs' conclusory allegations are clearly contradicted by the documentary evidence, the Court need not accord any inference to those allegations in determining the motion to dismiss. *Labajo v. Best Buy, LP,* 478 F. Supp.2d 523, 528 (S.D.N.Y. 2007).

### POINT II

### PLAINTIFFS MAY NOT DISAVOW KNOWLEDGE AS TO THE CONTENTS OF DOCUMENTS THAT THEY SIGNED AS A BASIS FOR LIABILITY

No matter how denominated, each count in the Amended Complaint depends on plaintiffs' wholly conclusory claim that LM&B did not disclose that Nextel was paying legal fees and expenses that claimants would have otherwise been required to pay or the Nextel consultancy. *See, e.g., Amended Complaint,* Counts I – X. Plaintiffs' incredible argument is made despite the multiple documents, which

---

[6] The Third Circuit also broadly applies Bell *Atlantic* to require sufficient facts to make recovery plausible rather than speculative and rejects "unsupported conclusion[s] couched as factual allegations[s]". *See, Wellness Publishing v. Barefoot,* 2008 U.S. Dist. LEXIS 1514 *16 (D.N.J. Jan. 9, 2008)

disprove their contention.[7] The fact that the plaintiffs also received "Highlights" to assist their comprehension of the DSRA does not negate, but supports the legal import of their signatures to the legal binding documents. Thus, all of plaintiffs' claims must fail, because the underlying documents establish that their claims of secrecy and ignorance are false. *See, also*, Exhibit "B" p. 8 (addressing the binding nature of these documents under New Jersey law.)

It has been determined that under New Jersey conflicts of law principles applicable to the named plaintiffs, New York law governs the interpretation of the contract between the parties and any claims thereunder. See, Exhibit "G". Such determination is the law of the case. *See e.g., Re-Source America Inc. v. Corning Incorporated,* 2007 U.S. Dist. LEXIS 87462 *8 (W.D.N.Y. Sept. 24, 2007)(New Jersey transferor court's determination in the course of Rule 1404(a) transfer that New York would govern contract required that the transferee court apply New York law to substantive analysis of the claims.)[8]

A party who signs an agreement is conclusively bound to know its contents and to assent to them, even if it is later claimed that he/she did not read them. *See Matthews and Fields Lumber Co., Inc. v. New England Ins. Co.,* 113 F. Supp. 2d 574, 577 (W.D.N.Y. 2000); *Berger v. Cantor Fitzgerald Securities, Inc.,* 967 F. Supp. 91 (S.D.N.Y. 1997); *State Bank of India v. Star Diamonds, Inc.,* 901 F. Supp. 177, 179 (S.D.N.Y. 1995); *See also, Halifax Fund, L.P. v. MRV Communications, Inc.,* 53 Fed. Appx. 598 (2d Cir. 2003) ("the fact that a written contract is the most obvious way of evidencing assent is virtually a truism"). Plaintiffs futilely attempt to evade the plain import of the documents by offering the far-fetched allegation that they only received the signature page of the Individual Agreement and the Highlights. Even if true, plaintiffs are bound by the terms of documents they signed, as they are

---

[7] Nor can plaintiffs argue that DRSA was improper per se. The ADR process was modeled on a process approved by the Court in *Martens v. Smith Barney,* No. 96 Civ. 3779 (S.D.N.Y. July 24, 1998). Both New Jersey and New York Codes governing professional conduct permit that a lawyer to accept compensation for legal fees from a person other than the lawyer's client, so long as the client consents after disclosure, as was done here. *See,* NJ RPC 1.8(f); NY DR 5-107(A), 22 N.Y.C.R.R. § 1200.26. The New York Bar Association has acknowledged that "fee shifting agreements are often useful aids to the resolution of disputes." N.Y. Eth. Op. 601, 1989 WL 253480, at *1 (Oct. 2, 1989). Such benefit is particularly appropriate in the negotiated resolution of claimants' alleged racial, sexual and age discrimination claims, which are claims that are traditionally enabled by fee shifting provisions in the federal and state law.

[8] Judge Cavanaugh did not however determine the choice of law that would govern the tort claims by the named plaintiffs or the individual absent class members. Rather, the determination was limited to the interpretation of the DRSA under New Jersey law principles applicable to the named plaintiffs.

"conclusively presumed to know their contents and to assent to them." *Gold v. Deutsche Aktiengesellschaft* 365 F.3d 144, 149 (2d Cir. 2004).

In *Debono v. Washington Mutual Bank,* 2006 U.S. Dist. LEXIS 89283 (S.D.N.Y. Dec. 8, 2006) plaintiff alleged that he was provided only the last page of a three-page document to sign. Nevertheless, the Court concluded that *Debono* was bound by the terms of the agreement in its entirety. The Court stated that a reasonable person faced with a signature page that obviously was part of a longer document that could impact their legal rights would not sign it without first procuring the remainder of the document and reading its terms. Accordingly, if plaintiff did have any questions as to the contents of the agreement, it was plaintiffs' "responsibility to raise them prior to placing his signature on the document." *See, also, Gold,* 365 F.3d at 149-150; *Friedman v. Fife*, 262 A.D.2d 167, 168, 692 N.Y.S.2d 61, 62 (1st Dep't 1999), ("[p] laintiff will not be heard to claim that he received only a signature page for the . . . agreement, since he was bound to know and read what he signed.") *See also, Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162-163 (N.Y. 1930)(" If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him.")

Where as here, the plaintiffs' allegations are contradicted by the very document that form the parties' relationship, those allegations are insufficient to defeat a motion to dismiss. *See, e.g., Matusovsky v. Merrill Lynch,* 186 F. Supp.2d 397, 400 (S.D.N.Y 2002) citing, *I. Meyer Pincus & Associates, Inc. v. Oppenheimer & Co., Inc.* 936 F. 2d 759, 762 (2d Cir. 1991) et alia. Inasmuch as the plaintiffs' execution of the relevant underlying documents preclude their ability to argue that they were ignorant of their contents, the entire factual basis of plaintiffs' action has been negated and the action should be dismissed in its entirety and without leave to replead.

## POINT III

### THE FIFTH, SIXTH, SEVENTH, EIGHTH AND TENTH COUNTS
### SHOULD BE DISMISSED UNDER *BELL ATLANTIC*

Assuming, *arguendo,* that any of the Plaintiffs' claims survive despite their fundamentally flawed nature, nevertheless, each Count should be dismissed, individually, inasmuch as plaintiffs do not provide factual allegations to show their recovery is plausible as required under the flexible plausibility standard. *See, Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2d Cir. 2007). [9]

    a.    <u>No claim for malpractice may be stated under these circumstances.</u>

LM&B has previously shown that plaintiffs may not set forth a cognizable claim for legal malpractice under law applicable to their claims. *See,* Exhibit "B" p. 9; Exhibit "D" p.8. Such a conclusion is yet more compelling under the *Bell Atlantic* standard.

    b.    <u>The Conversion Claim Should Be Dismissed</u>

Plaintiffs' claim for conversion depends on the allegation that although the plaintiffs "executed a one-third contingent fee 'retainer' agreement", LM&B's fees were instead paid, on their behalf but without their knowledge, by Nextel in an amount that was in excess to that which had been agreed. Exhibit "A" ¶ 23, 39. Plaintiffs thereafter illogically conclude that LM&B received funds that Nextel would otherwise have paid to the plaintiffs.

Each of the plaintiffs (and most Nextel claimants) received settlement payments as a result of their participation in the ADR process set forth in the DRSA. None paid any portion of those funds to LM&B for their services. *See,* Amended Complaint, Tenth Count – Conversion, p. 29 – 30.  Thus, plaintiffs' conversion claim depends on the absurd proposition that the parties intended that LM&B undertake the gargantuan task of representation of more than 500 Nextel claimants on a *pro bono* basis – a proposition that is directly refuted by their concession that they agreed to pay LM&B for their services.. As such, the conversion claim can never meet the plausibility requirement of *Bell Atlantic*.

---

[9] We assume that New Jersey substantive law applies to the named plaintiffs' tort claims only. If any claim survives dispositive motions, a determination of what law applies will need to be made as to each member of the putative sub-class.

Conversion is the intentional exercise of dominion over personal property that interferes with the right of another to control it. It is essential that the subject property, actually be owned by the plaintiff. *Pollen v. Comer,* 2007 U.S. Dist. LEXIS 46906 *31-32 (D.N.J. June 28, 2007) (Absence of proof of ownership is fatal to conversion claim). *Boccone v. Eichen Levinson P.C.,* 2006 U.S. Dist. LEXIS 94475 *19 – 20 (D.N.J. Dec. 26, 2006)(No claim for conversion existed as to money in an attorneys' escrow account because a statutory right to receive the funds did not create an ownership interest in the money.)

Plaintiffs have no ownership interest in the money paid on their behalf for legal services rendered by LM&B. At most, they dispute whether LM&B received the correct amount under their respective retainers. However, as a matter of law, a dispute over payment due under a contract does not constitute an act of conversion, as it is not an unauthorized act of dominion over property in which plaintiff has legal ownership. *O'Toole v. Philips Electronics N. Am. Corp.,* 2006 U.S. Dist. LEXIS 76987 *18 (D.N.J. Oct. 23, 2006).[10] As such, the claim should be dismissed without leave to replead.

c.   The Unjust Enrichment Claim Must Also Be Dismissed

There are two elements of an unjust enrichment claim, i.e., that a defendant received a benefit from the plaintiff and that the defendants' retention of that benefit without payment would be unjust. *MK Strategies, LLC v. Ann Taylor Stores Corp.,* 2007 U.S. Dist. LEXIS 90136 (S.D.N.Y. Dec. 6, 2007). At bar, the benefit received by LM&B – payment of its legal fees – was in exchange for substantial consideration – LM&B's services and expenses incurred in the negotiation and administration of the DRSA and the representation of over 500 individual claims through the ADR process. Plaintiff's after-the-fact opinion that LM&B was paid too much does not state a claim for unjust enrichment.

Indeed,"[i] t is generally the case that when a valid, express contract covers the subject matter of the parties' dispute, a plaintiff cannot recover under a quasi-contract theory, such as unjust enrichment."

---

[10] For the same reason, under New York law, the conversion claim would properly be dismissed as duplicative of the contract breach claim, even if the pleading sets forth the technical elements of the tort. *Ad Rendon Communications, Inc. v. Lumina Ams., Inc.* 2007 U.S. Dist. LEXIS 75625 *12 - 14 (S.D.N.Y. Oct. 9, 2007).

*Ramon v. Budget Rent-A-Car System, Inc.*, 2007 U.S. Dist. LEXIS 11665 *15  (D.N.J. Feb. 20, 2007). (Citing, *Moser v. Milner Hotels, Inc.* 6 N.J. 278, 78 A.2d 393 (1951)("It is a well settled rule that an express contract excludes an implied one.") The amount of compensation owed to LM&B for legal services is concededly an express term of plaintiffs' retainers, as well as the superseding DRSA to which each plaintiff agreed to be bound.

In *Ramon,* the Court first concluded that there was nothing "inherently" unreasonable, fraudulent or otherwise illegal as to refueling fees charged by the defendant under its contracts, despite the class representative's allegation of excessiveness. Accordingly, the Court dismissed the entirety of the complaint. The Court also specifically dismissed the unjust enrichment claim because the plaintiffs' conclusory allegations that it was "unjust" for the defendant to retain its "excessive" fees did not state a claim as a matter of law. *See, Ramon* 2007 U.S. Dist. LEXIS 11665 *15.  The same conclusion is warranted at bar.

       d.     The Breach of Contract and Accounting Counts Should Be Dismissed.

Similarly, plaintiffs' breach of contract and request for an accounting counts should likewise be dismissed under *Bell Atlantic* as legally irreconcilable with the individual plaintiffs' failure to pay LM&B the legal fees and expenses they owed to the firm as a result of their individual settlements with Nextel. Only two inferences may be drawn from these facts.

First, that plaintiffs did not pay under their retainers is further evidence that they agreed to the terms of the DRSA, including the Nextel payments, and relied on the terms to relieve them of any obligation to pay LM&B directly. Alternatively, plaintiffs are themselves in breach of their contractual obligations and there has been a complete failure of consideration on their part. *See e.g. S&R Corp. v. Juffy Lube Int., Inc.*, 968 F.2d 371, 376 (3d Cir. 1992)(While non-breaching party may either stop performance, or continue performance and sue for damages, "Under no circumstances may the non-breaching party stop performance and continue to take advantage of the contract's benefits"); *See also NAS Elecs., Inc. v. Trastech Elecs. PTE LTD.*, 262 F.Supp.2d 134, 145, 152 (S.D.N.Y. 2003)(While a

party may terminate a breached contract, the non-breaching party may not reap the benefits of the contract and then terminate, and thus, "the plaintiffs' own breach precludes recovery".) In either case, their recovery is not "plausible".

**POINT IV**

**PLAINTIFFS' "NEW JERSEY-CENTRIC" CLAIMS SHOULD BE DISMISSED**

In granting the venue change, Judge Cavanaugh made key determinations, including that the "essence of Plaintiffs' claim" and its "operative facts" occurred in New York, which is likewise where the named plaintiffs' claims arose. *See,* Exhibit "G" p. 7. The Court recognized that the Nextel claimants were scattered across the county. *See, Id.* Plaintiffs, as putative representatives, nevertheless persist in New Jersey claims, based solely on their own residences.

a.    Plaintiffs state no claim for relief in regard to the "unauthorized practice of law".

At the outset, LM&B were retained by individual Nextel claimants, located throughout the country to represent each through a negotiated, private ADR process that had been negotiated in New York. Accordingly, no claim for the unauthorized practice of law in New Jersey may be stated. Plaintiffs' speculative claims lack any plausible factual basis and should be dismissed even if the plaintiffs can recite the elements of a cognizable theory for relief. *Bell Atlantic.*

The New Jersey Supreme Court Committee on Unauthorized Practice has expressly held that an out-of-state lawyer does not engage in unauthorized practice of law by participating in an arbitration proceeding, even if the arbitration proceeding occurs within New Jersey. N.J. Comm. Unauth. Prac., Op. No. 28, 1994 WL 719208 (1994). This is in accord with the statement by New Jersey Supreme Court that, with regard to unauthorized practice of law, that "recognition must be given to the numerous multi-state transactions arising in modern times." *Appell* v. *Reiner,* 43 N.J. 313, 316 (1964).[11] As such,

---

[11] Cases in other jurisdictions have similarly concluded that unauthorized practice of law rules do not apply to out-of-state attorneys engaged in arbitration. *See, Williamson, P.A.* v. *John D. Quinn Cons. Corp.* 537 F. Supp. 613, 616 (S.D.N.Y. 1982); *Colmar Ltd.* v. *Fremantle Media N. Am., Inc.* 344 Ill. App. 3d 977, 988-89 (Ill. App. Ct. 2003); Va. Unauth. Prac. L. Op. No. 92 (May 2, 1986).

the plaintiffs' claim alleging, "unauthorized practice of law" should be dismissed without leave to replead.

       b.    <u>No claim may be stated against LM&B under the New Jersey Consumer Fraud Act</u>

Plaintiffs advance a wholly frivolous claim under the New Jersey Consumer Fraud Act. ("NJCFA") despite the unambiguous precedence that attorneys, acting in their professional capacity, may not be sued under the Act. *See, e.g., Dicarlo v. St. Mary's Hospital,* 2006 U.S. Dist. LEXIS 49000 (D.N.J. July 19, 2006) Indeed, application of the NSCFA against an attorney is "<u>ludicrous.</u>" *Neveroski v. Blair,* 141 N.J. Super. 365, 379 (App. Div. 1976).

According to the Supreme Court of New Jersey, settled jurisprudence spanning 40 years has established, beyond debate, that professional services are beyond the purview of the NJ CFA. *Macedo v. Russo,* 178 N.J. 340, 345-346 (2003). *See also, Vort v. Hollander,* 257 N.J. Super 56, *cert. denied,* 130 N.J. 599 (1992) (Dispute as to whether an attorney charged excessive fees did not state a claim under the NJCFA.)[12] Notably, this claim is buried within the same futile count as to the unauthorized practice of law. Plaintiff's continuation of this claim, despite multiple opportunities to amend, is sanctionable.

## POINT V

## PLAINTIFFS' "FRAUD" RELATED COUNTS SHOULD BE DMISSED AS INADEQUATELY PLEADED AND UNSTATEABLE AS A MATTER OF LAW

Second Circuit interpretation of Fed. R. Civ. P. 9(b) governs the Amended Complaint no matter what substantive law defines the individual plaintiffs' claims. *Northwestern Mutual Life Ins. Co. v. Banc of Am. Sec., LLC,* 254 F. Supp.2d at 390, 397. Rule 9(b) requires that in all allegations of fraud, "the circumstances constituting fraud . . . shall be stated with particularity. *See Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1127 (2d Cir. 1994). Likewise, when, as here, the underlying breach of

---

[12] Even if cognizable, plaintiffs' NJCFA would be dismissed as lacking factual particularity under Rule 9(b). *See, e,g, Frederico v. Home Depot,* 507 F.3d 188, 202 – 203 (3d Cir. 2007)(Dismissing, inter alia, class action consumer fraud claims in the absence of adequate particularities under 9(b).)

fiduciary duty claims are based on fraud, those claims must also must satisfy Rule 9(b). *Nisselson v. Ford Motor Co. (In re Monahan Ford Corp.)*, 340 B.R. 1, 42 (Bankr. E.D.N.Y. 2006); *Kolbeck v. LIT Am.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996), aff'd, 152 F. 3d 918 (2d Cir. 1998).

An accusation of fraud, especially against lawyers, is a serious charge. That accusation alone causes substantial harm to professionals. *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 337 (S.D.N.Y. 1993). Rule 9(b) is designed to protect reputations from injury caused by unsubstantiated charges of fraud and protect against strike suits, as well as to give defendants fair notice of the claims against them. *Silverman v. CEO Clubs, Ltd. (In re Chief Exec. Officers Club)*, 2006 Bankr. LEXIS 482 *22 (Bankr. S.D.N.Y. Mar. 8, 2006). The Second Circuit therefore vigorously enforces Rule 9(b) where fraud is alleged against professionals such as attorneys. *See Denny v. Barber,* 576 F.2d 465 (2d Cir. 1978); *Segal v. Gordon*, 467 F. 2d 602, 607 (2d Cir. 1972); *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir. 1971); *Quintel Corp., N. V. v. Citibank, N.A.*, 589 F. Supp. 1235, 1243 (S.D.N.Y. 1984).

At bar, the injurious claims against LM&B are supported by nothing more than rhetorical conclusions by counsel, which are directly contradicted by the relevant documents.

    a.    <u>Plaintiffs have not set forth a claim for common law fraud</u>

The essential elements of common law fraud are substantially similar under New York or New Jersey law. To adequately state a claim, plaintiffs must provide factual support to establish: 1) a material misrepresentation of fact; 2) defendants' knowledge of the falsity; 3) intent that the other person rely on it (scienter); 4) justifiable reasonable reliance; and 4) resulting damage. *Federico,* 507 F.3d at 200. (Applying New Jersey law.) *Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 19 (2d Cir. 1996)(Applying New York law).

A complaint must specify: (1) the specific fraudulent statements; (2) the speaker; (3) the time and place the statements were made; and (4) why the plaintiff believes the statements were fraudulent. *Dover Ltd. v. A.B. Watley, Inc.,* 423 F. Supp. 2d 303, 317 (S.D.N.Y. 2006); *Sathianathan v. Smith*

*Barney, Inc.*, 2006 U.S. Dist. LEXIS 9828, *58-59 (S.D.N.Y. Feb. 24, 2006) *citing Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) and *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992). While fraudulent intent may be averred generally, the Second Circuit requires "plaintiffs to allege facts that give rise to a strong inference of fraudulent intent." *Shields, Supra,*, 25 F.3d at 1128 (citations omitted). Absent plaintiffs' wholly conclusory allegations and suspicions, the Amended Complaint wholly fails to provide such factual particularity.

Moreover, plaintiffs can never establish the essential element of justifiable reliance. Where a party can learn "…by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80-81 (2d Cir. 1980) (quoting *Shumaker v. Mather*, 133 N.Y. 590, 596, 30 N.E. 755, 757 (1892)). "The law simply does not protect someone who willingly signs an agreement which references and incorporates other controlling documents which he or she has not seen. '[A] party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." *Butvin v. Doubleclick, Inc.*, 2001 U.S. District 2318 * 16(S.D.N.Y. Mar. 5, 2001) *quoting, in part, Lazard Freres & Co. v. Protective Life Ins. Co,* 108 F.3d 1531 (2d Cir. 1997).

Plaintiffs are conclusively charged with knowledge of the DRSA, the Individual Agreement, and Good Faith Pledge, which expressly set forth the specific terms that they now claim were not disclosed as a basis for their fraud. As such, plaintiffs were on notice of the existence of the facts that they now claim were withheld from them and nevertheless, chose to voluntarily proceed with the Nextel ADR process that led to the settlement of their individual claims. Thus, no claim for justifiable reliance may be stated as a matter of law. *See, e.g., Jackson v. Broad. Music, Inc.*, 2007 U.S. App. LEXIS 23492* 2-3 (2d Cir. Oct. 5, 2007).[13]

---

[13] *See also,, Hershenbaum v. Angerman*, 1 A.D.3d 218, 767 N.Y.S.2d 226 (1st Dep't 2003) (No justifiable reliance on the attorney defendants' alleged misrepresentations since the "plaintiff failed to take advantage of his clearly available opportunity to investigate"); *Sandcham Realty Corp. v. Taub*, 299 A.D.2d 220, 752 N.Y.S.2d 15 (1st Dep't 2002) (Allegation that attorney

b.    <u>For similar reasons, plaintiffs cannot state a claim for breach of fiduciary duty.</u>

To establish a breach of fiduciary duty by an attorney, plaintiffs must demonstrate a non-speculative basis to claim that LM&B acted in a manner that was adverse to the plaintiffs interests which caused them actual damage. *See generally, Mallen & Smith, Legal Malpractice, 2008 Ed.* § 15:1 et. seq.   The plaintiffs' claim that it was adverse to their interest to be relieved of the obligation to pay legal fees and expenses out of their individual settlements achieved, through participation in an expedited three step ADR process, is plainly not the type of "plausible" right to recover envisioned by *Bell Atlantic v. Twombly,* _____ U.S. _____, 127 S. Ct. 1955 (2008).

It is a defense to a claim of fiduciary breach that the lawyer made a full and appropriate disclosure to the client, who elected nevertheless to proceed. *Id.* at § 15:23. At bar, plaintiff's wholly conclusory denials of disclosure are belied by the numerous documents which plaintiffs received and executed. In fact, the Highlights, a document plaintiffs expressly concede was received by them, expressly disclosed, the payment of the fees and the consultancy and stated: "Claimant further acknowledges and understands that such consultancy presents a conflict of interest for LM&B and Claimant knowingly and voluntarily waive any objection to the conflict."   Exhibit "F" ¶ 33, 34.   As such, the claim should be dismissed as the conduct alleged to constitute the fiduciary breach is, in actuality, the performance of the terms of a written contract. *Estate of Gleiberman v. Hartford Life Ins. Co.,* 94 Fed. Appx. 944, 947-948 (3d Cir. 2004) (applying New Jersey law).

Under New York law, dismissal is also warranted because a breach of fiduciary duty claim is impermissibly duplicative of a legal malpractice when, as here, it is based on the same facts and seeks the same recovery. *Serova v. Teplen*, 2006 U.S. Dist. LEXIS 5781, *12-13 (S.D.N.Y. Feb. 16, 2006).

---

fraudulently obtained client's signature on agreement by misrepresenting terms of agreement were properly dismissed because client had a duty to read the document before signing it).

c.    There is no civil cause of action for "commercial bribery."

New Jersey and New York statutorily provide for criminal liability for commercial bribery. *See,* N.J.S.A. 2C:21-10; N.Y. Penal Law § 180.03. Neither statute grants a private right of action.

"New Jersey courts are generally loathe to imply a civil remedy from a penal statute." *Trustees of Local 478 Trucking & Allied Indus. Pension Fund* v. *Pirozzi,* 198 N.J. Super. 297, 308 (Law Div. 1983), aff'd, 198 N.J. Super 318 (App. Div. 1984). *See, also, M.K.* v. *Hillsdale Bd. Of Educ.,* 2006 U.S. Dist. LEXIS 55683, at *7 (D.N.J. June 28, 2006). "It is a long standing precept that civil remedies are not created in criminal laws." *Plevy* v. *Schaedel,* 44 N.J. Super. 450, 455 (Law Div. 1957). Indeed, under New Jersey law, there is presumption against private rights of action penal statutes. *In re Resolution of State Com. of Investigation,* 108 N.J. 35, 41 (1987). (Stating it would be "the unusual case where 'a bare criminal statute, with absolutely no indication that civil enforcement of any kind was available to anyone'" would create a private right of action and that enforcement should therefore be left to the "agencies charged with the enforcement of criminal law.")

There is likewise no private right of action for commercial bribery under the New York statute. *See, e.g. Sardanis* v. *Sumitomo corp.,* 279 A.D.2d 225, 230, 718 N.Y.S.2d 66, 69 (1st Dep't 2001)(Holding that a private right of action for commercial bribery is "inconsistent with the existing legislative and remedial scheme, which gives the power of enforcement to the District Attorney.") In *Sardanis,* it was noted that traditional tort law already provides remedies for the harms caused by commercial bribery. *Id.* at 229-30; *see also Philip Morris, Inc.* v. *Heinrich,* 1996 U.S. Dist. LEXIS 9156, at *17 (S.D.N.Y. June 28, 1996) (Noting that plaintiffs could recover damages caused by a commercial bribe with claims of common law fraud and breach of fiduciary duty).[14]   The fact that plaintiffs' claims fail to state claims under traditional tort theories does not permit them to prosecute a private enforcement action where none is permitted by law.

---

[14] *See Wint* v. *ABN Amro Mortg. Group, Inc.,* 19 A.D.3d 588, 800 N.Y.S.2d 411, (2d Dep't 2005); *Philip Morris, Inc.* v. *Grinnell Lithographic Co.,* 67 F. Supp. 2d 126, 140 (E.D.N.Y. 1999) ("It appears that every federal court considering the issue has concluded that the commercial bribery sections of the Penal Law do not create a private right of action").

d.    Plaintiffs' Eleventh Count under New Jersey's RICO statute must be dismissed.

i)    *As LM&B's alleged RICO conduct occurred in New York, no claim can be stated,*

To the extent that plaintiffs identify any acts by LM&B as a basis of the RICO claim, they concern the negotiation of the DRSA in New York.  *See* Exhibit "G" at p. 7 – 9.  On that basis alone, dismissal is warranted. The conclusion is particularly compelling here where the plaintiffs purport to represent a class of individual LM&B clients located across the country.

In order to assert a claim under the New Jersey Racketeering Act, N.J.S.A. 2C:41-1 *et. seq.* ("NJRICO"), plaintiff must set forth a New Jersey based racketeering enterprise effecting trade or commerce in New Jersey. *See State v. Casilla*, 362 N.J. Super. 554, 563-567 (App. Div. 2003); *See also e.g. Maxim Sewerage Corp. v. Monmouth Ridings*, 273 N.J. Super. 84, 93 (Law. Div. 1993) *citing* N.J.S.A. 2C:41-1.1(c).  New Jersey's public interest is in eliminating organized crime type activities specifically concerning New Jersey.  *See State v. Passante*, 225 N.J. Super. 439, 445 (Law Div. 1987)(Noting that for the racketeering enterprise statute to apply "the target enterprise must have an effect on the commerce of the state).

Specifically, the NJRICO statute describes its intended goal:

> …prevent, disrupt and eliminate the infiltration of organized crime type activities which are substantial in nature into the legitimate trade or commerce of *this State*. It is, therefore, in the public interest to provide that activity which is inimical to the general health, welfare, and prosperity of *the State and its inhabitants* be made subject to strict civil and criminal sanctions.[15] (emphasis added)

In *Casilla*, the New Jersey Appellate Division upheld the defendant's murder conviction, but vacated the NJRICO charge because NJRICO claims cannot be based on acts performed primarily in New York. *Id.* 362 N.J. Super at 565-566.  Even assuming, *arguendo*, that conduct relating to the alleged racketeering enterprise occurred in New Jersey, it would not automatically follow that such

---

[15] While the leading authority has been decided in a criminal context, the authority is still binding as criminal and civil claims under NJRICO arise from the same statutory provisions and mandate a New Jersey state factual nexus. *See e.g.* N.J.S.A. 2C:41-1.1(c)

activities affected trade or commerce in New Jersey. *Id.* at 566, 362 N.J. Super. Accordingly, the NJRICO count should be dismissed.

ii)     *Even if NJRICO could be deemed appropriate, the claim still must be dismissed due to* <u>*improper pleading*</u>.

Proper pleading of NJRICO requires (1) the existence of an enterprise affecting trade or commerce; (2) that the defendant was associated with the enterprise, (3) that the defendant participated in affairs of the enterprise, and (4) that the defendant participated through a pattern of racketeering activity that must include at least two predicate acts. *See Horowitz v. Marlton Oncology, P.C.*, 116 F.Supp.2d 551, 554 (D.N.J. 1999). Here, plaintiffs' so-called predicate acts include entirely unspecified fraudulent practices, wire and mail fraud, commercial bribery and unauthorized practice of law. *See* Exhibit "A" at ¶¶7-8. These claims are insufficient to satisfy the pleading requirements set forth in Rule 9(b). *See Baron v. Complete Mgmt., Inc.*, 2008 U.S. App. LEXIS 1318 (2d Cir. Jan. 24, 2008).

As set forth above, the so-called "fraud" claim fails to satisfy *prima facie* standards, and does not satisfy the heightened pleading requirements of Rule 9(b). The wire and mail fraud claims fail on the identical basis. *See Lesavoy v. Gattvilo Wilson*, 170 Fed. Appx. 721, 723 (2d Cir. 2006)(RICO dismissed, as the predicate, "allegations primarily rest upon the predicate acts of mail fraud, wire fraud, and fraud...and so must be pled with particularity"). Wire and mail fraud are federal crimes under 18 U.S.C. §1341 and §1343, and require (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent. *See Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp.2d 574, 590 (D.N.J. 2003), aff'd, 137 Fed. Appx. 482 (3d Cir. 2005)(RICO dismissed, due to failure to allege predicate fraudulent acts with specificity). Here, plaintiff fails to plead facts to show any use of the mail or wires to perpetuate any specific fraud. Plaintiff also fails to specify speaker, date, content, etc. of any communication. Thus, plaintiff cannot base a NJRICO claim. *See Id.*; *See also U.S.A. v. Int'l. Longshoremen's Assin.*, 518 F.Supp.2d 422 (E.D.N.Y. 2007).

Likewise, as discussed above, plaintiffs cannot state a claim for "unauthorized practice of law," and therefore cannot rely on such a claim to constitute a predicate act. Finally, plaintiffs allege that a

commercial bribe was committed. To assert this claim, it must be established that, "payments to the agent were made secretly, *i.e.*, without the knowledge and consent of the principal, and must be attended with the intent to influence the agent's action with respect to his employer's business." *N.J. Office Supply, Inc. v. Feldman*, 1992 U.S. Dist. LEXIS 14180, *31 (D.N.J. Sept. 1, 1992). Here, all payments to LMB were disclosed and known by plaintiffs. Accordingly, the plaintiffs' NJRICO claim must be dismissed.

## CONCLUSION

Based upon the foregoing, the prior submissions, and all exhibits and pleadings hereto, it is respectfully request that LM&B's motion be granted in its entirety and the plaintiffs' Amended Complaint be dismissed with prejudice and without leave to replead and whatever further and different relief that to the Court may be just, reasonable and proper.

Dated: February 29, 2008
      Uniondale, New York

                        Respectfully submitted:

                        RIVKIN RADLER LLP

                        By: _s/Shari Claire Lewis_____
                        Shari Claire Lewis, Esq. (SL 0527)
                        For Defendants, Leeds, Morelli & Brown, P.C., Lenard Leeds, Stephen Morelli and Jeffrey Brown.
                        926 Rexcorp Plaza
                        Uniondale, New York 11556
                        (516) 357-3000

                        -and-

                        McCONNELL, SIDERIUS, FLEISCHNER, HOUGHTALING & CRAIGMILE
                        Denver Corporate Center,Tower 1
                        4700 S. Syracuse, Suite 200
                        Denver, CO 80202
                        (303) 458-9555