# EXHIBIT A

UNITED STATES DISTRICT COURT
~~SOUTHERN~~ DISTRICT OF NEW ~~JERSEY~~
YORK

| | |
|---|---|
| MICHAEL S. JOHNSON, DONNA: DYMKOWSKI, PATRICIA LONG-: CORREA, ANTONIO SAMUEL, VINCENT: HALL, ANGELETTE WATERS,: Individually, and on behalf of the Class, : : Plaintiffs, : : vs. : : NEXTEL COMMUNICATIONS, INC., a: Delaware Corporation; LEEDS, MORELLI &: BROWN, P.C.; LENARD LEEDS, STEVEN: A. MORELLI, JEFFREY K. BROWN;: JAMES VAGNINI; FREDERIC DAVID: OSTROVE; BRYAN MAZOLLA; SUSAN: FITZGERALD; AND JOHN AND JANE: DOES 1-10 (a fictitious designation for: presently unknown Defendants), : : Defendants. : | CIVIL ACTION NO. 06-5547 (DMC) (MF) |

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

ROPER & TWARDOWSKY, LLC
77 Jefferson Place
Totowa, New Jersey 07512
(973) 790-4441

January 25, 2007
Kenneth S. Thyne
Of Counsel
and on the Brief

## INTRODUCTORY STATEMENT

This Brief replies to the Motions to Dismiss filed by Defendants, Leeds-Morelli and Prudential. Before the Court is a Complaint alleging *inter alia* a conspiracy by which the Plaintiffs' lawyers' loyalty was bought by Defendant, Nextel. The Plaintiffs' former lawyers conspired with Nextel to keep Nextel's bribe secret and to deceive the Plaintiffs into thinking that their lawyers were working for them, when in actuality the lawyers were representing Nextel's interests. In keeping with this conspiracy and the deception it required, the Defendants created documents to be signed by the Plaintiffs which had the effect of defrauding and deceiving the Plaintiffs and keeping from the Plaintiffs the true facts of the Defendants' conspiracy.

Over a period of years, the Defendants entered into subsequent agreements furthering their conspiracy, all of which were designed to benefit Nextel and the Lawyer Defendants at the expense of the Plaintiffs. Both of these Motions rely upon a release and Plaintiffs' signatures on an agreement which were the product of the conspiracy and bribery scheme, which is the crux of the Plaintiffs' Complaint and which was hidden from the Plaintiffs by fraud until after the releases were executed. As such, the releases and Plaintiffs' signatures do not bar any of Plaintiffs' claims in this action, and the Defendants' Motions to Dismiss must be denied. Indeed, the signature pages the Defendants point to as Plaintiffs' knowledge of the agreement in question do not even reference the agreement by date, nor indicate that they were attached to same. Further, the Defendants do not disclose that the agreement that they claim was provided to the Plaintiffs – a disputed fact at odds with the well-pled Complaint – was, in fact, not presented to the Plaintiffs, but rather Plaintiffs were presented with supposed "Highlights" of the agreement, instead, which did not, in any way, accurately characterize the agreement in question and concealed the multi-million dollar payments

1

from Plaintiffs.

Further, the Defendants do not provide the Court with several amendments to the agreement, some of which contained contracts by which Nextel obtained the promise from Plaintiffs' lawyers to violate numerous ethical rules and their fiduciary duties to their clients.

Furthermore, the Defendants do not advise this Court that the identical arguments they made regarding the effect of the release obtained by this conspiracy has already been proffered as grounds for dismissal of identical claims regarding this conspiracy to a court in Colorado which rejected such arguments, finding that there were issues of fact which precluded such a dismissal. Taking the allegations alleged in Plaintiffs' Complaint, along with the documents referenced therein, it is plain that the Defendants' Motions to Dismiss in this action must likewise be denied.

## FACTS

As these are Motions to Dismiss, all of the facts in the Complaint must be accepted as true, and must be viewed in the light most favorable to Plaintiffs. *Semerenko v. Cendant Corp.*, 223 F. 3d 165 (3rd Circ. 2000) cert. denied, 531 U.S. 1149 (2001). As such, the following allegations in Plaintiffs' Complaint must be accepted as true, these allegations are buttressed by additional exhibits attached to the Certifications of Kenneth S. Thyne (hereinafter "KST") and Angela Roper (hereinafter "AMR"), as well as the Certifications of four of the Plaintiffs, Donna Dymkowski, Michael Johnson, Antonio Samuel and Angelette Waters.

After attending a meeting conducted by Leeds-Morelli, Plaintiffs executed a one-third contingent fee "retainer" agreement, by which each Plaintiff hired Leeds-Morelli. The retainer agreements did not contain the elements required by the New Jersey Court Rules. Prior to execution of the retainer agreements, Leeds-Morelli told Plaintiffs that Plaintiffs would collect millions of

dollars in damages against Nextel, and that Leeds-Morelli would vigorously prosecute Plaintiffs' claims against Nextel. KST, Exhibit N, ¶¶28, 29, 30. Defendant Brown announced in the press that the Plaintiffs "will seek more than 1.76 billion in damages for these claims" and were asking for financial settlement estimated at two billion dollars or more. KST, Exhibit G.

The Lawyer Defendants held themselves out to Plaintiffs as licensed, professional, competent attorneys, with specific expertise in the field of civil rights, employment discrimination law, and class action lawsuits. The Lawyer Defendants promised and represented to Plaintiffs, either expressly or through their conduct, that they would zealously represent the Plaintiffs with respect to claims against Nextel. Plaintiffs specifically retained the Lawyer Defendants for the purpose of receiving competent legal services with respect to their claims against Nextel, including having their claims adequately investigated and prosecuted with undivided loyalty. Contrary to their promises and representations, the Lawyer Defendants did not, in fact, have, or in the alternative, did not exercise, the knowledge, skill, judgment and ability ordinarily possessed by members of the legal profession during their purported representation of Plaintiffs. KST, Exhibit N, ¶¶31-37.

As described in more detail below, the Lawyer Defendants chose not to exercise their legal knowledge, skills, and judgment in their representation of Plaintiffs, but instead improperly aligned themselves with Nextel's interests, and conspired to accept improper financial remuneration from Nextel in exchange for this unethical and illegal conspiracy. KST, Exhibit N, ¶38.

In or about 2000, Leeds-Morelli, Leeds, Morelli, and Brown agreed to become Nextel's agents in exchange for $7,500,000.

    a.    Leeds-Morelli, Leeds, Morelli, and Brown promised to perform such duties and responsibilities as may be assigned to it by Nextel and which may include assistance and legal advice to Nextel;

b.      Leeds-Morelli, Leeds, Morelli, and Brown promised to stop accepting new clients with claims against Nextel;

c.      Leeds-Morelli, Leeds, Morelli, and Brown promised not to refer individuals with claims against Nextel to other attorneys and promised not to consult with local counsel about Plaintiffs' claims;

d.      Leeds-Morelli, Leeds, Morelli, and Brown promised not to accept fees for referring individuals to other attorneys;

e.      Leeds-Morelli, Leeds, Morelli, and Brown promised to limit the scope of their representation of Plaintiffs and promised not to confer with local counsel;

f.      Leeds-Morelli, Leeds, Morelli, and Brown promised to advise Plaintiffs to waive part of their claims for non-economic damages;

g.      Leeds-Morelli, Leeds, Morelli, and Brown promised to advise Plaintiffs to waive their claims for equitable relief;

h.      Leeds-Morelli, Leeds, Morelli, and Brown promised to advise Plaintiffs to waive their claims for punitive damages;

i.      Leeds-Morelli, Leeds, Morelli, and Brown promised to advise Plaintiffs to waive their right to pursue their claims as members of a class.

j.      Leeds-Morelli, Leeds, Morelli, and Brown promised to advise Plaintiffs to waive their rights to a jury trial;

k.      Leeds-Morelli, Leeds, Morelli, and Brown promised to advise Plaintiffs to pursue their claims pursuant to the laws of the Commonwealth of Virginia;

l.      Leeds-Morelli, Leeds, Morelli, and Brown promised to pay $50,000.00 per month to Nextel for delay in handling Plaintiffs' claims beyond a certain date;

m.      Leeds-Morelli, Leeds, Morelli, and Brown promised to provide consulting services to Nextel; and

n.      Leeds-Morelli, Leeds, Morelli, and Brown promised to pay $25,000.00 as liquidated damages for each disclosure of the terms of their agreement with Nextel.

Each of these promises was made in exchange for a commercial bribe.  These promises

4

benefitted the interests of Nextel at the expense of the conflicting interests of the Plaintiffs. KST.
Exhibit N, ¶45.

In September and October 2000, Leeds-Morelli presented documents entitled "Highlights
of Settlement Agreement with Nextel ("Highlights") and Individual Agreement ("IA"), KST. Exhibit
F, to Plaintiffs and others with respect to proposed dispute resolution and settlement agreement
Leeds-Morelli had negotiated with Nextel. The Highlights and IA were not designed to inform its
clients of the terms of the Agreement itself, but rather was designed to mislead the clients about the
numerous conflicts of interest. KST. Exhibit N, ¶46; Exhibit F. Neither the Highlights nor the IA
disclosed the amount of the payment by Nextel, nor indicated that Leeds-Morelli agreed to violate
numerous Rules of Professional Conduct in exchange for the multi-million dollar payment they
received from Nextel.

Leeds-Morelli failed and refused to present a full and complete copy of the proposed Dispute
Resolution and Settlement Agreement ("DRSA") to Plaintiffs or others prior to execution of the
documents. Only a signature page of the Agreement was presented by Leeds-Morelli to Plaintiffs
(the "IA"). The Lawyer Defendants, rather than zealously asserting Plaintiffs' individual claims
against Nextel, negotiated a "global" settlement of all of the claims for the primary purpose of
obtaining millions of dollars from Nextel in an Agreement whose terms were hostile to the rights
and interests of Plaintiffs, but which benefitted the financial interests of the Lawyer Defendants and
Nextel. KST. Exhibit N, ¶¶47-48.

**The Highlights prepared by Leeds-Morelli and Nextel** did not show that Nextel would
deliver a $5,500,000.00 (five million five hundred thousand dollar) payment to Leeds-Morelli upon
execution of the Agreement by Plaintiffs and other claimants. (Emphasis added). This payment was

5

a bribe designed by Nextel to interfere with Leeds-Morelli's fiduciary duty to represent the Plaintiffs. KST, Exhibit N, ¶50.

The Agreement and the five million dollar plus payment provided financial benefit to Leeds-Morelli which conflicted with their obligation to their clients. The acceptance of this payment by Leeds-Morelli, without any portion of it being shared with its clients who were entitled to two-thirds pursuant to their preexisting retainer agreements with Leeds-Morelli, constituted a business transaction adverse to Leeds-Morelli's clients. Leeds-Morelli were required to disclose this transaction and the terms of this transaction in writing to the Plaintiffs and other Class Members in a manner and term that would have been reasonably understood by the clients and other Class Members, were required to advise the Plaintiffs and other clients of the desirability of seeking independent counsel, and were required to give the Plaintiffs and other Class Members a reasonable opportunity to seek the advice of independent counsel of the clients' choice, and were required to obtain from the Plaintiffs and other Class Members their consent in writing thereto. Leeds-Morelli did none of these things. **Instead, Leeds-Morelli conspired with Nextel to keep this payment hidden from the clients to further its own pecuniary interests and the interests of its co-conspirator, Nextel.** (Emphasis added). Nextel later agreed to retain Leeds-Morelli pursuant to a secret "Consultancy Agreement" which provided that for a period of two (2) years after processing and resolution of all claims Leeds-Morelli would perform "only such duties and responsibilities as may be assigned it by Nextel. . ." for an additional agreed fee of $83,333.34 per month for twenty-four (24) months [for a total additional payment of $2,000,000.00 (two million dollars)]. KST, Exhibit N, ¶¶51-52.

Induced by false, incomplete, and misleading representations by Leeds-Morelli, Leeds,

6

Morelli, Brown, and Vagnini, Plaintiffs signed the signature page of the Agreement. Pursuant to the Agreement, Leeds-Morelli bound itself and Plaintiffs to submit all present and future claims against Nextel to a private and confidential dispute resolution process (DRP) created by Nextel and Leeds-Morelli. The Agreement provided that Plaintiffs waived their right to a jury or other civil trial with respect to all claims, gave up the right to claim punitive damages, and were required to participate in an onerous three-step process in order to receive any damages, with no minimum recovery guaranteed to any signee of the Agreement. KST, Exhibit N, ¶¶53-55.

**Nextel, Leeds-Morelli, Leeds, Morelli, Brown, and Vagnini entered into additional secret agreements which purported to modify the DRSA.** KST, Exhibit N, ¶56; Exhibits C, D and E. **An agreement between Leeds-Morelli and Nextel was never discussed, reviewed or approved by Plaintiffs, and provided the total recovery by all of the Class Members involved in the Nextel Agreement would be limited to a specific dollar amount. No such limitation was contained in the original DRSA.** KST, Exhibit E. (Emphasis added). None of these secret agreements are mentioned in either the IA or any release.

Plaintiffs were among approximately 600 employees of Nextel whose claims against Nextel were the subject of the September 28, 2000 Agreement between Nextel and Leeds-Morelli. The Lawyer Defendants advised Plaintiffs and other clients to execute separate signature pages to the Agreement, but refused to allow Plaintiffs and other clients to review or possess copies of the Agreement. The clients, including Plaintiffs, signed the execution page to the Agreement in reliance on the false representations of the Lawyer Defendants that the terms of the Agreement were fair and equitable, and in their best interests. When the Lawyer Defendants rendered this advice, Plaintiffs believed the Lawyer Defendants were acting in Plaintiffs' best interests, when in fact, the Lawyer

Defendants were acting to further the conflicting interests of Nextel and their own selfish interests. The Agreement created egregious non-waivable, non-consentable, and irreconcilable conflicts of interest among the clients and between the clients and Leeds-Morelli. The Agreement was specifically illegal, unethical, and against public policy and is thus void and unenforceable. To the degree waivers or consents to the conflicts of interest created by the Agreement were allegedly executed, the informed consent of Plaintiffs was not obtained by Leeds-Morelli prior to execution of such waivers or consents, and any alleged disclosures failed to approach what was required by R.P.C. 1.8 and DR 5-104(a). <u>KST, Exhibit N, ¶¶61-66.</u>

The Lawyer Defendants engaged in the unauthorized practice of law in the State of New Jersey by contracting to provide legal representation with respect to New Jersey claims, and conducting legal proceedings in New Jersey concerning the rights of New Jersey residents (including Plaintiffs) arising out of Plaintiffs' employment in New Jersey. <u>KST, Exhibit N, ¶67.</u>

**In return for the agreement by Leeds-Morelli to waive clients' rights to pursue civil actions in New Jersey courts, to settle claims for inadequate compensation, and to effectively submit to private binding arbitration, and in return for other improper consideration from Leeds-Morelli, Nextel agreed to pay and did indeed pay Leeds-Morelli the sum of $5,500,000.00 (five million five hundred thousand dollars), purportedly as attorney's fees. Nextel and the Defendant Lawyers contemplated resolving all 600 client claims for an undisclosed amount with $5,500,000.00 (five million five hundred thousand dollars) going to Leeds-Morelli up front, and the remaining undisclosed aggregate amount to be distributed to the clients through the Nextel and Leeds-Morelli resolution process.** (Emphasis added). Leeds-Morelli, acting in collusion with Does and Nextel, and in derogation of its obligations and duties to

8

Plaintiffs, entered into agreements causing Plaintiffs to relinquish their rights to a jury trial, their right to claim non-monetary relief, and their right to claim punitive damages. The Agreement did not provide for a conditional admission of liability by Nextel, but instead required each claimant to prove his or her claim for liability and damages in a mini-hearing in binding arbitration proceedings, and contained numerous punitive provisions that were weighted in favor of Nextel and against claimants. KST, Exhibit N, ¶¶68-71.

Nextel's $5,500,000.00 (five million five hundred thousand dollar) payment to Leeds-Morelli was for the sole benefit of Leeds-Morelli, with the understanding that no part of the payment would be distributed to any of the clients of Leeds-Morelli, including Plaintiffs. Nextel received in consideration for such payment the loyalty of Plaintiffs' attorneys and ensured that Plaintiffs' claims would not be pursued by zealous advocates and would be kept secret. Leeds-Morelli accepted the payment from Nextel without client consultation or consent. Acceptance of the $5,500,000.00 (five million five hundred thousand dollar) payment by the Lawyer Defendants interfered with the Lawyer Defendants' independent professional judgment as well as the lawyer-client relationship. KST, Exhibit N, ¶¶73-75.

In addition to the $5,500,000.00 (five million five hundred thousand dollar) payment to Leeds-Morelli, Does and Nextel secretly agreed to retain Leeds-Morelli for a period of two (2) years after processing and resolution of all claims to perform "only such duties and responsibilities as may be assigned it by Nextel. . ." Nextel agreed to pay Leeds-Morelli a fee of $83,333.34 per month for twenty-four (24) months for such additional services [for a total additional payment of $2,000,000.00 (two million dollars)]. As a result of the Consultancy Agreement with Nextel, Leeds-Morelli would be unable to represent any other client in actions against Nextel. KST, Exhibit N,

9

¶¶77-78.

The payment of $5,500,000.00 (five million five hundred thousand dollars) by Nextel to Leeds-Morelli bought the silence of the Lawyer Defendants and their clients who had been and continue to be abused by Nextel. The amounts received by Leeds-Morelli from Nextel grossly exceeded the amount Leeds-Morelli agreed to receive in its retainer agreements with Plaintiffs and other clients who retained Leeds-Morelli with respect to the proposed actions against Nextel. Upon information and belief, Doe, on behalf of Nextel, negotiated the agreements with Leeds-Morelli. At the time he negotiated the agreements, Doe was acting within the scope of his employment and/or agency with Nextel. **Doe and Nextel knew or should have known that the agreements were dishonest and unethical as to Plaintiffs and other Leeds-Morelli clients, and that the agreements would necessarily cause the Leeds-Morelli lawyers to breach their professional and fiduciary duties to their clients, including Plaintiffs.** (Emphasis added). KST, Exhibit N, ¶¶79-82.

The agreements were entered into with the intention that the Lawyer Defendants would breach their professional and fiduciary duties to their clients, and that the agreements would necessarily cause the Lawyer Defendants to breach their professional and fiduciary duties to their clients, including Plaintiffs. Nextel would, therefore, benefit by achieving a more favorable settlement of the claims of Plaintiffs and other clients by shielding these claims from the public eye. Upon information and belief, various John and Jane Does conspired in a scheme with Nextel to "buy off" and bribe the Lawyer Defendants to achieve a more favorable settlement for Nextel of the claims of Plaintiffs and the other clients of Leeds-Morelli, and to shield these claims and the illegal actions of Nextel from public scrutiny. The actions of Nextel and Does were intended to and did in fact injure Plaintiffs and the other clients by wrongly interfering with the attorney-client

10

relationship, and by converting what was supposed to be an adversarial process into a staged show with a predetermined outcome.  KST, Exhibit N, ¶¶83-86.

Nextel poisoned the well of justice by bribing Plaintiffs' attorneys and depriving Plaintiffs of their rights.  KST, Exhibit N, ¶87.  Although the September 28, 2000 Agreement purported to contemplate that the Nextel internal settlement process would resolve the claims of the claimants more quickly than if the clients pursued claims in court, in fact, Nextel and Leeds-Morelli delayed commencement of the clients' claims, including the claim of Plaintiffs.  During the Nextel resolution process, Leeds-Morelli failed to properly develop the claims and damages of Plaintiffs, and other clients with claims against Nextel.  Instead, the process dragged on as Nextel and Leeds-Morelli entered into further illegal agreements to resolve how to allocate the intended aggregate fund.  The Lawyer Defendants failed to investigate each of Plaintiffs' claims on its merits, to negotiate each claim, to become familiar with the claims, or to properly, competently, or reasonably prepare the claimants, including Plaintiffs, to participate in the DRP claim resolution process.  On information and belief, Plaintiffs allege the Lawyer Defendants and Nextel agreed to a lump sum amount with respect to the value of all of the claims, and failed and refused to advise claimants of the total amount available for distribution to the claimants, including Plaintiffs.  The amounts awarded Plaintiffs and other claimants were unreasonably low and did not approximate the true value of the claims of Plaintiffs and other claimants.  KST, Exhibit N, ¶¶90-94.

Plaintiffs relied on the "professional" advice of the Lawyer Defendants and, to Plaintiffs' detriment, Plaintiffs did not know of the remuneration the Lawyer Defendants had secretly negotiated with Nextel. Rather than focus on the merits of each Plaintiffs' claim, as was their ethical and legal duty, the Lawyer Defendants' overall scheme focused only on generating the largest

compensation for the Lawyer Defendants in derogation of their duties to Plaintiffs and the other claimants. **On information and belief, in September 2001, Leeds-Morelli entered into a secret written agreement with Nextel to settle the remaining unsettled claims for the total aggregate sum of $3,690,000.00 (three million six hundred ninety thousand dollars). A secret September 2001 supplemental agreement (without the clients' knowledge and for Nextel's benefit) limited each claimant to a maximum damage recovery in the amount of $25,000.00 (twenty five thousand dollars), and assigned Leeds-Morelli as the party designated to allocate recovery amounts to each claimant out of the aggregate sum (thereby placing Leeds-Morelli in yet another untenable conflict between its putative clients). The secret September 2001 agreement also provided for a reduction of the monthly consulting fee to Leeds-Morelli from $83,333.34 to $63,333.34 based on Nextel's reservation of $20,000.00 per month to defend actions by claimants who opted out of the supplemental agreement; provided, however, that if Leeds-Morelli managed to limit actions by claimants, Leeds-Morelli would be paid, in a lump sum, all monies not used by Nextel to defend claims by persons electing to opt out of the supplemental agreement. This secret agreement created even more egregious conflicts of interests among the clients, and between the clients and Leeds-Morelli.** (Emphasis added). KST. Exhibit N. ¶¶95-100. This secret agreement was specifically illegal, unethical, against public policy, and is thus void and unenforceable. KST. Exhibit N, ¶101. At no place in their papers do the Movants contend that this secret agreement was disclosed to the Plaintiffs.

**Pursuant to the agreements between Nextel and Leeds-Morelli, Plaintiffs were counseled to and induced to sign a release of claims against Nextel. Said release was obtained by fraud, bribery and other tortious conduct of Defendants.** (Emphasis added). The conduct

of the Lawyer Defendants violated, *inter alia*, New Jersey Rules of Professional Conduct ,1.2(a), 1.3, 1.4(a)(b)(c), 1.5, 1.7(a)(b), 1.8(a)(f)(g), 2.1, 5.4(c), 5.5, 5.6(b), 7.1(a)(1)(2), 8.3(a) and 8.4(c)(d)(e)(f), as well as New York Code of Professional Responsibility Disciplinary Rules 1-102(A)(1)(2)(3)(4)(5)(7), 5-101, 5-104(A), 5-105(B), 5-106(A), and 5-107(A)(1). **Leeds-Morelli refused to provide a copy of the Agreement to Plaintiffs and the other clients. Leeds-Morelli had the clients sign the signature page of the Agreement and did not permit the clients, including Plaintiffs, to review the entire document to which the signature page would be appended. Plaintiffs requested copies of the Agreements from Leeds-Morelli prior to executing the signature pages, but were falsely told they could not see the documents because of confidentiality agreements.** <u>KST, Exhibit N, ¶¶103-107</u>. **Instead, the Plaintiffs just were provided with the misleading "Highlights."** <u>KST, Exhibit F; Certifications of Dymkowski, Johnson, Samuel and Waters</u>. (Emphasis added).

Nextel bribed and/or bought off Leeds-Morelli so as to compromise the Lawyer Defendants' fidelity to Plaintiff and their other clients. Leeds-Morelli accepted the bribe of Nextel and agreed to compromise the Lawyer Defendants' representation of Plaintiffs and other Class Members and to render certain advice to Plaintiffs and other Class Members in exchange for the bribe. Nextel's and Does' action in paying this bribe to the Lawyer Defendants was to aid and abet the Lawyer Defendants in breaching their fiduciary duties to the Plaintiffs and Class Members. Leeds-Morelli conspired with Nextel to enter into secret aggregate settlements to dispose of Plaintiffs' claims. Plaintiffs and the other Class Members are entitled to collect the amount of the bribe as damages. <u>KST, Exhibit N, First Count, ¶¶6, 7 and 11</u>.

By virtue of the aforementioned acts, Nextel (acting through its authorized agents and

representatives) and Leeds-Morelli engaged in acts of commercial bribery. Alternatively, and additionally, Nextel, Does, Leeds-Morelli and the Lawyer Defendants conspired to commit acts of commercial bribery. **Nextel conferred, offered and agreed to confer upon Leeds-Morelli the amount of five million dollars plus as consideration for Leeds-Morelli knowingly violating and agreeing to violate their duty of fidelity as attorneys for Plaintiffs and other Class Members. The payments made to Leeds-Morelli by Nextel were made secretly, i.e., without the knowledge of Plaintiffs. Nextel conspired with Leeds-Morelli and the Lawyer Defendants to prepare a secret agreement to conceal this payment from Plaintiffs.** (Emphasis added). The payments made or to be made to Leeds-Morelli by Nextel were accompanied with an intent by Nextel to influence the actions of the Lawyer Defendants who were Plaintiffs' agents and fiduciaries. Nextel aided and abetted the Lawyer Defendants in their breach of their fiduciary duty of loyalty to the Plaintiffs. These acts invaded the Plaintiffs' rights to undivided loyalty from the Lawyer Defendants. KST, Exhibit N, Count Two, ¶¶2, 4, 5 and 6.

Nextel and various John and Jane Does conspired with and bribed Leeds-Morelli and the Defendant Lawyers to commit fraud, to make false representations to Plaintiffs, and to conceal from Plaintiffs information which Leeds-Morelli and the Lawyer Defendants were required to disclose to Plaintiffs. On various dates, Leeds-Morelli and the Lawyer Defendants made deliberate misrepresentations of material facts to Plaintiffs, such as that they were advocates for Plaintiffs' interests, that they had an adversarial relationship with Nextel, that they were litigating Plaintiffs' claims on the merits and that their loyalty was to the Plaintiffs and not to Plaintiffs' adversary, Nextel, and that Plaintiffs would not be responsible for any costs or expenses in litigating these claims. The Lawyer Defendants also failed to disclose material factual information that they were

14

required to disclose in writing to Plaintiffs and Class Members, such as that they had been paid millions of dollars by Nextel to render specific advice to their clients, that they had agreed to an aggregate settlement on behalf of their clients, that they had entered into separate, secret agreements with Nextel alone, and that they owed contractual duties and obligations to Nextel in exchange for the multimillion dollar payment, and that the clients were entitled to two-thirds of this multimillion dollar payment and that the Lawyer Defendants had acquired a pecuniary interest adverse to Plaintiffs'.  Nextel misrepresented to Plaintiffs and Plaintiffs' subsequent counsel the nature, extent and existence of the secret agreements between Leeds-Morelli and Nextel.  At the time these misrepresentations and concealments occurred, Defendants knew the misrepresentations were false and that the failure to disclose the information required to be disclosed in writing was done for the purposes of deceiving Plaintiffs and denying resolution of the claims, to keep such claims confidential and shielded from the public eye, and to further the conspiracy among the Defendants. Id., Count Three, ¶¶2, 3, 4, 5 and 6.

Leeds-Morelli and the Lawyer Defendants had an attorney-client relationship with Plaintiffs and the other Class Members. Nextel, various John and Jane Does maliciously and illegally and intentionally interfered with Plaintiffs' relationship with their attorneys, wrongfully and without justification or excuse. Nextel bribed and/or bought off Leeds-Morelli so as to compromise Leeds-Morelli's and the Lawyer Defendants' fidelity to Plaintiffs and the other Class Members. Leeds-Morelli and the Lawyer Defendants accepted the bribe of Nextel and agreed to compromise the representation of Plaintiffs and the other Class Members and to render certain advice in exchange for this payment. Thus, Leeds-Morelli and the Lawyer Defendants effectively became the lawyers or adjusters for Nextel in the handling of the claims of Plaintiffs and the other Class Members. Id.,

Count Four, ¶¶2 and 3.

Defendants Nextel, John and Jane Does (1-10) conspired with and bribed Leeds-Morelli and the Lawyer Defendants and caused Leeds-Morelli and the Lawyer Defendants to commit legal malpractice in the representation of Plaintiffs and other Class Members, for which they are jointly and severally liable. KST, Exhibit N, Count Seven, ¶4.

Defendants Nextel, John and Jane Does (1-10) conspired with and bribed Leeds-Morelli and the Lawyer Defendants to and in fact caused Leeds & Morelli and the Lawyer Defendants to breach their contracts with Plaintiffs and other Class Members, for which they are jointly and severally liable. KST, Exhibit N, Count Eight, ¶4.

Defendant Nextel conspired with, aided and abetted, and induced Leeds-Morelli and the Lawyer Defendants to engage in the unauthorized practice of law and professional misconduct and consumer fraud. KST, Exhibit N, Count Nine, ¶7.

Defendant Nextel conspired with, contracted for, and aided and abetted Leeds-Morelli in this conversion of property to further Nextel's interests. KST, Exhibit N, Count Ten, ¶7.

At all relevant times, there has been and continues to be an association in fact of Defendants. The purpose of the association in fact was to engage in payment of bribes to Leeds-Morelli and the Lawyer Defendants, to commit deceit and fraud against Plaintiffs and Class Members for Nextel's benefit and to the detriment of Plaintiffs and Class Members. This association in fact constitutes an "enterprise" within the meaning of N.J.S.A. 2C:41-1(c), and at all relevant times the enterprise has been and continues to be engaged in, and its activities have affected and continue to affect trade and commerce. The enterprise is separate and distinct from each of the respective Defendants' principals, officers, shareholders, members, employees, and particularly, the Lawyer Defendants

16

who have, collectively and individually, participated in the enterprise. The purpose of the enterprise has been and continues to be to engage in fraudulent practices causing damage to the Plaintiffs and other Class Members. Defendants participated in the enterprise and aided and assisted each other in the actions which constitute racketeering activity perpetrated by the enterprise. Upon information and belief, the enterprise is ongoing and within the last two years, has conspired to provide benefits to witnesses who provide false statements regarding their knowledge of and participation in the process which was a result of the conspiracy evidenced in the DRSA Agreement. Leeds-Morelli and the Lawyer Defendants have and have caused third parties to surreptitiously record phone conversations with their former clients. Defendants have conducted and participated in the affairs of the enterprise in the State of New Jersey through a pattern of racketeering activity within the meaning of N.J.S.A. 2C:41-1, thereby violating N.J.S.A. 2C:41-2(c). <u>KST, Exhibit N, Count Eleven, ¶¶2-6</u>The pattern of racketeering activity, as described herein, consists of multiple acts of fraudulent practices, which are acts of "racketeering activity" within the meaning of N.J.S.A. 41:1A(l)(o)– these acts were carried out repeatedly and continuously beginning in at least 1999 and continuing, upon information and belief, to the present date. These acts were also related because they had a common goal, were effected by similar means, had similar results, and have common victims. These acts were continuous, and posed a threat of continuing racketeering activity, in that they were part of the enterprise's regular way of doing business. The acts thus established, and were part of, a "pattern of racketeering activity" within the meaning of N.J.S.A. 2C:41-1(d).

**The pattern of racketeering activity included commercial bribery under N.J.S.A. 2C:21-10(a), wire and mail fraud, and the unauthorized practice of law under N.J.S.A. 2C:21-22. The Defendants entered into multiple secret agreements produced by bribery to adjust**

**Plaintiffs' and the other Class Members' claims in a collusive manner deliberately kept secret from the Plaintiffs and entered into agreements that all Defendants knew were in violations of numerous Rules of Professional Conduct and were profoundly unethical and illegal.** (Emphasis added). As a direct and proximate result of the foregoing violations of N.J.S.A. 2C:41-2(c), Plaintiffs and Class Members have been significantly damaged. As the amount of damage is difficult to determine, the proper measure of such damages is the bribe that was paid by Nextel to Leeds-Morelli and the Lawyer Defendants. KST, Exhibit N, Count Eleven, ¶¶7-9.

Along with the omission of the Highlights provided to Plaintiffs instead of the DRSA and the absence of any mention of the amendments to the DRSA, also missing from Defendants' papers is any mention of the fact that Nextel has faced allegations similar to those in this action in Colorado in a case captioned McNeil and Moore and Leeds, Morelli & Brown, et al. and Nextel Communications, Inc., Case No. 03CV893. KST, Exhibit H. Apparently, plaintiff McNeil's acknowledgment that the agreement was being held somewhere is attached to Defendant Brown's Affidavit as Exhibit 4. No such document has been produced to any of the Plaintiffs. Nextel made an unsuccessful Motion to Dismiss on nearly identical grounds to those currently asserted in the Colorado Court. KST, Exhibit I. In support of said Motion, Nextel primarily argued a general release signed by the plaintiffs in the Colorado action precluded the suit. Nextel also alleged that the Plaintiffs could not challenge the settlement agreements as fraudulent and that their claims of conspiracy were barred by the applicable Statute of Limitations, and the fraud claims were not alleged with sufficient particularity. All of these arguments were rejected by the Honorable John N. McMullen of the Colorado District Court. Judge McMullen found:

> Nextel first moves to dismiss all of plaintiffs' claims contending that plaintiffs have voluntarily given up their right to sue Nextel by plaintiffs' execution of a general

release, which was part of what plaintiffs allege was fraudulent induced DRSA. The Court denies the Motion on this ground for several reasons. First, reliance on a release to defeat plaintiffs' claims is an affirmative defense not yet formally raised in the pleadings and not the subject of a Rule 12(b)(5) Motion. In addition, the determination of whether the release will bar plaintiffs' claims calls for a consideration of matters outside the pleadings, including: whether a document entitled "an individual agreement" defeats plaintiffs' claims of fraudulent inducement; whether the document was executed prior to the execution of the DRSA; and whether by their conduct, Plaintiffs have elected to affirm the DRSA. KST, Exhibit J, ¶3.

Judge McMullen then went on to find:

> Nextel next contends that plaintiffs have not adequately alleged their fraud based claims against Nextel as required by C.R.C.P. 9(b). The Court disagrees. Plaintiffs' fraud based claims are based on the allegation that Nextel failed to disclose an alleged $7.5 million "payoff" to plaintiffs' attorneys in the Nextel lawsuit, which if known to the plaintiffs, would have caused plaintiffs to reject the DRSA. Although the Second Amended Complaint lacks organization and in some instances it appears to merge several claims into a single count. . . the Court finds that it does satisfy the requirements for claims of fraud based on non-disclosure. Among other paragraphs, the plaintiffs' Second Count. . . sets forth the alleged "payoff" of plaintiffs' former attorneys by Nextel. *Id.*, ¶5.

The Court also rejected "Nextel's argument that Nextel had no obligation to disclose anything to the plaintiffs because the "obligation application was solely that of plaintiffs' attorneys." A party to a contract whose non-disclosure amounts to the concealment of a material fact may be liable in tort for misrepresentation. The Court in Colorado dismissed only the Colorado plaintiffs' claims under the Colorado Consumer Protection Act and the claims for commercial bribery. The plaintiffs in Colorado conceded that there was no civil claim for commercial bribery in that jurisdiction. As shall be set forth below and as acknowledged by Nextel in its moving papers, there is a cause of action for commercial bribery in this state and that determination is not relevant to this action. The Plaintiffs in this action consent to a dismissal of their claims under the Consumer Fraud Act.

19

Similarly, certain individual attorney Defendants of Leeds-Morelli moved to dismiss the allegations of the Colorado plaintiff's claims by claiming that their conduct could not be considered outrageous. This Motion was also denied by Judge McMullen, who found that

> The essence of plaintiffs' outrageous conduct claim is that the LMB attorney defendants concealed from plaintiffs, their clients in the case against Nextel involving racial and sexual harassment, the fact that the law firm had accepted an offer to settle which included the law firm getting millions of dollars from Nextel and the clients' representation being severely compromised. The Court cannot conclude as a matter of law that this conduct could not be considered outrageous.

The plaintiffs in the Colorado case have recently served expert reports. See <u>Certification of Angela Roper (hereinafter "AMR"), Exhibit A</u>. Michael T. Mihn, Esquire, a member of the Colorado and California Bars, opines:

> Ms. Ashton-Moore testified that after she reviewed the DRSA, she realized that "they [LM&B] weren't working for us; they were working for Nextel." *Ashton-Moore Depo., Vol. I, pgs. 124:11-20.* She was right. LMB's conduct in this case is appalling.

> It is my opinion that LM&B breached the standard of care required of lawyers handling litigation matters by negotiating, agreeing to and advising their clients to agree to the DRSA, as written. It is my opinion that LM&B also breached its fiduciary duties and violated the Colorado Rule of Professional Conduct.

> My reasons are these: it is my opinion that, when faced with the financial exposure and negative publicity of a massive race discrimination lawsuit, Nextel set a trap. It baited the trap by dangling millions of dollars before the claimants' lawyers. The LM&B lawyers took the bait, and walked with their clients into the trap. Nextel ensnared the claimants in an onerous and one-sided process that (i) required mandatory mediation and arbitration, (ii) included a very strict confidentiality agreement with significant penalties or liquidated damages if the clients or LM&B breached confidentiality, (iii) restricted LM&B's ability to take or refer other potential clients to other lawyers, (iv) limited LM&B's ability to associate with other counsel who might help them, (v) truncated the litigation scheduled to a 45-week time likely (and, probably, calculated) to overwhelm LM&B and limit their ability to properly prepare their clients' cases, (vi) imposed a procedure and discovery process that allowed Nextel to overwhelm the claimants and LM&B with discovery, (vii) imposed a mediation process that allowed Nextel to negotiate in bad faith or not at all, (viii) imposed a $50,000 per month financial penalty on LM&B if it did not

meet the deadlines and schedule, and (ix) contained an agreement that effectively tied LM&B to Nextel for at least two years. **In short, Nextel co-opted and bought the claimants' lawyers.**

**Once the claimants were trapped in the system that their lawyers negotiated for them, Nextel ruthlessly exploited its advantage.** *See, e.g., Affidavit of Steven Morelli; Amendment No. 2; Amendment No. 3.* (Emphasis added).

While the Court is required to accept the allegations of the Complaint as true, nevertheless, the Plaintiffs' allegations that they never saw the Dispute Resolution Settlement Agreement (DRSA) is corroborated by the allegations in the Colorado suit and dozens of other clients. KST, Exhibit M, ¶15.

## ARGUMENT

## I. STANDARDS FOR A MOTION TO DISMISS

The issue on a Motion to Dismiss in not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support his claims. *Semerenko, supra.* The question before the Court on a Motion to Dismiss is whether the plaintiff can prove any set of facts in support of his or claim that would entitle him to relief. *Farmers and Merchants Nat. Bank v. San Clemente Financial Group Securities, Inc.*, 174 F.R.D. 572 (D.N.J. 1997). To withstand a Motion to Dismiss for failure to state a claim, a plaintiff need only make out a claim upon which relief can be granted; if more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules. *Alston v. Parker*, 363 F. 3d 229 (3rd Circ. 2004). The Court shall allow the plaintiff an opportunity to amend the complaint instead of dismissing it, where a more carefully drawn complaint might state a claim upon which relief can be granted. *JMA v. U.S. Ins.*, 22 F. Supp. 2d 353 (D.N.J. 1998).

## II. THE RELEASES AND INDIVIDUAL AGREEMENTS SIGNED BY PLAINTIFFS DO NOT BAR THEIR CLAIMS

21

A.    **Neither the Individual Agreement nor the Releases Established that Plaintiffs read the DRSA.**

Contrary to the assertions of Nextel, neither the Individual Agreement (IA) nor the Releases establish that the Plaintiffs read the DRSA or had any opportunity to learn of its contents. A reading of the IA reveals that it refers to a dispute resolution and settlement agreement but in no way identifies said dispute resolution and settlement agreement as the DRSA dated September 28, 2000. KST, Exhibit F. Indeed, as set forth in Plaintiffs' complaint in detail the Plaintiffs were not provided with a copy of the DRSA but instead were provided with highlights of same. KST, Exhibit N. ¶ 46-47, 105-107. Defendants have not and presumably cannot produce any document signed by the Plaintiffs indicating they read the specific DRSA, and Defendants do not even claim that the Plaintiffs knew of the secret amendments to the DRSA. KST, Exhibits C-E. As the factual predicate for Defendants Motion to Dismiss is simply wrong, their motion must be denied.

B.    **Defendant Nextel Should be Collaterally Estopped From Arguing Either the Individual Agreement or the Releases Bar the Plaintiffs' Claims in That Another Court has Already Decided that the Plaintiffs' Claims of Fraud and Conspiracy Prevent Judgment on the Pleadings.**

Defendant Nextel moved to dismiss in the Colorado litigation, making arguments substantially identical to the one it makes to this Court. Indeed, the Colorado Court, under Colorado's Rule of Civil Procedure 12(b)(5), reviewed these allegations by the same standard that this Court reviews a Motion made pursuant to 12(b)(6). KST, Exhibit J. In Colorado, a Motion pursuant to Colorado Rule Civil Procedure 12(b)(5) requires the Court to view the allegations in the Complaint in a light most favorable to plaintiff and may only be granted when: (a) plaintiff can prove no set of facts to support a claim which would entitle plaintiff's relief; and (b) there is no legal theory in relation to the allegation which would entitle plaintiff relief. See *Dunlap v. Colorado*

22

*Springs Cablevision, Inc.*, 829 P. 2d 1286, 1290-91 (Colo. 1992). Considering this identical argument, the Court held that the release did not bar plaintiffs' claims, given the Colorado plaintiffs' allegations that Leeds-Morelli concealed the agreement from them and that the Individual Agreement did not accurately reflect knowledge of the DRSA.

While there has not been a final judgment issued in the Colorado litigation, and, thus, all of the elements of collateral estoppel are not present, see *Perez v. Rent-A-Center*, 375 N.J. Super. 63 (App. Div. 2005), it is instructive that when confronted with nearly the identical Motion to Dismiss, another Court found that the factual issues precluded such a dismissal.

In September and October 2000, Leeds-Morelli presented documents entitled Highlights of Settlement Agreement with Nextel ("Highlights"), and Individual Agreement, to Plaintiffs and others with respect to a proposed Dispute Resolution and Settlement Agreement ("DRSA") Leeds-Morelli negotiated with Nextel. The Individual Agreement ("IA") authorized Leeds-Morelli to execute the DRSA on behalf of Plaintiffs. Although a copy of the DRSA was requested by Plaintiffs, Leeds-Morelli <u>refused</u> to deliver a copy of the proposed DRSA to Plaintiffs or others prior to Plaintiffs' execution of the IA, or the execution of the DRSA by Leeds-Morelli. Leeds-Morelli provided only the Highlights, and the IA, to Plaintiffs prior to Leeds-Morelli's execution of the DRSA.

The Highlights prepared by Leeds-Morelli and Nextel did <u>not</u> show that Nextel would deliver a total payment of $5,500,000.00 to Leeds-Morelli upon completion of the proceedings provided in the DRSA. Nextel secretly agreed to pay Leeds-Morelli an <u>additional</u> fee of $83,333.34 per month for twenty-four (24) months {for a total additional payment of $2,000,000.00}, pursuant to a "Consultancy Agreement" which provided that for a period of two (2) years after processing and

resolution of all claims Leeds-Morelli would perform "only such duties and responsibilities as may

be assigned it by Nextel. . ." Leeds-Morelli concealed both the $5,500,000.00 payment and the

$2,000,000.00 payment from Plaintiffs. As a result of the continued lies, misrepresentations and

deception by Leeds-Morelli for the benefit of Nextel, Plaintiffs executed release agreements with

Nextel in 2001.

A review by this Court of the well-pled allegations of the Complaint and the documents

proffered by the Defendants and the Plaintiffs must yield the same result as that reached by Judge

McMullen. The IA, which Defendants claim demonstrates Plaintiffs' knowledge of the DRSA, does

nothing of the sort. The DRSA referenced in the IA is not dated, and the Plaintiffs have set forth

that the only agreement that they were given was the Highlights. KST, Exhibit F; Certifications of

Dymkowski, Johnson, Samuel and Waters. Furthermore, the IA indicates only that Nextel agreed

to pay an amount of money to Leeds-Morelli for the attorney's fees and expenses that claimants

might otherwise pay to Leeds-Morelli and for which claimants might otherwise reimburse LMB.

Any client reading this language would be deceived into thinking that Nextel was paying Leeds-

Morelli based upon their representation of the individual Plaintiffs – a fact which is contrary to the

actual terms of the DRSA. In fact, a review of what was provided to the clients – the DRSA was

not – demonstrates that the summary of terms conceals more than it illuminates. For example, the

Highlights contains only the following disclosures about Leeds-Morelli's attorney's fees and the

consultancy arrangement:

> 29. Nextel is paying each of claimant's attorney's fees and expenses other
> than expert witness fees in consideration for each claimant participating in the DRP.

> 30. After processing the resolution of all the claims in the DRP, LMB will
> be hired by Nextel to serve as a consultant to its companies for a two-year period,
> provide assistance and legal advice to the companies that they may request

24

regarding their anti-discrimination and diversity policies and programs (the consultancy).    Claimant further acknowledges and understands that such consultancy presents a conflict of interest for LMB, and claimant hereby knowingly and voluntarily waive [*sic*] any objection to such conflict.  <u>KST, Exhibit F</u> .

The Highlights did not disclose: (1) that Nextel would pay Leeds-Morelli a total of $7.5 million and that such payments were wholly unrelated to the recovery on behalf of the clients or the amount of time that Leeds-Morelli spent representing the clients; (2) the timing of the payments, the $50,000.00 per month penalty, or the implications of that timing, or the penalty on the client's case; (3) any conflicts of interests other than the consultancy, and there was no written explanation as to why the consultancy created a conflict of interest, or how the conflicts might adversely effect the representation of the clients; (4) that Leeds-Morelli had promised to violate numerous Rules of Professional Conduct in exchange for the multi-million dollar bounty.  The statements that individual counsel could review the consultancy agreement are seemingly contradicted by the "pledge of good faith," which is attached to Defendant Brown's Affidavit as Exhibit 4, indicates that only "the claimants" can review these agreements by contacting representatives in their area.

As alleged in the First Amended Complaint, Plaintiffs assert the DRSA, and the releases entered by and between Plaintiffs and Nextel, were based on fraud.  Plaintiffs allege that Nextel, acting in collusion with Leeds-Morelli, crafted the DRSA in secret, refused to permit Plaintiffs to review the DRSA prior to executing the IA, and presented erroneous and misleading Highlights of the DRSA to Plaintiffs prior to Plaintiffs' execution of the releases.  Plaintiffs assert the terms of the DRSA which were omitted in the Defendants' Highlights would have caused Plaintiffs, or reasonable persons in Plaintiffs' position, to refuse to sign the DRSA had the omitted provisions of the DRSA been presented to Plaintiffs prior to their execution of the DRSA.

Nextel asserts that Plaintiffs have given up their right to sue Nextel through their execution of a General Release. However, in New Jersey a contract may be void and unenforceable if procured through fraud. *Billotti v. Accurate Forming Corp.*, 39 N.J. 184 (1963); *Wojick v. Pollock*, 97 N.J. Super 319, 324 (Law 1967). To establish a *prima facie* case of fraud, Plaintiffs must present evidence that Nextel and Leeds-Morelli conspired to make false representations of material facts; that the persons making the statements intended that Plaintiffs act on it; and that the misrepresentation resulted in damages. *Banco Popular v. Gandi*, 184 N.J. 161 (2005). Under these circumstances, the allegations that Nextel secretly paid a $7,500,000.00 bribe to Leeds-Morelli to ensure their assistance in limiting Plaintiffs' damage recoveries, and contrived to conceal material provisions of the DRSA and its amendments from Plaintiffs, will permit the trier of fact to conclude that Nextel engaged in fraudulent behavior.

Under the common law, fraud in the inducement can include not disclosing essential information. See generally E. Allan Farnsworth, Farnsworth on Contracts secs. 4.10-11, at 446-56 (2d ed. 1998). To find fraudulent concealment, the court must find that (1) the party concealed a material existing fact that in equity and good conscience should be disclosed; (2) the party knew it was concealing such a fact; (3) the other party was ignorant of the existence of the fact concealed; (4) the concealment was practiced with the intent that it be acted on; and (5) the concealment resulted in damage to the other party. *Banco Popular*, *supra*. Direct evidence of each element of a fraudulent nondisclosure claim is not always required because fraud may be inferred from circumstantial evidence.

Plaintiffs allege that Nextel engaged in the following illegal, improper, fraudulent, and/or duplicitous conduct:

26

1. Nextel negotiated a secret agreement (DRSA) which essentially constituted a bribe of Plaintiffs' lawyers to settle Plaintiffs' claims for an amount that was less than their true value, in exchange for Nextel's payment of $5,500,000.00 as a "flat fee" to Leeds-Morelli.

2. As a condition of the DRSA, Nextel added to the buy-off of Leeds-Morelli by agreeing to retain Leeds-Morelli as "consultants" for an additional payment of $83,333.34 per month for 24 months (for an additional payment of $2,000,000.00 to Leeds-Morelli).

3. Nextel, through its attorneys, suggested and promoted the flat fee arrangement to Leeds-Morelli in an effort to induce Leeds-Morelli to violate their fiduciary obligations to Plaintiffs.

4. Nextel, through its attorneys, suggested and promoted the "consultancy" arrangement to Leeds-Morelli in an effort to induce Leeds-Morelli to violate their fiduciary obligations to Plaintiffs.

5. In the agreement proposed by Nextel, Leeds-Morelli was induced to enter into an agreement in which Leeds-Morelli improperly agreed to restrict its right to practice law in violation of Rule 5.6(b) of the New Jersey Rules of Professional Conduct.

6. Nextel induced Plaintiffs' counsel, Leeds-Morelli, to agree that Plaintiffs could not retain counsel, other than Leeds-Morelli, during any portion of the dispute resolution process ("DRP") set out in the DRSA. (See Section 7(a) of the DRSA).

7. The DRSA provided Nextel will withhold payments to Leeds-Morelli if all claims were not promptly processed, and that Nextel could deduct $50,000.00 per month from all payments for each month after the "DRP Conclusion Date" that the processing or resolution of claims had not occurred. Leeds-Morelli was thereby incentived to complete proceedings promptly, and not to seek the best resolution of claims for class members, including Plaintiffs.

8. Nextel and Leeds-Morelli entered in an Agreement (Amendment No. 3), which they do not claim was disclosed to Plaintiffs or other Claimants, in which Nextel and Leeds-Morelli agreed to create a Settlement Fund capping the amount payable to all Claimants, and which capped the amount receivable by any individual Claimant to the amount of $25,000.00.

9. In an effort to provide financial incentives to Leeds-Morelli to resolve all claims promptly, Nextel modified the DRSA, without disclosing the modification to Plaintiffs or other Claimants, to provide deductions from the amounts receivable by Leeds-Morelli pursuant to the consultancy agreement if any Claimant initiated a "proceeding" against Nextel.

27

10. On information and belief, Nextel was aware that Plaintiffs, and other class members, were not provided copies of the DRSA, although the terms of the DRSA specifically mandated the provision of copies of the agreement to all class members.

The above allegations are sufficient to state averments of material fact which, if accepted as true, sufficiently assert that Nextel, in concert with Leeds-Morelli, engaged in fraudulent conduct which caused damage to Plaintiffs, and that Nextel and Leeds-Morelli engaged in conduct which constituted fraudulent concealment of their activities. This fraud prevents Defendants from claiming that the signatures on the DRSA or the IA entitles them to a dismissal of Plaintiffs' Complaint. There is nothing in the IA that indicates that the clients read the DRSA proffered by the Defendants herein. Indeed, the Complaint makes clear that the clients asked for this and were not given it and never saw the DRSA until 2003. See Complaint, ¶107; Certifications of Waters, Dymbrowski, Johnson and Samuels.

Conspicuously absent from Defendants' arguments regarding the release and the IA is any mention of the three amendments. KST, Exhibits C, D, and E. Defendants do not, and presumably cannot, contend that the Plaintiffs knew anything about these amendments to the DRSA. Certainly, the Defendants cannot deny that these amendments significantly affected Plaintiffs' rights and the representation of its attorneys and that the amendments provide further evidence of the conspiracy alleged by Plaintiffs between Nextel and Leeds-Morelli. For example, Amendment Three provided that in the aggregate, clients could not recover any more than what was in the net settlement fund with a cap of $25,000.00 for each client. Under this Amendment, Leeds-Morelli was required to deliver to Nextel a signed and notarized general release from each remaining client with Leeds-Morelli to insert the amount that each client would receive in the settlement. The net settlement fund was to be reduced by the amount of the settlement for the client. KST, Exhibit E. Thus, the

28

releases obtained by Leeds-Morelli to serve its co-conspirator, Nextel, were obtained pursuant to this undisclosed amendment to the agreement, which is not referenced in the release or the IA, and the unethical and illegal secret aggregate settlement contained therein. Discovery will presumably reveal what additional written and unwritten further agreements existed between the Defendants.

The releases themselves were obtained at a time that the Plaintiffs were being represented by Leeds-Morelli and were unaware of Leeds-Morelli's unethical conduct and sale of its fiduciary duty to Nextel. In that Nextel conspired with Leeds-Morelli to bribe Plaintiffs' attorneys and conspired with Leeds-Morelli to defraud Plaintiffs into thinking they were being represented by attorneys looking out for their interests rather than Nextel's, the releases were obtained by fraud, and, thus, unenforceable. *Mullen v. New Jersey Steel Corp.*, 733 F. Supp. 1534 (D.N.J. 1990) (release enforceable absent fraud); *John N. Price & Sons v. Maryland Casualty Co.*, 50 F. Supp. 319 (D.N.J. 1943); *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184 (1963); *Wojcik v. Pollack*, 97 N.J. Super. 319 (Law 1967). Further, it cannot be contested for purposes of these Motions that the Defendants did not know of the true contents of the DRSA or the amendments.

The allegations in the Second Amended Complaint contain assertions that Nextel engaged in conduct which constituted an attempt to bribe or "buy-off" Plaintiffs' attorneys, that Nextel and Leeds-Morelli fraudulently concealed and misrepresented their relationship to Plaintiffs, and that Nextel and Leeds-Morelli colluded in the misrepresentation of the terms of the DRSA to the Plaintiffs. It is without reasonable question that such acts, if proven, constitute fraud. Nextel's conduct evidences a trick or contrivance intended to exclude suspicion and prevent inquiry, and is sufficiently fraudulent to void the DRSA and any releases executed by Plaintiffs. Analogous cases from other states support the proposition that inequitable conduct includes knowledge by one party

29

of misrepresentations and the failure to correct them. This is particularly true where, as is the circumstance here, there is evidence of affirmative fraud or inequitable conduct beyond mere silence. See, e.g., *Jones v. Reliable Security Incorporation, Inc.*, 28 P. 3d 1051 (Kan. App. 2001); *Hennig v. Ahearn*, 601 N.W. 2d 14 (Wis. App. 1999).

New Jersey has recognized that conduct less egregious than Nextel's herein constituted a bribe. In a July 23, 2003 decision, the New Jersey Disciplinary Board, in *The Matter of Zaruba*, found that Zaruba, an attorney for Warner-Lambert, a pharmaceutical company, violated RPC 5.6(b) (offering or making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties). The Disciplinary Board noted that Warner-Lambert learned of a potential class action against the company related to one of its products, a treatment for head lice. On Warner-Lambert's behalf, Zaruba contacted plaintiffs' counsel, whom he knew from a prior lawsuit, and negotiated a settlement agreement which restricted plaintiffs' counsel's rights to practice in violate of RPC 5.6(b). In addition, plaintiffs' counsel was to be paid $225,000.00 by Zaruba's client, Warner-Lambert, for purported activities related to the litigation. The Disciplinary Board stated that "Here, respondent (Zaruba) essentially bribed two attorneys not to pursue future claims against Warner-Lambert for $225,000.00. . . Warner-Lambert was able to "buy-off" the plaintiffs' claims for $235,000.00: the $225,000.00 paid to Hager and Traficonte (plaintiffs' attorneys) plus the $10,000.00 maximum in refunds that Warner-Lambert had to pay to the clients." <u>KST. Exhibit O.</u> Zaruba's license to practice law was ordered suspended for a period of one year. 177 N.J. 564 (2003).

Although this matter does not involve disciplinary proceedings with respect to Nextel's attorneys, it is significant that the New Jersey Disciplinary Board determined that the actions of

Warner-Lambert's attorneys, which are similar to those of Nextel's attorneys, constituted an attempt to "buy-off" plaintiffs' attorneys, which is analogous to Plaintiffs' claims herein.

Similarly, Nextel's participation in the agreement to retain opposing counsel after settlement pursuant to a "consultancy" agreement interfered with Plaintiffs' relationship with their attorneys and was violative of legal ethics by Nextel's attorney. Two lawyers tried that and became the respondents in a disciplinary action in the State of Oregon. *In re Brandt*, 10 P. 3d 906 (Ore. 2000). In that action plaintiffs' lawyers entered into a settlement agreement that provided that the defendant would retain them after the settlements were final. This would have had the effect of preventing the lawyers from taking on any new cases against the defendant. The court held that the settlement violated Ore. DR 2-108(B), Oregon's version of R.P.C. 5.6(b), and that it created a conflict of interest in violation of Ore. DR 5-101(A)(1). The lawyers were suspended.

Two BellSouth lawyers were sanctioned by a federal judge in Miami, Florida for participating in an agreement in which plaintiffs' attorneys, in exchange for settlement of a case, agreed not to represent any current or former employee of BellSouth for a year, and agreed that plaintiffs' attorneys would enter into a consulting agreement with BellSouth. See *Adams v. BellSouth Telecommunications, Inc.*, 2000 WL 33941851 (S.D. Fla. 2000). In that action, the Court found that BellSouth's attorneys, who had not proposed or suggested the unconscionable provisions, and were protecting their clients in the face of legal tactics by plaintiffs' counsel "which bordered on the extortionate." had nevertheless violated ethical standards.

The allegations with respect to Nextel's actions in this action are far more reprehensible than those in the *Zaruba* or *BellSouth* actions in that the facts will show that the unconscionable provisions of the DRSA, and the payouts of buy-offs, were suggested, promoted and insisted on by

31

Nextel, through its attorneys. Proposing and mandating such an agreement created conflicts of interest between Plaintiffs' lawyers, who would normally be expected to oppose such a limitation, and Plaintiffs, who may wish to achieve a more favorable settlement than the terms offered. Thus, such agreements are generally void and unenforceable.

It is patently unethical and illegal for a party to claim, or for a lawyer for the party, to "buy-off" opposing counsel, or to induce opposing lawyers to violate an ethical rule, and it would be anomalous to permit Nextel to retain counsel to engage in such prohibited activities and permit Nextel to hide behind the assertion that they are not legally liable for their attorneys' depredations because the clients were deceived into signing documents by their bribed attorneys.

Leeds-Morelli's allegations that Plaintiffs signed the contracts and their implicit denial of the bait and switch by which Leeds-Morelli gave Plaintiffs false advice and the misleading Highlights rather than the contract itself, of course, requires the Court to discard the standards on the Motions to Dismiss. It is plain that Leeds-Morelli has no grounds to so move, and its claim that the holding in *Puder v. Buchel*, 183 N.J. 428, 443, would entitle them to prevail on a Motion to Dismiss for legal malpractice is frivolous. Pursuant to 12(b)(6), there can be no claim that Plaintiffs knew of Leeds-Morelli's defalcations when Plaintiffs signed the release or that Plaintiffs were settling their claims against their attorneys. Leeds-Morelli's reliance on the release is particularly curious in that the release does not indicate it releases any claim against Leeds-Morelli and Leeds-Morelli was acting as Plaintiffs' attorneys and counseled them to enter into the release in accordance with its agreement with Nextel in the secret Amendment Three. It is plain that the Defendants' reliance upon the release and their claims that the IA conclusively established that the DRSA was disclosed to the Plaintiffs must fail on a Motion to Dismiss.

32

While there are certain factual differences, an examination of the recently decided case, Lederman v. Prudential Life Insurance Co., 385 N.J. Super. 324 (App. Div. 2006) is instructive regarding Defendants' contentions regarding the IA and the releases. Lederman also involved a situation where Leeds-Morelli took a multi-million dollar payment from a supposed adversary and concealed same from their client. In the Lederman case, Lederman executed, in exchange for payment of $500,000.00, a settlement agreement and general release. This settlement agreement and general release incorporated an agreement by which Leeds-Morelli was to be paid a muli-million dollar "fee" by its adversary. Like the Plaintiffs in the instant action, Lederman claimed that Leeds-Morelli, through a conspiracy with its adversary, concealed material terms, including the multi-million dollar payments to Leeds-Morelli from him. The release signed by Lederman, like the releases in this case, incorporated the agreements entered into between Leeds-Morelli and the company it was purportedly adverse to. 385 N.J. Super. 335-336. In Lederman, the Appellate Division held that the Trial Court had erroneously sent the plaintiff's claims to arbitration. The Appellate Division further held that the Defendants' alternative argument that Lederman's claim should be dismissed on the merits because of Lederman signing the agreements, including the release, could only be decided after the plaintiff received discovery. The Court indicated that Lederman's claims that he was "coerced or fraudulently induced into signing the agreements. . . creates a factual dispute that requires resolution by trial or plenary hearing as appropriate after parties have had an opportunity for discovery." Lederman, 385 N.J. Super. at 346. Similarly here, the issue of the conspiracy between Nextel and Leeds-Morelli and the resultant fraud and breach of fiduciary duty, which Plaintiffs maintain produced the releases and signatures in question, must be explored in discovery and cannot be dismissed for failure to state a claim.

33

Finally, Plaintiffs did not receive a copy of the DRSA prior to 2003, had never seen the DRSA before 2003, did not know Leeds-Morelli and Nextel agreed to a buy-off of $7,500,000.00 and, thus, Plaintiffs did not know of facts which would cause them to suspect that Nextel may have bought off Leeds-Morelli prior to 2003. Certifications of Dymkowski, Johnson, Samuel and Waters. Plaintiffs also did not know that Leeds-Morelli and Nextel may have engaged in misrepresentations of facts, and did not know of facts from which they could conclude that Nextel may have engaged in conduct which constituted fraud and bribery. In addition, in view of the length and complexity of the DRSA, and the professional and ethical violations, Plaintiffs needed substantial time to review the DRSA, consult with counsel with respect to deciphering the complicated document, and to make a reasoned determination with respect to whether they were damaged and, if so, whether Nextel or Leeds-Morelli may be liable for Plaintiffs' damage or injuries. It is plain that the releases Plaintiffs signed did not release the Plaintiffs' claims against Defendants for commercial bribery, conspiracy, fraud, breach of fiduciary duty and the like that are pled in this action because Plaintiffs were unaware of these claims when they signed the releases.

### III. PLAINTIFFS' COMPLAINT STATES WELL-PLED CAUSES OF ACTION AGAINST NEXTEL FOR COMMERCIAL BRIBERY.

As set forth in Plaintiffs' Complaint, the Plaintiffs alleged that Leeds-Morelli conspired with Nextel to keep the multi-million dollar payments from the Plaintiffs. A reading of the IA and the Plaintiffs' signature thereon is not inconsistent with this conclusion. The IA does not recite the amount of payments to Leeds-Morelli, or, indeed, that it is unrelated to any work that Leeds-Morelli might actually perform on the Plaintiffs' behalf. Nextel could have drafted documents providing such disclosure – it did not. Plaintiffs intend to prove that Leeds-Morelli and Nextel conspired to keep these payments secret from the Plaintiffs because they knew if Plaintiffs learned of same, they

34

would not have gone forward with this transaction. This conspiracy is evidenced by the secret amendments which demonstrate that Leeds-Morelli was beholden to Nextel and not its clients. It is also demonstrated by the misleading "Highlights" document which Leeds-Morelli used to obtain Plaintiffs' signatures on the IA.

Contrary to Defendants' contentions, a commercial bribe need not be "secret" under New Jersey statutes, all it need be is a payment offered to have a person accept any benefit for knowingly violating or agreeing to violate a duty of fidelity to which he is subject. N.J.S.A. 2C:21-10. As set forth in the allegations herein, the Plaintiffs allege that the DRSA and payments thereunder were kept secret from them and that the subsequent amendments in which Leeds-Morelli compromised Plaintiffs' rights in exchange for these payments constituted a commercial bribe.

As set forth above, the Plaintiffs' signatures on the IA and the releases do not change the fact that they have a claim for commercial bribery. Indeed, the DRSA was not seen by Plaintiffs, provides evidence of such commercial bribery for an exchange of a multi-million dollar payment the Leeds-Morelli contracted to violate their ethical duties to the Plaintiffs. Nextel explicitly paid Leeds-Morelli for violating their duties to their clients.

## IV. PLAINTIFFS' CLAIMS ALLEGING FRAUD HAVE BEEN APPROPRIATELY PLED.

In all averments of fraud, the circumstances constituting fraud or mistake shall be stated with particularity; however, at this stage of the proceedings, the Court must accept all averments of material fact contained in the Complaint as true. Applying the above standard to the allegations in the Amended Complaint, it is clear the allegations contain sufficient particularity to satisfy the requirements of a federal pleading.

Here, the Plaintiffs have sufficiently alleged the fraud with specificity to survive Defendants'

35

Motions to Dismiss. The Plaintiffs have set forth that the concealment of the DRSA and the providing of the misrepresentations in the Highlights constituted a fraud. Furthermore, the Plaintiffs have pled that the concealing of the amendments constituted a fraud. Under these circumstances, Plaintiffs' claims cannot be dismissed for failure to state a claim.

One commits fraud when he makes a false representation of a material existing fact, knowing that it is false, with intent that it be acted upon, and the person to whom the representation is made, in ignorance of the truth, relies upon the misrepresentation. One may also commit fraud by concealing material existing facts that in equity and good conscience ought to be revealed. *Banco Popular, supra*; *City Check Cashing Inc., v. Hanover Trust Company*, 166 N.J. 49, 50 (2001); *Winslow v. Corporate Express Inc.*, 364 N.J. Super 128, 140 (App. Div. 2003); *United Jersey Bank v. Kensey*, 306 N.J. Super 540, 551 (App. Div. 1997).

Under the common law, fraud in the inducement can include not disclosing essential information. See generally E. Allan Farnsworth, Farnsworth on Contracts, §§4.10-11, at 446-56 (2d ed. 1998). To find fraudulent concealment, the Court must find that (1) the party concealed a material existing fact that in equity and good conscience should be disclosed; (2) the party knew it was concealing such a fact; (3) the other party was ignorant of the existence of the fact concealed; (4) the concealment was practiced with the intent that it be acted on; and (5) the concealment resulted in damage to the other party. Direct evidence of each element of a fraudulent nondisclosure claim is not always required because fraud may be inferred from circumstantial evidence.

The Plaintiffs' Complaint sets forth that Nextel conspired to have Leeds-Morelli make deliberate misrepresentations of material facts to Plaintiffs, such as Leeds-Morelli's misrepresentation that they were advocates for Plaintiffs' interests, had an adversarial relationship

36

with Nextel, they were litigating Plaintiffs' claims on the merits, and that their loyalty was to

Plaintiffs, and not to Plaintiffs' adversary, Nextel, and that the Plaintiffs would not be responsible

for the costs and expenses in litigating these claims.  KST, Exhibit N, Count Three, ¶2.  The

Plaintiffs also set forth in the pleading, with specificity, that the Lawyer Defendants failed to

disclose material factual information that they were required to disclose in writing to Plaintiffs, such

as that they had been paid millions of dollars by Nextel to render specific advice to their clients, that

they had agreed to an aggregate settlement on behalf of their clients, that they had entered into

separate secret agreements with Nextel alone, and that they owed contractual duties and obligations

to Nextel in exchange for the multi-million dollar payment, and that the clients were entitled to two-

thirds of this multi-million dollar payment that the Lawyer Defendants had a pecuniary interest

adverse to Plaintiffs.  KST, Exhibit N, Count Three, ¶3.  The pleadings set forth that these

misrepresentations were known by the Defendants to be false, and the Defendants knew that the

failure to disclose this information was done for the purpose of defeating Plaintiffs and to further

the conspiracy among the Defendants.  Id., ¶6.  This Count also sets forth that the Plaintiffs relied

upon these misrepresentations.

At this time, prior to conducting discovery, the full extent of Nextel's involvement and

participation in Leeds-Morelli's deceptive conduct cannot be known.  Although Leeds-Morelli and

Nextel were putative "adversaries" with respect to Plaintiffs' claims, the fact that Nextel and its

attorney agents are alleged to have bribed Plaintiffs' attorneys when they suggested and proposed

to pay Leeds-Morelli $5,500,000.00 as a flat fee for its legal services in the representation of

Plaintiffs and others, and suggested and proposed to pay Leeds-Morelli an additional $2,000,000.00

as "consultants" presents factual allegations which, if proven, will support the claim of fraud.  As

noted above, numerous courts have determined that the activities allegedly engaged in by Nextel and its attorneys violate legal ethical standards and may constitute "bribery." *Lederman*, *supra*.

Nextel apparently suggests that even if it is proven that Nextel bribed Plaintiffs' attorneys, and that as a result of the bribery Leeds-Morelli concealed material information from Plaintiffs and misrepresented the terms of the DRSA to Plaintiffs, Nextel has not engaged in fraudulent activities. Contrary to Nextel's assertions, Plaintiffs have alleged that Nextel and Leeds-Morelli conspired in an effort to defraud Plaintiffs. KST, Exhibit N, Count Three.

As noted above, when receiving a motion to dismiss under Rule 12(b)(5), all averments of material fact must be accepted as true, and all of the allegations in the complaint must be viewed in the light most favorable to the plaintiff. A complaint need not express a complete recitation of all facts that support the claim, but need only serve notice of the claim asserted. In the unlikely event that the Court finds the Plaintiffs' allegations are lacking in specificity, the appropriate remedy is to allow Plaintiffs to file an amended pleading with more specific averment.

## V. PLAINTIFFS HAVE PROPERLY PLED CLAIMS FOR CONSPIRACY TO BREACH FIDUCIARY DUTY, TO COMMIT FRAUD, TO TORTIOUSLY INTERFERE WITH THE PLAINTIFFS' CONTRACT WITH LEEDS-MORELLI, AND TO CAUSE LEEDS-MORELLI TO COMMIT LEGAL MALPRACTICE AND BREACH THEIR CONTRACTS WITH PLAINTIFFS.

Plaintiffs have properly pled that Nextel conspired with Leeds-Morelli to cause Leeds-Morelli to breach their fiduciary duty, to commit fraud, to tortiously interfere with Plaintiffs' contract with Leeds-Morelli, and to cause Leeds-Morelli to commit legal malpractice and to breach their contracts with Plaintiffs.

Counts One, Three, Seven, Eight and Ten state causes of action against Nextel for conspiracy to breach the fiduciary duty owed to Plaintiffs; conspiracy to commit fraud (Count

Three); conspiracy to cause Leeds-Morelli to commit legal malpractice (Count Seven); conspiracy to cause Leeds-Morelli to breach their contract with Plaintiffs (Count Eight); and conspiracy to engage in a pattern of racketeering activity (Count Ten). In New Jersey, a civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means; the principal element of conspiracy is an agreement between two parties to inflict a wrong against or injury upon another in an overt act that results in damage. *Banco Popular North America v. Gandi*, 184 N.J. 161. Civil conspirators are jointly liable for the underlying wrong in resulting damages. *Id.* See also *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D.N.J. 1998); *Lopez v. Swyer*, 62 N.J. 267 (1973). Plaintiffs' claims of conspiracy are well-pled and cannot be dismissed for failure to state a claim.

## VI. PLAINTIFFS HAVE STATED A VALID RICO CLAIM WHICH WAS FILED WITHIN THE STATUTE OF LIMITATIONS.

The statute of limitations runs on a RICO claim when the plaintiff knew or should have known of their injury. Here, Plaintiffs did not become aware of their injury until 2003. *Certifications of Waters, Johnson, Samuels, Dymkowski.* Here, the Plaintiffs alleged that the Defendants concealed the DRSA and the amendments to it from them and instead presented them with the misleading summary. The Defendants were in a position to disclose to the Plaintiffs the facts of the DRSA and have the Plaintiffs sign a document acknowledging such disclosure – they did not. Under *Lopez, supra*, the Plaintiffs' cause of action did not accrue until they knew or should have known of the facts which gave rise to their causes of action. Here, Plaintiffs only learned of the unethical contents of the DRSA and the amendments thereto in 2003, less than four years before they filed their Complaint. Plaintiffs here had no reason to suspect that their attorneys had been

bribed and acted unethically until learning of same through media reports.

Nextel's other claim that the Plaintiffs may not bring a RICO claim because "the only harm possibly suffered by Plaintiffs would be the difference in the amount of money they received in settlement through the DRP versus the amount they would have received if they had brought suit against Nextel," is simply erroneous.  In an action for commercial bribery, damages are presumed and consist of the amount of the bribe. *Franklin Medical Assoc. v. Newark Public Schools*, 362 N.J. Super. 494 (App. Div. 2003).

The Plaintiffs have set forth numerous predicate acts regarding commercial bribery and fraud. The predicate acts are sufficiently set forth in the Complaint.  However, in the event that the Court deems that Plaintiffs must plead more specifically, the remedy is not dismissal, but granting Plaintiffs leave to re-plead.

## CONCLUSION

Defendants' Motions to Dismiss must be denied in their entirety.  Plaintiffs consent to the dismissal of Count Ten (Conversion) as to Defendant, Nextel and Count Nine (Consumer Fraud) as to all Defendants.

Respectfully submitted,

s/Kenneth S. Thyne

Kenneth S. Thyne

KST:mk