EXHIBIT H

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI,) | |
| PATRICIA LONG-CORREA, ANTONIO SAMUEL) | |
| VINCENT HALL, ANGELETTE WATERS,    ) | |
| Individually, and on behalf of the Class,    ) | CIVIL ACTION No. 06-5547(DMC)(MF) |
| Plaintiffs,    ) | |
| vs.    ) | |
| NEXTEL COMMUNICATIONS, INC., a Delaware ) | |
| Corporation; LEEDS, MORELLI & BROWN, P.C.; ) | |
| LENARD LEEDS, STEVEN A. MORELLI,    ) | |
| JEFFREY K. BROWN; JAMES VAGNINI,    ) | Return Date:  February 12, 2007 |
| FREDERIC DAVID OSTROVE, BRYAN    ) | |
| MAZOLLA; SUSAN FITGERALD; AND JOHN    ) | |
| AND JANE DOES 1-10 (a fictitious designation for ) | |
| Presently unknown Defendants),    ) | |
| Defendants.    ) | |

---

## PLAINTIFFS' BRIEF IN OPPOSITION OF DEFENDANTS' MOTION FOR TRANSFER OF VENUE

---

Roper & Twardowsky, LLC
77 Jefferson Place
Totowa, New Jersey 07512-2614
(973) 790-4441

Houston & Totaro
Attorneys-at-Law
56 Broad Street, Suite 1
Bloomfield, N.J. 07003
(973) 748-4580
Attorneys for Plaintiffs

On the brief:

  Melissa J. Totaro, Esq.

**TABLE OF CONTENTS**

                                                                    PAGE

PROCEDURAL HISTORY/INTRODUCTORY STATEMENT                            1

STATEMENT OF FACTS                                                  2

LEGAL ARGUMENT

I.    DEFENDANTS IGNORE CERTAIN FUNDAMENTAL PRINCIPLES
      THAT COURTS WITHIN THE THIRD CIRCUIT REPEATEDLY
      APPLY WHEN ANALYZING MOTIONS TO TRANSFER VENUE             5

      A.   Plaintiff's Chosen Venue Is A Paramount
           Consideration That Is Only Disturbed When
           The Balance of Other Factors is
           *Strongly* in Favor of Defendants                    5

      B.   It is Defendants' Burden to Make The Necessary
           Showing in Support of a Transfer of Venue, and
           They Have Not Done So Here                           8

      C.   Venue is Not Transferred So as to Simply Shift
           the Burden (if any) from One Party to the Other      13

II.   A REVIEW OF THE PRIVATE AND PUBLIC CRITERIA APPLIED BY
      THE COURTS ALSO FAVORS VENUE REMAINING IN THIS COURT      15

      A.   That This Case Could Have Been Brought In The
           Southern District Of New York Does Not, As Leeds
           Morelli Implies, Call for Transfer To That Venue     17

      B.   The Parties' Physical and Financial Condition        20

      C.   Access to Sources of Proof and Witnesses and
           the Local Interests Factor                          20

      D.   Administrative Factors                               21

      E.   Applicable Substantive Law                           23

CONCLUSION                                                      26

i

# TABLE OF AUTHORITIES

PAGE

## Cases

*American Tel. & Tel. Co. v. MCI Communications Corp.*,
    736 *F.Supp.* 1294 (D.N.J. 1990)                                    7

*Cromar v. Johnson & Johnson*, 2006 *U.S.Dist.LEXIS* 82871
    (D.N.J. Nov. 13, 2006)                                             24

*Ferens v. John Deere Co.*, 494 *U.S.* 516, 110 *S.Ct.* 1274,
    108 *L.Ed.2d* 443 (1990)                                     1,7,26

*Jumara v. State Farm Ins. Co.*, 55 *F.3d* 873 (3d Cir. 1995)   7,11
                                                                13,15
                                                             16,17,20

*Kaye v. Shdeed & Hartmann, P.C.*, 1991 *U.S.Dist.LEXIS* 7136
    (D.N.J. May 22, 1991)                                            9,10

*Klearfold, Inc. v. Printex Packaging Corp.*,
    1997 *U.S.Dist.LEXIS* 21946 (D.N.J. Jan. 14, 1997)      6,12,13

*Loeb v. Bank of America*, 254 *F.Supp.2d* 581
    (E.D. Pa. 2003)                                               17,18

*Optopics Lab. Corp. v. Nicholas*, 947 *F.Supp.* 817
    (D.N.J. 1996)                                                     14

*Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa*,
    245 *F.Supp.2d* 1248 (N.D. Ga. 2002)                             18

*Phillips Petroleum Co. v. Shutts*, 472 *U.S.* 797,
    105 *S.Ct.* 2965, 86 *L.Ed.2d* 628 (1985)                        25

*Polizzi v. Cowles Magazines, Inc.*, 345 *U.S.* 663,
    73 *S.Ct.* 900, 97 *L.Ed.* 1331 (1953)                           18

*Ramada Franchise Sys. v. Timeless Towns of the Ams.*,
    1997 *U.S.Dist.LEXIS* 13861 (D.N.J. Jan. 13, 1997)               11

*Saferstein v. Paul, Mardinly, Durham, James, Flandreau
    & Rogers, P.C.*, 927 *F.Supp.* 731 (S.D.N.Y. 1996)              19

Schwartz v. R.H. Macy's, Inc., 791 F.Supp. 94 (D.N.Y. 1992)    24

Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1970),
     cert. denied, 401 U.S. 910, 91 S.Ct. 871,
          27 L.Ed.2d 808 (1971)                                 6

Tischio v. Bontex, Inc., 16 F.Supp.2d 511 (D.N.J. 1998)         8

United States Fire Ins. Co. v. Aldworth Co.,
     2005 U.S.Dist. LEXIS 12613 (D.N.J. June 28, 2005)      13,22

Statutes

28 U.S.C.A. §1391(a)                                        18,19

28 U.S.C.A. §1404(a)                                            5

28 U.S.C.A. §1406(a)                                           17

28 U.S.C.A. §1441(a)                                         1,18

## PROCEDURAL HISTORY/INTRODUCTORY STATEMENT

It should be clarified from the outset that there is no issue as to whether venue of this matter in the District Court of New Jersey is proper - indeed, transfer of this removed action to this Court was specifically permitted under the removal provisions, 28 *U.S.C.A.* §1441(a):

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, **to the district court of the United States for the district and division embracing the place where such action is pending.**

Emphasis supplied.

A motion to transfer venue pursuant to 28 *U.S.C.A.* §1404(a) is permitted in connection with a removed action, but it remains the case that "§1404(a) should not create or multiply opportunities for forum shopping." *Ferens v. John Deere Co.*, 494 *U.S.* 516, 523, 110 *S.Ct.* 1274, 108 *L.Ed.2d* 443 (1990). This case was filed in the Superior Court of New Jersey on September 27, 2006. A First Amended Complaint was filed by plaintiffs in state court on October 23, 2006. The matter was removed to this Court by all defendants by Notices of Removal filed on November 17, 2006. On November 20, 2006 the Leeds Morelli defendants filed a Motion to Seal the Pleadings and Related Materials in this matter. On No-

1

vember 27, 2006 and again on December 1, 2006 defendants obtained extensions of their time to file responsive pleadings or motions.

Defendants' motion to seal was denied by Hon. Mark Falk, U.S.M.J., by Order dated December 5, 2006. It was only after this decision was rendered that, on December 29, 2006, the Leeds Morelli defendants filed the instant motion to transfer venue, in which defendants Mazzola and Fitzgerald joined on January 9, 2007. Defendants' papers are silent as to why they did not file their motion to transfer venue simultaneous with their Notice of Removal of this action to federal court, instead of waiting until after the motion to seal was decided.    Whatever the motive, as discussed below, there is no basis to support transfer of venue from this Court, and defendants' motion should be denied.

### STATEMENT OF FACTS

Plaintiffs will focus herein only on those facts that are pertinent to the context of the instant motion – a motion to transfer venue from New Jersey to New York - which facts were either omitted or mischaracterized by Leeds Morelli in its papers.

As defendants concede, every one of the six named plaintiffs in this matter are residents of New Jersey. In addition, contrary to the impression that Leeds Morelli wishes to leave (e.g., by citing to the number 6 and stating that this is barely 1% of the entire proposed class membership, LMb3), there are far more than 6 members of the proposed class that are New Jersey residents:  in

2

Dot r !3,17.dw 16658.END.NG!!!!Epdvn f ou47!!!!!Gfne!12®7®118!!!!!Qbnf !8!pg41

fact 99 of the 587 class members (*id.*) are from New Jersey. (Certification of Kenneth S. Thyne, Esq., being filed on this date with plaintiffs' papers in opposition to defendants' pending Motions to Dismiss, exh. A (hereinafter "Thyne Cert."). Only 9 of the class are from New York, *id.*

Seeking at every turn to downplay the interest of New Jersey and its residents in this litigation, Leeds Morelli says

> The Nextel matter first came to LM&B's attention by referral from a former client. (Brown Decl. ¶5). **LM&B was first contacted in New York regarding the Nextel matter.** (Brown Decl. ¶5). Every one of LM&B's attorneys is licensed to practice law in the State of New York and all are citizens and residents of the State of New York. (Am. Compl. ¶¶9-16). None of the Attorney Defendants reside in New Jersey.
> **From New York**, LM&B began an investigation of Nextel's employment practices in an effort to determine if there was a systemic problem with discrimination. (Brown Decl. ¶5). LM&B ultimately concluded there was, and agreed to represent **a number of claimants from New York, with a *few* from New Jersey**. (Brown Decl. ¶5).

LMb5-6; emphasis supplied. <u>When transfer of venue is not in issue however</u> (such as in an action pending in Colorado state court by two individuals who fit the class definition in this case[1]), Leeds Morelli reveals that

---

[1] Leeds Morelli comments that plaintiffs herein apparently seek to include these two Colorado plaintiffs in the proposed class and subclass in this case. That is incorrect. When making their motion for class certification, plaintiffs will define the class so as to exclude these individuals.

>[t]he Nextel matter first came to LM&B's at-
>tention by referral from a former client. **The
>initial claimant was a resident of New Jersey.**
>For the next six months, LM&B investigated
>Nextel's employment practices in an effort to
>determine if there was a systemic problem with
>discrimination. The Firm ultimately concluded
>there was, and **agreed to represent a number of
>claimants (approximately 80) in New Jersey and
>New York.**

Thyne Cert. exh. B, excerpt from Leeds Morelli & Brown's Motion

for determination of Question of Law in the matter of McNeil v.

Leeds Morelli & Brown, et al., District Court, City & County of

Denver, State of Colorado, Case Number 03CV893; emphasis supplied.

Of course, since there are only 9 New York class members in total

according to Leeds Morelli (Thyne Cert. Exh. A), **of the 80 persons**

**that Leeds Morelli claims to have initially represented "in New**

**Jersey and New York," at least 71 had to be from New Jersey and at**

**most 9 from New York** – but this is what LM&B now (when it seeks a

change in venue) refers to as "a number of claimants from New

York, with a few from New Jersey." LMb6.

Notwithstanding Leeds Morelli's statements in support of this

motion (e.g., "[f]rom New York, LM&B began an investigation of

Nextel's employment practices…," LMb6), Leeds Morelli attorneys

consistently met with clients in New Jersey (Dymkowski Cert. ¶¶2-

5; Waters Cert. ¶¶2-5).    Leeds Morelli hosted numerous meetings

at a hotel in Lyndhurst, New Jersey, which was close to the loca-

tion where each of the plaintiffs was employed by defendant

Nextel.  *Id.*  In addition, omitted from Leeds Morelli's papers is any mention that their clients signed their retainer agreements with Leeds Morelli in New Jersey, and signed the Individual Agreements pursuant to which they agreed to participate in the settlement process as they were led to understand it in New Jersey.  *Id.*

### LEGAL ARGUMENT

### I.
### DEFENDANTS IGNORE CERTAIN FUNDAMENTAL PRINCIPLES THAT COURTS WITHIN THE THIRD CIRCUIT REPEATEDLY APPLY WHEN ANALYZING MOTIONS TO TRANSFER VENUE

28 *U.S.C.A.* §1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Emphasis supplied.  Defendants focus exclusively on the public and private interests considered by the Courts in determining venue transfer decisions, but without any mention of - and totally outside of the context of - several fundamental doctrines that Third Circuit courts consistently apply in deciding motions to transfer venue.

### A.
### Plaintiff's Chosen Venue Is A Paramount Consideration That Is Only Disturbed When The Balance of Other Factors is *Strongly* in Favor of Defendants.

Named plaintiffs, all New Jersey residents, chose to file their complaint in this matter in the Superior Court of New Jersey, Essex County.  The case has been removed to this federal court, but remains in New Jersey, plaintiffs' chosen venue.

5

> It is black letter law that a plaintiff's
> choice of a proper forum is a paramount con-
> sideration in any determination of a transfer
> request, and that choice "* * * should not be
> lightly disturbed." *Ungrund v. Cunningham
> Brothers, Inc.*, 300 *F.Supp* . 270, 272
> (S.D.Ill. 1969). In accord with that sound
> doctrine, one district court recently cor-
> rectly observed: "The decision to transfer is
> in the court's discretion, **but a transfer is
> not to be liberally granted.**" *Handlos v. Lit-
> ton Industries, Inc.*, 304 *F.Supp.* 347, 352
> (E.D.Wis.1969). The burden is on the moving
> party to establish that a balancing of proper
> interests weigh in favor of the transfer,
> *Everprest, Inc. v. Phillips-Van Heusen Corp.*,
> 300 *F.Supp.* 757 (M.D.Ala.1969), and "***
> **unless the balance of convenience of the par-
> ties is strongly in favor of defendant, the
> plaintiff's choice of forum should prevail.**"
> *Owatonna Manufacturing Company v. Melroe Com-
> pany*, 301 *F.Supp.* 1296, 1307 (D.Minn.1969).

*Shutte v. Armco Steel Corp.*, 431 *F.2d* 22, 25 (3d Cir. 1970), *cert. denied*, 401 *U.S.* 910, 91 *S.Ct.* 871, 27 *L.Ed.2d* 808 (1971); emphasis supplied. "**Courts in this [Third] Circuit have consistently held that a plaintiff's choice of forum will not be disturbed** 'unless the balance is strongly tipped in favor of transfer.'" *Klearfold, Inc. v. Printex Packaging Corp.*, 1997 *U.S.Dist.LEXIS* 21946, *11 (D.N.J. Jan. 14, 1997); emphasis supplied.

> **The burden of establishing the need for trans-
> fer still rests with the movant**, 1A PT.2
> MOORE'S P 0.345[5]; *Shutte v. Armco Steel
> Corp.*, 431 *F.2d* 22 (3d Cir. 1970), *cert. de-
> nied*, 401 *U.S.* 910, 91 *S.Ct.* 871, 27 *L.Ed.2d*
> 808 (1971). And, **"in ruling on defendants'
> motion the plaintiff's choice of venue should
> not be lightly disturbed.**" 1A PT.2 MOORE'S P
> 0.345[5] at 4360; 15 CHARLES A. WRIGHT ET AL.,
> FEDERAL PRACTICE AND PROCEDURE: JURISDICTION

6

AND RELATED MATTERS §3848, at 385 (2d ed. 1986); *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159 (5th Cir. 1987); *Miracle Stretch Underwear Corp. v. Alba Hosiery Mills, Inc.*, 136 F.Supp. 508 (D. Del. 1955).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); emphasis supplied. "This legislative background [of 28 *U.S.C.A.* §1404(a)] supports the view that **$1404(a) was not designed to narrow the plaintiff's venue privilege** or to defeat the state-law advantages that might accrue from the exercise of this venue privilege but rather the provision was simply to counteract the inconveniences that flowed from the venue statutes by permitting transfer to a convenient federal court." *Ferens v. John Deere Co.*, 494 *U.S.* 516, 523, 110 *S.Ct.* 1274; 108 *L.Ed.2d* 443 (1990); emphasis supplied.

At LMb19 defendants cite cases in support of the proposition that plaintiffs' choice of forum should be accorded little weight where the central facts of the lawsuit took place elsewhere. **Defendants fail to note**, however, that **those same cases recognize** "**the greatly enhanced deference due to a plaintiff suing <u>in its home state</u>.**" *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F.Supp. 1294, 1306 (D.N.J. 1990); emphasis supplied (cited at LMb19).

> Under the Gulf Oil analysis, a plaintiff's choice of forum is presumptively correct. ... **In the Third Circuit, a plaintiff's choice of forum is a "paramount concern"** in deciding a motion to transfer venue. .... **When a plain-**

> tiff chooses his home forum, the choice is
> "entitled to greater deference."

*Id.;* emphasis supplied.

> In the Third Circuit, the choice of forum by a
> plaintiff is a "paramount concern" in deciding
> a motion to transfer venue. See *Honeywell*, 817
> *F.Supp.* at 480; see also *Shore Slurry Seal,
> Inc. v. CMI Corp.*, 964 *F.Supp.* 152, 156
> (D.N.J. 1997) (stating choice of proper forum
> by plaintiff is "paramount consideration" in
> transfer analysis); *Newcomb v. Daniels, Saltz,
> Mongeluzzi & Barrett, Ltd.*, 847 *F.Supp.* 1244,
> 1246 (D.N.J. 1994) (stating choice of forum by
> plaintiff is accorded "significant weight").
> **The choice is "entitled to greater deference"
> when a plaintiff chooses its home forum.** See
> Honeywell, 817 *F.Supp.* at 480.

*Tischio v. Bontex, Inc.*, 16 *F.Supp.2d* 511, 521 (D.N.J. 1998); em-

phasis supplied (cited at LMb19).

As set forth *supra*, Statement of Facts, all six named plain-

tiffs in this action are or were residents of New Jersey.  Their

choice to sue in their home state is entitled to great deference.

## B.
## It is Defendants' Burden to Make The Necessary Showing in Support of a Transfer of Venue, and They Have Not Done So Here

As set forth in point I.A., the "paramount" consideration of

plaintiffs' choice of venue can only be disturbed if defendants

meet a heavy burden of showing that the balance of convenience of

the parties is strongly in favor of defendant.  Defendants have

fallen far short of making any such showing in this case:  in

fact, the only possible reference in defendants' papers to any

burden on defendants arising from venue being in New Jersey is

8

that the Leeds Morelli defendants and one of their experts reside in New York.

Simply noting that defendants, and some of the prospective witnesses in the case, live in New York, LMb20, is grossly inadequate to establish the burden defendants must meet to justify transfer of venue.  To overcome the strong presumption in favor of plaintiff's chosen forum, point I.A., *supra*, the movant must come forward with <u>specific facts</u> to support the claimed burden.  For example, in *Kaye v. Shdeed & Hartmann, P.C.*, 1991 *U.S.Dist.LEXIS* 7136, *2-3 (D.N.J. May 22, 1991), the Court denied a motion to transfer venue from New Jersey to Oklahoma, filed by defendants, Oklahoma attorneys, in a malpractice action filed in New Jersey by a New Jersey resident, which attorneys had handled for plaintiff the purchase of property in, and litigation in, Oklahoma.  *Id.* at *2-3.  The Court found that the burden for the parties of the respective forums was in equipoise, and as to defendants' argument regarding witnesses, said:

> In *Hoster v. Monongahela Steel Corp.*, 492 F. Supp. 1249, 1254 (W.D. Okla. 1980), the court found that the defendant's affidavit was insufficient to carry its burden of showing inconvenience, as **it contained only conclusory statements of inconvenience** and did not sufficiently clarify the expected testimony of the proposed witnesses so as to enable the trial court to pass on the materiality of such proposed testimony.

*Id.* at *17; emphasis supplied.   As to the only witness that the Court could find based on the record to be certainly required, the court pointed out that

> the only witness whose testimony is certainly relevant at this point is Mr. William S. Shdeed, the defendant himself; and, as has been asserted in the Affidavit of Robert M. Kaye, **he was more than willing to come to New Jersey to carry on his representation of plaintiff in the relevant real estate transaction. For this reason, the court fails to see how his being called upon to defend the suit here will severely inconvenience him.**

*Id.* at *15; emphasis supplied.   Likewise here, it is hard to discern how the Leeds Morelli attorneys, who based on plaintiffs' Certifications were more than willing to come to New Jersey to get plaintiffs to retain them, and get them to sign on to the dispute resolution process, and to engage in the unauthorized practice of law, could now be heard to complain that they need to come to New Jersey for proceedings in this case.

     As regards non-party witnesses, the following should also be noted regarding defendants' position.   First, implying that it is a longer drive to arrive at the courthouse[2] is not the type of "inconvenience" contemplated by the transfer of venue rule:   what is considered is "the convenience of the witnesses -- **but only to the**

---

[2]     In fact, since Leeds Morelli has not provided exact residence addresses for defendants and witnesses it is impossible to say for certain that, notwithstanding that they live within the borders of New York, that they do not in fact live closer to Newark than White Plains.

**extent that the witnesses may actually be unavailable for trial in one of the fora....**" *Jumara, supra*, 55 *F.3d* at 879; emphasis supplied. Defendants have offered nothing to prove that their witnesses would actually be unavailable for trial in New Jersey as opposed to New York.[3]

Furthermore, the short distance between the two courthouses in issue on this motion (n. 3, *supra*), in and of itself, make this motion inappropriate.

> The law of transfer is clear. "**Section 1404(a) should not be invoked for transfer between two courts if there is only a relatively short distance between them and it can be travelled easily.**" 15 C. Wright and A. Miller, Federal Practice and Procedure [section] 3854 at 470 (1988). See also *Computers Plus, Inc. v. AGS Enterprises, Inc.*, 1989 *U.S.Dist.LEXIS* 3972, case no. 89-1406, 1989 *W.L.* 37112 at *2

---

[3]    For a concrete review of the meritless nature of any claim of inconvenience in this case, use of the widely available internet tool "Mapquest," www.mapquest.com, shows that Leeds Morelli's offices, at 1 Old Country Road, Carle Place, NY, are 35.03 miles from the White Plains federal courthouse for the Southern District of New York, while Leeds Morelli's offices are 43.64 miles from this courthouse in Newark, Totaro Cert. ¶2, a difference of barely 8 miles.

Leeds Morelli's expert Roy Simon appears to reside in West Hempstead, New York. West Hempstead is 40.87 miles from this courthouse in Newark and 32.41 miles from the federal courthouse in White Plains. Totaro Cert. ¶3. Again, a difference of approximately 8 miles is simply of no consequence.

Furthermore, Leeds Morelli fails to note that Nextel's expert, Geoffrey Hazard, Jr., works out of the University of Pennsylvania, 3400 Chestnut Street, Philadelphia. Reference to Mapquest shows that Philadelphia is 125.92 miles from the federal courthouse in White Plains, whereas Philadelpia is only 86.77 miles from this courthouse in Newark. Totaro Cert. ¶4.

(E.D.Pa. Apr. 13, 1989) (90 mile distance be-
tween the cities of Philadelphia and Baltimore
will not cause significant inconvenience);
*Hathi v. Frischer*, 645 F.Supp. 360 (E.D.Pa.
1986) (transfer from Philadelphia to New York
City denied); *Standard v. Stoll Packing Corp.*,
210 F.Supp. 749 (M.D. Pa. 1962), appeal dis-
missed, 315 F.2d 626 (3d. Cir. 1963) (transfer
from Harrisburg to Pittsburgh denied);
*Buchanan v. New York Central R.R. Co.*, 148
F.Supp. 732, 733 (E.D. Pa. 1957) (transfer
that would save witnesses 100 miles of travel
refused, since "in view of modern transporta-
tion facilities the mileage differential is
inconclusive.")

*Ramada Franchise Sys. v. Timeless Towns of the Ams.*, 1997

*U.S.Dist.LEXIS* 13861, *14, *15 (D.N.J. Jan. 13, 1997).

[A]s the courts have long noted and as Judge
Debevoise of this Court recently reaffirmed,
§1404(a) **should not be** invoked **for a transfer
between two courts if there is only a rela-
tively short distance between them and it can
be travelled easily.** *Project Strategies Corp.
v. Four Paws Products, Ltd.*, No. 96-2936 slip
op. at 7-8 .citing four cases from this Cir-
cuit). In view of such authority, transfer of
the instant case would likewise be inappropri-
ate.

*Klearfold, Inc.*, *supra*, 1997 U.S.Dist.LEXIS 21946 at *11; emphasis

supplied.

Finally, defendants cannot even attempt to claim a burden

based on location of files, since they are forced to acknowledge

that Leeds Morelli's case files for the class members in issue are

currently located in Colorado, n. 5 at LMb20, and it can hardly be

argued that New York is somehow more convenient than New Jersey in

that regard. "The private interests have included ... the loca-

tion of books and records (**similarly limited to the extent that the files could not be produced in the alternative forum**)." *Jumara, supra,* 55 *F.3d* at 879; emphasis supplied.

C.

#### Venue is Not Transferred So as to Simply Shift the Burden (if any) from One Party to the Other

It is equally clear that transfers of venue which simply shift burden from one party to the other will be rejected.

> "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack,* 376 *U.S.* 612, 646, 11 *L.Ed.2d* 945, 84 *S.Ct.* 805 (1964). **It is well settled that a court will not order transfer of a case if doing so merely shifts the burden from one party to another.** *Barrack,* 376 *U.S.* at 646.

*United States Fire Ins. Co. v. Aldworth Co.,* 2005 U.S.Dist. LEXIS 12613, *14 (D.N.J. June 28, 2005); emphasis supplied.

> In this case plaintiffs obviously could have brought this action in the Eastern District of New York where Printex is headquartered. Instead, plaintiffs chose the admittedly more geographically convenient forum of New Jersey. While it may be significantly less convenient to Printex to have this action venued in New Jersey rather than in the Eastern District of New York, **this does not warrant shifting the inconvenience from one party to the other.**

*Klearfold, Inc., supra,* 1997 *U.S. Dist.LEXIS* 21946 at *11; emphasis supplied.

As set forth *supra,* point I.A., defendants have not even shown any inconvenience that they or their witnesses will encoun-

ter by venue remaining in New Jersey.  On the other hand, however, plaintiffs will undergo more expense and burden than the inconvenience to all of them – and any other New Jersey class members who may need to testify – of having to travel to the White Plains courthouse.[4]  Plaintiffs' chosen counsel are Angela Roper, Esq. and Kenneth Thyne, Esq., and neither of these attorneys are admitted to practice in New York.[5]  Thus, if venue were transferred there, they would have to obtain New York counsel to sponsor their admission *pro hac vice*, and to act as local counsel throughout what promises to be lengthy litigation.  The Leeds Morelli defendants, on the other hand, are already represented by counsel admitted to practice in New Jersey.

Although relative convenience to counsel is most often not considered an important consideration, at times it has been noted by Courts analyzing a transfer of venue motion to the extent it effects the convenience of a given forum to a party.  See *Optopics Lab. Corp. v. Nicholas*, 947 *F.Supp.* 817, 826 (D.N.J. 1996) ("Fur-

---

[4]    As has been stated, there are only 8 New York class members in total – none of which belong to the proposed subclass that still has claims against Leeds Morelli.  As regards class members who are residents of Georgia and Colorado, who defendants state make up the majority of the class, LMb3, whether venue is in New York or New Jersey would as a matter of common sense be of no consequence to them.

[5]    Co-counsel for plaintiffs, Melissa J. Totaro of Houston & Totaro is also not admitted in New York.  Co-counsel Madeline L. Houston of Houston & Totaro is admitted in New York but does not practice there or maintain a New York office.  Totaro Cert. ¶¶6-7.

ther muting any geographic inconvenience to plaintiffs is the Philadelphia main office of their counsel, Dechert Price & Rhoads, blocks from the Eastern District of Pennsylvania's federal courthouse);" *Jumara, supra,* 55 *F.3d* at 882 ("The financial condition of the Jumaras might make the Middle District more convenient to them, but since their present counsel is from Philadelphia that consideration would appear muted.")   In this case, the expense to plaintiffs' counsel that will eventually redound to the financial prejudice of plaintiffs should be considered, and, especially in light of the total absence of any showing of inconvenience by defendants, it weighs against transfer of venue.

## II.
## A REVIEW OF THE PRIVATE AND PUBLIC CRITERIA APPLIED BY THE COURTS ALSO FAVORS VENUE REMAINING IN THIS COURT

As has been set forth *supra,* point I, plaintiffs respectfully submit that defendants have failed to demonstrate any inconvenience to themselves or their witnesses resulting from venue being in New Jersey, and in light of the fundamental principles applicable to venue transfer motions (*viz.,* plaintiffs' choice of forum is a paramount concern; venue transfer is simply inappropriate when the two courts are as proximate in distance as they are in this case; venue transfer is inappropriate when it would operate to simply shift any alleged burden from one party to the other), defendants' motion cannot prevail.   Plaintiffs will now go on to address the specific public and private criteria raised by defendants.

These criteria have been described as follows:

> The private interests have included: plain-
> tiff's forum preference as manifested in the
> original choice, 1A PT.2 MOORE'S P 0.345[5],
> at 4363; the defendant's preference, id. §
> 3848, at 385; whether the claim arose else-
> where, 15 WRIGHT ET AL. § 3848; the conven-
> ience of the parties as indicated by their
> relative physical and financial condition, id.
> § 3849, at 408; the convenience of the wit-
> nesses -- but only to the extent that the wit-
> nesses may actually be unavailable for trial
> in one of the fora, id. § 3851, at 420-22; and
> the location of books and records (similarly
> limited to the extent that the files could not
> be produced in the alternative forum), id. §
> 3853.

*Jumara, supra,* 55 *F.3d* at 879.

> The public interests have included: the en-
> forceability of the judgment, 1A PT.2 MOORE'S
> P 0.345[5], at 4367; practical considerations
> that could make the trial easy, expeditious,
> or inexpensive, id.; the relative administra-
> tive difficulty in the two fora resulting
> from court congestion, id., at 4373; 15
> WRIGHT ET AL. § 3854; the local interest in
> deciding local controversies at home, 1A PT.2
> MOORE'S P 0.345[5], at 4374; the public poli-
> cies of the fora, see 15 WRIGHT ET AL. §
> 3854; and the familiarity of the trial judge
> with the applicable state law in diversity
> cases. id.

*Id.* at 879-880.

As set forth below, defendants' arguments that the foregoing criteria require a transfer of venue are meritless.

16

## A.
### That This Case Could Have Been Brought In The Southern District Of New York Does Not, As Leeds Morelli Implies, Call for Transfer to That Venue

At LMb14-18, defendants go on at great length to show that venue in the Southern District of New York would have been proper. It is important to understand, however, that when it comes to a transfer of venue from another district, the fact that the proposed transferee district would have been an appropriate venue is merely a threshold requirement – it is a necessary prerequisite to, but in no sense sufficient to justify, a transfer of venue.

> Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action <u>to any other district or division where it might have been brought</u>." **The burden of establishing <u>the need</u> for transfer still rests with the movant,** 1A PT.2 MOORE'S P 0.345[5]; *Shutte v. Armco Steel Corp.*, 431 *F.2d* 22 (3d Cir. 1970), *cert. denied*, 401 *U.S.* 910, 91 *S.Ct.* 871, 27 *L.Ed.2d* 808 (1971).

*Jumara, supra*, 55 *F.3d* at 879; emphasis supplied.

Furthermore, under the guise of establishing that venue in the Southern District of New York would have been appropriate, Leeds Morelli cites to several legal malpractice cases which discuss transfers of venue **based on initial venue being improper:** these cases, cited at LMb15-18, are inapposite.

Thus, Leeds Morelli cites to *Loeb v. Bank of America*, 254 *F.Supp.2d* 581 (E.D. Pa. 2003). *Loeb*, however, was a motion to transfer venue under 28 *U.S.C.A.* §**1406**(a), which provides for

17

transfer of venue from a district "in which is filed a case laying venue in the wrong division or district," *i.e.*, **from a district where there is no proper venue to begin with**. Thus, the *Loeb* Court goes through a detailed analysis, a part of which is cited at LMb16, as to whether the district where plaintiff filed his case was a proper venue under 28 *U.S.C.A.* §1391(a), and ultimately concludes it was not, and thus transfers the case under §1406. *Id.* at 588. This entire analysis is irrelevant to this case because this case was removed from state court, and it is beyond dispute that pursuant to 28 *U.S.C.A.* §1441 this court has venue. See p. 1, *supra*. §1391(a) criteria and analysis are simply inapplicable to the question of whether venue is proper in a removed action. *Polizzi v. Cowles Magazines, Inc.*, 345 *U.S.* 663, 665, 73 *S.Ct.* 900, 902, 97 *L.Ed.* 1331 (1953) ("But even on the question of venue, **§1391 has no application to this case because this is a removed action**. The venue of removed actions is governed by 28 *U.S.C.* (Supp. V) §1441(a)...." Emphasis supplied). "Therefore, the question whether Respondent was 'doing business' in Florida within the meaning of §1391(c) is irrelevant, and the discussion of that question is beside the point." 345 *U.S.* at 666.

Similarly, the discussion set forth at LMb16 regarding *Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa*, 245 *F.Supp.2d* 1248, 1260 (N.D. Ga. 2002) pertains to the portion of that Court's holding that *venue* in the district where the case was originally

filed by plaintiff attorneys - which was the geographic location where the legal work in issue was performed - was acceptable pursuant to 28 *U.S.C.A.* §1391(a). *Id.* This has nothing to do with a transfer of venue. In fact, **that part of *Paul, Hastings, Janofsky & Walker, LLP* that <u>does</u> deal with the <u>transfer</u> of venue request, *id.* at 1260-1261, militates <u>against</u> transfer of venue in this case.** Thus, the Court in that case refused to transfer venue from Georgia to Okalhoma where convenience to the parties and witnesses and access to evidence did not clearly favor transfer, noting that "[u]nless the balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed," and "[t]ransfer should be denied if it would merely shift inconvenience from one party to another." *Id.* at 1260; cites omitted. In response to the movant's assertion that Oklahoma law would govern the dispute and therefore Oklahoma had a superior interest in the case, the Court noted that Georgia also had "a significant interest in providing its residents with a forum for redressing injuries caused by out-of-state residents." *Id.*

Likewise, in *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rogers, P.C.,* 927 *F.Supp.* 731 (S.D.N.Y. 1996), the main thrust of the court's opinion was to find that the current forum was not a proper venue under 28 *U.S.C.A.* §1391(a) for all but one of plaintiff's claims, *id.* at 735. The Court went on to transfer venue of the last remaining claim as well as an alterna-

19

tive to retaining that one claim and dismissing the rest for improper venue. *Id.* at 736. This analysis simply has no application to the case at bar.

B.
**The Parties' Physical and Financial Condition**

In this section defendants argue that the "physical and financial condition of the parties does not prevent this matter from being resolved in New York, instead of New Jersey." LMb21. What defendants ignore is that <u>they</u> have a heavy burden to show that transfer is <u>necessary</u>. *Jumara, supra,* 55 *F.3d* at 879 ("[t]he burden of establishing <u>the need</u> for transfer still rests with the movant…." Emphasis supplied). At best what defendants support in this section of their brief is that this criteria is neutral in the transfer analysis.

As regards defendants' assertions at LMb20 that defendants and certain witnesses reside in New York, see p. 8-13 *supra.*

C.
**Access to Sources of Proof and Witnesses and**
**the Local Interests Factor**

As regards access to proof and witnesses, it has already been pointed out that nothing has been offered to indicate that the Leeds Morelli attorneys and expert could not appear in Newark as opposed to White Plains - and indeed the proposition would be absurd given the close proximity of the two courthouses. In addition, plaintiffs may call class members as witnesses, 93 of whom

20

(plus the six named plaintiffs) live in New Jersey. As regards other "proof," defendants have acknowledged that their files are not even in New York, but rather are housed in Colorado. This factor therefore is neutral (and thus, since the burden is on defendants to justify a transfer of venue, favors rejecting the transfer request).

As regards the local interest criteria, although certainly New York has an interest in this action, New Jersey clearly does as well, as evident from the facts set forth *supra*, p. 10-13.

Here, Leeds Morelli traveled to New Jersey to solicit clients, rented space at a hotel to conduct meetings for such solicitations, counseled the clients to enter into agreement to retain the firm and mislead the clients regarding contents of agreements they were purportedly summarizing, all at a time that they were not authorized to practice law in this state. Leeds Morelli subsequently represented these clients in Somerset, New Jersey and Morristown, New Jersey and Summit, New Jersey. It is amazing that the law firm can claim that this matter should have venue transferred to New York.

### D.
### Administrative Factors

Whereas defendants choose to point out only the relative timeframes for cases to reach trial in the two districts in issue, LMb24, courts consider other factors as well.

> Where, as here, though, the relative conges-
> tion of the respective dockets is comparable,
> this consideration does not weigh in favor of
> transfer. See Judicial Caseload Profile Re-
> port,           available            at
> http://www.uscourts.gov/cgi-bin/cmsd2003.pl
> (**listing the number of actions per judgeship
> in the District of New Jersey and the Northern
> District of Georgia**).

*United States Fire Ins. Co., supra,* 2005 *U.S.Dist.LEXIS* 12613 at
*18, n. 8; emphasis supplied.

Based on the same website referenced by the *Aldworth* Court,
in the most recent year available, 2005, it shows that in the
Southern District of New York there were 409 civil filings per
judgeship during a one year period, whereas during that same pe-
riod there were 387 civil filings per judgeship in the District of
New Jersey.  http://www.uscourts.gov/cgi-bin/cmsd2005.pl.  Totaro
Cert. exh. A and B. It is also interesting to note that, whereas
defendants choose to highlight only the relative times for a civil
case to go to trial in New Jersey versus in New York's Southern
District, the median times overall for all civil actions in New
Jersey from "Filing to Disposition" is 7.3 months, whereas in the
Southern District of New York the median time for civil actions
from filing to disposition is longer, *viz.*, 8.8 months.
http://www.uscourts.gov/cgi-bin/cmsd2005.pl, *id*.

In sum, the relative congestion of the Courts is comparable
in this case, and being so militates against transfer of venue.

As regards defendants' argument that enforcing a judgment against Leeds Morelli would be easier if the judgment were entered in the Southern District of New York, this argument is likewise meritless.  Aside from the fact that this indicates that Leeds Morelli will not voluntarily pay a judgment, this court should not rest any determination on what the fox says is in the best interest of the hens.  In addition, it ignores that there is another major defendant in this matter, Nextel – which plaintiffs allege to be jointly and severally liable – from whom a judgment can be collected, and as to that defendant whether the judgment is entered by a New Jersey or New York federal court is irrelevant.  Secondly, transferring a judgment from one district to another for enforcement purposes is not such a burdensome task that it overrides plaintiff's other reasons for choosing this forum.

### E.
### Applicable Substantive Law

At LMb25 the Leeds Morelli defendants argue that venue should be transferred because "[t]here is no reason why New Jersey substantive law will apply to any of the claims asserted by Plaintiffs."[6]

---

[6]    Interestingly, on the very same page, Leeds Morelli states that "LM&B represented 587 clients from 23 states," and makes the conclusory statement with no argument that "[e]ach state's substantive law should apply to each client's claims for breach of fiduciary duty, malpractice, consumer fraud, and the like." LMb25; emphasis supplied.  It is beyond dispute that the six named plaintiffs in this case are all from New Jersey (as are

23

First, the **issue of what state's substantive law will be found to apply is recognized to be of little importance to the decision whether to transfer venue**.

> Defendants' public-interest argument that the applicable law would be that of Oklahoma does not justify the transfer of venue. **Assuming that the law of Oklahoma will apply, absent other factors to compel transfer of venue, defendants' motion must fail.** As this court noted in *The Sherwood Group, Inc. v. Frederick W. Rittereiser*, Civil Action No. 90-2414 (October 17, 1990), **the fact that the law of another jurisdiction would govern is accorded little weight on a motion to transfer venue**, especially where the law is uncomplicated.

*Kaye, supra*, 1991 *U.S.Dist.LEXIS* 7136 at *17; emphasis supplied. See also *Cromar v. Johnson & Johnson*, 2006 *U.S.Dist.LEXIS* 82871, *11 (D.N.J. Nov. 13, 2006) ("… the governing law factor does not favor a transfer to Utah. **It is unclear yet which law will apply.** Also, '[t]he 'governing law' factor is to be accorded little weight in a motion to transfer venue because **federal courts are deemed capable of applying the law of other states;**'" cites omitted; emphasis supplied); *Schwartz v. R.H. Macy's, Inc.*, 791

---

93 other class members), so under Leeds Morelli's arguments New Jersey law would apply to claims of the named plaintiffs before this Court as well as many other class members.  Indeed, a review of Nextel's Brief in Support of its Motion to Dismiss the Complaint in this matter - which Leeds Morelli incorporated in whole into its own motion to dismiss (see Leeds Morelli Brief in Support of Motion to Dismiss, p. 8) - shows that defendants' arguments are based on an analysis of each and every cause of action under New Jersey law.  More to the point, however, what substantive law applies is of little importance to transfer of venue motion.

*F.Supp.* 94, 96 (D.N.Y. 1992) ("that the law of another jurisdiction governs the outcome of the case is a factor accorded little weight on a motion to transfer especially when no complex issues of foreign law are at stake;" citations omitted).

Secondly, **it is premature to conclude what state's substantive law will apply to plaintiffs' class wide claims.**[7]   The decision as to what law applies is a question to be determined by applying choice of law rules to the facts and causes of action in issue.   Defendants' argument that this somehow militates *against* venue in New Jersey falls of its own weight.   The choice of law determinations that will have to be made in this case *favor* venue remaining in New Jersey. Thus, defendants concede that in diversity actions it is the forum state's rules on choice of law that apply, LMb25, and **regardless of whether this case were transferred to New York or not,** since this matter was originally venued in New Jersey, **New Jersey choice of law rules will *continue* to apply.**

---

[7]   The law of a single state may be applied to claims made on behalf of class members from multiple states: the state "must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 *U.S.* 797, 818, 105 *S.Ct.* 2965, 86 *L.Ed.2d* 628 (1985); citing *Allstate Ins. Co. v. Hague*, 449 *U.S.* 302, 312-313, 101 *S.Ct.* 633, 66 *L.E.2d* 521 (1981). When it is time to determine choice of law the Court will determine which state's laws to apply.   "[I]n many situations a state court may be free to apply one of several choices of law."   472 *U.S.* at 823.

We thus held that the law applicable to a diversity case does not change upon a transfer initiated by a defendant.

*Ferens v. John Deere Co.*, supra, 494 *U.S.* at 523. In other words, if this case were transferred to New York, the New York Court would have to apply **New Jersey** choice of law rules. It is therefore meritless to suggest that this factor militates in favor of transferring venue out of New Jersey.

### CONCLUSION

Defendants have failed to identify any inconvenience to themselves or to witnesses arising from this case being venued in New Jersey, and a weighing of the factors considered on venue transfer motions favors New Jersey. In this light, defendants have failed to meet the heavy burden required to override the paramount consideration given to plaintiffs' choice of forum. It is respectfully submitted that the motion to transfer venue should be denied.

Respectfully submitted,

HOUSTON & TOTARO
Attorneys for Plaintiff

BY:     S/ Melissa J. Totaro
MELISSA J. TOTARO, ESQ.

DATED:  January 26, 2007

Roper & Twardowsky, LLC
77 Jefferson Place
Totowa, New Jersey 07512-2614
(973) 790-4441

Houston & Totaro
Attorneys-at-Law
56 Broad Street, Suite 1
Bloomfield, N.J. 07003
(973) 748-4580
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL S. JOHNSON, DONNA DYMKOWSKI, PATRICIA LONG-CORREA, ANTONIO SAMUEL VINCENT HALL, ANGELETTE WATERS, Individually, and on behalf of the Class, Plaintiffs, vs. NEXTEL COMMUNICATIONS, INC., a Delaware Corporation; LEEDS, MORELLI & BROWN, P.C.; LENARD LEEDS, STEVEN A. MORELLI, JEFFREY K. BROWN; JAMES VAGNINI, FREDERIC DAVID OSTROVE, BRYAN MAZOLLA; SUSAN FITGERALD; AND JOHN AND JANE DOES 1-10 (a fictitious designation for Presently unknown Defendants), Defendants. | CIVIL ACTION No. 06-5547(DMC)(MF) **CERTIFICATION** |

MELISSA J. TOTARO does hereby certify:

    1.    I am an attorney with the office of Houston & Totaro, Attorneys-at-Law, co-counsel for plaintiffs in the above captioned matter.

    2.    "Mapquest," www.mapquest.com, shows that Leeds Morelli's offices, at 1 Old Country Road, Carle Place, NY, are 35.03 miles from the White Plains federal courthouse for the Southern District of New York (300 Quarropas Street, White Plains), while Leeds Morelli's offices are 43.64 miles from this courthouse in Newark.

    3.    According to Mapquest West Hempstead, New York is 40.87 miles from this courthouse in Newark and 32.41 miles from the federal courthouse in White Plains.

4.    According to Mapquest, the University of Pennsylvania, 3400 Chestnut Street, Philadelphia, PA, is 125.92 miles from the federal courthouse in White Plains, whereas Philadelpia is only 86.77 miles from this courthouse in Newark.

5.    Annexed hereto is a true copy of the U.S. District Court Judicial Caseload Profiles, for the 12 month period ending September 30, 2005, for the Southern District of New York and for the District of New Jersey, available online at http://www.uscourts.gov/cgi-bin/cmsd2005.pl.

6.    I am not admitted to practice in New York.

7.    My partner, Madeline L. Houston is admitted in New York but does not practice there and does not maintain an office there.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

MELISSA J. TOTARO

DATED: 1/26/07

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **NEW JERSEY** | | | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 7,539 | 7,567 | 7,270 | 7,555 | 6,972 | 7,203 | | |
| | Terminations | | 7,605 | 7,373 | 6,998 | 7,125 | 7,057 | 7,161 | | |
| | Pending | | 6,987 | 6,986 | 6,765 | 6,538 | 6,101 | 6,181 | | |
| | % Change in Total Filings | Over Last Year | | -.4 | | | | | 36 | 3 |
| | | Over Earlier Years | | | 3.7 | -.2 | 8.1 | 4.7 | 40 | 3 |
| | Number of Judgeships | | 17 | 17 | 17 | 17 | 17 | 17 | | |
| | Vacant Judgeship Months** | | 27.8 | 12.0 | 11.0 | 47.8 | 7.5 | 6.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 444 | 446 | 428 | 445 | 410 | 424 | 47 | 3 |
| | | Civil | 387 | 390 | 370 | 387 | 369 | 381 | 29 | 3 |
| | | Criminal Felony | 48 | 46 | 48 | 49 | 41 | 43 | 72 | 3 |
| | | Supervised Release Hearings** | 9 | 10 | 10 | 9 | - | - | 82 | 3 |
| | Pending Cases | | 411 | 411 | 398 | 385 | 359 | 364 | 39 | 5 |
| | Weighted Filings** | | 493 | 500 | 486 | 482 | 463 | 462 | 34 | 2 |
| | Terminations | | 447 | 434 | 412 | 419 | 415 | 421 | 46 | 3 |
| | Trials Completed | | 10 | 10 | 10 | 12 | 11 | 15 | 84 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 10.0 | 9.8 | 9.0 | 9.4 | 8.0 | 8.6 | 62 | 2 |
| | | Civil** | 7.3 | 7.6 | 7.9 | 8.4 | 7.5 | 8.0 | 8 | 2 |
| | From Filing to Trial** (Civil Only) | | 36.7 | 33.4 | 33.8 | 30.0 | 33.0 | 27.0 | 80 | 5 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 346 | 252 | 236 | 231 | 179 | 225 | | |
| | | Percentage | 5.7 | 4.2 | 4.0 | 4.0 | 3.3 | 4.1 | 50 | 4 |
| | Average Number of Felony Defendants Filed Per Case | | 1.3 | 1.2 | 1.2 | 1.2 | 1.2 | 1.4 | | |
| | Jurors | Avg. Present for Jury Selection | 75.41 | 40.79 | 51.72 | 41.77 | 51.55 | 40.67 | | |
| | | Percent Not Selected or Challenged | 38.3 | 24.1 | 40.3 | 37.7 | 38.9 | 39.0 | | |

| 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6572 | 317 | 213 | 1213 | 72 | 37 | 769 | 887 | 707 | 352 | 1011 | 39 | 955 |
| Criminal* | 797 | 2 | 256 | 35 | 87 | 206 | 50 | 41 | 13 | 19 | 13 | 26 | 49 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

Case 1:17-cv-08653-BD-NDoc Document 30-26-21 Filed 04/04/2008 8 Page 35 of 35

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

|  |  |  |  | 12-MONTH PERIOD ENDING SEPTEMBER 30 |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK SOUTHERN** |  |  |  | 2005 | 2004 | 2003 | 2002 | 2001 | 2000 | Numerical Standing | |
|  |  |  |  |  |  |  |  |  |  | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | | 12,945 | 12,422 | 12,321 | 13,937 | 12,783 | 11,564 | | |
|  | Terminations | | | 11,346 | 11,471 | 10,780 | 12,618 | 11,247 | 14,638 | | |
|  | Pending | | | 19,302 | 17,638 | 17,275 | 16,198 | 15,818 | 14,275 | | |
|  | % Change in Total Filings | Over Last Year | | | 4.2 | | | | | 22 | 2 |
|  |  | Over Earlier Years | | | | 5.1 | -7.1 | 1.3 | 11.9 | 29 | 2 |
|  | Number of Judgeships | | | 28 | 28 | 28 | 28 | 28 | 28 | | |
|  | Vacant Judgeship Months** | | | 6.3 | 8.8 | 33.3 | 15.8 | .0 | 22.1 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | | 462 | 444 | 441 | 498 | 457 | 413 | 37 | 3 |
|  |  | Civil | | 409 | 388 | 381 | 441 | 420 | 371 | 21 | 3 |
|  |  | Criminal Felony | | 40 | 44 | 47 | 48 | 37 | 42 | 83 | 5 |
|  |  | Supervised Release Hearings** | | 13 | 12 | 13 | 9 | - | - | 69 | 5 |
|  | Pending Cases | | | 689 | 630 | 617 | 579 | 565 | 510 | 10 | 2 |
|  | Weighted Filings** | | | 551 | 527 | 513 | 539 | 560 | 521 | 19 | 2 |
|  | Terminations | | | 405 | 410 | 385 | 451 | 402 | 523 | 59 | 4 |
|  | Trials Completed | | | 15 | 16 | 17 | 15 | 15 | 18 | 66 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | | 14.5 | 11.9 | 11.8 | 13.3 | 12.3 | 13.5 | 91 | 5 |
|  |  | Civil** | | 8.8 | 8.1 | 8.4 | 8.3 | 7.2 | 5.2 | 26 | 2 |
|  | From Filing to Trial** (Civil Only) | | | 22.0 | 26.8 | 22.6 | 23.0 | 24.4 | 22.0 | 36 | 1 |
| OTHER | Civil Cases Over 3 Years Old** | Number | | 2,652 | 1,656 | 1,312 | 1,230 | 1,585 | 1,098 | | |
|  |  | Percentage | | 16.7 | 11.6 | 9.2 | 9.2 | 12.1 | 9.5 | 89 | 6 |
|  | Average Number of Felony Defendants Filed Per Case | | | 1.9 | 1.7 | 1.5 | 1.5 | 1.6 | 1.7 | | |
|  | Jurors | Avg. Present for Jury Selection | | 99.86 | 88.01 | 82.96 | 83.28 | 73.12 | 60.55 | | |
|  |  | Percent Not Selected or Challenged | | 62.0 | 53.1 | 54.8 | 61.9 | 53.2 | 54.0 | | |

| 2005 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 11453 | 214 | 985 | 1622 | 71 | 35 | 1042 | 1699 | 1571 | 876 | 1568 | 84 | 1686 |
| Criminal* | 1092 | 7 | 303 | 177 | 149 | 267 | 19 | 25 | 13 | 38 | 21 | 10 | 63 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."