# EXHIBIT O

SUPREME COURT OF NEW JERSEY
Disciplinary Review Board
Docket No. DRB 03-098

---

IN THE MATTER OF

KAREL L. ZARUBA

AN ATTORNEY AT LAW

---

Decision

Argued: May 15, 2003

Decided: July 23, 2003

Janice L. Richter appeared on behalf of the Office of Attorney Ethics.

Respondent did not appear, despite proper notice.

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey.

This matter was before us pursuant to R.1:20-6(c)(1). That section states that the pleadings and a statement of the procedural history of the matter may be filed directly with us, without a hearing, if the pleadings do not raise genuine disputes of material fact, the respondent does not request an opportunity to be heard in mitigation and the presenter does not request an opportunity to present aggravating circumstances.

Respondent was admitted to the New Jersey bar in 1977. He retired from the practice of law in New Jersey in 1999. He has no disciplinary history.

The ethics complaint alleged violations of RPC 5.6(b) (offering or making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties) and RPC 8.4(a) (violating or attempting to violate the Rules of Professional Conduct, knowingly assisting or inducing another to do so, or doing so through the acts of another).

\* \* \*

The facts are not in dispute. Respondent admitted all of the allegations in the complaint and did not request a hearing.

In 1997, while employed as an attorney at Warner-Lambert Co., respondent learned of a potential class action against the company, related to one of its products, Nix, a treatment for head lice. Mark Hager, an attorney admitted in the District of Columbia, and John Traficonte, an attorney admitted in Massachusetts, represented two members of the potential class and had compiled a list of other potential class members. The suit was to be filed under the Magnuson-Moss Warranty Act, 15 U.S.C.A. §2310(d)(3)(C), alleging that Nix was ineffective in eradicating head lice because of a Nix-resistant strain of lice.

Respondent, who knew Traficonte from a prior lawsuit against Warner-Lambert, contacted him about avoiding the litigation. On August 8, 1997, before suit was filed,

2

Hager, Traficonte and respondent signed an agreement that contained the following provisions:

- Hager and Traficonte would not sue or otherwise assert any claims on behalf of any parties against Warner-Lambert, involving or relating to the effectiveness of Nix.

- Warner-Lambert would pay $225,000 to Hager and Traficonte for "reasonable fees and expenses...for investigating, developing, preparing, advancing and addressing by negotiation...the claims connected with and relating to the Litigation."

- The existence and terms of the agreement were to be kept confidential, even from Hager and Traficonte's clients.

- Hager and Traficonte would not disclose to anyone any of the "facts, legal theories, names of person or potential lay or expert witness or any other information," obtained as a result of their work, relating to the potential class action against Warner Lambert.

- Warner-Lambert would market Nix with a full, money-back guarantee and would cease making certain representations in its advertising about the effectiveness of Nix.

- Warner-Lambert would provide refunds of the purchase price of Nix to the potential class members. However, if the refunds exceeded $10,000, Hager and Traficonte had to reimburse Warner-Lambert for the excess amount.

- Warner-Lambert acknowledged that the agreement did not protect it from similar claims "asserted by persons or entities other than" Hager and Traficonte.

The District of Columbia Court of Appeals suspended Hager for one year for entering into this agreement with respondent, as well as for his unethical conduct toward his clients in the proposed class action. In re Hager, 812 A.2d 904 (D.C. 2002). The Court found that Hager violated District of Columbia's disciplinary rules that are analogous to our RPC 1.2(a) (a lawyer shall consult with the client as to the means by

which the objectives of the representation are to be pursued), RPC 1.4(a) (failure to keep client reasonably informed about the status of the matter), RPC 1.7(b) (conflict of interest), RPC 1.8(f) (a lawyer shall not accept compensation for representing a client from one other than the client unless certain conditions are met), RPC 1.16(d) (upon termination of representation, the lawyer shall take steps to the extent reasonably practicable to protect the client's interests), RPC 5.6(b) (restrictions on right to practice) and RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

\* \* \*

Respondent requested — and the OAE agreed — that the following mitigating circumstances be considered in determining the appropriate discipline here: (1) respondent is fully retired from the practice of law and does not intend to practice in any state;[1] (2) he has a previously unblemished thirty-year legal career; (3) he is over seventy years of age and "suffers from impaired vision in one eye related to a continuing illness"; (4) he did not intend to violate any ethics rules; (5) he "truly regrets this violation"; and (5) he agreed to accept any appropriate sanction.

\* \* \*

---

[1] Respondent is also admitted in Maryland.

4

Following a review of the record, including respondent's admissions, we determined that there is sufficient evidence to support a finding of unethical conduct. Respondent violated RPC 5.6(b) by entering into an agreement that restricted Hager and Traficonte's right to represent plaintiffs in suits against Warner-Lambert relating to Nix. He also violated RPC 8.4(a) by knowingly assisting or inducing Hager and Traficonte's violations of the Rules of Professional Conduct.

There are few disciplinary cases and none in New Jersey related to violations of RPC 5.6(b).[2] The discipline imposed by other jurisdictions for similar misconduct has ranged from simply requiring the attorney to complete ethics courses to long-term suspensions.

In Adams v. BellSouth Telecommunications, Inc., 2001 WL 34032759 (S.D. Fla. 2001), one of the attorneys for the plaintiffs in an employment discrimination case against BellSouth suggested to BellSouth's attorneys that, in exchange for a settlement of the case, the plaintiffs' attorneys would agree not to represent "any current or former employee of BellSouth against the company for a period of one year." BellSouth's attorneys replied that a settlement was contingent upon such an agreement. During the subsequent negotiations, one of the plaintiffs' attorneys opined that such an agreement was unethical. They then decided that BellSouth would enter into a consulting agreement with the plaintiffs' attorneys. Although plaintiffs' counsel took the position that

---

[2] Nor are there any New Jersey disciplinary cases dealing with the predecessor disciplinary rule, DR 2-108(B), which stated, "In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law."

BellSouth would have to allot additional monies for the consulting agreement, BellSouth's attorneys insisted that the consulting monies be taken from the settlement proceeds. Of the $1,600,000 settlement amount, $505,275 was allocated for the consulting agreements and the plaintiffs' attorneys' fees and costs. The plaintiffs were not told of the consulting arrangement, the amount of the plaintiffs' attorneys' fees or the total amount of the settlement. Instead, each plaintiff was told the amount he or she would receive under the settlement. At least one of the plaintiffs was coerced to accept the settlement when her attorney threatened to withdraw from the representation if she did not agree to settle.

The Court found that BellSouth's attorneys had been "motivated by a desire to protect their client's interest in the face of reprehensible legal tactics from the other side which bordered on the extortionate" and that they "did not act for self-gain unlike opposing counsel." Nevertheless, the Court held that BellSouth's attorneys had violated the Florida counterpart to our RPC 5.6(b). No discipline was imposed on the attorneys. The Court ordered them to complete at least five hours of ethics courses, prior to their reappearance in the United States District Court for the Southern District of Florida.

With respect to the plaintiffs' attorneys, the Court found that they violated the Florida rules analogous to our RPC 1.4, RPC 1.7(b), RPC 5.6 (b) and RPC 8.4(c). Adams v. BellSouth Telecommunications, Inc., 2000 WL 33941851 (S.D. Fla. 2000). The most culpable of the attorneys was suspended from practicing before the district court for three years. None of the other plaintiffs' counsel were suspended. The

6

sanctions included continuing legal education courses, pro bono service and the return of their fees.

In In re Conduct of Brandt, 10 P.3d 906 (Or. 2000), the Supreme Court of Oregon suspended two attorneys for violating Oregon's counterpart to our RPC 5.6(b), as well as other disciplinary rules. William Brandt and Mark Griffin represented Eric Bramel and forty-eight other hand-tool distributors in their claims against Mac Tools, Inc., a manufacturer of hand tools. Brandt and Griffin, along with other lawyers who represented clients with claims against Mac Tools and its parent company, The Stanley Works ("Stanley"), met with Stanley's representative to discuss a global settlement. During the negotiations, Stanley's representative insisted that there be a "linkage" between the settlement and a future agreement that Stanley retain the plaintiffs' lawyers to avoid future litigation involving those lawyers. The plaintiffs' lawyers were concerned about the propriety of the settlement agreement. The mediator in the settlement discussions proposed that the plaintiffs' lawyers sign individual retainer agreements with Stanley and give them to the mediator to hold in escrow until the clients signed the settlement agreement, the settlement amounts had been paid and all pending actions had been dismissed. According to the mediator, if any of the clients did not consent to the retainer provision, none of the retainer agreements would go into effect. Before Brandt and Griffin agreed to the mediator's proposal, Griffin spoke with the Oregon bar's general counsel. There was a dispute as to what bar counsel told Griffin. In any event,

the Court found that advice of bar counsel did not provide a defense to disciplinary violations.

In Brandt and Griffin's letter to Bramel, enclosing the settlement agreement, they told Bramel that, after Stanley agreed to the settlement, Stanley made "a separate offer to hire [their law firms] to work for [Stanley] in the future," that they had agreed to provide legal advice to Stanley "on improving their distribution recruitment practices," and that they would be unable to pursue claims against Stanley in the future. They also advised Bramel to seek "independent legal advice" because "this situation may appear to create a conflict of interest." The Court found that Brandt and Griffin violated Oregon's counterparts to our RPC 5.6(b), RPC 1.7(b) (conflict of interest) and RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation). The Court suspended Griffin for twelve months and Brandt for thirteen months (Brandt had a prior admonition for conflict of interest). The decision does not state whether Stanley's attorney, who apparently was not admitted in Oregon, was disciplined for her role in the settlement. Nor is there a reported decision concerning Stanley's attorney.

\* \* \*

The American Bar Association ("ABA") has explained the reasons behind RPC 5.6(b):

> First, permitting such agreements restricts the access of the public to lawyers, who by virtue of their background and experience, might be the very best available talent to represent these individuals. Second, the use of such agreements may provide clients with rewards that bear less

relationship to the merits of their claims than they do to the desire of the defendant to 'buy off' plaintiff's counsel. Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients.

[ABA Formal Opinion 93-371 (1993).]

Here, respondent essentially bribed two attorneys not to pursue future claims against Warner-Lambert for $225,000. His offering of the agreement placed Hager and Traficonte in a conflict-of-interest situation with their own clients – their interest in maximizing their fees versus their clients' interest in maximizing their recovery. Warner-Lambert was able to "buy off" the plaintiffs' claims for $235,000: the $225,000 paid to Hager and Traficonte plus the $10,000 maximum in refunds that Warner-Lambert had to pay to the clients. Hager and Traficonte agreed to reimburse Warner-Lambert if the refunds exceeded $10,000.

Furthermore, the agreement here contained a confidentiality clause, which prohibited Hager and Traficonte from disclosing the full terms of the settlement to their own clients. The lawyers told them only that they were abandoning the claims against Warner-Lambert because they had not obtained a sufficient number of consumers willing to join the class action, because of the "inherent scientific and legal difficulties in successfully prosecuting" the action, and because of the willingness of Warner-Lambert to make reasonable changes in marketing the product. In re Hager, supra, 812 A.2d at 910. Under RPC 1.4(b), an attorney is ethically obliged to advise the client of all terms of a settlement agreement. Inducing one's adversary not to do so constitutes a violation of RPC 8.4(a).

We recognized that respondent advanced mitigating circumstances. We also recognized that there are no prior New Jersey disciplinary decisions dealing with RPC 5.6(b). On the other hand, the Rules of Professional Conduct clearly prohibited respondent's actions. Furthermore, he had to be on notice that an agreement that so undermined opposing counsel's relationship with his clients had to be unethical. Lastly, we noted that, at oral argument before us, the OAE urged us to suspend respondent for one year, arguing that his conduct was no less egregious than Hager's, who was suspended for one year.

After consideration of the relevant circumstances, particularly the seriousness of respondent's conduct, five members determined to suspend him for one year. Four members voted to suspend him for three years.

We caution the bar that efforts to buy off plaintiffs' counsel by secret agreements of the kind present here will be viewed as extremely serious, warranting substantial suspensions.

We further determined to require respondent to reimburse the Disciplinary Oversight Committee for administrative costs.

Disciplinary Review Board
Mary J. Maudsley, Chair

By: *[signature]*
Robyn M. Hill
Chief Counsel

10

## SUPREME COURT OF NEW JERSEY
## DISCIPLINARY REVIEW BOARD
## VOTING RECORD

In the Matter of Karel L. Zaruba
Docket No. DRB 03-098

Argued: May 15, 2003

Decided: July 23, 2003

Disposition: One-year suspension

| Members | Disbar | One-year Suspension | Reprimand | Three-year suspension | Dismiss | Disqualified | Did not participate |
|---|---|---|---|---|---|---|---|
| Maudsley | | X | | | | | |
| O'Shaughnessy | | X | | | | | |
| Boylan | | | | X | | | |
| Holmes | | X | | | | | |
| Lolla | | | | X | | | |
| Pashman | | X | | | | | |
| Schwartz | | | | X | | | |
| Stanton | | X | | | | | |
| Wissinger | | | | X | | | |
| Total: | | 5 | | 4 | | | |

Julianne K. DeCore
Acting Chief Counsel