**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL S. JOHNSON, DONNA
DYMKOWSKI, PATRICIA LONG-CORREA,
ANTONIO SAMUEL, and ANGELETTE
WATERS, individually and on
behalf of the Class,

                      Plaintiffs,

          - against-

NEXTEL COMMUNICATIONS, INC., a Delaware
Corporation, LEEDS, MORELLI & BROWN, P.C.,
LENARD LEEDS, STEVEN A. MORELLI,
JEFFREY K. BROWN, BRYAN MAZZOLA,
and JOHN AND JANE DOES 1-9 (a fictitious
designation for presently unknown Defendants),

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC
DOCU
ELECT      Y FILED
DOC #
DATE FI SEP 3 0 2013

MEMORANDUM DECISION
AND ORDER

07 Civ. 8473 (GBD)(KNF)

GEORGE B. DANIELS, United States District Judge:

      Before the Court is the motion for class certification of common issues of Representative

Plaintiffs Michael S. Johnson, Donna Dymkowski, Patricia Long-Correa, Antonio Samuel, and

Angelette Waters.  Plaintiffs allege that Defendant Leeds, Morelli & Brown, P.C. ("LMB")

committed, and Defendant Nextel Communications, Inc. ("Nextel") procured and facilitated,

various illegal acts against the proposed class in connection with Defendants' negotiation and

execution of the Dispute Resolution Settlement Agreement ("DRSA").  The DRSA

memorialized an agreement between LMB, then-counsel for Plaintiffs and the proposed class,

and Nextel to negotiate and perform a dispute resolution mechanism that would resolve

numerous employment discrimination claims against Nextel.  Specifically, Plaintiffs allege that

the DRSA was rife with conflicts of interest that gave rise to the following claims: (i) breach of fiduciary duty; (ii) commercial bribery; (iii) fraud; (iv) tortious interference with a business contract; (v) unjust enrichment; (vi) negligence/legal malpractice; (vii) breach of contract; (viii) consumer fraud/unauthorized practice of law/attorney misconduct; and (ix) conversion.

Accordingly, pursuant to Federal Rule of Civil Procedure 23(c)(4), Plaintiffs seek an order certifying an issue class against Nextel only, and an issue subclass against LMB, with respect to "issues . . . related to the negotiation, drafting, and performance of the Dispute Resolution Settlement Agreement that resolved the discrimination claims of LMB's clients." (Plaintiffs' Memorandum of Law in Support of Their Motion for Certification of Common Issues [ECF No. 97], p. 1 ("Pls. Mem.").)   Additionally, Plaintiffs seek class certification of their entitlement to punitive damages based on those same issues.

Plaintiffs' motion to certify a class as to common issues of liability and punitive damages against Nextel is GRANTED.  Plaintiffs' motion to certify a subclass against LMB is DENIED.

## BACKGROUND

This case concerns LMB's prior representation of 587 individuals, including the named Plaintiffs, in their asserted individual employment discrimination claims against Nextel.  In 2000, prior to the commencement of any lawsuit, representatives from LMB and Nextel convened in New York to negotiate and draft the DRSA, which created the framework for an alternative dispute resolution process ("DRP") through which Nextel would process and resolve claims brought against it by LMB's clients.  On September 28, 2000, Nextel and LMB signed the DRSA.  (*See* Ex. 26 to Decl. of Jennifer Fountain Connolly [ECF No. 98-28].)

Plaintiffs allege that, in negotiating, agreeing to, and performing the DRSA, Nextel essentially purchased LMB's loyalty away from its clients by means of the promise and then

2

payment of $5.5 million in attorneys' fees to process each employment discrimination claim through the DRP, and an additional flat fee of $2 million to act as consultants to Nextel on its employment practices over a two-year period. To earn the full $5.5 million, the terms of the DRSA required LMB to ensure that all 587 claims were resolved within 45 weeks. If it did not succeed, LMB stood to have its fees reduced per unresolved claim. Plaintiffs allege that these terms caused LMB to severely compromise its representation of its clients, and instead work to resolve each discrimination claim to Nextel's satisfaction, resulting in much lower individual settlements than would otherwise have been obtained absent LMB's conflicts of interest under the DRSA, and in much lower settlements than LMB had represented to its clients at the outset of their representation. In total, the $7.5 million that Nextel agreed to pay LMB in connection with resolving LMB's clients' claims through the DRP, and as an employment practices consultant thereafter, is nearly twice the amount of the collective, aggregate recovery on all claims processed under the DRP.[1]

Acknowledging that the terms of the DRSA contained conflicts of interest for the firm in its representation, LMB disclosed these conflicts to its clients and had each member sign a waiver as to the conflicts. The Second Circuit has since held that despite those waivers, LMB's conflicts of interest in this matter were so great as to be "not consentable." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 139, 141 (2d Cir. 2011).

Two state court actions involving substantially the same issues here have been litigated prior to the instant action. In April 2002, putative class action *Foster v. Leeds, Morelli & Brown,*

---

[1] The claimants recovered a total of $3,868,397.33 as a result of all settlements under the DRP. (Computation of [DRP] Settlement Check, Connolly Ex. 33 [ECF No. 98-35].) This was in part due to a September 2001 amendment to the DRSA that imposed a cap of $3,690,000.00 on the aggregate recovery of the remaining 369 claimants as well as a $25,000 cap on any individual settlement amount. (Amendment No. 3 to DRSA, Connolly Ex. 31 [ECF 98-33 at 15281-15282].)

*P.C.* (No. 02-cv-1484) was filed in Colorado state court against LMB by the 587 former LMB clients, who also make up the proposed Class in the present action against Nextel.  The *Foster* Court certified that class for settlement purposes only, and the *Foster* plaintiffs settled with LMB for $1.2 million on June 30, 2003.  That settlement was approved by the court on November 5, 2003.  41 class members opted out of the *Foster* settlement.  (*See Foster* Final Order and Judgment, Sandak Ex. 22 [ECF No. 108-6].)  In 2003, two *Foster* opt-outs filed one Colorado state lawsuit, *McNeil v. Leeds Morelli & Brown, P.C.* (No. 03-cv-893) for claims arising from the same set of facts against Nextel and LMB.  The *McNeil* court dismissed Nextel from the case, a jury found in favor of LMB, and on May 7, 2009, a Colorado appeals court affirmed the judgments in that case.  (*McNeil* Op. (Colo. App. Ct. 2009), Sandak Ex. 6 [ECF No. 108-1].)

Before this Court, Plaintiffs seek to certify a proposed liability class comprised of the individuals who asserted employment discrimination claims against Nextel, were represented by LMB in the prosecution of those claims, and ultimately resolved their claims through the DRSA. Plaintiffs also seek to certify a subclass against LMB of 39 of the firm's former clients who opted out of the Colorado *Foster* class settlement[2] who, Plaintiffs argue, retained their claims against LMB by virtue of opting out.  Plaintiffs request that both the class against Nextel and the subclass against LMB be certified as to the following issues: Whether, by entering into the DRSA, Defendant LMB (i) knowingly breached its fiduciary duty to its clients, (ii) breached a duty of care to its clients (legal malpractice), (iii) breached its retainer agreements with its clients (breach of contract), (iv) appropriated or interfered with funds that otherwise belonged to its clients under the terms of their retainer agreements (conversion), and (v) incurred punitive

---

[2] *See* Ex. A to Final Order and Judgment Approving *Foster* Class Action Settlement, Sandak Ex. 22 [ECF No. 108-6] (listing opt-outs).

liability by engaging in this conduct; and whether, by entering into the DRSA, Defendant Nextel (i) intentionally and without justification procured LMB's breach of its retainer agreements with its clients (tortious interference with a contract), (ii) knew about LMB's wrongful conduct, including the alleged breach of fiduciary duty, malpractice and conversion (aiding and abetting), (iii) knowingly and substantially participated in the wrongdoing, including the alleged breach of fiduciary duty, malpractice and conversion (aiding and abetting), (iv) paid bribes to LMB in the form of the $7.5 million in fees promised in the DRSA (aiding and abetting), and (v) incurred punitive liability by engaging in this conduct.[3]

## CLASS CERTIFICATION

### I.  Preclusion of the Proposed Issue Subclass Against LMB

Plaintiffs propose an issue subclass against LMB of "[a]ll members of the Class who opted out of the settlement in *Foster* . . . excluding those who resolved the claims alleged against [LMB] in this action in any other proceeding." (Pls. Mem. at 14.)  Defendant LMB objects to this subclass on the ground that, among other things, the Colorado state *Foster* class settlement consisted of the same parties, claims, and set of facts as the action currently before the Court. (LMB Mem. of Law in Opp'n to Pls.' Mot. for Class Certification at 4-5, Nov. 20, 2012 ("LMB Opp'n") [ECF No. 111].)  LMB also asserts that when the claims of class opt outs are preserved, they are preserved for individual actions only.  (LMB Opp'n at 20 n.70.)

The proposed Subclass consists of identical parties to, and a subset of the same claims as, those in the Colorado state *Foster* action.  The eventual resolution by class settlement in *Foster*,

---

[3] *See* Pls. Mem. at 15.

5

from which proposed Subclass members opted out, precludes Plaintiffs here from obtaining class status for the opt-out members as a proposed Subclass in this Court.[4]

### A. Plaintiffs Who Opt Out of a Class Settlement Preserve Only Their Own Individual Claims Against The Settling Defendant(s)

The cornerstone of the 23(b)(3) class certification mechanism provided for in the Federal Rules is that class members under that Rule are not unconditionally bound by a class settlement agreement with which they find themselves in disagreement. Rule 23(b)(3) permits that such plaintiffs may exclude themselves, or "opt out," of the class action or settlement, *provided that* they release their class claims when doing so and proceed solely on an individual basis. The law is clear that the choice made by plaintiffs at the opt-out stage is a dichotomous and mutually exclusive one. *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 88 (S.D.N.Y. 2001) ("[T]hose affected must be given an option: to gain the convenience of class membership, or opting-out and suing individually."); *see also Eisen v. Carlisle,* 417 U.S. 156, 176 (1974)

---

[4] Defendant LMB submitted the expert declaration of Steven W. Suflas, Esq. ("Suflas Decl.") (McConnell Ex. B [ECF No. 110-2]) in conjunction with its Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification. The Suflas Declaration set forth various arguments as to the unsuitability of the proposed Subclass against LMB for class certification. Plaintiffs moved to strike the Suflas Declaration on numerous grounds, including its untimeliness. (Pls. Mot. To Strike [ECF No. 120].) Rule 37 of the Federal Rules provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1).

LMB retained Mr. Suflas as an expert in January of 2012 (Hr'g Tr. 68:17), yet did not disclose his existence until eleven months later, as part and parcel of its Memorandum in Opposition filed on November 20, 2012. LMB's argument that it was unable to disclose Mr. Suflas until it knew what issues Plaintiffs sought to certify is untenable. (Hr'g Tr. 72:2-73:19.) When LMB made a decision to retain and prepare a class certification expert, it had the burden of – at minimum – informing the Court and asking for an expert discovery schedule. LMB has offered no "substantial justification" for its failure to timely disclose Mr. Suflas as an expert in this proceeding, and Plaintiffs suffered prejudice as a result of the non-disclosure, as they were unable to tailor their discovery requests accordingly or obtain their own expert, if desired.

Considering Plaintiffs' immediate request to exclude the Suflas Declaration and the stark lack of evidence that LMB's failure to timely disclose was inadvertent or otherwise in good faith, Plaintiffs' Motion to Strike the Declaration of Steven W. Suflas is GRANTED. *Cf. Optigen LLC v. Int'l Genetics, Inc.*, 877 F. Supp. 2d 33, 48-49 (N.D.N.Y. 2012).

(emphasis added) ("[Under Rule 23], each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim *separately* or that he may remain in the class and perhaps participate in the management of the action.").   Stated differently, for purposes of litigating the same claim(s) against the same defendant(s), the only option available to a plaintiff once he chooses to opt out of a class is the option to "go it alone – or not at all – without being bound by the class judgment."[5]   An opt-out plaintiff cannot resurrect a putative class action under the guise of individual claims. *In re WorldCom, Inc. Secs. Litig.*, No. 02 Civ. 5119, 2006 WL 2709855, at *8 (S.D.N.Y. Sept. 22, 2006) (emphasis added) ("[Plaintiff] was given an opportunity to opt-out from the class, and thereby preserve its right to pursue an *individual* action against [defendant]. That choice satisfied due process. [Plaintiff] was not free to sit on its hands and wait . . . before attempting to resurrect a putative class action that had been fairly settled and to re-characterize it as an individual action.").   *A fortiori*, then, plaintiffs cannot resurrect a putative class action and re-file it as another class or, as characterized here, a subclass.   Whether the opt-outs seek to reconstitute as a new class intentionally or "incidental[ly]"[6] is of no import; it is well-established that opt-outs from a class settlement preserve *no* claims as to settled issues other than their own individual claims.   *See, e.g., Eisen,* 417 U.S. at 176; *Mendez,* 260 F.R.D. at 51; *In re WorldCom, Inc. Secs. Litig.*, 2006 WL 2709855, at *8; *Ansoumana,* 201 F.R.D. at 88.

---

[5] *Mendez v. Radec Corp.*, 260 F.R.D. 38, 47 (W.D.N.Y. 2009) (citing *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 530 (D.C. Cir. 2006)); *see also Morris v. Affinity Plan, Inc.*, No. 09 Civ. 1932, 2013 WL 940506, at *5 (S.D.N.Y. Mar. 11, 2013) (emphasis added) ("Opt Out Plaintiffs are not without a forum to pursue their *individual* claims. They may have their . . . claims adjudicated by filing a new suit."); *Mendez,* 260 F.R.D. at 51 (emphasis added) ("When they have been given notice, class members will have an opportunity to opt out of this action and, if they wish, to file their own *individual* claims.").

[6] Hr'g Tr. 38:10-13.

7

Indeed, Plaintiffs concede that they could find no case in which a court has certified a class of plaintiffs that opted out of a prior class action trying the same issues. (Pls. Ltr. to Court at 2, Jan. 22, 2013.) Plaintiffs' only proffer of authority for certifying such a class is the *In re Baldwin-United Corp.* decision, in which the Court commented that "plaintiffs can opt out of a settlement class and pursue their litigation goals either individually or as another putative class." 105 F.R.D. 475, 481 (S.D.N.Y. 1984). That decision contains no further discussion of whether or how opt-outs from a class settlement can form another putative class, and therefore it cannot be the rationale for this Court's decision to certify a new subclass of opt-outs.

### B. The Parties and Claims of the Subclass Are the Same As the Parties and the Claims in *Foster*

It cannot be disputed that members of the proposed Subclass are the same individuals who brought claims against LMB as part of the class certified for settlement in *Foster*. Granted, proposed Subclass members opted out of the *Foster* class settlement, but that is the only qualitative difference between proposed Subclass members and plaintiffs in *Foster* who reached a class settlement with LMB. Indeed, this fact is *not* disputed by Plaintiffs. (Jan. 10, 2013 Class Certification Hr'g Tr. 36:3-9 ("THE COURT: Tell me how a [proposed Subclass member], who you say opted out [of *Foster*] and wants class-wide determination of an issue, tell me how that plaintiff is different than the plaintiff who settled as a class member in the [*Foster*] class. [PLAINTIFFS' COUNSEL]: They are not different other than the fact that they opted out.").)[7] This being the case, Plaintiffs' attempt to certify the *Foster* opt-outs as a subclass against LMB must fail if the issues for certification are also common to the class settlement claims.

---

[7] *See also id.* 41:17-20 (Plaintiffs' counsel affirming Court's statement that there is "no distinction between the commonality of the plaintiffs who you want to certify as a [Sub]class and the plaintiffs who already settled as a class [in *Foster*]").

Plaintiffs in the instant case admittedly present no issues for class certification against LMB different from those certified and settled in *Foster*. Rather, they attempt to offer a narrower selection, or a subset of those issues. (Hr'g Tr. 41:9-12 ("THE COURT: The only distinction you are drawing [with *Foster*] is you're asking that only ten issues be certified as opposed to all issues, and that's the distinction. [PLAINTIFFS' COUNSEL]: That's the distinction.").) Such a re-grouping of the issues does not a new class make. (*Compare* Plaintiffs' Motion for Certification of Common Issues [ECF No. 96] and Memorandum in Support [ECF No. 97] *with Foster* Amended Complaint [ECF No. 108-6] (alleging claims within which issues sought to be certified by this Court are subsumed).) Proposed Subclass members have therefore already had their chance to litigate this subset of issues against LMB on a class basis and, after class settlement, they may not do so again here.

Accordingly, Plaintiffs' Motion for Certification of Common Issues is DENIED as to the proposed Subclass against LMB.

## II. Certification of the Proposed Issue Class Against Nextel

### A. Legal Standard

Plaintiffs have moved for class certification as to certain liability issues under Federal Rule of Civil Procedure 23(c)(4).[8] (Pls.' Mot. for Certification of Common Issues ("Pls. Mot.")

---

[8] Specifically, Plaintiffs ask that the Court certify the proposed Class against Nextel on the following ten issues ("Common Issues"):

    (a) Whether, in entering into the DRSA, LMB knowingly breached its fiduciary duty to its clients;

    (b) Whether, in entering into the DRSA, LMB breached a duty of care to its clients;

    (c) Whether, in entering into the DRSA, LMB breached its retainer agreements with its clients;

    (d) Whether, in entering into the DRSA, Nextel intentionally and without justification procured LMB's breach of its retainer agreements with its clients;

    (e) Whether, in entering into the DRSA, LMB appropriated or interfered with funds that otherwise, under the terms of LMB's retainer agreements, belonged to LMB's clients;

[ECF No. 96], Pls. Mem. at 15.)       "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). "A district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met, just as the judge would resolve a dispute about any other threshold prerequisite for continuing a lawsuit." *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006). Courts must undertake "a rigorous analysis" and resolve any factual disputes relevant to certification. *In re Am. Int'l. Grp. Secs. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012).[9] The Rule 23 inquiry may overlap with that of the merits, although courts are not permitted to engage in "free-ranging merits inquiries at the certification stage." *Dukes v. Wal-Mart Stores*, 131 S. Ct. 2541, 2551 (2011); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013). "The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction" and has demonstrated a "general preference . . . for granting rather than denying class certification." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (internal quotations and citations omitted). District courts customarily retain

---

(f) Whether Nextel knew about LMB's wrongful conduct [breach of fiduciary duty, malpractice and conversion];

(g) Whether Nextel knowingly and substantially participated in the wrongdoing [breach of fiduciary duty, malpractice and conversion];

(h) Whether Nextel's payments to LMB of $5.5 million in attorneys' fees and $2 million to act as a consultant to Nextel were bribes;

(i) Whether Plaintiffs are entitled to punitive damages against LMB and, if so, what ratio of punitive to compensatory damages is appropriate; and

(j) Whether Plaintiffs are entitled to punitive damages against Nextel and, if so, what ratio of punitive to compensatory damages is appropriate.

(Pls. Mem. at 15.)

[9] Any findings of fact at the class certification stage are for Rule 23 purposes only, and are not binding on the trier of facts on the merits. *In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d at 41.

"broad discretion" in the contexts of class and issue certification. *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 28 (2d Cir. 2003) (collecting cases).

Rule 23(a) has four threshold requirements: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

Once a Plaintiff has demonstrated that its proposed class meets these four requirements, the Court must determine whether the action can be maintained under one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b). Here, Plaintiffs argue that certification under Rule 23(b)(3) is appropriate because the proposed Class against Nextel satisfies that subsection's predominance requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members," and its superiority requirement that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Pls. Mem. at 20-23.

Under Rule 23(c)(4), a class may be certified as to certain issues only, provided that the class meets the requirements of Rule 23(a) and (b) with respect to those particular issues for which certification is sought. Fed. R. Civ. P. 23(c)(4); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006) ("[A] court may employ subsection (c)(4) to certify a class as to liability regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."); *accord Jacob v. Duane Reade, Inc.*, No. 11 Civ. 160 (JPO), 2013 WL 4028147, at *11-*12 (S.D.N.Y. Aug. 8, 2013) ("Duane Reade II"). Courts should use Rule 23(c)(4) "only

where resolution of the particular common issues would materially advance the disposition of the litigation as a whole." *Duane Reade II*, 2013 WL 4128147, at *11. In sum, a bifurcated or limited certification of issues under Rule 23(c)(4) is appropriate where Rule 23(a) and (b) are satisfied, and such material advancement and corresponding judicial economies will be achieved. *See supra; see also* 1 Newberg on Class Actions § 4:91 (5th ed. West 2013).

### B. Rule 23(a)

Plaintiffs propose a liability issue class against Nextel of "[a]ll people who were represented by [LMB] and had claims against Nextel that were resolved pursuant to the terms of the [DRSA]." (Pls. Mem. at 14.) Nextel contends that, with respect to the Rule 23(a) factors, Plaintiffs cannot adequately demonstrate commonality, typicality, or adequacy. (Nextel Commc'ns, Inc.'s Brief in Opp'n to Pls.' Mot. for Certification of Common Issues at 24-30 ("Nextel Opp'n") [ECF No. 107].)

### i. Ascertainability of Class

Though not expressly stated in Rule 23, many courts have read an implicit requirement of class "definiteness and ascertainability" into the Rule. 1 Newberg on Class Actions §§ 3:1, 3:2 (5th ed. West 2013). Rule 23 definiteness and ascertainability requires that the proposed class size is knowable, and that the class is defined in such a way that proposed class members are objectively determinable. *Id.* § 3:1; *see also, e.g., In re Initial Pub. Offerings Secs. Litig.*, 471 F.3d at 30. Here, Plaintiffs easily meet the ascertainability requirement because the proposed Class is a group of 587 individuals previously identified by *Defendants* for purposes of administering the DRP that was governed by the DRSA. (Pls. Mem. at 14.) Indeed, the proposed Class was in effect created by the challenged conduct of Defendant Nextel in conjunction with LMB. *Id.; see also Nassau Cnty.*, 461 F.3d at 229 ("Since defendants possess

12

records of [individuals previously subjected to conduct challenged by proposed class], determining class membership would be simple." (citing *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, (2d Cir. 2001) (upholding class certification where "class members . . . can be identified by defendants' own records"), *superseded by statute on other grounds*)).

### ii.  Numerosity of Class

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity under Rule 23(a)(1) is presumed when a class consists of forty or more plaintiffs. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs assert, and Nextel does not dispute, that the number of individuals subjected to the DRSA was 587. (Pls. Mem. at 1-2; Nextel Opp'n at 3.) The proposed Class is thus sufficiently numerous under Rule 23(a).

### iii.  Commonality of Claims

Under Rule 23(a)(2), Plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires Plaintiffs to demonstrate that the proposed class members "have suffered the same injury," which the Supreme Court in *Walmart Stores, Inc. v. Dukes* recently clarified to mean that courts should look to "the capacity of a class-wide proceeding to generate common *answers*" to the questions raised by common claims of a putative class. ___ U.S. ___, 131 S. Ct. 2541, 2551 (2011). Significantly, however, "[d]espite the rigor of the Rule 23 requirements, commonality has never been understood to require that all issues must be *identical* as to each member, but rather [to] require[] that plaintiffs identify some unifying thread among the members' claims that warrant[s] class treatment." *Meyer v. USTA*, No. 11 Civ. 6268, 2013 WL 1777556, at *4 (S.D.N.Y. Apr. 25, 2013) (internal

13

quotation marks omitted) (emphasis added); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008) (same); *Kamean v. Local 363, Int'l Bhd. Of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y.) (finding commonality prerequisite satisfied, but denying class certification on other grounds), *appeal dismissed*, 833 F.2d 1002 (2d Cir. 1986).

All putative Class members are similarly situated with respect to Nextel in the context of the DRSA, and therefore the answers to the Common Issues considered at trial will be the same for all. [10]  Contrary to Nextel's assertions (Nextel Opp'n at 17-29), all material commonality considerations in this case center on Nextel's conduct, as manifested in the promulgation of the DRSA, and its effect on the entire group of LMB clients, *not* on each LMB client's individual circumstances. *Compare Duane Reade II*, 2013 WL 4028147, at *15 (finding that proposed class members' injuries "clearly stem[med] from one, common harm" and certifying Rule 23(c)(4) liability class).  For example, the breach of any duty that arose in connection with the attorney-client relationship between LMB and its clients will be found or not found for all of LMB's clients. *Compare In re U.S. Foodservice Inc. Pricing Litig.*, No. 12-1311, 2013 WL 4609219, at *14 (2d Cir. Aug. 30, 2013) (finding that non-identical contracts were "materially uniform insofar as they imposed the same duty on [defendant, thus finding that] . . . the question of whether [defendant] had violated its duty was common to all class members").  There is no dispute that the putative Class members were all similarly represented by LMB during the DRSA period.  Further, Nextel's alleged liability is based in the single act of Defendants' entering into the DRSA.  No individual circumstance will alter the fact that at the relevant time (the signing and performance of the DRSA), all proposed Class members were clients of a law firm whose

---

[10] The commonality analysis examines whether there are questions and answers that are *common* to the proposed Class.  Whether other, individual issues defeat commonality is the purpose of the 23(b)(3) predominance inquiry.

entrance into the Agreement subjected its clients' decisions about their underlying claims against Nextel to the overarching framework agreed to in the DRSA.

Additionally, whether aspects of the DRSA can be found to have compromised LMB's representation of its clients is not dependent on *first* evaluating each underlying claim or considering each LMB clients' place of residence. Nor does Nextel's role in the DRSA inquiry vary; at all times, the pertinent question is whether Nextel procured and/or facilitated misconduct by LMB. In fact, the conduct of Nextel and LMB is the only activity relevant to the determination of Nextel's liability to the proposed Class. This is evidenced by the fact that the evaluation of Nextel's role, if any, in triggering LMB's misconduct does not change if there is one plaintiff, fifty, or 587; or if they are from New Jersey, Colorado, Georgia, or New York. Rather, as Plaintiffs' arguments consistently demonstrate, the essential commonality questions concern the DRSA as an agreement between two entities – LMB and Nextel – and the DRSA's effect on the relationship between LMB and its clients. These questions, and their answers, do not change based on variations in individual circumstances of LMB's clients. The members of the putative Class of former LMB clients are similarly situated with respect to Nextel as a result of being subjected to the DRSA; common questions of law and fact have been established, and the commonality requirement of Rule 23(a)(2) has been met.

### iv. Typicality and Adequacy[11]

#### 1. Typicality

To ensure that named plaintiffs' interests are aligned with those of the putative class members whom they seek to represent, Rule 23(a)(3) requires that the claims of named plaintiffs be typical of the claims of the proposed class. "The purpose of typicality is to ensure that class representatives have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Davis v. City of New York*, No. 10 Civ. 0699, 2013 WL 4712501, at *3 (S.D.N.Y. Aug. 29, 2013) (internal quotation marks and citation omitted). "Courts tend to interpret typicality as requiring that the class members' claims arise from the same course of events, meaning [that] each class member must make similar legal arguments to prove the defendant's liability." *Jacob v. Duane Reade*, 289 F.R.D. 408, 416 (S.D.N.Y. 2013) ("Duane Reade I") (internal quotation marks omitted) (citing *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)).

Additionally, "[i]t is axiomatic that [w]hen it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 417 (internal quotation marks omitted) (citing *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993)); *accord Davis*, 2013 WL 4712501, at *2 ("The

---

[11] Analysis of the typicality and adequacy requirements in Rule 23(a)(3) and (a)(4), respectively, involves consideration of similar issues, and the two elements are frequently evaluated together. *Davis*, 2013 WL 4712501, at *5 (internal quotation marks and citations omitted) ("In practice, the commonality and typicality requirements of Rule 23(a) tend to merge, and [t]hose requirements . . . also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."); *see also* 1 Newberg on Class Actions § 3:57 (5th ed. West 2013) ("If a class representative's claim is not typical, she may not have the motivation or incentives to adequately pursue the claims of other class members. Conversely, if a class representative's claims are typical of those of the class, then the central component underlying the theory of representative litigation is already in place: by pursuing her own interests, the representative will necessarily promote the interests of absent class members as well.").

typicality requirement may be satisfied where 'injuries derive from a unitary course of conduct by a single system.'" (quoting *Marisol A.*, 126 F.3d at 377)).  In this case, each named plaintiff is part of the same group of 587 individuals who were subject to one agreement – the DRSA – and who have stated claims and proffered evidence of injury as a result of Defendants' "unitary course of" "unlawful conduct" in connection with that agreement.  Thus, typicality in this case is met.

### 2.  Adequacy of Named Plaintiffs

The fourth prong of Rule 23(a) mandates that parties seeking to certify a class demonstrate that the named plaintiffs will "fairly and adequately" represent that class.  Fed. R. Civ. P. 23(a)(4).  Courts generally interpret this requirement to mean that named plaintiffs must be similarly situated to the proposed class in terms of interests and injury (*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997)), and they may have no interests adverse to those of the putative class, lest those conflicts of interest interfere with named plaintiffs' "faithful performance of their duties as class representatives" and the efficient prosecution of the class claims.  *See Kamean* 109 F.R.D. at 395 (denying class certification due to conflicts of interest compromising named plaintiffs and proposed class counsel); *see also In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) ("Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members.").   To defeat class certification on adequacy grounds, any conflicts must be fundamental.[12]

---

[12] *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted) ("[i]n order to defeat a motion for certification . . . the conflict must be fundamental"); *see also* 1 Newberg on Class Actions § 3:58 (5th ed. West 2013) ("Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement.."); *In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 482 (W.D.  Pa. 1999) ("[P]otential conflicts between the named class members and the

Nextel argues that the named plaintiffs are not adequate because (i) they lack sufficient knowledge of the litigation and are simply lending their names to the lawsuit; and (ii) their claims are not typical or common to the class. (Nextel Opp'n at 31-32.) Nextel offers evidence for plaintiffs' lack of knowledge only in the form of plaintiffs' reliance on counsel when making strategic litigation decisions or signing documents at the request of counsel without comprehensive review. (*Id.* at 31 (citing deposition testimony).) Especially in the context of the Second Circuit's disapproval of "myopic . . . attacks on the adequacy of a class representative based on the representative's ignorance," named plaintiffs' current or previous reliance on their attorneys' advice is neither so unusual nor egregious to undermine adequacy of class representation. *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000) (rejecting adequacy challenge based on lack of knowledge because "the extent that [named plaintiff] relies on his father and lawyer for advice . . . should not disqualify him as a representative"). Next, having already found that named plaintiffs, as former claimants under the DRSA, have satisfied the commonality and typicality requirements, Nextel's argument that lack of these qualities also renders named plaintiffs' inadequate is moot.[13] With respect to the unique

---

classes are insufficient to preclude class certification. As plaintiffs note, courts have 'rejected efforts ... to defeat certification by raising the possibility of hypothetical conflicts or antagonisms among class members,' declining to consider such conflicts sufficient to defeat class action status at the outset 'unless the conflict is apparent, imminent, and on an issue at the very heart of the suit.'" (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996))).

[13] Nextel also contends that there is no named plaintiff situated similarly to the vast majority (all but the 39 *Foster* opt-out members) of the proposed Class following the withdrawal of Vincent Hall as a named plaintiff in this case. (Pls.' Notice of Withdrawal of Proposed Class Representative, Nov. 16, 2012 [ECF No. 105].) This argument is not persuasive. Not only does Nextel gloss over an explanation of how the fact that named plaintiffs are all opt-outs might compromise their ability to represent the proposed Class, but the cursory explanation they do provide is mere supposition. Defendants have no way of knowing, at this time, that "no one who accepted the *Foster* settlement [] *still* wishes to proceed with this case" (Nextel Opp'n at 32), because all of those individuals are still putative Class members who have not been alerted to the imminent progression of this case.

18

defense argument that Nextel appends to the end of its adequacy argument, those defenses belong to the individual damages assessments for which Plaintiffs do not seek certification.

### 3.  Adequacy of Class Counsel

Part and parcel to the adequacy inquiry is the requirement that proposed counsel be able to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(B). Formerly an element of Rule 23(a)(4), this requirement is often still considered as part of the Court's 23(a)(4) adequacy analysis.  This Circuit has interpreted this requirement to mean that class counsel must be "qualified, experienced and generally able to conduct the litigation" (internal quotation marks and citation omitted).  *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992).  Defendant Nextel does not directly challenge the adequacy of Plaintiffs' counsel (and proposed class counsel) Hagens Berman Sobol Shapiro LLP and Roper & Twadorsky LLC.[14]  Proposed counsel is qualified and adequate to serve as Class Counsel based on their knowledge and expertise of complex class action and malpractice litigation; the time and resources already expended in identifying and investigating potential claims in this case, prevailing against Defendants' motion to dismiss and pursuing class certification discovery; and the considerable resources that proposed counsel pledge to commit to representing the Class in upcoming litigation.  (*See* Fed. R. Civ. P. 23(g)(1)(A)-(B); Pls. Reply Mem. at 23-24; Connolly Decl. ¶ 63; Exs. 48 and 49 to Connolly Decl.)

### C.  Rule 23(b)3

#### i.  Predominance

For certification of 23(b)(3) classes, the Federal Rules require that "questions of law or fact common to class members predominate over any questions affecting only individual

---

[14] (*Id.* at 30-32.)

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs argue that this requirement is satisfied here because the issues sought to be certified relate to the DRSA, which "appl[ies] to every single pu[ta]tive class member" and gave rise to all of the claims in this case. (Pls. Mem. at 20; Pls. Reply Mem. at 8; Aug. 21, 2012 Tr. 9:9-12, Ex. 54 to Connolly Decl.) "The predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (citation omitted). The 23(b)(3) predominance analysis must also be applied to issue certification cases under 23(c)(4) when monetary relief is the primary form sought. *Nassau Cnty.*, 461 F.3d at 225-230.

<u>Choice of Law</u>

Properly classified, Nextel's main objection to Class certification is to Plaintiffs' ability to satisfy the predominance requirements due to purported variations in the laws of the states in which the proposed Class members reside. Nextel argues that this Court must apply a choice-of-law analysis to each individual plaintiff and that, under such analysis, differences in individually applicable state laws prevent resolution of the Common Issues by generalized proof. (Nextel Opp'n 18-28.) Consideration of state laws does not defeat predominance in this case. Here, it is appropriate to apply New York law to resolve the Common Issues under New Jersey's "most significant relationship" test, there are no material conflicts of law amongst the relevant states, and individual defenses as to recovery do not apply at the liability stage.[15]

---

[15] The bulk of cases cited by Nextel on this point (*see* Nextel Opp'n at 18-24) are distinguishable from the facts relevant to this motion. Those cases involve direct, geographically dispersed and localized injuries to individual

Plaintiffs assert that New York law properly applies to the Common Issues. (Pls. Mem. at 13-16.) The Second Circuit has directed, and the parties agree, that New Jersey's choice-of-law rules govern this case. (*Johnson*, 660 F.3d at 137-38; Nextel Opp'n at 19; Pls. Reply at 13.) For tort claims under those rules, New Jersey applies the law of the state where the injury occurred unless another state is demonstrated to have a "more significant relationship" to the parties and issues. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008); *Schmidt v. Celgene Corp.*, 425 N.J. Super. 600, 606 (2012) (citing Restatement (Second) Conflict of Laws §§ 6, 145). New Jersey determines which state has the more significant relationship to the relevant contested issues by analyzing factors identified in the Restatement, as follows: (a) the place where the alleged injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship between the parties is centered. Restatement

---

would-be plaintiffs in their states of residence, more akin to the status of proposed Class members here had they presented their employment discrimination claims against Nextel for class certification. *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (1.5 million putative plaintiffs alleging employment discrimination in 3,400 Walmart stores spread out over all 50 states); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) (royalty owners in 50 states, D.C. and foreign countries who possessed rights to leases for which defendant had failed to pay interest); *Castano v. Am Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) (all nicotine-dependent persons in the United States who purchased and smoked cigarettes manufactured by defendant); *In re WorldCom, Inc.*, 343 B.R. 412 (S.D.N.Y. 2006) (all WorldCom customers, nationwide, who had been induced to subscribe to MCI services through fraudulent advertising); *Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 496 (S.D.N.Y. 2011) (all BMW customers, nationwide, who purchased or leased MINI vehicles in certain years and suffered and replaced flat tires); *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303 (S.D.N.Y. 2004) (Citibank cardholders in all 50 states who were solicited as cardholders and charged undisclosed foreign currency fees).

In contrast, because the Common Issues focus on the effect on the proposed Class of the execution of the DRSA, the instant case contains a single occurrence in a single jurisdiction that is more susceptible to a straightforward choice-of-law analysis and a finding that predominance has been met.

(Second) Conflict of Laws § 145 ("These contacts are to be evaluated according to their relative importance with respect to the particular issue."); *P.V.*, 962 A.2d at 461-63.[16]

With respect to the importance of these contacts to the particular issues in this case, it is clear that New York is the state with the most significant relationship to this proposed liability Class. The DRSA – the nucleus of each Common Issue and the origin of any alleged injury – was negotiated and executed in New York by a number of New York law firms (*see* Connolly Ex. 5 ¶¶ 11, 12, 14, 19, 22, 23; Pls. Mem. at 13-16), LMB is a New York company with offices in no other jurisdiction (Connolly Ex. 5 ¶ 3); Nextel negotiated the DRSA through its attorneys in New York (Connolly Ex. 5 ¶ 11); and the relationship between Nextel and LMB is indisputably centered in New York. All of these factors weigh heavily in favor of applying New York law to resolve the Common Issues.

Before applying the law of the forum state to issues in a nationwide class action, the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts* requires that courts consider the forum state's relationship to other relevant states to ensure that the application of that state's law to the issues is constitutionally permissible. 472 U.S. 797, 818-19 (1985) (stating that "modest restrictions in the application of forum law . . . require[] 'that for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair'") (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 320

---

[16] The parties agree that New Jersey performs a nearly identical analysis for breach of contract claims, also adopted from the Second Restatement. (Nextel Opp'n at 19 n.14; Pls. Reply at 14 n.50; *see Jackson v. Midland Funding, LLC*, 468 Fed. App'x 123, 126-127 (3d Cir. 2012) (stating that the contacts New Jersey requires be taken into account when determining applicable law include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties"); *Schmidt*, 452 N.J. Super. at 606 (citing Restatement (Second) Conflict of Laws §§ 6, 187-188).

(1981)). The application of New York law to the Common Issues stemming from the DRSA does not, as Nextel suggests, "take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a 'common question of law.'" (Nextel Opp'n at 18, citing *Shutts*.) Rather, the New Jersey conflicts of law analysis demonstrates that Plaintiffs have shown, as they must, that the state whose substantive law has been proffered as applicable to the parties and facts herein has "a significant aggregation of contacts with the parties and the occurrence, creating state interests, such that application of its law [is] neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 320 (1981).

Significantly, here, unlike in *Shutts*, Nextel has not shown that there are material substantive conflicts with other states' laws. (Pls. Reply at 4, 17-18 & n.64; *compare Shutts*, 472 U.S. at 816-818, 822.) In the Second Circuit, the prevalence of material variation in state laws must be demonstrated in order to defeat predominance. *In re U.S. Foodservice Inc. Pricing Litig.*, No. 12-1311, 2013 WL 4609219, at *1 (2d Cir. Aug. 30, 2013) (affirming certification of 23(b)(3) class "[d]espite . . . the fact that it implicates the laws of multiple jurisdictions"); *id.* at *15 ("[T]he crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues."). Nextel has provided a number of tables surveying various state laws on some of the issues before the Court. (Sandak Exs. 22-27 [ECF No. 108-7 – 108-11].) However, with the exception of the survey reviewing whether the Class would have a separate cause of action for breach of fiduciary duty, none of the state law differences proffered by Nextel present so

material a conflict that they defeat predominance in this case.[17]  *See In re Foodservice*, 2013 WL 4609219, at *15; *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 118 (E.D.N.Y. 2011) ("Distinctions between state laws matter only when they create meaningful differences among the members of the nationwide class. Otherwise, a nationwide class on state claims could never be certified; state legislatures rarely speak with one voice.").[18]

Individual Damages

Nextel also asserts that the Supreme Court's decision in *Comcast Corp. v. Behrend*, 569 U.S. __, 133 S. Ct. 1426 (2013) precludes issue certification because that decision found 23(b)(3) certification to be improper when plaintiffs' did not demonstrate that damages could be measured on a class-wide basis, thereby failing to satisfy predominance requirement. (Nextel Ltr. to Court at 1-2, June 5, 2013, *citing Comcast*, 133 S. Ct. at 1433.)  Plaintiffs correctly contend, however, that a Court in this District has recently held that *Comcast* does not apply to certification of liability-only classes and therefore is not relevant to this analysis.  (Pls. Ltr. to Court, Aug. 9, 2013 (citing *Duane Reade II*, 2013 WL 4028147, at *11).)  The decision to certify the proposed Class in this case does not run afoul of *Comcast* because individual compensatory damages have not been certified.  *Accord Duane Reade II*, 2013 WL 4028147, at *3-*12; *see*

---

[17] With respect to this difference – though not predominant – Nextel is, for example, free to assert a defense as to liability against the Class as a whole that Plaintiffs may not bring both breach of fiduciary duty and legal malpractice claims simultaneously under New York law.

[18] Nextel also challenges predominance of the Common Issues based on an individual defenses argument and a statute of limitations argument.  With respect to individual defenses, it is sufficient to note that the presence of individual defenses does not automatically defeat predominance, and Nextel here will have a chance to assert individual defenses as bars against individual recovery.  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001) ("Although . . . a defense may arise and may affect different class members differently[, this] does not compel a finding that individual issues predominate over common ones.").  Nextel's statute of limitations argument (Nextel Opp'n at 22-24) is a red herring on a motion for class certification; it presents no basis for denying certification of the Class.  The action is timely for the Class if it was timely filed by the named plaintiffs.  Any challenges to timeliness may be made by Nextel on a class-wide basis.

*also Whirlpool II*, 722 F.3d 838, 860 (6th Cir. 2013) ("Where determinations on liability and damages have been bifurcated, *see* Fed. R. Civ. P. 23(c)(4), the decision in *Comcast*—to reject certification of a liability and [a] damages class because plaintiffs failed to establish that damages could be measured on a class-wide basis—has limited application.").

A Punitive Damages Ratio is Permissible

"An award of punitive damages is 'a discretionary moral judgment' that the defendant has engaged in conduct that is so reprehensible that it warrants punishment." *Tolbert v. Queens College*, 242 F.3d 58, 77 (2d Cir. 2001). Plaintiffs provide persuasive precedent that the ratio mechanism for assessing punitive damages that they propose has been accepted in the Fifth Circuit. *See Watson v. Shell Oil Co.*, 979 F.2d 1014, 1019 (5th Cir. 1992). Nextel objects that such a determination of punitive damages prior to determination of compensatory damages is impermissible. (Nextel Opp'n at 22, 29.) However, no amount of punitive damages will be determined in this case before compensatory damages are calculated. Rather, the jury will only assess evidence as to the egregiousness of defendant's conduct and determine a formula to apply once specific compensatory damages are found. The Fifth Circuit in *Watson* specifically endorsed this methodology, and Nextel has offered no compelling reason that it should be rejected. *Watson*, 979 F.2d at 1019 (the punitive damages jury "is not to extrapolate punitive damages but, rather, is to determine a basis for assessment of punitive damages in the form of a ratio").

## ii. Superiority

For certification to be proper under Rule 23(b)(3), a class action also must be the most "fair and efficient" method of resolving those claims at issue. *See* Fed. R. Civ. P. 23(b)(3). In applying this requirement, courts must consider four nonexclusive factors: (1) the interest of the

class members in maintaining separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Nassau Cnty.*, 461 F.3d at 230. Here, Plaintiffs have proffered that maintaining separate actions would constitute a hardship for members of the Class, who would not be able to afford attorneys on an individual basis. (Pls. Mem. at 22.) Previous class litigation as to these matters in *Foster* resulted in the resolution of nearly all claims on a class-wide basis against Defendant LMB and thus supports proceeding on a class basis here. The desirability of the forum has not been contested, and in fact, Defendants transferred venue to this Court. Certifying the Common Issues for class treatment will result in the resolution of these issues – which are central to Plaintiffs' allegations and would have to be tried in each proposed Class member's case anyway, were the action to proceed on an individual basis – one way or the other for Nextel and the proposed Class. The promise of this resolution satisfies the standard that issue certification will materially advance the disposition of this litigation as a whole. *See Duane Reade II*, 2013 WL at *16 (citing *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 169 (S.D.N.Y. 2003).

This Court has great flexibility in addressing developments as to individual issues that may arise as the class proceeding progresses. *See In re Visa Check*, 280 F.3d at 141 ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating

subclasses; or (5) altering or amending the class."), superseded by statute on other grounds as stated in *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006). Certification of the Common Issues will unquestionably increase efficiency and materially advance this litigation, and the options identified herein enable the Court to maintain manageability of the Class.[19]  By comparison, the alternative – denying Class certification and forcing each plaintiff to proceed individually – offers neither efficiency nor manageability. Accordingly, Plaintiffs have demonstrated, as required by 23(b)(3) and 23(c)(4), the superiority of trying the Common Issues on a class basis.

Plaintiffs have shown that Rules 23(a) and 23(b) are satisfied in this case. Every former client of LMB who has a colorable claim against Nextel arising out of the DRSA is similarly situated with respect to whether Nextel is liable to him or her for tortious interference with a contract, aiding and abetting LMB's alleged breach of fiduciary duty, aiding and abetting LMB's alleged breach of duty of care, and aiding and abetting LMB's alleged conversion. (*See* Ex. A to Plaintiffs' Trial Plan [ECF No. 98-54].)  A class as to the Common Issues is hereby certified against Nextel under 23(c)(4).

---

[19] Though not required under Rule 23, Plaintiffs have also submitted a Proposed Trial Plan (Connolly Ex. 52) that this Court adopts to the extent that Plaintiffs may prove the elements of Nextel's liability using evidence that is common to all Class members.

## CONCLUSION

Plaintiffs' motion for class certification of common issues of liability against Defendant Nextel Communications, Inc. is GRANTED.  The law firms of Hagens Berman Sobol Shapiro LLP and Roper & Twadorsky LLC are appointed counsel for the Class certified against Nextel as to the identified issues.

Plaintiffs' motion to certify the proposed Subclass against LMB is DENIED.

The Clerk of Court is directed to close the motions at ECF No. 96 and ECF No. 120.

Dated:  September 30, 2013
        New York, New York

SO ORDERED:

_George B. Daniels_
GEORGE B. DANIELS
United States District Judge

28