UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
DONNA DYMKOWSKI, PATRICIA LONG-
CORREA, and ANGELETTE
WATERS,

                                Plaintiffs,

      -against-

NEXTEL COMMUNICATIONS, INC.,

                                Defendant.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

07 Civ. 8473 (GBD)

GEORGE B. DANIELS, United States District Judge:

This action returns to this Court from the Second Circuit after more than a decade of ongoing litigation. At this stage, three New Jersey tort claims remain, all brought individually by Plaintiffs Donna Dymkowski, Patricia Long-Correa, and Angelette Waters.[1] Specifically, Plaintiffs bring claims against Nextel Communications, Inc. ("Nextel") for conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, and tortious interference.

Plaintiffs' claims arise from Leeds, Morelli & Brown, P.C.'s ("LMB") representation of 587 individuals, including Plaintiffs, in their asserted employment discrimination claims against Nextel.[2] During the course of such representation, Plaintiffs allege that LMB and Nextel negotiated a Dispute Resolution Settlement Agreement ("DRSA") that created a framework for an

---

[1] All three Plaintiffs are New Jersey residents. (First Am. Compl. ("FAC"), ECF No. 22-2, ¶¶ 2, 3, 6.)

[2] The relevant factual and procedural background is set forth in greater detail in the prior decisions issued by this Court and the Second Circuit. See *Johnson v. Nextel Commc'ns, Inc.*, No. 07 Civ. 8473, 2009 WL 928131 (S.D.N.Y. Mar. 31, 2009); 660 F.3d 131 (2d Cir. 2011) ("*Nextel I*"); 293 F.R.D. 660 (S.D.N.Y. 2013); 780 F.3d 128 (2d Cir. 2015) ("*Nextel II*"); 2017 WL 4326052 (S.D.N.Y. Sept. 19, 2017); 763 F. App'x 53, 54 (2d Cir. 2019) ("*Nextel III*"). Such background is incorporated by reference herein and familiarity with those decisions is assumed.

alternative dispute resolution process ("DRP") through which Nextel would resolve claims brought by LMB clients. *Nextel I*, 660 F.3d at 135. The DRSA, Plaintiffs allege, shifted LMB's loyalty from its clients to Nextel, as Nextel agreed to pay LMB up to $5.5 million in attorneys' fees to process the employment discrimination claims through the DRP and an additional fee of $2 million to serve as a consultant to Nextel regarding its employment discrimination practices following the resolution of all claims. *Id.* at 135–36. The amount of fees Nextel would pay to LMB depended on the number of claims resolved through the DRP and the time to resolution. *Id.* at 135.

LMB and Nextel executed the DRSA on September 28, 2000. *Id.* Acknowledging that the terms of the DRSA contained conflicts of interest for the firm and its representation, LMB subsequently sought agreements (the "Individual Agreements") from its clients to participate in the dispute resolution process and waive any conflict of interest. *Nextel II*, 780 F.3d at 133. The Individual Agreement stated that the particular claimant had "reviewed the [DRSA]; had the opportunity to discuss that Agreement with [LMB] or any other counsel of [his or her] choosing; and agree[s] to comply fully with the terms of that Agreement." *Nextel I*, 660 F.3d at 136. Additionally, LMB obtained Pledges of Good Faith in which each claimant agreed to "selecting two (2) representatives in my area to maintain a copy of the [DRSA]. Upon request to either of the area representatives, claimants will be allowed to review the [DRSA]." *Id.* Notwithstanding these statements, Plaintiffs allege that LMB refused to present the full DRSA to claimants, and instead only provided the signature page of the DRSA, the Individual Agreement, and a document entitled "Highlights of Settlement Agreement" (the "Highlights Document"). *Id.* The Individual Agreement and Highlights Document disclosed the consultancy arrangement and stated that it posed a conflict of interest, which claimants agreed to waive by signing the Individual Agreement. *Id.* Regarding attorneys' fees, the Highlights Document stated that "Nextel is paying each

Claimant's attorneys' fees, costs, and expenses (other than expert witness fees) in consideration for each Claimant participating in the DRP and honoring all of the conditions." *Id.* The Individual Agreement explained that:

> Nextel has agreed to pay an amount of money to [LMB] to cover the attorneys' fees and expenses, other than expert fees, that Claimants might otherwise pay to [LMB] and for which Claimants might otherwise reimburse [LMB] for its representation of all Claimants through the [DRP], and for [LMB's] services rendered in representing all Claimants through the expedited [DRP]. [LMB] will not collect or seek to collect from any Claimant any attorneys' fees (contingent or otherwise) or expenses, other than expert fees, to which it might otherwise by entitled pursuant to an agreement between [LMB] and Claimants or otherwise. I hereby knowingly and voluntarily consent to this payment arrangement.

(Decl. of Susan Z. Haller, Ex. 1A (Individual Agreement), ECF No. 261-5, ¶ 3.) Neither the Individual Agreement nor the Highlights Document discussed the specific amounts of such fees or the conditions of those payments. *Nextel I*, 660 F.3d at 136.

Each of the three Plaintiffs signed the Individual Agreement and Pledges of Good Faith. *Id.* Further, each Plaintiff resolved their claims against Nextel through the DRP and executed a general release (the "General Release") as a prerequisite to receiving any award. *Id.* at 135–36.

Defendant Nextel now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) dismissing Plaintiffs' claims for conspiracy to breach fiduciary duty, aiding and abetting breach of fiduciary duty, and tortious interference under New Jersey law. (Notice of Nextel Communications, Inc's Rule 12(c) Mot. for J. on the Pleadings, ECF No. 259.) Defendant's motion is DENIED.

## I. LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate if, from the pleadings, the moving party is entitled to judgment as a matter of law." *Burns Int'l*

3

*Sec. Servs., Inc. v. Int'l Union, United Plant Guard Workers of Am. (UPGWA) & Its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995). The standard for addressing a motion for judgment on the pleadings pursuant to Rule 12(c) is the same as the standard used in evaluating a motion to dismiss under Rule 12(b)(6). *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). Accordingly, to survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing such a motion, a court may consider "the complaint, the answer [and] any written documents attached to them." *L-7 Designs*, 647 F.3d at 422 (citation omitted). "A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *Id.* (citation omitted and alterations in original).

## II.    DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS IS DENIED

Nextel argues that Plaintiffs' New Jersey tort claims fail as a matter of law because they rest on the allegation that Nextel entered into a secret agreement to pay LMB attorneys' fees and hire the firm as a consultant. (Mem. in Supp. of Def.'s Rule 12(c) Mot. for J. on the Pleadings ("MJP Mem."), ECF No. 260, at 9–14.) Nextel contends that because each Plaintiff signed an Individual Agreement and General Release, they knew about the terms of Nextel and LMB's arrangement, consented to the arrangement, explicitly and voluntarily waived any potential conflict of interest, and in any event, released Nextel from all claims and agreed not to sue. (*Id.*) Plaintiffs counter that they did not have complete knowledge of the arrangement between LMB and Nextel, and because such terms were intentionally concealed from Plaintiffs, Nextel cannot

4

rely on the statements in the Individual Agreement and General Release to avoid liability. (Mem. in Supp. of Pls.' Opp'n to Def.'s 12(c) Mot. for J. on the Pleadings, ECF No. 264, at 13–26.)

Under New Jersey law, it is presumed that "a party who affixes his signature to a written instrument, such as a release, has read, understood and assented to its terms. *S.A. Citrique Belge N.V. v. Ne. Chemicals, Inc.*, No. 3:12 Civ. 05408 (PGS), 2013 WL 3223389, at *2 (D.N.J. June 25, 2013) (citing *Peter W. Kero Inc. v. Terminal Construction Corp.*, 6 N.J. 361, 368 (1951)). "There is an exception, however, where there is a showing of fraud, misrepresentation or over-reaching by the releasee, or a showing that the releasor was suffering from an incapacity affecting his ability to understand the meaning of the release or on any other equitable ground." *Van Houten Service, Inc. v. Shell Oil Co.*, 417 F.Supp. 523, 527 (D.N.J. 1975) (citing *Raroha v. Earle Finance Corp., Inc.*, 47 N.J. 229, 234 (1966); *Wojcik v. Pollock*, 97 N.J. Super. 319, 324 (Law. Div. 1967)). "In such an instance, the contract is voidable and the victim may rescind the contract." *S.A. Citrique Belge*, 2013 WL 3223389, at *2 (citing *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F.Supp. 562, 568 n.8 (D.N.J. 1997)). Here, Plaintiffs allege just that. Namely, that material information was intentionally withheld from Plaintiffs prior to signing the Individual Agreement and General Release such that these agreements are invalid. Indeed, the Individual Agreements and Highlights Document omitted some of the most critical terms of the arrangement between Nextel and LMB.

The Individual Agreements explain in general terms that Nextel will pay an amount of money to LMB to cover the claimants' attorneys' fees that they might otherwise pay to LMB. *Nextel I*, 660 F.3d at 136. The Highlights Document does not provide any additional specifics, simply stating that Nextel is paying each claimant's attorneys' fees in consideration for their participation in the DRP and honoring all its conditions. *Id.* These documents do not detail the

5

actual amounts of fees to be paid. Specifically, Nextel was to "pay LMB $2 million up front to persuade its clients to drop their pending lawsuits against Nextel and sign individual agreements to participate in the dispute resolution process. The DRSA further provided that Nextel would pay another $1.5 million to the firm upon resolution of half of the claims and a final $2 million upon resolution of the remaining claims." *Nextel II*, 780 F.3d at 132. Further, "there were time limits imposed on LMB under the DRSA for resolving all the claims" and the "firm's fee was reduced by the number of claimants who did not participate in the [DRP]." *Id.* at 134 n.7. The Individual Agreements and Highlights Document, however, did not disclose this actual conflict that LMB would not be compensated based on how vigorously the firm represented its clients. Instead, the firm was incentivized "to engage in an en masse solicitation of agreement to, and performance of, the DRSA's terms from approximately 587 claimant clients." *Nextel I*, 660 F.3d at 140. While it is common for defendants to agree to pay attorneys' fees for plaintiffs in settlement agreements, such payments are most often tied to the amount of the plaintiffs' recovery. Plaintiffs had no reason to assume that the disclosures in the Individual Agreement or Highlights Document that Nextel would be paying the claimants' attorneys' fees created the enormous conflict of interest that it did. This is underscored by the fact that the claimants' retainer agreement with LMB contemplated "a one-third contingency fee" to be paid to LMB. *Id.* at 135. Moreover, though the consultancy agreement was disclosed as a conflict of interest, the amount of LMB's compensation (i.e., $2 million) was withheld from the Individual Agreements and Highlights Document.

These terms were fully laid out in the DRSA.[3] Plaintiffs, however, allege that they were not provided with a copy of the DRSA, despite statements to the contrary in the Individual

---

[3] Plaintiffs also allege that Nextel and LMB executed subsequent amendments to the DRSA that were material and never disclosed to Plaintiffs, including an amendment that put a cap on the total value of all claims. (FAC ¶¶ 56, 58.)

6

Agreements. (FAC ¶ 47.) In fact, Plaintiffs claim that LMB refused to provide the DRSA to Plaintiffs, instead falsely claiming that Plaintiffs could not see the DRSA because of confidentiality agreements. (*Id.* ¶¶ 47, 107.) Nextel argues that even if this allegation is true, Plaintiffs' remedy lies solely against LMB, as they make no allegations suggesting Nextel's involvement. (*See* MJP Mem. at 13–14.) However, Plaintiffs specifically allege that upon signing the DRSA, LMB assumed an agency relationship with Nextel. (FAC ¶ 45.) Further, Plaintiffs contend that Nextel and LMB prepared the limited Highlights Document and intended to conceal the true nature of their agreement from the claimants. (*See, e.g., id.* ¶¶ 49, 88.) Plaintiffs claim that they relied on LMB's "false, incomplete, and misleading representations" in agreeing to the DRP. (*Id.* ¶ 53.) Accepting Plaintiffs' allegations as true, Nextel cannot rely solely on Plaintiffs' attestation in the Individual Agreements that they reviewed the DRSA to argue that Plaintiffs in fact knew the extent of LMB and Nextel's agreement. For similar reasons, Nextel cannot put forth the General Release as an absolute defense at this stage of the proceedings.[4] To be sure, if Plaintiffs are, ultimately, unable to present sufficient evidence supporting their allegations, Defendants may be able to rely upon these agreements to defeat Plaintiffs' claims.

### III. CONCLUSION

Nextel's motion for judgment on the pleadings, (ECF No. 259), is DENIED.

---

[4] Nextel also argues that because Plaintiffs have not returned the settlement payments received in consideration for the Individual Agreement and General Release, they have ratified the releases and cannot challenge their validity. (MJP Mem. at 14; Def. Nextel Communications, Inc.'s Reply Brief in Resp. to Pls.' Opp'n to Nextel's Rule 12(c) Mot. for J. on the Pleadings, ECF No. 266, at 9–10.) Where a party "continues to perform under a contract after learning of the fraud, that party is deemed to have waived its right to pursue its fraud claim." *Metex Mfg. Corp. v. Manson*, No. 05 Civ. 2948 (HAA), 2008 WL 877870, at *6 (D.N.J. Mar. 28, 2008) (citing *Gennari v. Weichert Co. Realtors*, 288 N.J. Super. 504, 546 (App. Div. 1996)). There is no evidence, however, that Plaintiffs continued to receive settlement payments after learning of the true terms of the DRSA and Nextel's cited cases do not stand for the proposition that Plaintiffs were required to refund previously received payments before challenging the releases.

The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
      October 15, 2020

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge