**Proskauer»**

July 14, 2023
Page 2

on behalf of the Plaintiffs, and that Plaintiffs released Nextel from liability for any employment-related claims. Furthermore, Defendant contends that there is no merit to the underlying claims of employment discrimination.

After several years of additional litigation, the number of plaintiffs dwindled to the three currently remaining in this action. Plaintiffs elected to dismiss LMB from the action but continued to pursue claims against Nextel. Plaintiffs seek $7.5 million in damages, which they posit represents the proper measure of damages, based upon a theory of disgorgement. It is Defendant's position that disgorgement is not the proper measure of damages.

II. **Defendant's Discovery Sought**

In May 2022, Defendant served written discovery demands on Plaintiffs specific to the merits of Plaintiffs underlying claims. In September 2022, Plaintiffs responded to Nextel's Requests for the Production of Documents (the "Requests") with general, boilerplate objections that were not tied to any of the Requests, and Plaintiffs merely referenced documents previously produced during class discovery in and around 2012. In October 2022, counsel for Defendant wrote to Plaintiffs' counsel concerning these gross discovery deficiencies.

Notwithstanding Plaintiffs' discovery deficiencies, in an effort to move this matter along, Defendant proceeded with depositions beginning in March 2023. During those depositions,[1] each Plaintiff testified to exchanging electronic communications, such as email and text messages, with other Plaintiffs concerning the subject matter of this litigation, but also testified that they did not necessarily retain, or perform any search for, those communications. Plaintiffs further testified that they would be willing to search and produce such electronic communications. When asked at their depositions if they had been told to retain communications related to this litigation, Plaintiffs' either suggested they had not or could not recall.

On March 16, 2023, and May 1, 2023, counsel for Defendant wrote to counsel for Plaintiff requesting that Plaintiffs' still-deficient document production be supplemented with electronic communications, and Defendant's counsel even offered to assist Plaintiffs with a forensic review of their cell phones. In the letters to Plaintiffs' counsel, Defendant emphasized that communications concerning Plaintiffs' employment with Nextel, this litigation, and the facts and circumstances that give rise to this litigation are responsive to Defendant's Request Nos. 5, 8, 11, 22-25 and 51. Plaintiffs did not respond to Defendant's March 16th and May 1st letters.

Defendant's Requests encompass e-mail and text messages. *See generally Fam. Wireless #1, LLC v. Auto. Techs., Inc.*, No. 3:15CV01310, 2016 WL 3911870, at *4 (D. Conn. July 15, 2016) ("[A] text message is undoubtedly a 'communication' within the meaning of the discovery requests, and such messages may constitute 'electronically stored information' subject to

---

[1] *See* Donna Dymkowski Deposition Transcript ("Dep. Tr.") 33-43; Patricia Long Dep. Tr. 26-29, 59-62; Angelette Waters Dep. Tr. 12-19.

**Proskauer»**

July 14, 2023
Page 3

discovery."). Furthermore, Plaintiffs did not specifically object to Defendants' Requests seeking such communications concerning the underlying events alleged in the Complaint. Each Plaintiff's own testimony confirmed that they each used their respective e-mail accounts and/or cell phones to communicate with each other (and potentially others) about their employment with Nextel and, more generally, this litigation. Those communications must be produced.

Communications amongst Plaintiffs (and potentially others) concerning their claims against Nextel in this lawsuit, including those involving their employment with Nextel, are directly relevant to whether, and if so to what extent, Plaintiffs can recover here. For example, any admissions against interest in terms of (i) the discrimination they allegedly experienced at Nextel, or (ii) knowledge they shared about LMB's disclosure of a consultancy, would be materially relevant to Defendant's defenses. Additionally, a former plaintiff in this matter testified, contrary to Plaintiffs, that it was common knowledge that LMB would be receiving a consultancy fee, and thus such communications concerning the DRP and, specifically, LMB's consultancy, must be produced.[2] It is not burdensome for Plaintiffs to run searches over their email accounts and text messaging platforms, especially when Defendant offered to run forensics for them.

Additionally, the steps (if any) that Plaintiffs took to preserve documents are directly relevant to whether Plaintiff spoliated evidence. It is well settled that discovery into a party's discovery efforts is warranted once there is reason to believe that such party failed to preserve or produce relevant documents. *See Winfield v. City of N.Y.*, No. 15CV05236LTSKHP, 2018 WL 840085, at *3 (S.D.N.Y. Feb. 12, 2018) ("When the discovery sought is collateral to the relevant issues (i.e., discovery on discovery), the party seeking the discovery must provide an 'adequate factual basis' to justify the discovery[.]" (internal quotation omitted)). Here, each Plaintiff's sworn testimony that she did not retain, search or review electronic communications such as e-mails or text messages from prior or current email accounts and cell phones are sufficient reasons to justify discovery on discovery. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, No. 13CV2581PKCJLC, 2019 WL 3334503, at *18 (S.D.N.Y. July 25, 2019) (holding that plaintiffs had sufficiently justified request for discovery on discovery by pointing to specific gaps in defendants' production). It is well settled that a party's preservation efforts, and hold notices in particular, are a proper subject of discovery on discovery, because whether and when a party served hold notices or took other preservation steps is highly relevant to the spoliation inquiry.[3] *See, e.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. CV14MD2542VSBSLC, 2020 WL 6290584, at *6 (S.D.N.Y. Oct. 27, 2020) (directing parties to meet and confer to reach agreement on RFAs concerning when each custodian received a hold notice); *Bagley v. Yale Univ.*, 318 F.R.D. at 241 (compelling production of hold notices).

---

[2] *See* Samuel Antonio Dep. Tr. 56.

[3] Hold notices and preservation efforts are not privileged. *See, e.g., Bagley*, 318 F.R.D. at 240 (holding that hold notices were not privileged because "the predominant purpose of that communication was to give recipients forceful *instructions* about what they must do, rather than *advice* about what they might do" (emphasis in original)). A failure to timely issue proper hold notices or take other preservation steps may warrant sanctions under or may be probative of an intent to deprive under Rule 37. *See, e.g., Herman v. City of N.Y.*, 334 F.R.D. 377, 385 (E.D.N.Y. 2020) (holding party's delay in serving hold notice was "grossly negligent," warranting sanctions).

**Proskauer»**

July 14, 2023
Page 4

Respectfully submitted,

*s/ Joseph C. O'Keefe*
Joseph C. O'Keefe

cc: All Counsel of Record (via ECF)