**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DONNA DYMKOWSKI, PATRICIA LONG-CORREA, :
and ANGELETTE WATERS,                                              :
                                                                                        :
                                        Plaintiffs,                    :
                                                                                        :
          -against-                                                          :          MEMORANDUM DECISION
                                                                                        :          AND ORDER
NEXTEL COMMUNICATIONS, INC.,                         :
                                                                                        :          07 Civ. 8473 (GBD) (JW)
                                        Defendant.                    :
                                                                                        :
                                                                                        :
                                                                                        :
                                                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiffs Donna Dymkowski, Patricia Long-Correa, and Angelette Waters bring this action

against Nextel Communications, Inc. ("Nextel") for conspiracy to breach fiduciary duty, aiding

and abetting breach of fiduciary duty, and tortious interference. (Second Amended Complaint

("SAC"), ECF No. 219.) Plaintiffs' claims arise from Leeds, Morelli & Brown, P.C.'s ("LMB")

representation of 587 individuals, including Plaintiffs, in their asserted employment discrimination

claims against Nextel. During the course of such representation, LMB and Nextel negotiated a

Dispute Resolution Settlement Agreement that created a framework for an alternative dispute

resolution process through which Nextel would resolve claims brought by LMB clients. (*Id.* ¶ 51.)

Plaintiffs allege that the Dispute Resolution Settlement Agreement shifted LMB's loyalty from its

clients to Nextel, as Nextel agreed to pay LMB up to $5.5 million in attorneys' fees to process the

employment discrimination claims through the DRP and an additional fee of $2 million to serve

as a consultant to Nextel regarding its employment discrimination practices following the

resolution of all claims. (*Id.* ¶¶ 35–36.)

Before this Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiffs' claims. (Notice of Motion, ECF No. 300.) Defendant's motion is GRANTED.

## I.    FACTUAL BACKGROUND

### A.  Plaintiffs' Retention of LMB

587 Nextel employees, including Plaintiffs, retained LMB to seek negotiated settlements of their respective employment-related claims against Defendant. (Def.'s Statement of Undisputed Material Facts ("SOMF"), ECF No. 302, ¶ 2.) Under the retainer agreements with LMB, Plaintiffs acknowledged that LMB would not file any documents in court or with any administrative agency. (*Id.* ¶ 6.) The retainer agreements also established that LMB would take one-third of any settlement figure as payment for attorneys' fees. (*Id.* ¶ 3.)

### B.  The Dispute Resolution Settlement Agreement

During LMB's representation of Plaintiffs, LMB and Nextel negotiated a Dispute Resolution Settlement Agreement ("DRSA") that created a framework for an alternative dispute resolution process ("DRP") through which Nextel would resolve the employees' discrimination claims. (*Id.* ¶ 25.) Nextel retained law firms Simpson, Thacher & Bartlett and Jackson, Lewis, Schnitzler & Krupmen to represent it in negotiating the terms of the DRSA with LMB. (*Id.* ¶ 16.) Outside of the formal DRSA negotiation process, there is no evidence of any communications between LMB and Nextel management personnel. (*Id.* ¶ 80.) Specifically, there is no evidence of any meetings or documents exchanged between Nextel management personnel and LMB. (*Id.* ¶¶ 78–79.)

During the DRSA negotiations, LMB's clients expressed that they wanted the process to be as least litigious as possible, because many claimants still worked for Nextel and wanted to

follow a career path there. (*Id.* ¶ 20.) Specifically, Jeffrey Brown, a partner at LMB, testified that many claimants did not want a hostile proceeding or any public filings. (Brown Dep. Tr. at 57:21–25.)

LMB and Nextel formalized the terms of the DRP by executing the DRSA on September 28, 2000. (SOMF ¶ 21.) The DRSA also contained provisions regarding payment of certain fees to LMB. Under the DRSA, Nextel agreed to pay LMB up to $5.5 million in attorneys' fees to represent its clients during the DRP, and an additional fee of $2 million to consult for Nextel regarding its employment discrimination practices following the resolution of all claims. (*Id.* ¶¶ 82, 90; Decl. of Joseph C. O'Keefe dated March 12, 2024 ("O'Keefe Decl."), ECF No. 303, Ex. 19 at 25.) The parties negotiated the attorneys' fees payment scheme as follows: LMB would receive $2 million in attorneys' fees within three business days of Nextel's receipt of all claimants' agreements to participate in the DRP ("Individual Agreements") and statements explaining their claims ("Claimant Statements"); the firm would receive $1.5 million upon resolution of half of the claimants' claims; and it would receive the remaining $1,720,000[1] following the resolution of all claims by all claimants. (O'Keefe Decl., Ex. 19 at 23–24, Ex. 30 at 1.)

LMB and its clients entered into the Individual Agreements wherein claimants, including Plaintiffs, agreed to participate in the DRP. (SOMF ¶ 105.) The Individual Agreement stated that the claimant had "reviewed the [DRSA]; had the opportunity to discuss that Agreement with [LMB] or any other counsel of [her] choosing; and agree[d] to comply fully with the terms of that Agreement." (O'Keefe Decl., Ex. 9 at 1, Ex. 10 at 1, Ex. 11 at 1.) Additionally, claimants, including Plaintiffs, received a document entitled "Highlights of Settlement Agreement" (the "Highlights

---

[1] The original amount agreed upon in the DRSA was $2 million. (O'Keefe Decl., Ex. 19 at 23–24.) However, 14 individuals advised that they would not submit Individual Agreements and Claimants' Statements. (O'Keefe Decl., Ex. 30 at 1.) Thus, an amendment to the DRSA reduced the amount to account for the individuals' nonparticipation. (*Id.*)

Document"). (SOMF ¶ 114.) Both the Individual Agreement and Highlights Document disclosed

the consultancy arrangement and stated that it posed a conflict of interest, which claimants agreed

to waive by signing the Individual Agreement. (*Id.* ¶¶ 112, 116.) Regarding attorneys' fees, the

Highlights Document stated that "Nextel is paying each Claimant's attorneys' fees, costs, and

expenses (other than expert witness fees) in consideration for each Claimant participating in the

DRP and honoring all of the conditions." (O'Keefe Decl., Ex 37 at 5.) The Individual Agreement

explained that:

> Nextel has agreed to pay an amount of money to [LMB] to cover the attorneys' fees
> and expenses, other than expert fees, that Claimants might otherwise pay to [LMB]
> and for which Claimants might otherwise reimburse [LMB] for its representation
> of all Claimants through the [DRP], and for [LMB's] services rendered in
> representing all Claimants through the expedited [DRP].  [LMB] will not collect or
> seek to collect from any Claimant any attorneys' fees (contingent or otherwise) or
> expenses, other than expert fees, to which it might otherwise by entitled pursuant
> to an agreement between [LMB] and Claimants or otherwise.  I hereby knowingly
> and voluntarily consent to this payment arrangement.

(O'Keefe Decl., Ex. 9 at 1–2.) Neither the Individual Agreement nor the Highlights Document

discussed the specific amounts of such fees or the conditions of those payments. While each

claimant did not receive a full copy of the DRSA, they signed Pledges of Good Faith agreeing that

"two (2) representatives in [their] area [would] maintain a copy of the [DRSA]. Upon request to

either of the area representatives, claimants [would] be allowed to review the [DRSA]." (O'Keefe

Decl., Ex. 28, Ex. 29, Ex. 30.) After execution of the DRSA, LMB held meetings with its clients

during which it provided them copies of the final DRSA and discussed the terms of the DRSA in

detail. (SOMF ¶¶ 29–44.)

**C. The Dispute Resolution Process**

As outlined in the DRSA, the DRP was an individualized three-phase alternative dispute

resolution process. (SOMF ¶ 26.) The process included 1) investigation and negotiation, 2) non-

binding mediation, and 3) binding arbitration. (*Id.* ¶¶ 47–49, 53.) During the investigation phase, each claimant prepared a detailed Claimant Statement describing the individual's specific claims and damages. (*Id.* ¶ 47.) After preparation of the Claimant Statement, the claimant participated in an interview and engaged in face-to-face negotiations with Nextel representatives. (*Id.*)

If the parties were unable to reach a mutually agreeable resolution after engaging in the investigation phase, they would proceed to a non-binding individual mediation conducted by an independent neutral. (*Id.* ¶ 49.) If unable to reach a resolution after engaging in mediation, the parties proceeded to formal and binding individual arbitration proceedings before an independent neutral. (*Id.* ¶ 53.) To prepare claimants for the DRP, LMB collected documents, met with claimants, and provided feedback after preparatory sessions. (*Id.* ¶ 46.)

### D. Plaintiffs' Settlement Awards

Each Plaintiff resolved her claims against Nextel through the DRP. (SOMF ¶ 60.) Each Plaintiff settled her claims at a different phase of the process, and each received an individualized settlement amount. The DRSA did not establish an aggregate settlement fund to pay out settlements for claims, but instead contemplated individualized settlements such as Plaintiffs'. (SOMF ¶ 27.)

During the initial phase of the DRP, LMB made a demand on Plaintiff Dymkowski's behalf for $260,000, plus stock options, which Nextel rejected. (O'Keefe Decl. Ex. 45 at 2; Dymkowski Tr. I, 216:2-218:4.) Dymkowski's claims proceeded to binding arbitration, at which point she settled for $19,500.00. (SOMF ¶ 151.) The only disappointment Dymkowski had with LMB's representation was the firm's use of several attorneys for her case. (*Id.* ¶ 154.)

LMB made a demand on Plaintiff Long-Correa's behalf for $85,500, which Nextel rejected. (*Id.* ¶ 177.) The parties proceeded to mediation, during which Long-Correa authorized

LMB to settle her claims because she wanted to complete the DRP, as she "was tired of dealing with it." (Long-Correa Tr. I, 80:7–13.) Long-Correa settled her claims for $7,500. (SOMF ¶ 180.) She does not remember feeling as though any LMB lawyers abrogated their responsibilities to her, and at the time was happy with her $7,500 settlement amount. (*Id.* ¶ 183.)

LMB made an initial demand on Plaintiff Water's behalf for $10,000 in monetary relief and $500,000 in non-monetary relief, which Nextel rejected. (*Id.* ¶ 207.) Waters' claims proceeded to the final phase of the DRP, but before the arbitration hearing, Waters settled her claims for $17,000. (*Id.* ¶¶ 211–212.)

Although Plaintiffs initially sought "disgorgement of the $7 million plus payment from Nextel," (SAC ¶ 22), Plaintiffs now seek the difference between their settlement amounts and what they believe they would have received if represented by unconflicted counsel, plus treble damages, punitive damages, attorneys' fees, and interest. (SOMF ¶¶ 163, 192, 220.)

## II.    PROCEDURAL BACKGROUND

This case is before this Court with a long procedural history.[2] In 2006, over 500 Plaintiffs filed the instant suit in New Jersey state court as a putative class action against LMB and Nextel. *See Johnson v. Nextel Commc'ns, Inc.*, No. PAS-L-004121-06 (N.J. Super. Ct. Law Div., Passaic Cnty. Ct., Oct. 12, 2006). Plaintiffs asserted that Nextel's payments to LMB of legal and consultancy fees under the DRSA were "bribe[s]" and created conflicts of interest that converted "an adversarial process into a staged show with a predetermined outcome." (First Amended

---

[2] The procedural background is set forth in greater detail in the prior decisions issued by this Court and the Second Circuit. *See Johnson v. Nextel Commc'ns, Inc.*, No. 07-CV-8473, 2009 WL 928131 (S.D.N.Y. Mar. 31, 2009); 660 F.3d 131 (2d Cir. 2011) ("*Nextel I*"); 293 F.R.D. 660 (S.D.N.Y. 2013); 780 F.3d 128 (2d Cir. 2015) ("*Nextel II*"); 2017 WL 4326052 (S.D.N.Y. Sept. 19, 2017); 763 F. App'x 53 (2d Cir. 2019) ("*Nextel III*"); *Dymkowski v. Nextel Commc'ns, Inc.*, No. 07-CV-8473, 2020 WL 6082107 (S.D.N.Y. Oct. 15, 2020). Such background is incorporated by reference herein and familiarity with those decisions is assumed.

Complaint ("FAC"), ECF No. 22-2 ¶¶ 85–86.) Plaintiffs alleged that LMB conspired with Nextel to keep their payments and conflicts of interest "hidden from [claimants]" and, as a result of the payments, LMB "failed to investigate each of Plaintiffs' claims on its merits, to negotiate each claim, to become familiar with the claims, or to properly, competently, or reasonably prepare the claimants, including Plaintiffs, to participate in the [DRP] . . . ." (*Id.* at ¶¶ 51, 92.) Following removal and a change of venue to this Court, this Court granted Nextel's motion to dismiss the case. *See Johnson v. Nextel Commc'ns, Inc.*, No. 07-CV-8473, 2009 WL 928131, at *3 (S.D.N.Y. Mar. 31, 2009), *vacated*, 660 F.3d 131 (2d Cir. 2011).

On appeal, the Second Circuit vacated in part and remanded. *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131 (2d Cir. 2011) ("*Nextel I*"). The Circuit panel concluded that the claimants had adequately asserted causes of action against LMB and that the derivative claims against Nextel might be viable. *Id.* at 142–44. The Circuit also concluded that Plaintiffs "plausibly alleged injury in the difference between what they received with representation by LMB under the DRSA and what they would have received if represented by unconflicted counsel." *Id.* at 141–42. Notably, after *Nextel I*, Plaintiffs voluntarily dismissed with prejudice all claims against LMB, thereby leaving Nextel as the only defendant in this action. (Stipulated Voluntary Dismissal, ECF No. 176.)

Following class discovery, this Court granted Plaintiffs' motion to certify an "issue class." (Memorandum Decision and Order, ECF No. 141.) The Second Circuit later decertified the class on appeal. *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 141–46 (2d Cir. 2015) ("*Nextel II*").

After *Nextel II*, Plaintiffs sought to amend their complaint a second time to add two new claims. *Johnson v. Nextel Commc'ns Inc.*, 763 F. App'x 53 (2d Cir. 2019) ("*Nextel III*"). In *Nextel III*, this Court denied the motion and dismissed all remaining claims, but on appeal, the Second

Circuit affirmed in part and vacated in part. *Nextel III*, 763 F. App'x at 57. Applying New Jersey substantive law, the Circuit panel remanded the three remaining New Jersey tort claims. *Id.* at 56.

Nextel now moves for summary judgment as to the three remaining New Jersey tort-law claims: (1) tortious interference with contract; (2) conspiracy to breach fiduciary duty; and (3) aiding and abetting breach of fiduciary duty.

## III.   LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this

8

regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Id.* (citing *Anderson,* 477 U.S. at 255). However, to defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn." *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

## IV.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

Plaintiffs' Second Amended Complaint brings three causes of action under New Jersey tort law for tortious interference with a contract, aiding and abetting breach of fiduciary duty, and conspiracy to breach fiduciary duty.[3] (*See generally* SAC.) Summary judgment is granted for Defendant on all claims.

### A.  Plaintiffs have not Established a Claim of Tortious Interference with a Contract

Plaintiffs' Second Cause of Action alleges that Defendant tortiously interfered with their Retainer Agreements with LMB in violation of New Jersey tort law.

Under New Jersey law, "one who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing

---

[3] Defendant argues that Plaintiffs' claims must be dismissed because they are barred by the General Releases Plaintiffs signed at settlement. (Def.'s Mem. of Law in Support of Mot. for Summ. J. ("Def.'s Mem."), ECF No. 301, at 6–14.) This Court agrees that Plaintiffs have not presented evidence of fraud sufficient to invalidate the waiver of claims in the General Releases. Assuming *arguendo* that Plaintiffs' claims are not barred, each claim still fails on the merits. As discussed below, Plaintiffs have presented insufficient evidence to support their pleadings at Summary Judgment, and no genuine issue of material fact exists.

the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Nostrame v. Santiago*, 213 N.J. 109, 122 (2013) (quoting Restatement (Second) of Torts § 766 (Am. L. Inst. 1979)). To establish a claim for tortious interference, "a plaintiff must prove: (1) an existing contract or reasonable expectation of economic advantage; (2) intentional and malicious interference with that relationship; (3) the loss of the contract or prospective gain as a result of the interference (causation); and (4) damages resulting from that interference." *Skelly v. Hackensack Univ. Med. Ctr. N. at Pascack Valley, LLC*, No. A-0967-22, 2023 WL 8743202, at *3 (N.J. Super. Ct. App. Div. Dec. 19, 2023) (citing *Velop, Inc. v. Kaplan*, 301 N.J. Super. 32, 49 (App. Div. 1997) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 752 (1989))); *Ciecka v. Rosen*, 908 F. Supp. 2d 545 (D.N.J. 2012) (applying New Jersey law).

Plaintiffs' tortious interference claim centers on the allegation that Defendant's payments to LMB operated as a "bribe" that compromised LMB's representation of its clients. (SAC ¶ 124.) While Plaintiffs have entirely failed to address their tortious interference claim in their Opposition to Summary Judgment, Plaintiffs' Complaint alleges that "Nextel bribed and/or bought off [LMB] so as to compromise [LMB]'s and the LMB Lawyers' fidelity to Plaintiffs and the other [claimants]." (*Id.*) Plaintiffs further allege that "[LMB] and the LMB Lawyers accepted the bribe of Nextel and agreed to compromise the representation of Plaintiffs and the other [claimants] and to render certain advice in exchange for this payment. Thus, [LMB] and the LMB Lawyers effectively became the lawyers or adjusters for Nextel in the handling of the claims of Plaintiffs

and the other [claimants]." (*Id.*) Plaintiffs have not presented any evidence to support these allegations.

### 1. Intentional Interference

"'[T]he term malice is not used in the literal sense requiring ill will toward the plaintiff," instead, "malice is defined to mean that the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown*, 116 N.J. at 751 (citing Restatement (Second) of Torts ch. 37, intro. note); *DiMaria Constr., Inc. v. Interarch*, 351 N.J. Super. 558, 567 (App. Div. 2001) ("[M]alice is defined to mean that the interference was inflicted intentionally and without justification or excuse."); *see also Russo v. Nagel*, 358 N.J. Super. 254, 269 (App. Div. 2003). Malice is determined on an individualized basis, and the standard is flexible, viewing the defendant's actions in the context of the facts presented. *Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div. 1995). "Interference with a contract is intentional 'if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.'" *Russo*, 358 N.J. Super. at 268 (quoting Restatement (Second) of Torts § 766A, cmt. e).

Viewing the facts in the light most favorable to Plaintiffs, the record lacks competent evidence that Nextel intentionally interfered with LMB's representation of Plaintiffs through its payments to LMB. The evidence establishes that Nextel and LMB engaged in an arm's length negotiation process which resulted in an agreement for dispute resolution, attorneys' fees and consultancy fees, all fully disclosed to clients in the DRSA. (SOMF ¶ 16, 25, 29–44.) As Nextel correctly argues, there is no evidence that Nextel paid LMB's attorneys' fees for the purposes of interfering with LMB's representation of Plaintiffs. (Def.'s Mem. at 25.) Further, there is no evidence of any communications between Nextel and LMB indicating the payment of LMB's

attorneys' fees was intentioned as a counterincentive. (*Id.*) In fact, there is no evidence of *any* communications between LMB and Nextel regarding the payments outside of the normal DRSA negotiation process.

Plaintiffs' allegations that Defendant acted with intent to interfere with their retainer agreements is unsupported by any evidence. While allegations alone were sufficient to survive dismissal at an earlier point in this litigation, allegations do not suffice at summary judgment. Indeed, "[a]n opponent to a summary judgment motion cannot defeat the motion by raising a misguided subjective belief . . . to create the existence of a genuine issue of material fact." *Optopics Labs. Corp. v. Sherman Labs., Inc.*, 261 N.J. Super. 536, 544 (App. Div. 1993) (quoting *Swarts v. Sherwin-Williams Co.*, 244 N.J. Super. 170, 178 (App. Div. 1990)). At this stage, Plaintiffs must support their allegations with competent evidence, which they have failed to do. *See Brae Asset Fund, L.P. v. Newman*, 327 N.J. Super. 129, 134 (App. Div. 1999).

## 2. Causation and Damages

Even if Plaintiffs had adequately shown intentional interference, their claim would still fail, as there is no evidence of causation or damages. For a tortious interference claim to be viable, the interference must cause the loss of the contract, resulting in damage. *Printing Mart– Morristown*, 116 N.J. at 752. Conversely, if the contract is performed despite the defendant's actions, there is no tortious interference with the contract. *DiGiorgio Corp. v. Mendez and Co., Inc.*, 230 F. Supp. 2d 552, 566 (D.N.J. 2002). There can be no interference with contractual relations without at least nominal compensatory damages. *Horvath v. Rimtec Corp.*, 102 F. Supp.

12

2d 219, 236 (D.N.J. 2000); *Norwood Easthill Assocs. v. Norwood Easthill Watch*, 222 N.J. Super. 378, 386 (App. Div. 1988).

As Nextel argues, Plaintiffs have failed to show that LMB breached its retainer agreements, as they have made no showing that they were deprived the benefits of LMB's representation. (Def.'s Mem. at 26 n. 10.) The evidence shows that Plaintiffs retained LMB for the purpose of negotiating settlements to resolve their employment discrimination claims. (SOMF ¶ 2.) The retainer agreements did not contemplate any further representation, such as in-court litigation or administrative agency actions. (*Id.* ¶ 6.) LMB prepared its clients for the DRP by collecting documents, meeting with clients, holding preparatory sessions, and providing feedback after such sessions. (*Id.* ¶ 46.) With LMB's representation, each Plaintiff made an initial settlement demand, participated in the DRP, and accepted a settlement award. (*Id.* ¶¶ 151, 177, 180, 207, 211, 212.) Importantly, Plaintiffs Long-Correa and Dymkowski testified that at the time, they were satisfied with LMB's representation and their settlement amounts. (*Id.* ¶¶ 154, 183.) Ultimately, Plaintiffs received what they retained LMB to achieve: satisfactory settlements of their discrimination claims against Nextel.

As Plaintiffs have failed to show causation, they have similarly failed to show damages. While the Complaint states that "Plaintiffs suffered harm and damages as a result of the tortious interference," (SAC ¶ 125), Plaintiffs have failed to present any evidence to support this claim. Plaintiffs seek the difference between the amounts they received, and an unspecified amount they allegedly would have received if represented by unconflicted counsel. (SOMF ¶¶ 26, 163.) However, they have provided no indication as to what that differing amount may be. Plaintiffs have not explained what additional services unconflicted counsel would have provided that LMB did not, or how this would have resulted in higher settlement figures. As explained above, Plaintiffs

received what they contracted for in the retainer agreements: negotiated settlements. Thus, Plaintiffs have failed to show even nominal compensatory damages in this case. Plaintiffs have failed to establish the elements of tortious interference and their Second Cause of Action is therefore dismissed.

## B. Plaintiffs have Not Established a Claim of Aiding and Abetting Breach of Fiduciary Duty

Plaintiffs' First Cause of Action alleges that Defendant aided and abetted a breach of fiduciary duty by LMB in violation of New Jersey tort law.

To establish a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege: (1) a breach of fiduciary duty; (2) the defendant's knowledge of and substantial assistance in that breach; and (3) damages resulting from the breach. *See State, Dep't of Treasury, Div. of Inv. ex rel. McCormac v. Qwest Commc'ns Int'l., Inc.*, 387 N.J. Super. 469, 481–83 (App. Div. 2006); *In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005).

### 1. Underlying Breach

To sustain a claim for aiding and abetting breach of fiduciary duty, Plaintiff must first establish an underlying breach. *See State, Dep't of Treasury, Div. of Inv.*, 387 N.J. Super. at 481–83. "It is fundamental to aiding and abetting liability that the aider and abettor acted in relation to a principal," and only once the principal has been found liable does the issue become whether the separate party is liable for aiding and abetting. *Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998).

Plaintiffs claim that LMB breached its fiduciary duty by 1) creating a conflict of interest which shifted its loyalty from Plaintiffs to Nextel; and 2) providing inadequate representation to Plaintiffs as a result. (SAC ¶¶ 108, 111.) Plaintiffs have presented no evidence to support such a

finding.[4] While LMB's fee agreements with Nextel certainly may have been ill-advised, there is no evidence in the record that the law firm breached the fiduciary duty it owed to Plaintiffs.

It is undisputed that the consultancy arrangement in the DRSA created a waivable conflict of interest.[5] (SOMF ¶ 40). However, the creation of a conflict alone is insufficient to establish a breach of fiduciary duty. *Green v. Fund Asset Mgmt.*, 147 F. Supp. 2d 318 (D.N.J. 2001) (finding that a conflict of interest did not amount to a per se breach of fiduciary duty).

Plaintiffs also allege that LMB's performance was compromised, and that they received "puny" settlements as a result of the firm's ineffective representation. (*See* Pl.'s Mem. Of Law in Opp. to Defs.' Mot. For Summ. J. ("Opp."), ECF No. 310, at 22.) However, as previously discussed, LMB provided counsel to Plaintiffs before and during the entire Dispute Resolution Process. *See Salvemini v. Spector*, No. A-3579-11T2, WL 6508500, at *10 (N.J. App. Div. Dec. 13, 2013) (reversing the trial court's denial of summary judgment on breach of fiduciary duty claim where the record showed that the attorney provided all parties with the information they needed). The record evidence establishes that LMB advised Plaintiffs in pre-DRP meetings, made settlement demands on behalf of Plaintiffs at the outset of the DRP, advised Plaintiffs through all stages of the DRP, and counseled Plaintiffs through the procurement of their individualized settlement amounts. (SOMF ¶¶ 46–49, 53, 147, 177, 207.) Long-Correa testified that she was

---

[4] Nextel asserts that there can be no finding of underlying wrong because Plaintiffs voluntarily dismissed their breach of fiduciary duty claims against LMB. (Def.'s Mem. at 19.) However, Plaintiffs' cited cases do not support this proposition. The cited cases address situations where courts dismissed claims for underlying wrong on the merits, not situations of voluntary dismissal. Regardless, Plaintiffs here have failed to establish any underlying wrong through record evidence.

[5] In *Nextel I*, the Circuit panel applied New York law in finding that the conflict of interest was unconsentable. *Nextel I*, 660 F.3d at 131. However, in *Nextel III*, the Circuit panel found that under New Jersey law, which is controlling in this case, the conflict of interest could be waived. *Nextel III*, 763 F. App'x at 56, n. 4 ("New Jersey's only bright line prohibition on conflict waivers has been drawn in the context of complex commercial real estate transactions, which is inapplicable here.").

happy with her settlement figure and does not remember feeling that any LMB lawyers abrogated their responsibilities to her. (*Id.* ¶ 183.) Dymkowski's only disappointment was the use of several lawyers on her case. (*Id.* ¶ 154.) Plaintiffs have failed to produce any evidence that LMB did not advocate on their behalf to achieve satisfactory negotiated settlements. Any claims to the contrary are nothing more than speculative allegations not grounded in fact. *See Optopics Labs. Corp.*, 261 N.J. Super. at 544 (quoting *Swarts*, 244 N.J. Super. at 178).

### 2. Knowledge and Substantial Assistance

Even if LMB breached its fiduciary duty to Plaintiffs, Plaintiffs have presented no evidence that Nextel provided substantial assistance in the commission of the breach. Plaintiffs allege that Nextel paid a bribe to LMB in exchange for the law firm shifting its loyalty to Nextel and providing compromised representation to Plaintiffs. (Opp. at 22.) However, Plaintiffs have presented no evidence to support this allegation. There are no documents or communications supporting Plaintiffs' claim that Nextel arranged the attorneys' fee and consultancy fee payments in order to shift LMB's loyalty. Similarly, Plaintiffs have presented no evidence that Nextel kept the payments secret from them. *See Jaclyn, Inc. v. Edison Bros. Stores, Inc.*, 170 N.J. Super. 334, 368 (Law Div. 1979) (finding that bribery requires "a third party who knowingly . . . tenders[s] secret payments."). In sum, nothing in the record suggests that Nextel paid LMB to assist it in the commission of a breach of fiduciary duty.

### 3. Damages

Finally, Plaintiffs have failed to show that they sustained damages as a result of LMB's representation. Plaintiffs argue that they were damaged by LMB's breach. (SAC ¶ 113.) However, Plaintiffs have again failed to explain what they would have received if represented by different

counsel or support such claims with evidence. Plaintiffs' First Cause of Action for aiding and
abetting a breach of fiduciary duty is therefore dismissed.

### C. Plaintiffs have Not Established a Claim of Conspiracy to Breach Fiduciary Duty

Plaintiffs also allege that Nextel conspired with LMB to breach the law firm's fiduciary
duty to its clients in violation of New Jersey tort law. Under New Jersey law, civil conspiracy is:

> a combination of two or more persons acting in concert to commit an unlawful act, or to
> commit a lawful act by unlawful means, the principal element of which is an agreement
> between the parties to inflict a wrong against or injury upon another, and an overt act that
> results in damage.

*Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 317 (D.N.J. 2012) (quoting *Morgan v. Union
Cnty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993)); *see also Banco
Popular North America v. Gandi*, 184 N.J. 161, 177 (2005).

### 1.    Underlying Wrong

Civil conspiracy is a dependent claim which must be alleged along with a substantive
claim—"the gist of the claim is not the unlawful agreement, 'but the underlying wrong which,
absent the conspiracy, would give a right of action.'" *Morgan*, 268 N.J. Super. at 364. As discussed
above, Plaintiffs have failed to present evidence of an underlying breach of fiduciary duty, as
necessary to prove conspiracy. *Compare Brown ex rel. Est. of Brown v. Philip Morris Inc.*, 228 F.
Supp. 2d 506, 517 n.10 (D.N.J. 2002) (applying New Jersey law in finding that conspiracy claim
could not stand where Plaintiff failed to establish elements of underlying tort), *with Bd. of Educ.
of Asbury Park v. Hoek*, 38 N.J. 213, 238 (1962) ("Here there was clearly sufficient evidence to

support a verdict that a wrong had been done. Conflicts in the evidence were for the jury to resolve in the performance of its duty as the fact finder.").

## 2.    Agreement to Inflict Injury

Even if Plaintiffs could establish an underlying wrong, there is no evidence of any agreement to inflict injury. Plaintiffs have presented no evidence of an agreement between LMB and Nextel for LMB to breach its fiduciary duties. Plaintiffs present nothing more than speculative allegations that Nextel wanted to keep the payments in the DRSA hidden from Plaintiffs and process Plaintiffs' claims without proper attention. (Opp. at 23.) However, as Nextel argues, "Plaintiffs have no evidence as to how, where, or when Nextel and LMB entered into their secret agreements to achieve those unsubstantiated ends." (Def.'s Mem. at 24.) Plaintiffs have failed to present any evidence of communications between Nextel and LMB sufficient to substantiate their claims. As such, their claim for conspiracy fails. *See Illiano v. Wayne Bd. of Educ.*, No. CV-22-00114, 2022 WL 4596729, at *6 (D.N.J. Sept. 30, 2022) (plaintiff failed to articulate how, where, or when defendants entered into their secret agreement and only broadly speculated as to why they may have engaged in concerted activity).

## 3.    Damages

As previously discussed, Plaintiffs cannot show that they sustained damages from LMB's representation. Plaintiffs' First Cause of Action for conspiracy to breach a fiduciary duty is therefore dismissed.

## V.   CONCLUSION

Defendant's motion for summary judgment, (ECF No. 300), is GRANTED.  The Clerk of

Court is directed to close the motion, and this case, accordingly.

Dated: New York, New York
MAR 2 5 2025

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

19